## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEVRY UNIVERSITY, INC.<br><br>       Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and<br><br>DR. MIGUEL CARDONA, *in his official capacity as Secretary of the United States Department of Education*,<br><br>       Defendants. | Civil Action No. 22-5549 |

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF

By this Complaint, DeVry University, Inc. ("DeVry") seeks to enjoin the unlawful and coercive action of the Department of Education ("Department") to recoup from DeVry tens of millions of dollars in federal student loans that the Department unilaterally discharged on behalf of 649 borrowers without statutory authority and in violation of regulatory requirements ("Recoupment Action"). DeVry thus requests injunctive relief and a declaration of law to establish that the Department (i) lacks the authority to prosecute the Recoupment Action; (ii) has exceeded its statutory mandate and violated dispositive procedures in adjudicating the underlying borrower defense claims *en masse*; and (iii) has violated DeVry's due process rights by failing to provide DeVry with adequate notice or a meaningful opportunity to contest the discharged sums. Alternatively, should the Recoupment Action be allowed to proceed, DeVry seeks declaratory relief to establish what

procedures would govern the rights of the parties to ensure DeVry has a fair opportunity to present a meaningful defense and to clarify the appropriate legal basis (if any) for the Department's demand.

## INTRODUCTION

1.      Founded in 1931 by inventor Dr. Herman DeVry, Chicago-based DeVry University has become a leader in online education. Accredited by the Higher Learning Commission, DeVry offers academic programs in technology, business, and healthcare across a range of degree levels. DeVry has educated hundreds of thousands of students over its almost century-long history. Most have earned degrees, enjoyed successful careers and, to the extent they obtained loans to attend DeVry, repaid those loans.

2.      In recent years, a number of former DeVry students have sought discharge of their federal loans by filing Borrower Defense to Repayment applications ("BDR Applications") with the Department. By filing a BDR Application, a qualifying borrower may seek discharge of his or her federal loans under certain conditions, which the Department may grant only after it has followed very particular rules. As to the 649 BDR Applications underlying this action, the Department has disregarded those rules by summarily discharging the underlying loans without individualized assessment and by pursuing recoupment of the discharged sums without following applicable procedures or providing adequate notice of the underlying claims sufficient to allow DeVry to defend itself.

3.      For context, in 1993, Congress authorized the federal government to

lend directly to eligible students ("Direct Loans"). Ordinarily, Direct Loans must be repaid. However, Congress directed the Department to publish regulations specifying "which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment." 20 U.S.C. § 1087e(h). The Department thus published the initial Borrower Defense to Repayment ("BDR") regulations, effective in 1995, establishing an "interim" process by which borrowers could assert a defense to repayment of their Direct Loans based on certain acts of the school they attended.

4. However, in 2016—after more than two decades of agency inaction on the interim BDR process—the Department, without congressional approval, vastly expanded the BDR regulations by claiming authority to discharge loans *en masse*, and then to seek recoupment without meaningful school participation in the process. Pursuant to that supposed authority—and without affording basic due process—the Department now seeks to recoup millions of dollars in discharged loans from DeVry.

5. Specifically, on February 16, 2022, the Department announced it had granted over 1,800 BDR Applications filed by former DeVry students based on allegedly deceptive advertising that DeVry ceased running by September 2015.[1] Like the rest of the world, DeVry learned of this action from the media, and despite DeVry's subsequent request for information, the Department provided none.

6. Then, on August 15, 2022, the Department notified DeVry of its intent

---

[1] *See* Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

to recoup more than $23 million in discharged debt on behalf of 649 borrowers, based on DeVry's allegedly deceptive advertising that had ended years earlier ("Recoupment Notice"). The Department also provided—for the first time—some (but not all) of the students' identities referenced in the press release and the amounts of their discharged loans.

7.     The Recoupment Notice came on the heels of a proposed $6 billion class settlement involving almost 200,000 BDR Applications from students attending more than 150 colleges[2] (including many who are part of this action), and immediately before President Biden's declaration of loan forgiveness for millions of borrowers.

8.     The legal shortcomings presented by the Recoupment Notice are numerous. For example, nothing in the Recoupment Notice indicates (i) whether the Department determined that each of the underlying BDR Applications should be granted based on individualized facts; (ii) on what basis the Department is authorized to initiate a recoupment action beyond the regulatorily prescribed limitations period (which, if applied, would bar recovery of more than 90% of the $23 million the Department demands from DeVry); (iii) why the Department believes that DeVry is liable for claims of students who will receive (or have received) settlement funds or loan forgiveness outside of the BDR process; or (iv) whether the Department has ensured, as it must under 20 U.S.C. § 1087e(h), that no student has received "an amount in excess of the amount such borrower has repaid on such loan[s]."

---

[2] *See* Order Granting Preliminary Approval of Class Action Settlement, *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Aug. 4, 2022), ECF No. 307.

9.     The Department has also grossly exceeded its statutory authority by enacting the various versions of the BDR regulations that it now seeks to enforce against DeVry, and by discharging the underlying loans without proper adjudication, often beyond the applicable limitations period. Congress created a *limited* right to repayment relief in *specific* circumstances, subject to the Department establishing regulations consistent with that mandate. But the Department issued regulations vastly exceeding that authority, and now attempts to apply those regulations to impose financial liability on DeVry without due process of law.

10.     The Department's final decision to discharge thousands of loans without meaningful participation from DeVry violates regulatory, statutory, and constitutional principles. Both the BDR regulations and the process by which the Department has prosecuted the Recoupment Action conflict with other applicable rules, the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment to the United States Constitution, in at least the following ways:

   a. The Department has discharged thousands of loans without providing DeVry a meaningful opportunity to participate in the discharge process or challenge the underlying obligations, as required by law.

   b. The Department has failed to provide sufficient notice to DeVry of the BDR Applications, including the basic information DeVry needs to understand and defend against both the individual student claims and the Recoupment Action. Here, that means providing, at a minimum, information about each student's attendance, the basis for each

student's alleged defense to repayment, and any receipt of offsetting payments—among other things plainly relevant to the merits of the claims, DeVry's defenses, and amounts purportedly owed.

c. The Department has adjudicated the underlying BDR Applications in a single group process, but there is no lawful basis for such an act. Congress has not authorized the Department to adjudicate BDR Applications and seek reimbursement in this manner, and the Department cannot circumvent controlling regulations or suspend due process because the volume of claims is large. Rather, the Department must *individually* assess the viability of each student's claimed defense to repayment—and thereby eliminate ineligible claims and identify applicable offsets to relief—*before* seeking reimbursement. Instead, the Department turned the process on its head by requiring DeVry to sort it out, without providing the information DeVry needs to do so.

d. The Department relies on regulations promulgated without proper notice and comment, and on policy memoranda issued in contravention of then-controlling processes for issuing guidance documents.

e. The haphazard process by which the Department has prosecuted the Recoupment Action lacks clear standards for establishing liability, eliminates nearly every protection to meaningful legal process to which DeVry is entitled, and eviscerates congressional and constitutional limitations on the Department's power to seek recoupment.

11.     DeVry thus stands to suffer considerable constitutional and pecuniary harm, which is exacerbated by the Department's seemingly unfettered discretion to impose devastating financial and operational demands on DeVry, including a letter of credit that would irreversibly impact DeVry during the administrative process and create needless uncertainty for thousands of current students.

12.     Accordingly, DeVry seeks injunctive and declaratory relief to enforce pertinent constitutional and statutory limits on the Department's authority, clarify the parties' rights and the governing rules, and ensure a fair process so DeVry can present a meaningful defense.

## PARTIES

13.     Plaintiff DeVry is a university incorporated under Illinois law with a principal place of business in Naperville, Illinois.

14.     Defendant United States Department of Education is an executive agency of the United States Government. The Department's principal address is 400 Maryland Avenue SW, Washington, D.C. 20202.

15.     Defendant Dr. Miguel Cardona is the Secretary of the Department. Dr. Cardona is sued in his official capacity and maintains an office at 400 Maryland Avenue SW, Washington, D.C. 20202.

16.     All defendants are collectively referred to hereinafter as the "Department."

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1331, because this action arises under the Due Process Clause of the Fifth Amendment to the United States Constitution, the APA, 5 U.S.C. § 500 et seq., and Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1001 et seq. The HEA provides federal courts with subject matter jurisdiction over actions against the Secretary of Education. 20 U.S.C. § 1082(a)(2).

18.     Judicial review is authorized under the APA, as DeVry has "suffer[ed a] legal wrong because of agency action." 5 U.S.C. § 702. Both the Department's discharge of the underlying loans and the recoupment demand constitute final agency action permitting judicial review. *Id*. § 704; *see also Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

19.     Because this is an action against an officer and agency of the United States, venue is proper under 28 U.S.C. § 1391(e)(1).

20.     This Court may award the requested declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, the APA, 5 U.S.C. § 706, the Mandamus Act, 28 U.S.C. § 1361, the HEA, 20 U.S.C. § 1082, and the Court's inherent equitable powers.

## FACTUAL ALLEGATIONS

**A.    DeVry Settles Claims Relating to the "90-Percent Ads" Without a Finding or Admission of Wrongdoing**

21.    Beginning in 2014, certain governmental authorities investigated DeVry for advertised statements regarding the employment prospects of its graduates, namely, that 90-percent of students in certain of DeVry's programs obtained jobs in their field within six months of graduation ("90-percent ads").

22.    In January 2014, the Federal Trade Commission ("FTC") sent DeVry a civil demand for information regarding the 90-percent ads and other topics. Although DeVry had significant documentation and analysis supporting the 90-percent ads, it stopped running the ads in September 2015.

23.    On January 27, 2016, after a two-year investigation, the FTC filed a federal action against DeVry alleging the 90-percent ads violated section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by constituting deceptive practices affecting commerce.[3] DeVry vigorously disputed the FTC's allegations.

24.    On December 19, 2016, DeVry settled the FTC dispute and stipulated to a judgment under which DeVry agreed—without admitting wrongdoing—to pay approximately $50 million to the FTC for distribution to eligible then-current and former DeVry students, and to forgive approximately $50 million in loan balances for eligible then-current and former DeVry students. Of the 649 borrowers underlying this action, 602 were eligible to receive relief under the FTC settlement.

---

[3] *See* Complaint for Permanent Injunction and Other Equitable Relief, *FTC v. DeVry Educ. Grp.*, No. 2:16-cv-00579 (C.D. Cal. Jan. 27, 2016), ECF No. 1.

25.     Around this time, DeVry also settled claims relating to the 90-percent ads with the Department and the Attorneys General of New York and Massachusetts. Under these settlements, DeVry paid—without admitting wrongdoing—$2.25 million for distribution to students in New York and $455,000 for distribution to students in Massachusetts. Under the settlement agreement with the Department, DeVry posted a letter of credit exceeding $68 million (which the Department has since allowed to expire). Over the next four years, DeVry settled other class and individual actions based on the 90-percent ads, also without any admission or finding of wrongdoing.[4]

26.     To date, DeVry has paid over $122 million to former students to resolve claims relating to the 90-percent ads.

## B.     The Department Grants BDR Relief *En Masse* and Initiates the Recoupment Action

27.     On June 23, 2020, the Department informed DeVry that it had received and would investigate several thousand BDR Applications from then-current and former DeVry students. The Department undertook to inform DeVry of the applications on a rolling basis and allowed DeVry to respond to each, which DeVry promptly began to do.

28.     To date, DeVry has received over 30,000 BDR Applications from the Department. Many of the applications were filed as many as eight years before the Department sent them to DeVry. Equally problematic, many of the Department's notices to DeVry attached BDR Applications that are illegible, blank, or incomplete;

---

[4] *See, e.g.*, *McCormick, et al. v. Adtalem Global Education Inc., et al.*, No. 2018-CH-04872 (Cir. Ct. Cook Cty.).

contain names that do not match those provided by the Department; are duplicative of other applications; or are otherwise inaccessible (including because they are missing passwords or provided incorrect passwords). Other of the Department's notices failed to attach a BDR Application, or attached BDR Applications from students who did not attend DeVry.

29. On February 16, 2022, without communicating with or notifying DeVry, the Department issued a press release (i) summarizing the "findings" of its "investigation" into the thousands of BDR Applications that it claims had been filed based on DeVry's 90-percent ads (conduct that DeVry settled with the FTC in 2016 without any admission or finding of wrongdoing); (ii) announcing roughly $71.7 million in discharges for approximately 1,800 students; and (iii) stating its intent to recoup the discharged sums from DeVry in the "first approved" recoupment action "associated with a currently operating institution."[5]

30. Shortly thereafter, DeVry asked the Department for information about the announced discharge, including the identities of the borrowers. Apart from continuing to forward BDR Applications, the Department did not reply to DeVry's requests or contact DeVry about its decision. Indeed, after receiving several initial notices of individual BDR Applications, DeVry received no further communications from the Department, other than one isolated (and unexplained) e-mail directed to

---

[5] *See* Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

one borrower (who is not affiliated with the Recoupment Action) that the Department had granted that borrower's BDR Application.

31.    On March 31, 2022, James Kvaal, Undersecretary of the Department, sent a letter to Congressman Robert C. Scott stating that the Department had "recently announced the approval of more than $70 million in borrower defense claims for former students from DeVry" and that "[i]f those claims are ultimately adjudicated as final liabilities against DeVry, the Department will seek repayment of those liabilities under the authority granted by 34 C.F.R. § 685.308." *See* March 31, 2022 Letter from James Kvaal to Robert C. Scott ("Exhibit A").

32.    Then, on August 15, 2022, the Department sent DeVry the Recoupment Notice, purportedly under the authority of Title IV of the HEA, 20 U.S.C. § 1070 et seq. (as amended). *See* Aug, 15, 2022 Letter from Susan D. Crim to Thomas L. Monahan III ("Exhibit B"). The Department demands $23,638,104 in discharged amounts for 649 students who purportedly attended DeVry between 2008 and 2015, and who the Department claims have successfully asserted defenses to repayment based on alleged "substantial misrepresentations" and state law causes of action involving the 90-percent ads. The Recoupment Notice is signed by Susan D. Crim, Director of the Department's Administrative Actions and Appeals Service Group, who is authorized to seek recoupment on the Department's behalf.

33.    The Recoupment Notice states that the Department would impose the multimillion-dollar collection on September 6, 2022, unless DeVry responded as provided therein, and that the stated amount constitutes only a portion of the

$71.7 million already discharged. *See* Ex. B at 6. The Notice also cautions that the "Department . . . anticipates the number of approved discharge amounts to continue to grow as the Department continues to adjudicate additional applications from former DeVry students." *Id*. Accordingly, the Department reserves "the right to seek future recovery actions, as warranted, for collection from DeVry for those additional approved amounts." *Id*. The Department further threatens to impose financial penalties if DeVry fails to respond or timely pay the demanded sum. *Id*. at 7.

34.     On August 19, 2022, DeVry replied to the Recoupment Notice, raising critical deficiencies that encumbered DeVry's ability to respond. *See* Aug. 19, 2022 Letter from Joseph J. Vaughan to Susan D. Crim ("Exhibit C"). Accordingly, DeVry asked the Department for specific information and an extension of the allotted 20-day response period (the minimum provided under 34 C.F.R. § 668.87(a)(1)(iii)).

35.     On August 29, 2022, the Department answered by extending the response deadline to September 28, 2022, and by enclosing certain materials concerning the BDR Applications that had not previously been provided. *See* Aug. 29, 2022 Letter from Susan D. Crim to Joseph J. Vaughan ("Exhibit D"). Yet the Department declined DeVry's request for the exhibits and appendices supporting the Department's Statement of Facts, claiming that providing DeVry with the Statement of Facts alone (without its referenced exhibits and appendices) was sufficient under the BDR regulations. *Id*.

36.     On September 12, 2022, DeVry responded to the Department, reiterating its request for the missing BDR Applications and the exhibits and

appendices to the Statement of Facts, and noting other serious legal deficiencies in the discharge and recoupment processes. *See* Sept. 12, 2022 Letter from Joseph J. Vaughan to Susan D. Crim ("Exhibit E"). The Department responded on September 19, 2022, restating its position "that it has met its obligation[s]" under applicable regulations, but providing information to assist DeVry in accessing all but two of the missing BDR Applications and a list of 36 state statutes on which the BDR Applications are purportedly based. *See* Sept. 19, 2022 Letter from Susan D. Crim to Joseph J. Vaughan ("Exhibit F"). The Department also extended DeVry's response deadline to October 11, 2022. *Id*.

37. On October 11, 2022, concurrently with filing this Complaint, and as thoroughly as present circumstances allow, DeVry formally responded to the Recoupment Notice to stay the payment demand, preserve DeVry's ability to challenge the Recoupment Action, and avoid financial penalties.

### C. The Recoupment Action Is Unlawful

38. The Department seeks to recoup amounts for 7,622 discharged loans on behalf of 649 borrowers. As outlined below, the Recoupment Action is unlawful and must be enjoined.

### i. The Higher Education Act & Direct Loan Program

39. In 1965, Congress adopted the HEA to "mak[e] available the benefits of postsecondary education to eligible students." 20 U.S.C. § 1070(a).

40. In 1993, Congress amended Title IV of the HEA to establish the William D. Ford Federal Direct Loan Program ("Direct Loan Program"), under which students

may borrow directly from the federal government to finance their postsecondary education. *See* Student Loan Reform Act of 1993 ("Student Loan Reform Act"), Pub. L. No. 103-66, 107 Stat. 341 (codified at 20 U.S.C. §§ 1087a–h); 20 U.S.C. § 1087a(a).

41.     To partake in the Direct Loan Program, a school must, among other things, "accept[] responsibility and financial liability stemming from its failure to perform its functions" under the program. 20 U.S.C. § 1087d(a)(3). Schools must also adhere to "such other provisions as the Secretary determines are necessary to . . . promote the purposes of [the program]." *Id*. § 1087d(a)(6). For example, the Secretary may require an irrevocable letter of credit, or impose a heightened cash monitoring obligation requiring a school to credit a student's account with institutional funds before receiving those funds from the Title IV program. *See* 34 C.F.R. §§ 668.175(c), 668.162(d). Either of these actions may impose an extreme financial burden that alone would force a school to cease operations.[6]

### ii.     The Borrower Defense to Repayment Rule

42.     Since the enactment of the Direct Loan Program, the procedures by which student borrowers may seek (and the Department may grant) repayment relief have been delineated by regulations referred to as the "BDR Rule." The BDR Rule allows a student borrower to seek discharge of his or her federal loan balance by asserting certain arguments depending on when the loan was disbursed. Such claims

---

[6] *See* Danielle Douglas-Gabriel, *ITT Technical Institutes Shut Down After 50 Years in Operation*, The Washington Post (Sept. 6, 2016), https://www.washingtonpost.com/news/grade-point/wp/2016/09/06/itt-technical-institutes-shut-down-after-50-years-in-operations/ ("Financial analysts said the deathblow to ITT came in the form of a letter of credit.").

must generally assert that a participating school committed an act or omission relating "to the making of the loan for enrollment at the school" that would "give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1).

43. There are three relevant versions of the BDR Rule: the "1995 BDR Rule"; the "2017 BDR Rule"; and the "2020 BDR Rule."

### iii. The Recoupment Action Is Not Authorized Under the 1995 BDR Rule

44. The 1995 BDR Rule governs BDR Applications relating to loans disbursed before July 1, 2017. *See* 34 C.F.R. § 685.206(c)(1). Of the 7,622 loans underlying the Recoupment Action, 7,512 (98.6%) are controlled by the 1995 BDR Rule. Each of the 649 underlying borrowers held at least one of these 7,512 loans.

45. Under the 1995 BDR Rule, a "borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1) (1995 version). References to an "act or omission" under "applicable State law" are "intended to reflect the *limited* scope" of available relief, such that relief may be awarded "*only* if the school's act or omission has a clear, direct relationship to the loan." *See* 60 Fed. Reg. 37,768, 37,769 (July 21, 1995) (emphases added). At the time of adoption, the Department also stated that it "expect[ed] . . . the adjudication of individual claims [would] provide further explanation of the Secretary's interpretation of the regulatory requirements." *Id.*

46. Under the 1995 BDR Rule, upon a successful showing, the Secretary

—16—

may "relieve[] [a borrower] of the obligation to repay all or part of the [challenged] loan," 34 C.F.R. § 685.206(c)(2) (1995 version), notwithstanding that the HEA by its own terms limits relief to "the amount such borrower has repaid on such loan[s]," 20 U.S.C. § 1087e(h).

47. Despite providing virtually no procedural guidance for adjudicating BDR Applications, the 1995 BDR Rule empowers the Secretary to "initiate an appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment . . . to pay . . . the amount of the loan to which the defense applies." 34 C.F.R. § 685.206(c)(3) (1995 version).

48. The regulations limit this recoupment power, however, by barring the Secretary from initiating a recoupment proceeding "after the period for the retention of records described in § 685.309(c) unless the school receive[s] actual notice of the claim during that period." 34 C.F.R. § 685.206(c)(3) (1995 version). Since its promulgation, § 685.309(c) has referenced § 668.24, which imposes a three-year record retention requirement following the end of the "award year" in which the student last attended the institution. *See* 61 Fed. Reg. 60,490, 60,492 (Nov. 27, 1996). Thus, absent actual notice of a borrower's claim for relief during the three-year retention period, the 1995 BDR Rule allows the Department to seek recoupment only within the three-year period after the borrower stopped attending DeVry.

49. In pursuing recoupment, the Department disregards or violates several dispositive sections of the 1995 BDR Rule. For example:

a. The Department ignores the limitations period set forth in

§ 685.206(c)(3), which bars the Department from pursuing recoupment for a loan amount more than three years after the last day of the last award year in which the borrower attended DeVry, absent actual notice of the claimed defense to repayment within that three-year period. Because DeVry did not receive any of the BDR Applications relating to 7,061 of the 7,512 loans governed by the 1995 BDR Rule within this three-year period (and in fact did not receive any notices related to any of the underlying borrowers until 2020, at the earliest), the Secretary is time-barred from recouping any amounts for those 7,061 discharged loans (approximately $21,735,305).

b. The Recoupment Notice does not provide adequate information to assess the grounds on which the underlying borrowers purported to assert a defense to repayment. For example, many of the BDR Applications do not assert reliance upon the 90-percent ads (the supposed basis for the Recoupment Action). Thus, the Department has failed to provide a factual basis—let alone evidence—to show that any of those BDR Applications governed by the 1995 BDR Rule have asserted an "act or omission" that would "give rise to a cause of action against [DeVry] under applicable State law." 34 C.F.R. § 685.206(c)(1) (1995 version).

c. The Department has ostensibly adjudicated the underlying BDR Applications in a single "group" process, which the 1995 BDR Rule does not authorize. Indeed, the regulatory history of the 1995 BDR Rule

shows that BDR Applications were to be adjudicated *individually*, not in batches. *See* 60 Fed. Reg. at 37,769 (noting that the Department "expect[ed] that the adjudication of *individual claims* [would] provide further explanation of the Secretary's interpretation of the regulatory requirements" (emphasis added)).

d. The Department has not provided any information by which to verify that the amounts it seeks were accurately calculated under the state law governing each BDR Application. Rather, to avoid its obligation to analyze the relief to which each individual borrower is actually entitled, the Department applies a presumption of total relief derived from an August 2021 policy memorandum issued in contravention of then-effective Department processes for issuing guidance documents. This is particularly vexing given the Department's previously articulated position that quantification of BDR relief is governed by state law. *See, e.g.*, Ex. 8 to Decl. of Joshua D. Rovenger in Supp. of Pls.' Mot. for Prelim. Inj. at 73–82, 86–99, *Calvillo Manriquez v. DeVos*, No. 3:17-cv-07210 (N.D. Cal. Mar. 17, 2018), ECF No. 35-8 (detailing the Department's position that BDR relief must be calculated by reference to state law).

50. For these and other reasons, the Recoupment Action is unlawful with respect to loans governed by the 1995 BDR Rule.

### iv. The Recoupment Action Is Not Authorized Under the 2017 BDR Rule

51.     The 2017 BDR Rule governs BDR Applications relating to loans disbursed on or after July 1, 2017 but before July 1, 2020. *See* 34 C.F.R. §§ 685.206(d), 685.222. Of the 7,622 loans underlying the Recoupment Action, 98 (about 1.3%) are controlled by the 2017 BDR Rule. These 98 loans were held by 32 of the 649 underlying borrowers.

52.     In 2016, the Department published sweeping changes to the BDR Rule, despite no intervening changes to the relevant statutory provisions governing the Direct Loan Program. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016) (codified at 34 C.F.R. § 685 et seq. ("2017 version")). The 2017 BDR Rule took effect on October 18, 2018.

53.     As relevant here, under the 2017 BDR Rule, a borrower may assert a defense to repayment of a loan disbursed on or after July 1, 2017 based on a "substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." 34 C.F.R. § 685.222(d) (2017 version). In so doing, individual borrowers may seek "to recover amounts previously collected by the Secretary on the Direct Loan," *id*. § 685.206(c)(ii) (2017 version), but only within the six-year period after the borrower could have reasonably discovered the purported misrepresentation upon which the borrower's claim is based, *id*. § 685.222(d)(1) (2017 version). The borrower must also offer "evidence that supports the borrower['s] defense [to repayment]." *Id*. § 685.222(e)(1)(i)(B) (2017 version).

54.     If a borrower states an appropriate claim for relief, the Department

must notify the borrower's school and initiate an investigation during which the Department must consider any response submitted by the school. *See* 34 C.F.R. § 685.222(e)(3) (2017 version).

55.     The 2017 BDR Rule also purports to provide the Secretary with authority to forgo individualized assessment of BDR Applications and instead adjudicate BDR Applications in groups. *See* 34 C.F.R. § 685.222(e)(6) (2017 version) ("The Secretary may consolidate applications . . . that have common facts and claims, and resolve the borrowers' borrower defense claims as provided in paragraphs (f), (g), and (h) of this section." (together, the "Group Adjudication Provisions")); *see generally id*. § 685.222(f) (2017 version).

56.     To initiate group adjudication under the 2017 BDR Rule, the Secretary must identify a subset of borrowers sharing "common facts and claims." 34 C.F.R. § 685.222(e)(6) (2017 version). After considering the common facts and claims and other factors (e.g., the fiscal impact of affording relief and the public interest in promoting compliance), the Secretary must then assess whether the borrower group has a valid defense. *Id*. § 685.222(f)(1) (2017 version). To that end, the Secretary must notify "the school of the basis of the group's borrower defense, the initiation of the fact-finding process," and "any procedure by which the school may request records and respond." *Id*. § 685.222(f)(2)(iv) (2017 version). As with individualized adjudication of BDR Applications, the Department must "consider[] any evidence and argument presented by the school." *Id*. § 685.222(h)(1) (2017 version).

57. If the Secretary grants relief (either on an individual or group basis), the Department may "discharge[] the borrower's [or borrowers'] obligation to repay all or part of the [applicable] loan . . . and, if applicable, reimburse[] the borrower [or borrowers] for amounts paid toward the loan voluntarily or through enforced collection." 34 C.F.R. §§ 685.222(i)(1), (6) (2017 version). However, such relief must be "reduced by the amount of any refund, reimbursement, indemnification, restitution, compensatory damages, settlement, debt forgiveness, discharge, cancellation, compromise, or any other financial benefit received by . . . the borrower that was related to the borrower defense." *Id*. § 685.222(i)(8) (2017 version).

58. Where the 2017 BDR Rule is successfully asserted, and upon the Department's grant of relief, "the borrower is deemed to have assigned to, and relinquished in favor of, the Secretary any right to a loan refund (up to the amount discharged) that the borrower may have by contract or applicable law with respect to the loan or the contract for educational services for which the loan was received, against the school." 34 C.F.R. § 685.222(k) (2017 version).

59. Following a grant of relief, the 2017 BDR Rule authorizes the Secretary to initiate recoupment proceedings against the borrower's school. *See* 34 C.F.R. §§ 685.222(h)(5), 685.222(e)(7), 685.206(c)(3) (2017 version). Before seeking recoupment, however, the Department must provide the targeted school with "a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief asserted." *Id*. § 668.87(a)(1)(ii) (2017 version).

60. Recoupment actions under the 2017 BDR Rule are also limited in time.

Unless the targeted school has "notice" of a borrower's claimed defense to repayment, a recoupment proceeding must be initiated within (1) six years for BDR Applications based on breach of contract or substantial misrepresentation by the school; or (2) any time for BDR Applications based on a judgment against the school. 34 C.F.R. §§ 685.222(e)(7)(i)–(iii) (2017 version). Notably, in adopting the 2017 BDR Rule—but without following the mandatory notice-and-comment procedures that accompanied the changes to the 1995 BDR Rule—the Department significantly and substantively expanded the definition of "notice" to purportedly allow the Secretary to initiate recoupment proceedings *at any time* and resurrect long-expired claims. *See id.* § 685.206(c)(4) (2017 version).

61.     Specifically, under the 2017 BDR Rule, the Secretary modified the definition of "notice" to mean (1) "[a]ctual notice from the borrower, from a representative of the borrower, or from the Department," (2) a "class action complaint asserting relief for a class that may include the borrower," or (3) "[w]ritten notice, including a civil investigative demand or other written demand for information, from a Federal or State agency that has power to initiate an investigation into conduct of the school relating to specific programs, periods, or practices that may have affected the borrower." 34 C.F.R. §§ 685.206(c)(4)(i)–(iii) (2017 version).

62.     In pursuing recoupment against DeVry, the Department disregards or violates several dispositive sections of the 2017 BDR Rule. For example:

a. The Recoupment Notice fails to provide adequate information to assess the basis on which the underlying borrowers purportedly asserted a

defense to repayment. Many of the BDR Applications, for example, do not indicate whether the pertinent borrowers relied upon (or even knew of) the 90-percent ads (the purported basis for the Recoupment Action). Thus, the Department has failed to provide sufficient facts—let alone evidence—to show that any of the 32 relevant borrowers have stated a basis for finding a "substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." 34 C.F.R. § 685.222(d) (2017 version).

b. The Recoupment Notice fails to provide sufficient information to assess the relief available to each borrower under the 36 state statutes the Department claims govern the BDR Applications. Indeed, the Recoupment Notice does not indicate whether the Department considered *any* of the required factors relevant to determining the proper discharge amounts for loans disbursed on or after July 1, 2017, including (i) the value of the education the borrower received, (ii) the value of the education that a reasonable borrower in the borrower's circumstances would have received, or (iii) the value of the education the borrower should have expected given the information provided by DeVry. *See* 34 C.F.R. § 685.222(i)(2)(i) (2017 version).

c. The Recoupment Notice fails to provide any information to verify that the Department accurately offset from the demanded sums the "amount

of . . . any other financial benefit received by, on or behalf of the borrower that was related to the borrower defense," 34 C.F.R. § 685.222(i)(8), including, for example, the numerous settlements related to the 90-percent ads, outlined *supra* at paragraphs 21–26.

63. For these and other reasons, the Recoupment Action is unlawful with respect to loans governed by the 2017 BDR Rule.

### v.  The Recoupment Action Is Not Authorized Under the 2020 BDR Rule

64. The 2020 BDR Rule governs BDR Applications relating to loans disbursed on or after July 1, 2020. *See* 34 C.F.R. § 685.206(e). Of the 7,622 loans underlying the Recoupment Action, 12 loans (less than 1%) are controlled by the 2020 BDR Rule. These 12 loans (which were disbursed nearly five years after DeVry ceased using the 90-percent ads) were held by six of the 649 underlying borrowers.

65. On September 23, 2019, the Department published a modified BDR Rule for loans disbursed on or after July 1, 2020. *See* 84 Fed. Reg. 49,788 (Sept. 23, 2019) (codified at 34 CFR § 685.206(e) ("2020 version")). Under these regulations, a borrower may assert a repayment defense based on a misrepresentation of "material fact upon which the borrower reasonably relied in deciding to obtain a Direct Loan" if it "directly and clearly relates to [the borrower's] [e]nrollment or continuing enrollment," and if the "borrower was financially harmed by the misrepresentation." 34 C.F.R. §§ 685.206(e)(2)(i)–(ii) (2020 version). Such a defense must be asserted "within three years from the date the student is no longer enrolled at the institution." *Id*. § 685.206(e)(6)(i) (2020 version).

66.    An actionable "misrepresentation" is one that is (i) "false, misleading, or deceptive" and (ii) "made with knowledge of its false, misleading, or deceptive nature or with a reckless disregard for the truth." 34 C.F.R. § 685.206(e)(3) (2020 version).

67.    Importantly, a borrower must have suffered "financial harm" from the misrepresentation, exclusive of damages resulting from (i) "nonmonetary loss" such as "inconvenience" or "opportunity costs," (ii) "intervening . . . labor market conditions," or (iii) the "borrower's voluntary decision to pursue less than full-time work." 34 C.F.R. § 685.206(e)(4) (2020 version).

68.    After receiving a BDR Application, the Department must "notify the school" and provide the school (i) "a copy of the borrower's request," (ii) "any supporting documents," (iii) "a copy of any evidence otherwise in the possession of the Secretary," and (iv) "a waiver . . . permitting the institution to provide the Department with items from the student's education record relevant to the defense to repayment claim." 34 C.F.R. § 685.206(e)(10)(i) (2020 version).

69.    The school must be allowed to "respond and to submit evidence," after which the borrower may submit a reply. *See* 34 C.F.R. §§ 685.206(e)(10)(i)–(ii) (2020 version). Following this process, the Secretary must "specify[] the relief determination" in writing. *Id*. §§ 685.206(e)(11)(i)(A)–(C) (2020 version).

70.    The 2020 BDR Rule also removed the 2017 BDR Rule's Group Adjudication Provisions for loans disbursed on or after July 1, 2020. *See* 34 C.F.R. § 685.206(e).

71.    In seeking recoupment from an institution under the 2020 BDR Rule,

the Department must provide "a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief" for which it seeks to recover. 34 C.F.R. § 668.87(a)(1)(ii) (2020 version).

72.    In pursuing recoupment from DeVry, the Department disregards or violates several dispositive sections of the 2020 BDR Rule. For example:

a.    The 2020 BDR Rule does not authorize the Department to adjudicate BDR Applications by group, as the Department has ostensibly done here. In modifying the BDR Rule, the Department *removed* the 2017 BDR Rule's Group Adjudication Provisions such that they do not apply to BDR Applications relating to loans disbursed on or after July 1, 2020. Just as the Recoupment Action is unlawful as to loans controlled by the 1995 BDR Rule, the Recoupment Action is unlawful as to loans controlled by the 2020 BDR Rule because the Department improperly discharged the loans in a group adjudication and may not pursue recoupment for such unlawfully discharged sums. *See* 34 C.F.R. § 668.87(a)(1)(ii) (2020 version) (requiring the Department show a legal basis for granting BDR relief before pursuing recoupment).

b.    The Department has failed to provide any information to suggest that, for the six borrowers for whom the 2020 BDR Rule applies, the Department considered whether the borrowers have proven "by a preponderance of the evidence," 34 C.F.R. § 685.206(e)(2) (2020 version), that (i) DeVry made a "false, misleading, or deceptive" statement with

—27—

*scienter*, *id*. § 685.206(e)(3) (2020 version); (ii) reasonable reliance on that statement, *id*. § 685.206(e)(2)(i) (2020 version); and (iii) resulting financial harm, *id*. §§ 685.206(e)(2)(ii), 685.206(e)(4) (2020 version).

    c.  The Department has not provided any information by which to verify that the amounts it seeks were accurately assessed. *See supra* at paragraph 62.

73.    For these and other reasons, the Recoupment Action is unlawful with respect to loans governed by the 2020 BDR Rule.

### vi.  The Department Proposes Additional Changes to the BDR Rule

74.    In July 2022, the Department announced it would revise the BDR rules for the third time in six years to (i) to resurrect the broad bases of relief afforded under the 2017 BDR Rule; (ii) to reinstate the 2017 BDR Rule's Group Adjudication Provisions; and (iii) to change many of the evidentiary presumptions for obtaining relief. *See* 87 Fed. Reg. 41,878 (July 13, 2022). The revised BDR regulations are expected to take effect in 2023. *Id*. at 41,880.

### vii.  DeVry Will Suffer Substantial Injury If the Recoupment Action Is Not Enjoined

75.    If not enjoined, the Recoupment Action poses considerable harm to DeVry by, among other things, forcing DeVry to endure an administrative proceeding that denies DeVry due process of law. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013); *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998).

76.    And although the more than $23 million now at issue is substantial, the

Department has stated its intent to recoup significantly more from DeVry, including—but not limited to—approximately $71.7 million in already-discharged loans. Thus, the Recoupment Action (and similar actions the Department has stated will follow) will burden DeVry's ability to continue operating, thereby imposing existential pecuniary and reputational damage.

## FIRST CLAIM FOR RELIEF
### Violation of APA—Action in Excess of Statutory Jurisdiction, Authority, or Limitations

77. The above paragraphs are incorporated by reference herein.

78. The APA, 5 U.S.C. § 706(2)(C), provides that a reviewing court shall "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." There are at least two grounds to do so here.

79. *First*, the Department claims to have initiated the Recoupment Action "in accordance with the procedures" promulgated under Title IV of the HEA. Yet the Group Adjudication Provisions by which the Department purports to act are not authorized under the HEA.

80. Under Title IV of the HEA, the Department is directed to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan." 20 U.S.C. § 1087e(h). The Department is also directed to collect payment on loans funded pursuant to the HEA. *See, e.g., id.* §§ 1087e(d)–(e).

81. The Department issued regulations exceeding this prescribed power that purportedly authorize the group discharge of Direct Loans. *See* 34 C.F.R.

§§ 685.222(f)–(h). And although Congress may choose to authorize the Department to discharge Direct Loans *en masse*, it has not done so. Rather, Congress has explicitly authorized discharge of repayment amounts or terms only in very limited circumstances. *See, e.g.*, 20 U.S.C. §§ 1087e(f), 1087e(h), 1094(c)(3), 1098aa.

82. For this reason, the Department itself has conceded that "[n]either Title IV [of the HEA] nor the [APA] specifically authorizes" the Group Adjudication Provisions, including "the 'class action' provision of the [2017 BDR Rule], 34 C.F.R. §§ 685.222(f)–(h), providing for blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances based on substantial misrepresentations." Mem. from U.S. Dep't of Educ. Principal Deputy Gen. Counsel Reed Rubinstein to Sec'y of Educ. Betsy DeVos, at 4 n.2 (Jan. 12, 2021), https://static.politico.com/d6/ce/3edf6a3946afa98eb13c210afd7d/ogcmemohealoans.pdf.

83. Accordingly, through its collective "group" determination of the BDR Applications and initiation of a Recoupment Action, the Department's actions exceed its statutory authority.

84. *Second*, the Department's redefining of the term "notice" in the 2017 BDR Rule is unlawful because, in adopting a substantively modified and expanded definition, the Department failed to follow required notice and comment procedures. *See* 5 U.S.C. § 553(b) (requiring the terms or substance of a proposed rule to be published in the Federal Register so that the public may submit written comments).

85. For these reasons, the Group Adjudication Provisions in the 2017 BDR

Rule, the adjudication of the BDR Applications, and the Department's prosecution of the Recoupment Action violate the APA.

## SECOND CLAIM FOR RELIEF
### Violation of APA—Failure to Observe Procedure Required by Law

86. The above paragraphs are incorporated by reference herein.

87. The APA, 5 U.S.C. § 706(2)(D), provides that a reviewing court shall "hold unlawful and set aside agency action" that is "without observance of procedure required by law."

88. Agency action is unlawful if it is "inconsistent with" governing regulations. *Ind. Ass'n of Homes for the Aging Inc. v. Ind. Off. of Medicaid Pol'y & Plan.*, 60 F.3d 262, 266 (7th Cir. 1995). The Department's conduct underlying the Recoupment Action is unlawful because the Department has failed to adjudicate the BDR Applications underlying the Recoupment Action in accordance with the procedures specified in the Department's own regulations.

89. As to the 7,512 underlying loans disbursed before July 1, 2017, the Department has failed to apply the governing standards set forth in the 1995 BDR Rule. Namely, the Department has failed to establish that any of the BDR Applications for which it seeks to recoup funds stated a basis for a discharge, including: (a) that an "act or omission" of DeVry gave rise to a state law claim, as required under 34 C.F.R. § 685.206(c) (1995 version); (b) that the Recoupment Action falls within the applicable limitations period, *see id.* § 685.206(c)(3) (1995 version); (c) that group discharge and recoupment processes apply to these loans; or (d) that

the relief for which the Department seeks recoupment was rightly assessed under the state laws applicable to each individual borrower.

90. As to the 93 loans at issue in the Recoupment Notice that were disbursed on or after July 1, 2017 but before July 1, 2020, the Department has failed to apply the standards set forth in the 2017 BDR Rule. *See supra* at paragraphs 51–63.

91. As to the 12 loans at issue in the Recoupment Notice that were disbursed on or after July 1, 2020, the Department has failed to apply the standards set forth in the 2020 BDR Rule, including by failing to establish, among other things, that the applicable borrowers have shown "by a preponderance of the evidence," *see* 34 C.F.R. § 685.206(e)(2), (i) that DeVry made a "false, misleading, or deceptive" statement with *scienter*, *id*. § 685.206(e)(3) (2020 version); (ii) reasonable reliance on that statement, *id*. § 685.206(e)(2)(i)–(ii) (2020 version); and (iii) resulting financial harm, *id*. § 685.206(e)(4) (2020 version).

92. As to *all* of the loans at issue in the Recoupment Action, the Department has failed to establish that the full relief granted to the individual borrowers is not improper or excessive, including where borrowers have already received relief through settlement with DeVry, FTC settlement proceeds, or other circumstances, *see* 34 C.F.R. § 685.222(i)(8), or that the Department is legally entitled to discharge the underlying loans, a prerequisite to recoupment, *see id*., § 668.87(a)(1)(ii). These failures are of particular concern considering the Department's ostensible failure to consider:

    a. whether any claims or rights, including those that would be transferred

to the Department to bring a Recoupment Action, have been waived in or precluded by prior settlement agreements with or judgments involving DeVry;

b.  whether any prior settlements can be properly considered evidence of wrongdoing, including when those agreements expressly disclaim any admission or finding of fault or wrongdoing; and

c.  any individualized facts regarding the 649 borrowers underlying the Recoupment Notice, including whether each of the 649 borrowers attended DeVry and enrolled in a relevant program and could have reasonably relied on the misrepresentations alleged by the Department (which ceased in 2015), took out the borrowed funds for the purpose of attending DeVry, graduated from DeVry, or received any proceeds as part of settlements or other adjudications regarding the 90-percent ads.

93.     Moreover, in its June 23, 2020 letter, the Department notified DeVry that it would undertake *individualized* assessment of each of the BDR Applications under 34 C.F.R. § 685.222(e). The Department has failed to follow the procedures governing the adjudication of individual BDR Applications, including by failing to:

a.  consider "evidence or argument presented by the borrower" as required under 34 C.F.R. § 685.222(e)(3)(i);

b.  provide any written decision of the Department's determination as required under 34 C.F.R. § 685.222(e)(4)(i);

c.  notify DeVry of the fact-finding process or any procedure by which the

school could request records and respond as required under 34 C.F.R. § 685.222(f)(2); and

    d.   provide DeVry with other basic information about the underlying borrowers as required under 34 C.F.R. § 685.222(e)(1).

94.    Finally, in granting the underlying discharge, the Department wrongly applied a rebuttable presumption of full relief derived from policy memoranda that were issued in violation of then-controlling processes for issuing guidance documents.[7] The rebuttable presumption of complete relief is inappropriate, including because the Department failed to observe the required "period of public notice and comment of at least 30 calendar days" prior to its issuance. *See* 34 C.F.R. § 9.14(h)(1) (2020 version).

95.    For these reasons, the adjudication of the BDR Applications and the prosecution of the Recoupment Action violate the APA.

### THIRD CLAIM FOR RELIEF
### Violation of APA—Arbitrary & Capricious Agency Action

96.    The above paragraphs are incorporated by reference herein.

97.    The APA, 5 U.S.C. § 706(2)(A), states that a reviewing court shall "hold

---

[7] *See* Rescission of Borrower Defense Partial Relief Methodology, Office of the Under Secretary of the U.S. Dep't of Educ. (Aug. 24, 2021), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2021-08-24/rescission-borrower-defense-partial-relief-methodology-ea-id-general-21-51; Department of Education Announces Action to Streamline Borrower Defense Relief Process, U.S. Dep't of Educ. (March 18, 2021), https://www.ed.gov/news/press-releases/department-education-announces-action-streamline-borrower-defense-relief-process; *see also* Rulemaking & Guidance Procedures, 85 Fed. Reg. 62,597 (Oct. 5, 2020); Exec. Order No. 13,891, 84 Fed. Reg. 55,235 (Oct. 9, 2019).

unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or . . . not in accordance with law."

98. Under this provision, agency action is unlawful where the agency fails to articulate a rational connection between the facts found and a decision rendered, fails to consider an important aspect of the issue underlying the agency action, or fails to explain its decision that runs counter to the evidence. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

99. The Department's initiation of the Recoupment Action is "arbitrary, capricious, an abuse of discretion, or . . . not in accordance with law," including for the reasons stated in paragraphs 77–95.

100. For these reasons, the adjudication of the BDR Applications and prosecution of the Recoupment Action violate the APA.

### FOURTH CLAIM FOR RELIEF
### Violation of the Fifth Amendment to the United States Constitution—Procedural Due Process

101. The above paragraphs are incorporated by reference herein.

102. The APA, 5 U.S.C. § 706(2)(B), provides that a reviewing court shall "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity."

103. The Fifth Amendment to the United States Constitution demands DeVry be afforded due process before it is deprived of a protected interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). DeVry is thus entitled to notice and an opportunity to be heard at a "meaningful time and in a meaningful manner." *Id.*

at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

104.    DeVry's right to due process has been violated by the Department's prosecution of the Recoupment Action because it adversely affects a protected interest of DeVry and poses a risk of erroneous deprivation of that interest.

105.    The Department's prosecution of the Recoupment Action violates the Due Process Clause of the Fifth Amendment because it relies on an impermissibly vague state-law standard that purports to allow the Department to grant relief and seek recoupment without any identification, analysis, or adjudication of a school's violation of pertinent state law. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.").

106.    The 2017 BDR Rule violates the Due Process Clause because it does not provide a durational limit on the Department's ability to initiate a recoupment proceeding, including without limitation seeking recoupment based on BDR Applications the Department originally received as early as 2012 but delayed processing for years.

107.    The Department failed to provide DeVry with sufficient notice of the underlying BDR Applications for DeVry to meaningfully respond either to the claims or to the Recoupment Action, including by failing to provide DeVry with: (a) a calculation of the relief sought, including with respect to appropriate offsets and whether interest is included; (b) a full statement of facts, including all relied upon exhibits and appendices; or (c) all other documents and information, including

internal reports and policy directives, considered by the Department in making its findings and determinations, including in granting the BDR Applications and prosecuting the Recoupment Action against DeVry.

108.    The Department has not provided sufficient time for DeVry to respond to the Recoupment Action on behalf of 649 individual claimants with 7,622 loans in a reasonable time and manner under the circumstances here. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (noting that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

109.    The Rules relating to the Department's assertion of consolidated, group recoupment actions are also facially defective under the Due Process Clause of the Fifth Amendment to the United States Constitution.

110.    For these reasons, the prosecution of the Recoupment Action violates the Fifth Amendment to the United States Constitution, which guarantees the right to due process of law.

# RELIEF REQUESTED

WHEREFORE, Plaintiff asks that this Court issue judgment in its favor and against the Department, and to grant the following relief:

A.      Declare that the Recoupment Action is (i) contrary to and exceeds the Department's statutory and administrative authority under the HEA, the APA, and rules promulgated thereunder; (ii) arbitrary, capricious, an abuse of discretion, and not in accordance with law; (iii) contrary to the requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution; and (iv) otherwise unlawful;

B.      Issue a permanent injunction enjoining (i) the Recoupment Action from proceeding without strict compliance with all applicable rules and laws; (ii) the Department from taking any further action under the Recoupment Notice; and (iii) the Department from taking other related punitive, prejudicial, or adverse actions against DeVry, including requiring a letter of credit from or imposing heightened cash monitoring over DeVry;

C.      Grant reasonable attorney's fees and expenses; and

D.      Award such further relief as this Court deems just and proper.

E.      In the alternative, if the Recoupment Action is permitted to proceed, Plaintiff asks that this Court declare (i) the appropriate legal basis (if any) for the Recoupment Action and (ii) what procedures would govern the rights of the parties in adjudicating the merits of the underlying BDR Applications and the Recoupment Action to ensure DeVry is provided due process of law.

Dated: October 11, 2022       Respectfully submitted,

*/s/ Matthew L. Kutcher*
MATTHEW L. KUTCHER
BOBBY EARLES
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
rearles@cooley.com

DAVID E. MILLS (*pro hac vice* forthcoming)
JAY VAUGHAN (*pro hac vice* forthcoming)
COOLEY LLP
1299 Pennsylvania Avenue, Suite 700
Washington, D.C. 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
dmills@cooley.com
jvaughan@cooley.com

*Attorneys for Plaintiff*
*DeVry University, Inc.*