# EXHIBIT B



AUG 1 5 2022

Mr. Thomas L. Monahan III, President and CEO          Sent Via UPS and electronic mail
Mr. John Lorenz, Chief Financial Officer              Tracking #: 1Z37X7Y30104505128
Cogswell Education, LLC                                Tom.Monahan@DeVry.edu
DeVry University                                       John.Lorenz@DeVry.edu
1200 East Diehl Road
Naperville, IL 60563

Re: Initiation of Collection Action Based on Discharge of Federal Student Loans from
Borrowers with Approved Borrower Defense Claims for DeVry University (OPE ID: 01072700,
TIN: 362781982, UEI: MN6JA6YLM213, RCN: BD-01072700-2022-N1)[1]

Dear Mr. Thomas L. Monahan III:

This letter is to inform you that the U.S. Department of Education ("Department") intends to
initiate a recovery proceeding against DeVry University ("DeVry") to recoup the Department's
losses based on discharges of federal student loans from current and former students who have
successfully asserted borrower defenses to repayment under 34 C.F.R. § 685.206(c) (the "1995
Borrower Defense Regulation") and/or 34 C.F.R. § 685.222 (the "2016 Borrower Defense
Regulation") and to demonstrate the validity of those approved claims.[2] 34 C.F.R. §
668.87(a)(1)(i). This collection action is taken in accordance with the procedures that the
Secretary of Education ("Secretary") has established for recovering funds from institutions
participating in any of the programs authorized under Title IV of the Higher Education Act
("HEA") of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.*, as outlined in 34 C.F.R. § 668.87. As
detailed below, this recovery action seeks to recoup $23,638,104 in approved discharged
amounts which represents 649 borrowers.

As required under 34 C.F.R. § 685.222(e)(7)(iii), the Department provided sufficient notice to
DeVry prior to initiating this recovery action. On June 23, 2020, the Department first notified
DeVry by letter that several thousand borrower defense applications seeking relief based on

---

[1] The TIN is DeVry's Taxpayer Identification Number, the UEI is DeVry's Unique Entity Identifier, and the RCN is
the Department's Reference Control Number.
[2] *See* 34 C.F.R. § 685.206(c)(3) (authorizing the Department to "initiate an appropriate proceeding to collect from
the school whose act or omission resulted in the borrower defense and the amount of relief arising from the borrower
defense"); *and* 34 C.F.R. § 685.222(e)(7) (authorizing the Department to "initiate a proceeding to collect from the
school the amount of relief resulting from a borrower defense").



DeVry University
Page 2

allegations of misconduct by DeVry had been received. *(Enclosure A)*. On June 30, 2020, the Department also began providing notification letters to DeVry regarding individual borrowers. A sample of the letters sent to DeVry regarding individual borrower applications is included as *Enclosure B*. The Department received DeVry's responses to some, but not all, of these individual notification letters beginning on September 15, 2020. The Department then sent a follow-up letter on April 19, 2021, notifying DeVry of over two thousand additional borrower defense applications received since the June 23, 2020 communication.[3] *(Enclosure C)*.

After reviewing DeVry's responses to the individual notification letters, the Department completed its investigation and analysis in its Common Statement of Facts Regarding DeVry's 90% Representation ("Common Statement of Facts") on January 19, 2022. *(Enclosures D–E)*. As further described below, the Department determined that DeVry failed to comply with the HEA and the underlying borrower defense regulations and that DeVry made substantial misrepresentations about its job placement rates. On February 16, 2022, the Department published a press release which summarized the findings against DeVry.[4]

This action seeks to recoup $23,638,104 in approved discharges representing the loan amounts and borrowers outlined in *Enclosure F*. Based on the grounds described below, the Department has stated facts and law sufficient to show that the Department is entitled to recovery for the amount of losses to the Secretary caused by the granting of discharge relief to the identified borrowers.[5]

This notice informs DeVry that the Department intends to recover the amount of losses identified by requiring DeVry to repay $23,638,104 as instructed below.[6] Additionally, the Department intends to proceed with this recoupment action in a single action as permitted by 34 C.F.R. § 668.87(a)(1)(iv)(A).

I. **The Department Seeks Recovery Based on DeVry's Misrepresentations Regarding Employment Prospects Between 2008 and 2015**

The Department is taking this collection action based on its findings outlined in the Common Statement of Facts, which concluded that DeVry committed an act or omission that gave rise to

---

[3] In addition, DeVry received sufficient notice prior to this recovery action in 2014 when both the New York Office of the Attorney General and the Federal Trade Commission initiated investigations into DeVry's placement rates by issuing a subpoena and Civil Investigative Demand ("CID"), respectively. Again, in 2016, DeVry was put on notice when the Massachusetts Office of the Attorney General issued a CID to DeVry seeking information relating to the advertisement of placement rates. *See* U.S. DEP'T OF EDUC., BORROWER DEFENSE COMMON STATEMENT OF FACTS REGARDING DEVRY UNIVERSITY – 90% REPRESENTATION (Jan. 19, 2022), at § I(C) [hereinafter "Common Statement of Facts"].

[4] Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

[5] *See* 34 C.F.R. § 668.87(a)(1)(ii).

[6] *See* 34 C.F.R. § 668.87(a)(1)(i)(B).

DeVry University
Page 3

the borrowers' successful defense to repayment and led to the discharge of loans.[7] As discussed below, the Department's findings in the Common Statement of Facts are consistent with and supported by information revealed and conclusions reached in several legal actions as well as the Department's own internal investigation. These actions included lawsuits initiated by the Federal Trade Commission and the Attorneys General from New York and Massachusetts.

   a. **The Department's Findings of Fact Show that DeVry Misled Prospective Students to Believe that They Had a Very High Likelihood of Landing New In-Field Jobs with a DeVry Education**

In its Common Statement of Facts, the Department determined that DeVry regularly misled prospective students between January 2008 and December 2015 by representing that 90% of its graduates who actively sought employment found employment within six months of graduating ("90% Representation"). In reality, the actual percentage of graduates who sought and obtained employment was only 58% on average.[8] The Department concluded that DeVry's 90% Representation was misleading because it conveyed that the 90% statistic was the percentage of *all* job-seeking DeVry graduates who obtained *new* in-field jobs as a result of attending DeVry within six months of graduating (i.e., it was presented as being the school's job placement rate). DeVry's method of calculating the 90% statistic deviated from the plain language of the representation in two significant ways: (1) DeVry counted "old jobs" held by its mid-career students towards its placement rate, even though the students obtained the jobs on their own, without leveraging their DeVry education; and (2) DeVry improperly deemed graduates as inactive in their job searches and thus excluded them from its calculations.[9]

| Impact of Correcting DeVry's Calculations to Be Consistent with the 90% Representation | | | | | | |
|---|---|---|---|---|---|---|
| | **2008** | **2009** | **2010** | **2011** | **2012** | **Average** |
| DeVry's typical advertised job placement rate | 90% | 90% | 90% | 90% | 90% | 90% |
| Job placement rate if "old jobs" are removed | 80.6% | 73.9% | 75.3% | 73.1% | 80.2% | 76.6% |
| Job placement rate if excluded graduates are added | 82.4% | 77.0% | 77.6% | 71.8% | 73.4% | 76.4% |
| **Job placement rate if "old jobs" are removed *and* excluded graduates are added** | **66.4%** | **55.6%** | **59.7%** | **53.4%** | **54.3%** | **57.9%** |

The information about how the 90% Representation was calculated was not disclosed to current or prospective students. The methods that DeVry used to calculate the 90% Representation were

---

[7] *See* Common Statement of Facts at § II.
[8] *See id.* § II(A)–(B).
[9] *Id.* § II(B).

DeVry University
Page 4

of its own creation and were not prescribed by its accreditors or by any regulatory body. DeVry was aware that its 90% Representation was misleading, and a number of DeVry employees raised concerns about it.[10] Despite the concerns about its misleading nature, DeVry continued to advertise it extensively.[11] As further described below, such misleading statements constitute a substantial misrepresentation regarding the employability of DeVry graduates in violation of 34 C.F.R. § 668.74.

### b. DeVry's Misrepresentations Regarding the Likelihood of Employment Violated the 1995 Borrower Defense Regulation

For loans first distributed prior to July 1, 2017, a borrower may assert as a defense to repayment "any act or omission of the school . . . that would give rise to a cause of action against the school under applicable State law."[12] The Department determined that the Common Statement of Facts satisfies the elements of the Unfair or Deceptive Acts or Practices Statutes of all fifty states and the District of Columbia, except that the borrower's reliance must be determined on an individual basis and except where noted.[13] In particular, the Department has found that: the 90% Representation qualifies as an unlawful or deceptive act; DeVry made the 90% Representation while knowing it to be misleading; borrowers could have reasonably and justifiably relied on the 90% Representation; the 90% Representation was material to the decision to enroll at DeVry; and borrowers who relied on the 90% Representation suffered harm as a result.[14]

### c. DeVry's Misrepresentations Regarding the Likelihood of Employment Violated the 2016 Borrower Defense Regulation

For borrower defense to repayment for loans first disbursed on or after July 1, 2017, and before July 1, 2020, a borrower has a borrower defense if (1) the institution made a substantial misrepresentation in accordance with 34 C.F.R. Part 668, Subpart F; (2) that the borrower reasonably relied on; (3) to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan.[15]

The Department determined that the 90% Representation constituted a "substantial misrepresentation"[16] because it grossly exaggerated DeVry's actual job placement rate and related to the enumerated subject matter regarding "the employability of its graduates."[17] The Department also concluded that borrowers could reasonably have relied on the 90% Representation because information about the "employability of its graduates" is identified as information upon which borrowers should have been able to rely, and borrowers would have

---

[10] *Id.* § II(C).
[11] *Id.*
[12] 34 C.F.R. § 685.206(c)(1).
[13] *See generally* Common Statement of Facts at § II.
[14] *See id.*
[15] 34 C.F.R. §§ 685.206(d); 685.222(d).
[16] A school's misrepresentation rises to the level of a qualifying "substantial misrepresentation" if it is one "on which the person to whom it was made . . . has reasonably relied, to that person's detriment." 34 C.F.R. § 668.71(c).
[17] *See* Common Statement of Facts at § II(B); *see* 34 C.F.R. §§ 668.71(b), 668.72–74.

DeVry University
Page 5

considered their employment prospects after graduation to be important when deciding whether to enroll.[18]

Finally, the Department concluded that borrowers suffered a detriment because they chose to attend DeVry in reliance on misrepresentations published in the school's marketing materials,[19] and borrowers did not receive what they paid for — i.e., a degree that afforded them a ninety percent likelihood to quickly land jobs in their fields of study.[20]

The Department determined that DeVry's 90% Representation qualifies as a substantial misrepresentation under the regulation; borrowers could reasonably have relied on the 90% Representation; and borrowers who did rely on the Representation suffered detriment as a result, provided their 90% Representation Claims relate to the period between January 2008 and December 2015.

### d. The Department Is Granting 100% Relief to Impacted Borrowers

On August 24, 2021, the Department announced that "approved claims will be assessed using a rebuttable presumption of full relief as a starting point."[21] The Department then factors the borrower's cost to attend the school, the value of the education, and any other relevant factors into the relief determination.[22]

The Department reviewed an expert witness report provided by DeVry which addresses the purported value of a DeVry education. The expert witness report was reviewed by Deputy Under

---

[18] *See* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75926-01, at *75950 (Nov. 1, 2016) ("By noting specifically in section 487(c)(3) of the HEA, 20 U.S.C. 1094(c)(3), that the Department may bring an enforcement action against a school for a substantial misrepresentation of . . . the employability of its graduates, Congress indicated its intent that [this] information . . . should be viewed as material information of certain importance to students."); *see also* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39330-01, at *39344 (June 16, 2016) (noting that the Department "consider[s] whether the misrepresentation related to information to which the borrower would reasonably attach importance in making the decision to enroll or continue enrollment at the school.").

[19] *See* 34 C.F.R. § 685.222(i)(4)(ii) and app. A, at example 6 (detriment exists, *e.g.*, where a school includes "inflated data" "in its own marketing materials" and "[t]he borrower relied on the misrepresentation about the admissions data to his detriment, because the misrepresentation factored into the borrower's decision to choose the school over others").

[20] *See* Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75926-01, at *75951 (Nov. 1, 2016) (explaining that "any identifiable element or quality of a program that is promised but not delivered due to a misrepresentation can constitute such a detriment," even if the amount of the detriment is minimal).

[21] Press Release, Fed. Student Aid, *Rescission of Borrower Defense Partial Relief Methodology* (Aug. 24, 2021), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2021-08-24/rescission-borrower-defense-partial-relief-methodology-ea-id-general-21-51?source=email.

[22] 34 C.F.R. § 685.222(i)(2)(i).

DeVry University
Page 6

Secretary and Chief Economist Jordan Matsudaira, who found serious shortcomings in the analyses presented by DeVry and determined that DeVry students suffered financial harm.

Based on these findings, and consistent with the presumption of full relief, the Department is discharging 100% of applicable loans incurred by impacted DeVry borrowers.[23]

## ASSESSED BORROWER DEFENSE AMOUNT TO BE COLLECTED

As of February 16, 2022, the Department identified approximately 1,800 borrowers who will be eligible for approximately $71.7 million in discharges because they relied upon DeVry's employment prospects misrepresentation when deciding to enroll.[24] As previously noted, with this notice, the Department is seeking recoupment of $23,638,104 for the loans and borrowers set forth in *Enclosure F*, as permitted by 34 C.F.R. § 668.87(a)(1)(i)(B).

In addition to the discharged loans which are the subject of this action, processing of the discharges identified in the February 16th press release is ongoing, and the Department also anticipates the number of approved discharge amounts to continue to grow as the Department continues to adjudicate additional applications from former DeVry students. The Department reserves the right to seek future recovery actions, as warranted, for collection from DeVry for those additional approved amounts.

The collection of $23,638,104 will be imposed on September 6, 2022, unless DeVry submits a request for a hearing or written material indicating why the collection action should not be undertaken by that date as outlined in the Request for Review section below.

## PAYMENT INSTRUCTIONS

The total amount owed as a result of these findings is $23,638,104 and must be paid to the Department's Office of Finance and Operations ("OFO") Accounts Receivable and Bank Management Division via an electronic transfer of funds through the Treasury Financial Communications System, which is known as FEDWIRE. The Department is unable to accept any other method of payment of these liabilities. DeVry must make this transfer within 10 days of imposition of the collection of the recoupment amount. The FEDWIRE payment must be made via the Federal Reserve Bank in New York. If DeVry's bank does not maintain an account at the Federal Reserve Bank, it must use the services of a correspondent bank when making the payments through FEDWIRE. Instructions for completing the electronic fund transfer message format are included on the attached FEDWIRE form. The RCN number at the top of this notice

---

[23] Impacted DeVry borrowers includes borrowers who attended (or whose child attended) DeVry brick-and-mortar campuses or online and whose application is approved based on a 90% Representation claim pursuant to the 1995 Borrower Defense Regulation and/or the 2016 Borrower Defense Regulation. *See generally* Common Statement of Facts at § II.

[24] Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-for-former-devry-university-students.

DeVry University
Page 7

must be included in item 4 on the FEDWIRE form to ensure proper application of DeVry's payment.

The Department has created a receivable for this recoupment amount and payment must be received by the Department within 10 days of the date imposing collection. If payment is not received within that timeframe, interest will accrue in monthly increments from the date of the imposition on the amounts owed to the Department, at the current value of funds rate in effect as established by the Treasury Department, until the date of receipt of the payment. In addition, if this debt is not paid within 90 days, absent entering a repayment plan to pay this balance over time, penalties of 6% per year will accrue from the date of this notice until the receipt of payment. If a request for review is not filed within the time frame provided in this notice, or payment or arrangement to repay the balance over time is not made by the end of the 10-day period following imposition of collection, the Department will refer the debt to Centralized Receivables Service (CRS) for servicing and collection. Continued failure to pay the debt after notification from CRS may result in costs exceeding 32% on the amount due.

If the institution has any questions regarding payment of this debt or wishes to request a payment plan within the 10 days following imposition of collection, those inquiries should be sent by email to OCFOAccountsReceivable@ed.gov. Once the debt is referred to CRS, you will receive notification and any further inquiries should be directed to that entity at 855-549-2683. Interest charges and other conditions may apply to any payment plan.

If within 10 days of the imposition of collection, DeVry has neither made payment in accordance with these instructions nor entered into an arrangement to repay the debt under terms satisfactory to the Department, the Department intends to collect the amount due and payable by administrative offset against payments due DeVry from the Federal Government. DeVry **may object to the collection by offset only by challenging the existence or amount of the debt.** To challenge the debt, DeVry must **timely <u>request a review as described in the section below</u>**. The Department will use those procedures to consider any objection to offset. **No separate review opportunity will be provided**. If a timely request for review is filed, the Department will defer offset until completion of the review, unless the Department determines that offset is necessary as provided at 34 C.F.R. § 30.28. This debt may also be referred to the Department of the Treasury for further action as authorized by the Debt Collection Improvement Act of 1996.

## REQUEST FOR REVIEW

If DeVry wishes to request a hearing or to submit written material, that request or submission must be sent to me at:

> Administrative Actions and Appeals Service Group
> U.S. Department of Education
> Federal Student Aid
> 830 First Street, NE – UCP-3, Room 84F2
> Washington, DC 20002-8019

DeVry University
Page 8

If DeVry submits a timely response and requests a hearing, the case will be referred to the Office of Hearings and Appeals ("OHA"), which is a separate entity within the Department. That office will arrange for assignment of DeVry's case to a hearing official who will conduct an independent hearing. DeVry is entitled to be represented by counsel during the proceedings. The procedures under which that hearing will be conducted are outlined in 34 C.F.R. § 668.89. If DeVry submits a written response but does not request a hearing, I will consider that material and notify DeVry of the amount of collection, if any, that will be imposed.

If any response documents include personally identifiable information ("PII"), the PII must be redacted, except for the student's name and last four digits of his/her social security number (please see the enclosed document, "Protection of Personally Identifiable Information," for instructions on how to mail records containing PII).

**ANY REQUEST FOR A HEARING OR WRITTEN MATERIAL THAT DEVRY SUBMITS MUST BE RECEIVED BY SEPTEMBER 6, 2022; OTHERWISE, THE $23,638,104 COLLECTION WILL BE EFFECTIVE ON THAT DATE.**

If you have any questions or desire any additional explanation of DeVry's rights with respect to this action, please contact Kerry O'Brien at 303-844-3319 or kerry.obrien@ed.gov.

Sincerely,

Susan D. Crim, Director
Administrative Actions and Appeals Service Group
Federal Student Aid
U.S. Department of Education

Enclosures A–E via UPS
Enclosure F via electronic mail only

cc:     Barbara Gellman-Danley, President, the Higher Learning Commission, via bgdanley@hlcommission.org
        Kevin LaMountain, Executive Director, Arizona State Board for Private Postsecondary Education, via kevin.lamountain@azppse.gov
        Deborah Cochrane, Executive Director, CA Bureau for Private Postsecondary & Vocational Education - Department of Consumer Affairs, via deborah.cochrane@dca.ca.gov
        Angie Paccione, Executive Director, Colorado Commission on Higher Education, via angie.paccione@dhe.state.co.us
        Samuel Ferguson, Executive Director, Florida Commission for Independent Education, via samuel.ferguson@fldoe.org

DeVry University
Page 9

Kirk Shook, Executive Director, Georgia Non-Public Postsecondary Education
Commission, via kshook@gnpec.ga.gov
Ginger Ostro, Executive Director, Illinois Board of Higher Education, via ostro@ibhe.org
Chris Lowery, Executive Director, Indiana Commission for Higher Education, via
clowery@che.in.gov
Zora Mulligan, Executive Director, Missouri Coordinating Board for Higher Education,
via zora.mulligan@dhewd.mo.gov
Peter Hans, President, University of North Carolina-General Administration, via
president@northcarolina.edu
Brian Bridges, Executive Director, New Jersey Commission on Higher Education, via
brian.bridges@oshe.nj.gov
Kelly Wuest, Administrator, Nevada Commission on Postsecondary Education, via
kdwuest@cpe.state.nv.us
William Murphy, Executive Director, New York State Department of Education, via
william.murphy@nysed.gov
Randy Gardner, Chancellor, Ohio Board of Regents, via chancellor@highered.ohio.gov
Tanya Garcia, Deputy Secretary & Commissioner for Postsecondary & Higher
Education, Pennsylvania Department of Education, via tagarcia@pa.gov
Emily House, Executive Director, Tennessee Higher Education Commission, via
emily.house@tn.gov
Harrison Keller, Executive Director, Texas Higher Education Coordinating Board, via
harrison.keller@highered.texas.gov
Edward Serna, Executive Director, Texas Workforce Commission, via
edward.serna@twc.state.tx.us
Peter Blake, Executive Director, Virginia State Council of Higher Education, via
peterblake@schev.edu
Department of Defense, via osd.pentagon.ousd-p-r.mbx.vol-edu-compliance@mail.mil
Department of Veteran Affairs, via INCOMING.VBAVACO@va.gov
Consumer Financial Protection Bureau, via CFPB_ENF_Students@cfpb.gov