UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DeVry University, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5549 |
| v. | ) | |
| | ) | Judge Maldonado |
| UNITED STATES DEPARTMENT OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 2

I.     Statutory and Regulatory Background............................................................. 2

II.    Factual Background .......................................................................................... 6

III.   Plaintiff's Complaint........................................................................................ 9

LEGAL STANDARDS ................................................................................................ 10

ARGUMENT ............................................................................................................... 11

I.     Plaintiff's Claims are Not Ripe for Review. ................................................... 11

II.    The Recovery Proceeding is Not Final Agency Action.................................. 15

III.   Plaintiff has Failed to Exhaust Available Administrative Remedies.............. 17

IV.    The Court Should Reject Plaintiff's Request for Alternative Relief. ............. 19

CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) .................................................................................................... 12

*Abbs v. Sullivan*,
   963 F.2d 918 (7th Cir. 1992) .......................................................................... 15, 17, 20

*Am. Coal. for Competitive Trade v. Clinton*,
   128 F.3d 761 (D.C. Cir. 1997) ................................................................................... 18

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) ................................................................................... 12

*Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*,
   347 F.3d 436 (2d Cir. 2003) ....................................................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 10

*Augusta Bakery Corp. v. NLRB*,
   846 F.2d 445 (7th Cir. 1988) ..................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 10

*Bennett v. Spear*,
   520 U.S. 154 (1997) .................................................................................................... 15

*Boim v. Am. Muslims for Palestine*,
   9 F.4th 545 (7th Cir. 2021) ........................................................................................ 10

*Bumpus v. Airline Pilots Ass'n, Int'l*,
   --- F. Supp. 3d ---, 2022 WL 2105872 (N.D. Ill. June 10, 2022) ............................ 12

*Career Educ., Inc. v. Dep't of Educ.*,
   6 F.3d 817 (D.C. Cir. 1993) ....................................................................................... 19

*Chauffeur's Training Sch., Inc. v. Riley*,
   967 F. Supp. 719 (N.D.N.Y. 1997) ............................................................................ 19

*CSX Transp., Inc. v. Surface Transp. Bd.*,
   774 F.3d 25 (D.C. Cir. 2014) ..................................................................................... 17

*Davis v. U.S. Dep't of Hous. & Urb. Dev.*,
   94 F.3d 647 (7th Cir. 1996) ....................................................................................... 14

ii

*Denius v. Dunlap*,
    330 F.3d 919 (7th Cir. 2003) ................................................................. 11

*Dhakal v. Sessions*,
    895 F.3d 532 (7th Cir. 2018) ................................................................. 15

*Energy Transfer Partners, L.P. v. FERC*,
    567 F.3d 134 (5th Cir. 2009) ................................................................. 13

*Farrell-Cooper Min. Co. v. U.S. Dep't of the Interior*,
    728 F.3d 1229 (10th Cir. 2013) ...................................................... 14, 15

*Fourth Branch Assocs. (Mechanicville) v. FERC*,
    253 F.3d 741 (D.C. Cir. 2001) ............................................................... 17

*Fryman v. Atlas Fin. Holdings, Inc.*,
    No. 18-cv-01640, 2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) .............. 11

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980) ....................................................................... 15, 17

*Geinosky v. City of Chicago*,
    675 F.3d 743 (7th Cir. 2012) ................................................................. 11

*Glisson v. U.S. Forest Serv.*,
    55 F.3d 1325 (7th Cir. 1995) ......................................................... 11, 17

*Gonzalez v. O'Connell*,
    355 F.3d 1010 (7th Cir. 2004) ............................................................... 18

*Hadsall v. ADT, LLC*,
    No. 21-cv-9, 2021 WL 2283884 (W.D. Wis. June 4, 2021) ................... 19

*Hardy v. Hamburg*,
    69 F. Supp. 3d 1 (D.D.C. 2014) ...................................................... 13, 14

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) ........................................................ 12, 13

*In re Establishment Inspection of Kohler Co.*,
    935 F.2d 810 (7th Cir. 1991) ................................................................. 17

*James v. City of Evanston*,
    No. 20-cv-00551, 2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ............ 12

*John Doe, Inc. v. DEA*,
    484 F.3d 561 (D.C. Cir. 2007) ............................................................... 11

*LaMarca v. United States*,
    34 F. Supp. 3d 796 (N.D. Ohio 2014)................................................... 16

*Matushkina v. Nielsen*,
    877 F.3d 289 (7th Cir. 2017) ........................................................... 15

*McFarland-Lawson v. Ammon*,
    847 F. App'x 350 (7th Cir. 2021) ...................................................... 18

*Mo. Pet Breeders Ass'n v. Cnty. of Cook*,
    119 F. Supp. 3d 865 (N.D. Ill. 2015) ................................................. 12

*N. Air Cargo v. USPS*,
    674 F.3d 852 (D.C. Cir. 2012) .......................................................... 19

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003).................................................................. 11, 12

*Nat'l Treasury Emps. Union v. King*,
    961 F.2d 240 (D.C. Cir. 1992) .......................................................... 18

*Nerium Int'l, LLC v. FTC*,
    No. 19-cv-7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) ........... 10, 12, 15, 17

*Paul's Beauty Coll. v. United States*,
    885 F. Supp. 1468 (D. Kan. 1995) ..................................................... 19

*Pro Sch., Inc. v. Riley*,
    824 F. Supp. 1314 (E.D. Wis. 1993).................................................. 19

*R.R. Donnelley & Sons Co. v. FTC*,
    931 F.2d 430 (7th Cir. 1991) ........................................................... 17

*Rogers v. Bennett*,
    873 F.2d 1387 (11th Cir. 1989) ........................................................ 14

*Rosenthal & Co. v. Bagley*,
    581 F.2d 1258 (7th Cir. 1978) ......................................................... 18

*Sanchez v. Johnson, Blumberg & Assocs., LLC*,
    No. 16-cv-07056, 2018 WL 3861562 (N.D. Ill. Aug. 14, 2018) .............. 12

*Sweet v. Cardona*,
    No. 19-cv-03674, 2022 WL 16966513 (N.D. Cal. Nov. 16, 2022) ........... 16

*Top Choice Distrib., Inc. v. U.S. Postal Serv.*,
    138 F.3d 463 (2d Cir. 1998)............................................................ 16

*Trump v. New York*,
   141 S. Ct. 530 (2020) ................................................................................ 12

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) .................................................................................. 20

**STATUTES**

5 U.S.C. § 704 ............................................................................................... 15

5 U.S.C. § 706 .......................................................................................... 1, 19

20 U.S.C. §§ 1070 *et seq.* ............................................................................... 2

20 U.S.C. § 1087e ........................................................................................... 2

20 U.S.C. § 1094 ............................................................................................. 2

20 U.S.C. § 1099c ........................................................................................... 2

**RULES**

Fed. R. Civ. P. 12 .................................................................................. *passim*

Fed. R. Civ. P. 56 ............................................................................................ 5

**REGULATIONS**

34 C.F.R. Part 668 ........................................................................................... 4

34 C.F.R. § 385.222 ........................................................................................ 4

34 C.F.R. § 668.81 ...................................................................................... 4, 6

34 C.F.R. § 668.86 ......................................................................................... 19

34 C.F.R. § 668.87 .................................................................................... 4, 14

34 C.F.R. § 668.88 ........................................................................................... 5

34 C.F.R. § 668.89 ............................................................................... 5, 13, 18

34 C.F.R. § 668.90 ............................................................................... 5, 18. 19

34 C.F.R. § 668.91 .................................................................................. *passim*

34 C.F.R. § 685.206 .................................................................................. 2, 3, 4

34 C.F.R. § 685.222 ..................................................................................... 3, 4

60 Fed. Reg. 37,768 (July 21, 1995) ................................................................................. 2

81 Fed. Reg. 75,926 (Nov. 1, 2016) .................................................................................. 2

82 Fed. Reg. 6253 (Jan. 19, 2017) .................................................................................... 4

84 Fed. Reg. 49,788 (Sept. 23, 2019) .............................................................................. 3

87 Fed. Reg. 65,904 (Nov. 1, 2022) .............................................................................. 3, 4

**OTHER AUTHORITIES**

U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower
    Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022),
    https://perma.cc/W4A9-SZV6 ........................................................................... 6, 7, 8

**INTRODUCTION**

The Department of Education ("Department") has determined that Plaintiff DeVry University, Inc. ("DeVry") misled prospective students by making certain claims about the job placement rate of its graduates. Based on that finding, the Department discharged federal student loans owed by former DeVry students who relied on those claims, concluding that these students had demonstrated a successful defense to repayment. Separately, the Department determined that it would initiate a proceeding to recover the losses caused by the granting of these discharges. After the Department notified DeVry of its intention to initiate recovery proceedings, DeVry elected to challenge the proposed recovery through a hearing that is the first step in an administrative process provided by Department regulations. That administrative process is currently underway. In that proceeding, a hearing official will issue an initial decision, based on the arguments and evidence submitted by the parties, whether recovery is warranted. Either party can appeal that initial decision to the Secretary of Education ("Secretary"). At the end of this administrative process, the Secretary's final decision may determine that recovery is not warranted. Alternatively, the Secretary's final decision may determine that the standard for recoupment is met, in which case DeVry may seek relief in district court.

Unsatisfied with the administrative process that the Department initiated—including the hearing the school itself elected—DeVry filed the instant lawsuit, asserting a variety of claims under the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"). But in doing so, DeVry has failed to abide by a core principle of administrative law: the Judiciary, as the governmental branch of last resort, should allow agencies' processes to conclude before wading into a dispute. This principle is expressed through the doctrines of ripeness, finality, and exhaustion, which separately

and collectively compel the conclusion that the Court should decline to consider DeVry's claims at this juncture. Accordingly, the Court should grant the Department's motion to dismiss.

## BACKGROUND

### I.     Statutory and Regulatory Background

The Secretary is charged with carrying out certain student loan programs under Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070 *et seq*. ("HEA"). Although borrowers in these loan programs generally are obligated to repay any federal loans received, Congress has authorized the Secretary, in certain circumstances, to relieve the borrower of this obligation based on the misconduct of his or her school. *See* 20 U.S.C. § 1087e(h) ("[T]he Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment."). Additionally, Congress has conferred upon the Secretary the authority to promulgate regulations that "may be necessary" for ensuring compliance with the Title IV program requirements. *Id.* § 1094(c)(1); *see id.* § 1099c(c).

In accordance with these authorities, the Department has promulgated four regulations concerning the standards that a borrower must meet in asserting a defense to loan repayment. First, regulations promulgated in 1994 (and effective in 1995) permitted a borrower to "assert as a defense against repayment of his or her loan 'any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law.'" 60 Fed. Reg. 37,768, 37,769-70 (July 21, 1995) (quoting 34 C.F.R. § 685.206). This standard remains applicable to all loans "first disbursed prior to July 1, 2017." 34 C.F.R. § 685.206(c)(1).

The Department promulgated new borrower defense regulations in 2016 that ultimately took effect in October 2018. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016). These regulations announced a new substantive standard for evaluating borrower defense claims for loans first

2

disbursed on or after July 1, 2017, premised on a uniform federal definition of what institutional "acts or omissions" constitute a borrower defense. 34 C.F.R. § 685.222(a)(2). The regulations clarified that under both this standard and the standard set forth in the 1994 rule, a "borrower defense" is "an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided." *Id.* § 685.222(a)(5). The regulations also announced new procedures for the assertion and adjudication of borrower defense claims, regardless of when a loan was first disbursed. *Id.* § 685.206(c)(2); *id.* § 685.222.

The Department published another final rule in September 2019, rescinding in large part the 2016 regulations and establishing new standards governing the assertion and consideration of borrower defenses for loans first disbursed on or after July 1, 2020. 84 Fed. Reg. 49,788 (Sept. 23, 2019). Pursuant to those regulations, a borrower may assert a defense to repayment by establishing, by a preponderance of the evidence, that an institution "made a misrepresentation . . . of material fact upon which the borrower reasonably relied in deciding to obtain a" loan, and that "directly and clearly relates to . . . [e]nrollment or continuing enrollment at the institution or . . . [t]he provision of educational services for which the loan was made," and "[t]he borrower was financially harmed by the misrepresentation." 34 C.F.R. § 685.206(e)(2). The Department revised this standard through the publication of a new final rule on November 1, 2022. 87 Fed. Reg. 65,904 (Nov. 1, 2022). Under that rule, which is scheduled to take effect on July 1, 2023, a borrower successfully asserts a defense to repayment when "the Department concludes by a preponderance of the evidence that the institution committed an actionable act or omission and, as a result, the borrower suffered detriment of a nature and degree warranting the relief." *Id.* at 66,068; *see id.* at 66,068-69 (defining "actionable act or omission"). These regulations apply to

3

borrower defense applications received on or after July 1, 2023, as well as to applications pending on July 1, 2023. *Id.* at 65,904.

In addition to setting forth the substantive standards, the operative borrower defense regulations contemplate that "[t]he Secretary may initiate an appropriate proceeding to require the school whose misrepresentation resulted in the borrower's successful borrower defense to repayment . . . to pay to the Secretary the amount of the loan to which the defense applies[.]" 34 C.F.R. § 685.206(e)(16); *see also* 34 C.F.R. § 385.222(e)(7). These "recovery proceedings" are currently governed by 34 C.F.R. Part 668, Subpart G. 34 C.F.R. § 668.81(a)(5)(ii); *see generally* 82 Fed. Reg. 6,253 (Jan. 19, 2017).[1] Subpart G provides that "[a] designated department official begins a borrower defense and recovery proceeding against an institution by sending the institution a notice by certified mail[.]" 34 C.F.R. § 668.87(a)(1). The notice "[i]ncludes a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief asserted within the statement, and recover for the amount of losses to the Secretary caused by the granting of such relief," *id.* § 668.87(a)(1)(ii), as well as "the date on which the Secretary intends to take action to recover the amount of losses arising from the granting of such relief, which date will be at least 20 days from mailing of the notice of intent," *id.* § 668.87(a)(1)(iii). The institution may submit a written response, which can include a request for a hearing. *Id.* If the institution submits a response, "the Secretary will not take action" on the date specified in the notice. *Id.*; *see also id.* § 668.87(b)(2) ("No liability shall be imposed on the institution prior to the [requested] hearing.").

A "hearing official" presides over hearings related to recovery proceedings. *See generally*

---

[1] As of July 1, 2023, the Department will initiate recovery proceedings through the processes set forth in Subpart H. 87 Fed. Reg. at 65,912, 66,041-42. None of the updated regulations' standards or processes apply here, nor are the new regulations relevant to this case.

4

*id.* § 668.90; *see also id.* § 668.89(a) ("A hearing is an orderly presentation of arguments and evidence conducted by a hearing official."). The hearing official is authorized to convene pre-hearing conferences to facilitate the efficient resolution of the matter. *See id.* § 668.88(a)-(c). During the hearing, parties may submit non-dispositive motions as well as motions for summary disposition, which are similar to motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. *Id.* § 668.88(d)-(e); *see also id.* § 668.89(a). The hearing official may also authorize "an oral evidentiary hearing conducted in person, by telephone, by video conference, or any combination thereof; or a review limited to written evidence." *Id.* § 668.89(a). Although discovery is not permitted, the hearing official may receive relevant documentary evidence and allow the testimony of witnesses, including expert witnesses. *Id.* § 668.89(b)(4)-(7). The Department's regulations also clarify that the Department generally bears the burden of persuasion in a borrower defense recovery action. *Id.* § 668.89(b)(2)(iii).

After considering the evidence presented during the hearing, the hearing official issues an "initial decision." *Id.* § 668.91(a)(1)(i). That "initial decision states whether the imposition of the . . . recovery sought by the designated department official is warranted, in whole or in part." *Id.* § 668.91(a)(2)(i).

Either the institution or designated Department official may appeal the hearing official's initial decision to the Secretary within 30 days of receiving that decision. *Id.* § 668.91(c)(2). During the pendency of the appeal, the initial decision of the hearing official does not take effect. *See id.* § 668.91(c)(2)(vi). As the Department's regulations make clear, "[t]he Secretary renders a final decision." *Id.* § 668.91(c)(2)(vii). That final decision is based on "evidence introduced into the record at the hearing and facts agreed to by the parties if the hearing consisted only of written submissions and matters that may be judicially noticed." *Id.* § 668.91(c)(2)(viii). The

Department's regulations also provide that "[u]nless directed by a court of competent jurisdiction, the hearing official, or the Secretary for good cause, if a collateral attack is brought in any court concerning all or any part of any proceeding under [Subpart G], the challenged proceeding shall continue without regard to the pendency of that court proceeding." *Id.* § 668.81(g).

## II.      Factual Background

DeVry is a for-profit university based in Chicago, Illinois.  Compl. ¶¶ 1, 13, ECF No. 1.  Between 2008 and 2015, DeVry advertised that "90 percent of [its] graduates who actively seek employment obtained jobs in their field of study within six months of graduation."  U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://perma.cc/W4A9-SZV6 ("BD Claims Approval"), cited in Compl. ¶ 29 n.5.  DeVry used this supposed job placement rate "as the way to convince prospective students to enroll."  *Id.*

DeVry's advertised statements began to draw the scrutiny of federal and state regulators.  *See id.*; Compl. ¶¶ 21-25.  In January of 2016, the Federal Trade Commission ("FTC") sued DeVry based on the agency's finding that the statements concerning the 90 percent job placement rate were deceptive and violated the FTC Act.  Compl. ¶ 23.  The parties settled the litigation, with DeVry agreeing "to pay approximately $50 million to the FTC for distribution to eligible then-current and former DeVry students, and to forgive approximately $50 million in loan balances for eligible then-current and former DeVry students."  *Id.* ¶ 24.  Similarly, the Attorneys General of the States of Massachusetts and New York settled claims against DeVry arising from DeVry's 90 percent job placement rate advertisements.  *Id.* ¶ 25.  These settlements included payment by DeVry of "$2.25 million for distribution to students in New York and $455,000 for distribution to students in Massachusetts."  *Id.*  As DeVry acknowledges, it has also settled other individual and

class actions to resolve claims based on its job placement rate advertisements. *Id.* ¶¶ 25-26.

The Department conducted its own review of these advertisements and their effect on DeVry's students. *See id.* ¶ 27; BD Claims Approval; Letter from Susan D. Crim to Thomas L. Monahan III (Aug. 15, 2022) ("Initiation of Collection Letter"), ECF No. 1-2. As part of its investigation, the Department notified DeVry that DeVry's conduct was at issue in thousands of borrower defense applications, and the Department began providing information to DeVry regarding individual borrowers. Initiation of Collection Letter at 1-2. Beginning in September of 2020, DeVry submitted responses to some but not all such notification letters concerning individual borrowers. *Id.* at 2.

Based on its "review of voluminous amounts of evidence, the Department found that from 2008 to 2015 DeVry repeatedly misled prospective students across the country with" its claims. BD Claims Approval; *see also* Initiation of Collection Letter at 2. According to the Department, DeVry's "actual job placement rate was around 58 percent." BD Claims Approval; *see also* Initiation of Collection Letter at 3-5. Further, "[t]he Department also found that senior DeVry officials knew of the problems with the 90 percent statistic for years, in part due to concerns about its accuracy raised by alumni." BD Claims Approval; *see also* Initiation of Collection Letter at 4.

In light of these "widespread substantial misrepresentations about [DeVry's] job placement rates," the Department approved approximately $71.1 million in borrower defense discharges for approximately 1,800 former students of DeVry. BD Claims Approval.[2] On February 16, 2022, the Department issued a press release summarizing its findings and announcing that it "will seek to recoup the cost of the discharges from DeVry." *Id.*

---

[2] Because the Department's review of borrower defense applications is ongoing, it anticipates that the approved discharge amounts will increase. Initiation of Collection Letter at 6; BD Claims Approval.

In accordance with its February 2022 announcement, the Department informed DeVry by letter dated August 15, 2022, that it "intends to initiate a recovery proceeding against DeVry" to recoup a portion of this loss—specifically, $23,638,104. Initiation of Collection Letter at 1. As the Department explained, "[t]he collection of $23,638,104 will be imposed on September 6, 2022, unless DeVry submits a request for a hearing or written material indicating why the collection action should not be undertaken by that date[.]" *Id.* at 6; *see id.* at 7-8 (providing details concerning how to request a hearing or submit written material, and explaining that any hearing will be handled by a hearing official). The Department also confirmed that "[i]f a timely request for review is filed, the Department will defer offset until completion of the review[.]" *Id.* at 7.

After receiving an extension of time to respond to the Department's letter, *see* Letter from Susan D. Crim to Joseph J. Vaughan at 2 (Sept. 19, 2022), ECF No. 1-6, on October 11, 2022, Plaintiff requested an administrative hearing, *see* Compl. ¶ 37; Letter from Joseph J. Vaughan to Susan D. Crim (Oct. 11, 2022), attached as Ex. 1, ECF No. 20-1. In connection with that proceeding, DeVry submitted a prehearing brief on October 25, 2022, "identify[ing] certain issues and procedures necessary to adjudicate the borrower defense proceeding . . . initiated by the Department[.]" *In re DeVry Univ.*, Prehearing Br. of DeVry Univ., Inc. at 1 (Oct. 31, 2022), Dkt. No. 22-54-BD, attached as Ex. 2, ECF No. 20-2. In its prehearing brief, DeVry asserted that "several threshold and dispositive legal issues . . . could dispense with the Action altogether or narrow the number of claims dramatically[,]" and requested that "this Tribunal set aside the Department's unlawful demand." *Id.* at 2; *see also id.* at 2-3 (claiming that the Department's potential recoupment contravenes the Department's statutory and regulatory authority, as well as the Due Process Clause of the Fifth Amendment). In the event the hearing official reaches the merits of the dispute, DeVry believes "[s]uch a proceeding may require both fact and expert

testimony regarding the 90-percent ads and the specific circumstances of each borrower[,]" *id.* at 4-5, as well as "an evidentiary hearing to consider (1) expert testimony regarding the value of a DeVry education; (2) the value of the education that a reasonable borrower in each borrower's circumstances would have received; and (3) the value of the education each borrower should have expected given the information provided by DeVry." *Id.* at 6.

At the administrative level, the parties recently completed briefing the extent of the hearing official's authority and "[t]he threshold legal issues identified" by DeVry. *See In re DeVry Univ.*, Post Conference Order (Nov. 1, 2022), Dkt. No. 22-54-BD, attached as Ex. 3, ECF No. 20-3.[3]

## III.    Plaintiff's Complaint

The same day that DeVry requested an administrative hearing, it filed this lawsuit against the Department and the Secretary in his official capacity. Compl. ¶¶ 14-15, 37. In its Complaint, DeVry asserts that the Department's initiation of recovery proceedings violates the APA, because the Department has exceeded its statutory authority under the HEA, failed to undertake notice and comment rulemaking, failed to adhere to its own borrower defense regulations in adjudicating applications, and is arbitrary and capricious. *Id.* ¶¶ 77-100. Additionally, DeVry claims that the Department has violated the APA by denying DeVry due process in pursuing recovery. *Id.* ¶¶ 101-10. DeVry seeks both declaratory and injunctive relief, including a "permanent injunction enjoining . . . the Department from taking any further action under the Recoupment Notice." *Id.* at 38, Requested Relief ¶ B. Alternatively, DeVry requests that the Court "declare (i) the appropriate legal basis (if any) for the Recoupment Action and (ii) what procedures would govern the rights of the parties" in the hearing. *Id.*, Requested Relief ¶ E.

---

[3] The parties agreed to extend the deadlines set forth in the Order.

## LEGAL STANDARDS

"Because federal courts possess limited jurisdiction, and jurisdiction is power to declare the law, the first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in short, that it has jurisdiction over the subject matter." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) (cleaned up). Where a plaintiff fails to demonstrate a court's subject-matter jurisdiction, dismissal is appropriate pursuant to Rule of Civil Procedure 12(b)(1). *Nerium Int'l, LLC v. FTC*, No. 19-cv-7189, 2020 WL 5217152, at *2 (N.D. Ill. Aug. 31, 2020).

Attacks on subject-matter jurisdiction under Rule 12(b)(1) come in two forms, namely "facial" and "factual" attacks. *Id.* In a facial attack, a defendant "challenges the sufficiency of the allegations regarding subject matter jurisdiction[,]" and "the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Id.* By contrast, in a factual challenge, a defendant "denies or controverts the truth of the jurisdictional allegations, [and] the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence." *Id.*

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted). For purposes of a Rule 12(b)(6) motion, a court may consider not only the complaint itself, but also "documents attached to the complaint,

documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Fryman v. Atlas Fin. Holdings, Inc.*, No. 18-cv-01640, 2022 WL 1136577, at *7 (N.D. Ill. Apr. 18, 2022) ("The Seventh Circuit has held that a court not only can, but 'shall' take judicial notice of information on official government websites that is not subject to reasonable dispute." (quoting *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003))).

## ARGUMENT

The "closely related" and "overlapping doctrines" of ripeness, finality, and exhaustion of administrative remedies instruct that a court should generally decline to consider claims that are pending before an administrative agency. *See, e.g.*, *John Doe, Inc. v. DEA*, 484 F.3d 561, 567 (D.C. Cir. 2007); *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326-27 (7th Cir. 1995). The Department has initiated a recovery proceeding against DeVry, but it has not reached any final decision regarding liability—a decision that may be rendered only by the Secretary (assuming one party appeals). Because DeVry may obtain some or all of the relief it seeks in this lawsuit through the pending administrative proceeding, the Court should decline to consider DeVry's claims at this juncture. Instead, the Court should grant Defendants' motion to dismiss and allow the administrative process to unfold in the normal course.

## I.     Plaintiff's Claims are Not Ripe for Review.

Rooted in Article III limitations and prudential considerations, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of*

*Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) ("Put simply, the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to."). "Refusing to involve the courts in ongoing administrative matters both protects judicial resources and comports with the judiciary's role as the governmental branch of last resort." *In re Aiken Cnty.*, 645 F.3d 428, 433-34 (D.C. Cir. 2011).

Ripeness requires that the alleged injury be "certainly impending[.]" *Mo. Pet Breeders Ass'n v. Cnty. of Cook*, 119 F. Supp. 3d 865, 870 (N.D. Ill. 2015); *accord Bumpus v. Airline Pilots Ass'n, Int'l*, --- F. Supp. 3d ---, 2022 WL 2105872, at *4 (N.D. Ill. June 10, 2022) ("The dispute must be 'definite and concrete' and 'of sufficient immediacy and reality' to warrant judgment from the court." (citation omitted)). By contrast, a claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (citation omitted). "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808. A claim that is unripe should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *James v. City of Evanston*, No. 20-cv-00551, 2021 WL 4459508, at *4 n.2 (N.D. Ill. Sept. 29, 2021); *Sanchez v. Johnson, Blumberg & Assocs., LLC*, No. 16-cv-07056, 2018 WL 3861562, at *2 n.4 (N.D. Ill. Aug. 14, 2018).

DeVry's claims fail to satisfy both the fitness and hardship prongs of the ripeness inquiry. "An issue is fit for judicial resolution if it involves a 'final agency action' and presents a 'purely legal' issue." *Nerium Int'l*, 2020 WL 5217152, at *6 (quoting *Abbott Labs.*, 387 U.S. at 149. There is no dispute that the Department has only *initiated* recovery proceedings against DeVry,

12

and in those proceedings the Department bears the burden of proof, including with respect to the underlying decision to approve student loan discharges. Initiation of Collection Letter at 1 (The Department "intends to initiate a recovery proceeding against DeVry[.]"); Ex. 2 at 2-6 (DeVry's assertion that "the initiation of the Action itself violate[s] regulatory, statutory, and constitutional principles[,]" and proposing procedures to govern hearing); Compl. ¶¶ 6, 29, 76, 83, 99 (referring variously to the Department's "intent to recoup" or "initiation of the Recoupment Action"); 34 C.F.R. § 668.89(b)(iii). The matter is currently before the hearing official, who is authorized to issue only an "initial decision." 34 C.F.R. § 668.91(a)(1)(i). That initial decision may be appealed to the Secretary, who is the only official authorized to render a final decision on behalf of the agency. *Id.* § 668.91(c). These administrative proceedings may lead to a decision that DeVry is not liable for losses arising from approved borrower defense applications because, for example, the Secretary may find that the standard for recoupment is not met, or the Department failed to adhere to its regulations. *See id.* § 668.91(a)(2), § 668.91(c)(2)(vii), § 668.91(c)(2)(x). DeVry can therefore only speculate about what a final decision may be. *Cf. In re Aiken Cnty.*, 645 F.3d at 434 ("[W]hen an agency decision may never have its effects felt in a concrete way by the challenging parties, the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well."). This lack of finality demonstrates that the issues raised by DeVry are not ripe, as judicial review at this juncture would constitute an undue interference in ongoing administrative activity. *See, e.g.*, *In re Aiken Cnty.*, 645 F.3d at 435; *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141-42 (5th Cir. 2009); *Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436, 440 (2d Cir. 2003); *Hardy v. Hamburg*, 69 F. Supp. 3d 1, 11-12 (D.D.C. 2014).[4]

---

[4] Finality is also discussed in Part II, *infra*.

Further, DeVry here does not advance a "purely legal" challenge to the Department's initiation of recovery proceedings. For instance, it claims that the Department failed to properly apply the operative borrower defense regulations to 7,617 separate loans. Compl. ¶¶ 89-91. It also asserts that, as to each of these loans, "the Department has failed to establish that the full relief granted to the individual borrowers is not improper or excessive." *Id.* ¶ 92. Moreover, according to DeVry, "[t]he Department has failed to follow the procedures governing the adjudication of individual BDR Applications, including by failing to consider" the borrower's evidence. *Id.* ¶ 93(a). DeVry similarly alleges that the Department failed to provide adequate notice of the borrower defense applications that the Department has approved, as well as "sufficient time" to respond. *Id.* ¶¶ 107-08. Consideration of these claims is necessarily fact dependent; indeed, in DeVry's view, factual development—including expert testimony and an evidentiary hearing—is needed at the administrative stage. *See* Ex. 2 at 4-6. These factors weigh heavily against a finding of fitness. *See Davis v. U.S. Dep't of Hous. & Urb. Dev.*, 94 F.3d 647 (7th Cir. 1996) (noting that "[a]n agency, not a court, is generally the appropriate site for an initial determination of the merits of an action committed by statute to the agency's discretion"); *Rogers v. Bennett*, 873 F.2d 1387, 1392 (11th Cir. 1989) (case not ripe because plaintiff failed to exhaust administrative remedies, even though "suit challeng[ed] an agency's jurisdiction to act").

Additionally, DeVry's only potential "hardship" is uncertainty as to the outcome of the administrative process, which is insufficient to demonstrate ripeness: "[T]he cost and inconvenience of defending oneself is not alone sufficient to justify judicial intervention in the administrative process." *Davis*, 94 F.3d at 647. Moreover, during the pendency of the hearing and any appeal, DeVry is not required to pay any money to the Department, nor take any kind of corrective action. 34 C.F.R. § 668.87(b), § 668.91(c)(2)(vi); Initiation of Collection Letter at 7;

*see Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 (10th Cir. 2013) (no hardship because "[p]ertinent administrative review . . . has stayed all . . . enforcement").

DeVry's claims are thus not ripe and should be dismissed pursuant to Rule 12(b)(1).

## II.    The Recovery Proceeding is Not Final Agency Action.

The APA expressly limits judicial review to "final agency action." 5 U.S.C. § 704. As the Supreme Court has explained, to be final, an action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). "A final agency action ordinarily 'means a final order imposing some sort of sanction' and 'emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding.'" *Nerium Int'l*, 2020 WL 5217152, at *4 (quoting *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992)). In determining whether to dismiss a claim brought under the APA for lack of final agency action, a court should apply the 12(b)(6) standard. *See Dhakal v. Sessions*, 895 F.3d 532, 538-41 (7th Cir. 2018); *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017).

As detailed above in Part I, there is no dispute that the Department has only *initiated* recovery proceedings against DeVry. Nor can DeVry seriously disagree that the hearing it requested will culminate in only an "initial decision," which is appealable to the Secretary, who is charged with rendering a "final decision" for the Department, *see generally* 34 C.F.R. § 668.91. Plainly, then, the initiation of recovery proceedings does not "mark the consummation of the agency's decisionmaking process[.]" *Bennett*, 520 U.S. at 177-78; *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-44 (1980) (rejecting argument that issuance of complaint was final agency action); *Augusta Bakery Corp. v. NLRB*, 846 F.2d 445, 446-47 (7th Cir. 1988) ("This case is far

15

from over. At the time Augusta filed a petition for review, the ALJ was set to hear evidence; the ALJ now has the case under advisement."); *Top Choice Distrib., Inc. v. U.S. Postal Serv.*, 138 F.3d 463, 467 (2d Cir. 1998) ("The Postal Service has done nothing here other than file an administrative complaint. Its decision is not final until the time to appeal the ALJ decision runs or the Judicial Officer resolves the appeal. Thus, there has been no definitive agency decision."); *LaMarca v. United States*, 34 F. Supp. 3d 796, 806 (N.D. Ohio 2014) ("If at the end of that administrative process and the [Department of Education]'s final agency action the Schools are dissatisfied with the resolution and method of calculation regarding who owes who and how much, and the conditions of the Schools' participation in the Pell Grant program, then the APA provides for a process by which the Schools may seek judicial review of that final agency action."). Additionally, DeVry has no standing to challenge the underlying decision to approve student loan discharges outside the context of the ongoing recovery proceeding. *See* Compl. ¶ 18. As another district court recently explained:

> [S]chools cannot be held liable for any remedial measures absent proceedings initiated specifically against them. . . . When a borrower-defense application criticizes a school, the Department gives the school notice and the opportunity to file a responsive statement, although the school is not required to do so. *Regardless of whether the school files such a statement (or not), the grant of a borrower-defense application has no binding effect on the school.* If the Department approves a borrower-defense application, then that can be the predicate for the department *initiating* a proceeding against the school for recoupment. But even in such an instance, the school still retains all due process rights, is not bound by the success of the student's application, and is free to litigate *ab initio* the merits of its performance.

*Sweet v. Cardona*, No. 19-cv-03674, 2022 WL 16966513, at *9 (N.D. Cal. Nov. 16, 2022).[5]

---

[5] While DeVry alleges the Department has undertaken other agency actions, such as promulgating the 2016 rule, DeVry's Complaint is plainly premised on the ongoing recovery proceeding. *See, e.g.*, Compl. ¶¶ 79, 84-85, 95, 99-100, 110, Relief Requested; Initial Status Report at 2, ECF No. 16. DeVry cannot establish that it has suffered any injury as a result of these other actions outside the context of the recovery proceeding, and thus has no standing to challenge them.

Likewise, the initiation of a recovery proceeding, by itself, does not determine any rights or obligations of DeVry; rather, it merely sets in motion a process whereby those rights or obligations will be adjudicated. *See Standard Oil*, 449 U.S. at 241-42; *see also Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001); *Abbs*, 963 F.2d at 925-26; *Nerium Int'l*, 2020 WL 5217152, at *3-4. That DeVry must bear the expense of the hearing is immaterial. *R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431 (7th Cir. 1991). Further, DeVry "may well emerge victorious" at the administrative stage, confirming a lack of finality. *See CSX Transp., Inc. v. Surface Transp. Bd.*, 774 F.3d 25, 30 (D.C. Cir. 2014).

The Court should thus dismiss DeVry's claims—which challenge the recovery proceeding under the APA, Compl. ¶¶ 78, 87, 97, 102—for lack of finality pursuant to Rule 12(b)(6).

## III. Plaintiff has Failed to Exhaust Available Administrative Remedies.

"Exhaustion of administrative remedies is a doctrine—originally and still to a large extent judge-made though now codified in cases governed by the [APA]—under which a court asked to invalidate an administrative order will stay its hand until the plaintiff has exhausted whatever internal remedies the agency provides." *Glisson*, 55 F.3d at 1326 (citations omitted). Like the doctrines of ripeness and finality, "[t]he [exhaustion] doctrine cuts down on the work of the courts, preserves the integrity and autonomy of the administrative process, and ensures that when the administrative proceeding does come before the court, the court will have before it the mature, considered, and final articulation of the basis of the agency's action." *Id.* at 1326-27; *see In re Establishment Inspection of Kohler Co.*, 935 F.2d 810, 812 (7th Cir. 1991) ("The exhaustion doctrine protects the autonomy of administrative agencies, respects administrative expertise, facilitates judicial review by ensuring a well-developed factual record, and promotes judicial economy by avoiding piece-meal review of cases and by giving the agency the opportunity to

17

resolve the case to the parties' mutual satisfaction without judicial interference."). Moreover, "[t]he rationale for applying the doctrine may be even stronger in the context of a case . . . that raises a constitutional question, because the exhaustion requirement enables courts to avoid deciding cases on constitutional grounds unnecessarily[,]" as the administrative proceeding may provide all the relief sought by a plaintiff. *In re Establishment Inspection of Kohler Co.*, 935 F.2d at 812-13 (explaining that "during administrative proceedings the constitutional issue, or the entire case, for that matter, may be resolved favorably for the aggrieved party, obviating the need for the courts to address the constitutional claim"); *see also Am. Coal. for Competitive Trade v. Clinton*, 128 F.3d 761, 766 n.6 (D.C. Cir. 1997); *Nat'l Treasury Emps. Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1018 (7th Cir. 2004); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978). Whether a plaintiff has failed to exhaust administrative remedies is analyzed under Rule 12(b)(6). *McFarland-Lawson v. Ammon*, 847 F. App'x 350, 355 (7th Cir. 2021).

DeVry has failed to exhaust the administrative remedies that it elected. *See* Ex. 1. (Indeed, DeVry asks the Court to enjoin these requested recoupment proceedings. *See* Compl. at 38.) Such remedies include a hearing conducted by an official who is authorized to consider both non-dispositive and dispositive motions, and may also authorize the submission of expert reports and oral testimony. *See generally* 34 C.F.R. § 668.89. As a result of the hearing, the hearing official might conclude that the Department has not met its burden to show that recovery is warranted. *Id.* § 668.91(a)(2)(i). Moreover, any initial decision by the hearing official is appealable to the Secretary, whose final decision can afford DeVry more relief than what is available in this APA case. *See id.* § 668.91(c); 5 U.S.C. § 706(2); *N. Air Cargo v. USPS*, 674 F.3d 852, 861 (D.C. Cir.

2012) ("[O]rdinarily the appropriate course is simply to identify a legal error and then remand to the agency.").[6]

Notably, courts have recognized the adequacy of the types of proceedings currently underway. *Chauffeur's Training Schs., Inc. v. Riley*, 967 F. Supp. 719, 729-30 (N.D.N.Y. 1997) (hearing conducted pursuant to 34 C.F.R. Part 668 comported with due process rights of school); *Pro Sch., Inc. v. Riley*, 824 F. Supp. 1314, 1320 (E.D. Wis. 1993) (similar). Courts have also held that these types of proceedings are prerequisites to exhaustion. As the D.C. Circuit observed with respect to a notice of termination issued by the Department, such a notice "merely begins the termination proceedings, . . . and becomes final only after the requested hearing and an opportunity to appeal to the Secretary[.]" *Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817, 820 (D.C. Cir. 1993) (citing 34 C.F.R. § 668.86(b)(1), § 668.90(c)(1)). The plaintiff's complaint should therefore be dismissed, the court explained, because "in such a circumstance a plaintiff must exhaust administrative remedies—in order to give the Department's top level of appeal an opportunity to place an official imprimatur on the Department's interpretation of its regulations before it is reviewed by a federal court." *Id.*; *see also Paul's Beauty Coll. v. United States*, 885 F. Supp. 1468, 1473 (D. Kan. 1995) (review unavailable where plaintiff failed to appeal calculation of loan default rates). There is no basis to depart from this well-worn ground here.

## IV.    The Court Should Reject Plaintiff's Request for Alternative Relief.

DeVry fares no better in making its "alternative" request for relief. DeVry first asks the

---

[6] Plaintiff's request for injunctive relief, Compl., Relief Requested ¶ B, is thus improper. So too is its request for an "injunction enjoining . . . the Recoupment Action from proceeding without strict compliance with all applicable rules and laws." *Id.*; *see Hadsall v. ADT, LLC*, No. 21-cv-9, 2021 WL 2283884, at *9 (W.D. Wis. June 4, 2021) ("[A] 'follow the law' injunction such as this is disfavored and generally viewed as overbroad in the absence of a showing that the injunction is necessary to prevent related future violations." (citations omitted)).

Court to "declare . . . the appropriate legal basis (if any) for the Recoupment Action[.]"  Compl.,

Relief Requested ¶ E.  But that request is simply a repackaging of DeVry's request that the Court

declare the Department has exceeded its authority in initiating the recovery proceeding; for the

reasons described above, there is no need for the Court to reach the merits of that claim now.

Nor can DeVry demonstrate that the Court should "declare . . . what procedures would

govern the rights of the parties in adjudicating the merits of the underlying BDR Applications and

the Recoupment Action to ensure DeVry is provided due process of law."  *Id.*  The Seventh Circuit

rejected a similar request in *Abbs*, where the plaintiff asked the court "to determine the ground

rules by which the administrative investigation and any further administrative proceedings are to

be conducted."  963 F.2d at 926.  As the Seventh Circuit held, the appropriate time to bring suit to

challenge the procedures utilized by an agency is "if and when a sanction of any sort is meted

out[.]"  *Id.* at 926-27 ("[I]f the challenge succeeds he will be home free.  If the challenge fails, he

will be no worse off than he would have been had he never brought the present suit, assuming (for

symmetry) that this suit terminated adversely to him on the merits.").  Moreover, "the formulation

of procedures [is] basically to be left within the discretion of the agencies to which Congress had

confided the responsibility for substantive judgments."  *Vt. Yankee Nuclear Power Corp. v. Nat.

Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *see id.* at 525 (courts should not "engraft[] their

own notions of proper procedures upon agencies entrusted with substantive functions by

Congress.").  DeVry offers no reason to deviate from that principle in this case, particularly given

the adequacy of the Department's procedures.  *See* Part III, *supra*.

## CONCLUSION

For the reasons discussed above, the Court should grant Defendants' motion to dismiss.

Dated December 23, 2022           Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave., Suite 7-5395
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
CA Bar No. 267183

*Counsel for Defendants*