UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DeVry University, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5549 |
| v. | ) | |
| | ) | Judge Maldonado |
| UNITED STATES DEPARTMENT OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

I.  DeVry's Claims are Not Ripe for Review. ........................................................ 1

II.  DeVry's Arguments Concerning Finality Are Unpersuasive. ........................... 7

III.  DeVry Has Failed to Exhaust Available Administrative Remedies. ............... 12

IV.  The Court Should Reject DeVry's Request for Alternative Relief................... 15

CONCLUSION............................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Abbs v. Sullivan*,
  963 F.2d 918 (7th Cir. 1992) ................................................................. 11

*Alioto v. Town of Lisbon*,
  651 F.3d 715 (7th Cir. 2011) ................................................................. 3

*Am. Coal. for Competitive Trade v. Clinton*,
  128 F.3d 761 (D.C. Cir. 1997) ............................................................... 5

*Am. Med. Ass'n v. Reno*,
  57 F.3d 1129 (D.C. Cir. 1995) ............................................................... 6

*Am. Petroleum Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) ............................................................... 4

*Atl. States Legal Found. v. EPA*,
  325 F.3d 281 (D.C. Cir. 2003) ............................................................... 5

*Bennett v. Spear*,
  520 U.S. 154 (1977) ............................................................................... 9

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ............................................................... 3

*Career Educ. Inc. v. Dep't of Educ.*,
  6 F.3d 817 (D.C. Cir. 1993) ............................................................ 13, 14

*Cephalon, Inc. v. Sebelius*,
  796 F. Supp. 2d 212 (D.D.C. 2011) ....................................................... 6

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................... 10

*Colwell v. HHS*,
  558 F.3d 1112 (9th Cir. 2009) ............................................................... 9

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
  313 F. Supp. 3d 285 (D.D.C. 2018) ....................................................... 6

*Ctr. for Biological Diversity v. Haaland*,
  849 F. App'x 2 (D.C. Cir. 2021) ............................................................ 8

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ......................................................................... 13, 14

*Eli Lilly & Co. v. Cochran,*
    526 F. Supp. 3d 393 (S.D. Ind. 2021) ............................................................. 6

*Farrell-Cooper Mining Co. v. Dep't of the Interior,*
    728 F.3d 1229 (10th Cir. 2013) ..................................................................... 6

*Fourth Branch Assocs. (Mechanicville) v. FERC,*
    253 F.3d 741 (D.C. Cir. 2001) ..................................................................... 11

*FTC v. Standard Oil Co. of Cal.,*
    449 U.S. 232 (1980) .................................................................................... 11

*Gonzalez v. O'Connell,*
    355 F.3d 1010 (7th Cir. 2004) .................................................................... 15

*Illinois Ins. Guar. Fund v. Becerra,*
    33 F.4th 916 (7th Cir. 2022) ....................................................................... 12

*Imperial Carpet Mills, Inc. v. Consumer Prod. Safety Comm'n,*
    634 F.2d 871 (5th Cir. 1981) ......................................................................... 4

*Island Creek Coal Co. v. Bryan,*
    937 F.3d 738 (6th Cir. 2019) ................................................................. 12, 13

*Larkin v. Fin. Sys. of Green Bay, Inc.,*
    982 F.3d 1060 (7th Cir. 2020) .................................................................. 7, 8

*Lower E. Side People's Fed. Credit Union v. Trump,*
    289 F. Supp. 3d 568 (S.D.N.Y. 2018) ........................................................... 8

*Matlin v. Spin Master Corp.,*
    979 F.3d 1177 (7th Cir. 2020) .................................................................... 15

*Nat'l Ass'n of Home Builders v. Norton,*
    415 F.3d 8 (D.C. Cir. 2005) .......................................................................... 9

*Nat'l Mining Ass'n v. McCarthy,*
    758 F.3d 243 (D.C. Cir. 2014) ...................................................................... 9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) .................................................................................. 5, 7

*Nerium Int'l, LLC v. FTC,*
    No. 19 C 7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) ................. 4, 11

*Nw. Tissue Ctr. v. Shalala,*
    1 F.3d 522 (7th Cir. 1993) ............................................................................ 6

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
  656 F.3d 580 (7th Cir. 2011) ............................................................................... 5

*Pac. Gas & Elec. Co. v. FPC*,
  506 F.2d 33 (D.C. Cir. 1974) ............................................................................... 9

*Pub. Serv. Elec. & Gas Co. v. FERC*,
  485 F.3d 1164 (D.C. Cir. 2007) ........................................................................... 5

*Rosenthal & Co. v. Bagley*,
  581 F.2d 1258 (7th Cir. 1978) ........................................................................... 15

*Shawnee Trail Conservancy v. USDA*,
  222 F.3d 383 (7th Cir. 2000) ............................................................................. 14

*Sierra Club v. DOE*,
  287 F.3d 1256 (10th Cir. 2002) ........................................................................... 6

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................. 6

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................. 6

*Sw. Power Pool, Inc. v. FERC*,
  736 F.3d 994 (D.C. Cir. 2013) ............................................................................. 5

*Sweet v. Cardona*,
  --- F. Supp. 3d ---, 2022 WL 16966513 (N.D. Cal. Nov. 16, 2022) ................... 9, 10

*Texas v. United States*,
  523 U.S. 296 (1998) ..................................................................................... 4, 5, 6

*W. Ill. Home Care, Inc. v. Herman*,
  150 F.3d 659 (7th Cir. 1998) ............................................................................. 12

**<u>Statutes</u>**

5 U.S.C. § 553 ........................................................................................................ 6

5 U.S.C. § 704 ...................................................................................................... 13

5 U.S.C. § 706(2) ................................................................................................... 5

**<u>Regulations</u>**

34 C.F.R. § 668.89(b)(2)(iii) ............................................................................... 10

34 C.F.R. § 668.90(d) ............................................................................................ 4

34 C.F.R. § 668.91 ............................................................................................ 5, 12, 14

## Other Authorities

FSA, Rescission of Borrower Defense Partial Relief Methodology (Aug. 24, 2021),
    https://perma.cc/F2HJ-73QN ...................................................................................... 9

U.S. Dep't of Education, Education Department Approves $415 Million in Borrower Defense
Claims Including for Former DeVry University Students (Feb. 16, 2022),
https://perma.cc/W4A9-SZV6...................................................................................... ......11

## INTRODUCTION

DeVry's Complaint asserts unequivocally that the recovery proceeding initiated by the Department "is unlawful and must be enjoined."  Compl. ¶ 38, ECF No. 1; *see also* Joint Initial Status Report at 2, ECF No. 16 ("This case concerns the Department of Education's ongoing efforts to recover the amount of discharged Federal student loans from DeVry University, Inc."). Accordingly, the Department moved to dismiss DeVry's Complaint because its challenge to the initiation of a recovery proceeding is not ripe, fails to identify a final agency action, and is inconsistent with the prudential exhaustion doctrine.  Br. in Supp. of Defs.' Mot. to Dismiss at 11-19, ECF No. 21-1 ("Defs.' Br.").  Remarkably, DeVry does not argue otherwise.  *See generally* Opp. to Mot. to Dismiss, ECF No. 24 ("Pl.'s Opp.").  Even more remarkably, DeVry asserts that it "does not challenge the Recoupment Action[,]" *id.* at 13, and is instead contesting other actions.

Try as it might, DeVry cannot run away from the allegations in its Complaint, nor the consequences of its electing an administrative hearing.  Yet even if the Court were to consider DeVry's new theories, it should still dismiss the Complaint.  As set forth below, DeVry can only speculate about potential injury, rendering its claims unripe.  As to other agency actions, DeVry has failed to demonstrate any harm beyond a purported deprivation of a procedural right, which alone is insufficient to confer subject-matter jurisdiction.  And judicial review should not proceed until the Department makes a final decision concerning DeVry's liability, in accordance with Supreme Court precedent and the principles underlying the exhaustion doctrine.

## ARGUMENT

### I.      DeVry's Claims are Not Ripe for Review.

DeVry's opposition only confirms that its challenge fails to satisfy both the fitness and hardship prongs of the ripeness inquiry. Defs.' Br. at 11-15.  First, DeVry claims that the issues

are fit for review because it challenges final agency actions, including the Department's 2016 borrower defense rule. Pl.'s Opp. at 15-16. In doing so, DeVry insists that it is not in fact challenging the ongoing recovery proceeding. *Id.*; *see id.* at 1, 6, 13. That assertion is not only misleading but simply irreconcilable with DeVry's Complaint, which is the operative pleading, not Plaintiff's opposition brief. The Complaint leaves no doubt that DeVry "seeks to enjoin the . . . action of the Department . . . to recoup from DeVry tens of millions of dollars in federal student loans[.]" Compl. at 1; *see also, e.g.*, *id.* ¶ 10(c) ("Congress has not authorized the Department to . . . seek reimbursement in this manner[.]"); *id.* ¶ 10(e) (decrying "[t]he haphazard process by which the Department has prosecuted the Recoupment Action"). Indeed, the bulk of DeVry's Complaint—filed only after the Department announced its intent to pursue recovery—is devoted to its theory that "[t]he Recoupment Action [i]s [u]nlawful," *id.* ¶¶ 38-76; *see id.* ¶¶ 44-50 (alleging the recovery proceeding "[i]s [n]ot [a]uthorized [u]nder the 1995 BRD Rule"); *id.* ¶¶ 51-73 (similarly alleging that the recovery proceeding is not authorized by other regulations). Each cause of action asserted by DeVry is tied to the recovery proceeding. *Id.* ¶¶ 79, 85, 88-92, 95, 99-100, 105-08, 110. As is DeVry's theory of harm. *Id.* ¶ 75 ("If not enjoined, the Recoupment Action poses considerable harm to DeVry by, among other things, forcing DeVry to endure an administrative proceeding that denies DeVry due process of law."); *see also id.* ¶ 76 ("Thus, the Recoupment Action . . . will burden DeVry's ability to continue operating, thereby imposing existential pecuniary and reputational damage."); *see also id.* ¶ 11. Finally, DeVry does not request that the Court set aside the 2016 borrower defense rule or any other final agency action, but instead asks the Court to "[d]eclare that the Recoupment Action" is unlawful and "[i]ssue a permanent injunction enjoining . . . the Recoupment Action[.]" Compl., Relief Requested.

Accordingly, the pertinent issue is whether DeVry's claims concerning the recovery

proceeding are ripe for review. DeVry does not dispute the Department's explanation that it has only initiated a recovery proceeding against DeVry; that in that proceeding, the Department bears the burden of proof, including with respect to the underlying decisions to approve student loan discharges; and that any initial liability decision may be appealed to the Secretary, who is authorized to render a final decision on behalf of the agency. Defs.' Br. at 12-13; *see* Pl.'s Opp. at 15-18. DeVry also appears to concede that ongoing administrative proceedings (such as the recovery proceeding at issue here) are not fit for judicial review. Pl.'s Opp. at 15 & n.7. Accordingly, DeVry's claims, as asserted in the Complaint, are not ripe. While DeVry may rue its pleading decisions, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

Further, DeVry's Complaint does not "raise purely legal issues[.]" Pl.'s Opp. at 16. Defendants have identified numerous factual issues presented by DeVry's Complaint, including allegations that the Department failed to properly apply its regulations to 7,617 separate loans, Compl. ¶¶ 89-91; "failed to establish that the full relief granted to the individual borrowers is not improper or excessive[,]" *id.* ¶ 92; "failed to follow the procedures governing the adjudication of individual BDR Applications, including by failing to . . . consider" the borrower's evidence, *id.* ¶ 93(a); and failed to provide DeVry adequate notice and time to respond, *id.* ¶¶ 107-08. DeVry completely ignores these allegations,[1] and instead points to other issues, such as whether the

---

[1] These allegations also refute DeVry's assertion that it requests the "adjudicati[on]" of "purely legal issues not specific to DeVry." Pl.'s Opp. at 16. DeVry also lacks standing to challenge "legal issues not specific to" itself.

Department properly promulgated its borrower defense regulations. Pl.'s Opp. at 16. But DeVry challenges the legality of the borrower defense regulations as part of its argument that "[t]he Recoupment Action [i]s [u]nlawful." Compl. ¶¶ 38-76. *See Nerium Int'l, LLC v. FTC*, No. 19 C 7189, 2020 WL 5217152, at *6 (N.D. Ill. Aug. 31, 2020) ("[R]elevant case law from this circuit indicates that only purely legal questions are fit.").[2] Moreover, by DeVry's reasoning, a plaintiff could always obtain judicial review of ongoing administrative proceedings simply by arguing that the agency is acting in excess of authority. DeVry cites no precedent supporting such a sweeping proposition. By contrast, "[q]uestions of an agency's authority and jurisdiction have long been held by the courts to be particularly appropriate for initial agency determination." *Imperial Carpet Mills, Inc. v. Consumer Prod. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. 1981).

DeVry fails to advance its argument by asserting that "these legal issues cannot be decided in the Recoupment Action." Pl.'s Opp. at 16. More precisely, the hearing official cannot rule applicable statutes and regulations invalid. 34 C.F.R. § 668.90(d). But that regulation does not constrain the Secretary, whose decision is final and challengeable in district court. In any event, as DeVry acknowledges, the hearing official *can* consider, *inter alia*, "whether the Department's prosecution of this Recoupment Action complies with due process requirements" and "whether the Department has met its burden of proof in seeking recoupment." Br. of Resp't at 2, ECF No. 20-2. Moreover, the question is not whether the hearing official can consider the exact arguments that DeVry seeks to advance here, but rather whether that administrative process can provide DeVry relief such that the alleged injury will not materialize and judicial review is unnecessary. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it

---

[2] DeVry does not ask the Court to resolve only these supposedly ripe issues. *See generally* Compl.; Pl.'s Opp. Nor could it, as the ripeness doctrine is designed to "avoid inefficient and unnecessary 'piecemeal review.'" *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012).

4

rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003); *cf. Am. Coal. for Competitive Trade v. Clinton*, 128 F.3d 761, 766 n.6 (D.C. Cir. 1997) (making similar point in context of administrative exhaustion requirements). Here, DeVry can receive even more relief in the recovery proceeding than this Court can award; whereas the APA permits courts only to "hold unlawful and set aside" final agency action, 5 U.S.C. § 706(2), the Department's administrative process may lead to a finding that recovery is not warranted, 34 C.F.R. § 668.91(a)(2)(i).

Equally unavailing is DeVry's claim that it "need not show hardship for the purely legal challenges here because the Department has not identified any institutional interest favoring withholding of review." Pl.'s Opp. at 16-17. Unlike the precedent cited by DeVry, *id.* at 17, and as explained above, this case does not involve a "purely legal challenge," but instead concerns an ongoing proceeding requested by DeVry and which, according to DeVry, requires further factual development as to at least some of its claims. *Compare Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 582 (7th Cir. 2011) (lawsuit limited to facial challenge to final rule about the use of monitoring devices in trucks); *Pub. Serv. Elec. & Gas Co. v. FERC*, 485 F.3d 1164, 1168 (D.C. Cir. 2007) ("FERC's orders conclusively shift the cost of any additional restudies away from Neptune and onto the [regional transmission organization]."); *Sw. Power Pool, Inc. v. FERC*, 736 F.3d 994, 997 (D.C. Cir. 2013) ("Neither SPP nor FERC has suggested a need for further factual development."). Further, "even purely legal issues may be unfit for review[,]" including where, as here, a court is presented with "the classic institutional reason to postpone review: [the] need to wait for 'a rule to be applied to see what its effect will be.'" *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284-85 (D.C. Cir. 2003); *see also* Defs.' Br. at 11-13 (explaining that review would unduly interfere with administrative activity).

More broadly, DeVry misconstrues the hardship inquiry, including the consideration of institutional interests. *See Cephalon, Inc. v. Sebelius*, 796 F. Supp. 2d 212, 217 n.4 (D.D.C. 2011) (precedent considering institutional interests in context of hardship analysis "did not alter the two-prong ripeness test"). DeVry still has not demonstrated that "the hardship caused by deferral [of judicial review] would be 'immediate and significant.'" *Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 301 (D.D.C. 2018). Abandoning the theories of harm it articulates in its Complaint, *see* Compl. ¶¶ 75-76, DeVry instead focuses on the alleged "depriv[ation] . . . of its procedural right to object" to the 2016 rule and a 2021 announcement. Pl.'s Opp. at 17. Putting aside DeVry's failure to explain why the announcement was subject to notice and comment requirements, *see* 5 U.S.C. § 553, DeVry does not even attempt to articulate why this supposed procedural harm is a hardship warranting an exception to the normal course of review, especially as DeVry need not alter its behavior or pay any money to the Department while the recovery proceeding is underway, and at the end of the process DeVry may be found not liable. *See Texas*, 523 U.S. at 300; *see also, e.g.*, *Farrell-Cooper Mining Co. v. Dep't of the Interior*, 728 F.3d 1229, 1237 (10th Cir. 2013). Moreover, the Supreme Court has held that subject-matter jurisdiction is not established by asserting "a procedural right *in vacuo*." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Robins could not . . . allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").[3] Nor can DeVry establish hardship by merely pointing to its arguments that the Department has contravened the applicable statute of limitations or issued

---

[3] Three cases cited by DeVry were decided before *Summers* and *Spokeo*, and another did not appear to consider that line of precedent. *Eli Lilly & Co. v. Cochran*, 526 F. Supp. 3d 393, 408 (S.D. Ind. 2021); *Sierra Club v. DOE*, 287 F.3d 1256, 1263-64 (10th Cir. 2002); *Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995); *Nw. Tissue Ctr. v. Shalala*, 1 F.3d 522, 527 (7th Cir. 1993).

the 2016 rule and 2021 announcement "unlawfully," or its rather confusing "inference that the Department lost" loans. Pl.'s Opp. at 18. Again, these allegations do not demonstrate immediate and significant harm in deferring judicial review. *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 811 ("Petitioner's argument appears to be that mere uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis. We are not persuaded.").

## II. DeVry's Arguments Concerning Finality Are Unpersuasive.

Notwithstanding DeVry's decision to sue the Department only after the initiation of a recovery proceeding; its claim that "[t]he Recoupment Action [i]s [u]nlawful[,]" Compl. at 14; its claim that the injury it has suffered is a result of the recovery proceeding, *id.* ¶¶ 75-76; and its request that Court "[d]eclare that the Recoupment Action" violates the APA and permanently enjoin it or, alternatively, dictate the ground rules of the recovery proceeding, *id.*, Relief Requested; DeVry now seeks to avoid the Department's argument regarding finality by claiming that it "does not challenge the Recoupment Action." Pl.'s Opp. at 13. Rather, according to DeVry, the case should proceed because it is instead challenging the 2016 borrower defense rule, a 2021 announcement, the Department's discharge of student loans, and the "[d]etermination of [d]ischarge [e]ntitlement[.]" *Id.* at 7-15. The Court should reject this sleight of hand.

*2016 Borrower Defense Rule*. The Department agrees that the 2016 rule is final agency action. But DeVry lacks standing to challenge that rule. "To establish standing, a plaintiff has the burden to establish that he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling.'" *Larkin v. Fin. Sys. of Green Bay, Inc*., 982 F.3d 1060, 1064 (7th Cir. 2020) (citation omitted). DeVry must, of course, allege some harm to it from the 2016 rule; it cannot just challenge it because it disagrees with it. In its brief, DeVry claims that it was harmed because it

7

was deprived of a "right to object to the" 2016 rule "pursuant to mandatory notice and comment requirements." Pl.'s Opp. at 8; *see also id.* at 9. That only states a procedural injury though, which is insufficient to establish standing. *See supra* at 6; *see also, e.g.*, *Ctr. for Biological Diversity v. Haaland*, 849 F. App'x 2, 3 (D.C. Cir. 2021) ("The failure to provide for notice and comment . . . is a procedural injury that on its own does not confer standing."). Nor does DeVry state harm by arguing that it "participates in the Department's student loan program and is thus subject to and directly affected by the Department's BDR Rules and policies." Pl.'s Opp. at 8. "The mere fact that Plaintiff is regulated by [an agency] does not confer standing to bring [a] suit." *Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 579 (S.D.N.Y. 2018). Additionally, DeVry's statement that the failure to follow notice and comment requirements harms DeVry because it "allow[s] the Secretary to resurrect long-expired BDR claims (and therefore recoupment claims) against DeVry," Pl.'s Opp. at 9, is conclusory, conflates standing with the merits, and confirms that DeVry's actual complaint lies with the recovery proceeding. Moreover, the fact that the hearing official cannot declare the 2016 regulation invalid, *see id.*, says nothing about whether DeVry has established a cognizable harm.

*2021 Announcement*. DeVry asserts that an electronic announcement issued by the Department improperly "declar[ed] a new presumption of full relief for student borrowers," and that DeVry was supposedly harmed by its inability to object to the announcement through notice and comment, *id.* at 7-8. Again, this alleged procedural injury is inadequate to establish standing. DeVry cannot remedy this deficiency by arguing that the announcement "affects all potential recoupment claims." *Id.* at 9. DeVry bears the burden to show a concrete and particularized injury that it has suffered as a result of the announcement, not that the announcement might affect hypothetical recovery proceedings. *See Larkin*, 982 F.3d at 1064. It has not carried that burden.

Even if DeVry had standing to challenge the announcement—and it does not—it has failed to establish that the announcement constitutes final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1977). DeVry's naked assertion that the announcement "has legal consequences," Pl.'s Opp. at 8, is inadequate, as the challenged presumption itself has no legal effect on borrowers or institutions such as DeVry, and is at most a general statement of policy meant to ""announce[] the course which the agency intends to follow in future adjudications," *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974). *See* Rescission of Borrower Defense Partial Relief Methodology (Aug. 24, 2021), https://perma.cc/F2HJ-73QN; *Colwell v. HHS*, 558 F.3d 1112, 1124 (9th Cir. 2009) (noting that a general statement of policy "does not have a present-day binding effect, that is, it does not impose any rights and obligations" (citations omitted)); *see also Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005). The announcement is not the Department's final word on any borrower defense application. And as explained below, the presumption applies in the context of proceedings to which schools are not a party.

*Loan Discharges*. Assuming the Department's decisions to discharge certain loans of former DeVry students constituted final agency actions, DeVry lacks standing to challenge those decisions. Once again DeVry claims that it is harmed because "the Department unlawfully deprived DeVry of its procedural rights to object." Pl.'s Opp. at 11. And once again, DeVry fails to identify a concrete and particularized harm beyond this alleged procedural right. *See id.* at 10-11; *see also Sweet v. Cardona*, --- F. Supp. 3d ---, 2022 WL 16966513, at *9 (N.D. Cal. Nov. 16, 2022). DeVry attempts to distinguish *Sweet* on the ground that "those discharges were pursuant to [the Department's] settlement authority, not BDR authority." Pl.'s Opp. at 10. But the relevant analysis cited by Defendants, Defs.' Br. at 16, concerned the court's "summar[y] [of] the relevant

9

regulations," *Sweet*, 2022 WL 16966513, at *9, which applies with equal force here.[4] Additionally, in any recovery proceeding—including the one DeVry elected—the Department bears the burden of establishing that the standard for borrower defense has been met. 34 C.F.R. § 668.89(b)(2)(iii). DeVry has therefore failed to establish that it has suffered any cognizable harm as a result of the underlying loan discharges.

*The "Recoupment Notice*." Finally, DeVry argues that the Court may review the Department's August 15, 2022 letter to DeVry, which informed DeVry that the Department "intends to initiate a recovery proceeding[,]" Initiation of Collection Letter at 1, ECF No. 1-2. *See* Pl.'s Opp. at 11-14. But DeVry has identified no cognizable harm traceable to that letter. *Id.* Nor can it, as the letter merely apprised DeVry of the Department's finding and allowed DeVry to seek review of the anticipated recoupment. *Id.* Because DeVry responded by requesting a hearing, no penalty has been imposed. *Id.* at 7. While that hearing may result in a finding of liability, DeVry can only speculate about any such outcome, and in any event DeVry disclaims any challenge to that review process. *Id.* at 13; *see, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (citation omitted)). As DeVry itself admits, "[t]he only issue is whether DeVry is liable for the discharged amounts[,]" Pl.'s Opp. at 12-13—which the Department has not determined with finality.

---

[4] According to DeVry, the court in *Sweet* "explained" that "'no recoupment action could be initiated' based on those discharges." Pl.'s Opp. at 10-11 (citation omitted). That is, at best, imprecise; consistent with the Department's position, the court stated that "no recoupment action could be initiated in any event as a result of *the settlement*." *Sweet*, 2022 WL 16966513, at *10 (emphasis added). Any recoupment proceedings against the schools that intervened in *Sweet*— proceedings that are entirely theoretical at this point—would have to be based on separate decisions that the standard for borrower defense is met. DeVry thus cannot distinguish *Sweet*.

DeVry has also failed to demonstrate that the letter constitutes final agency action. As to the first *Bennett* factor, DeVry argues that the letter "marks the consummation of the Department's decisionmaking process on its right to discharge student loans for" certain former DeVry students. Pl.'s Opp. at 11. That is factually incorrect; the Department's decision to discharge the debts predates the Initiation of Collection Letter. *See Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://perma.cc/W4A9-SZV6 ("BD Claims Approval"); *see supra* at 9-10 (explaining why DeVry cannot challenge that decision). DeVry's theory is also legally deficient. At most, the Initiation of Collection Letter reflects a final decision to start a recovery proceeding, but "[a] final agency action ordinarily 'means a final order imposing some sort of sanction' and 'emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding.'" *Nerium Int'l*, 2020 WL 5217152, at *4 (quoting *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992)). Indeed, if DeVry's view were correct, the initiation of any administrative proceeding would constitute final agency action, simply because the agency had decided that it could pursue an action against a regulated entity. Both binding and persuasive authority, as well as logic, foreclose such an argument. *See, e.g.*, *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-44 (1980); *Abbs*, 963 F.2d at 926. DeVry attempts to distinguish *Standard Oil* on the ground that "[t]he Recoupment Notice is neither an administrative complaint nor premised on a tentative 'reason to believe' standard[.]" Pl.'s Opp. at 12. But nothing in *Standard Oil* indicates that the Court's analysis is strictly limited to those types of factual circumstances, as confirmed by cases such as *Abbs* and *Fourth Branch* (cases entirely ignored by DeVry). *See Abbs*, 963 F.2d at 925-26; *Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746-47 (D.C. Cir. 2001).

Nor can DeVry rely on *Western Illinois Home Care, Inc. v. Herman*, 150 F.3d 659 (7th

  
Cir. 1998), cited in Pl.'s Opp. at 8, 12. Unlike in *Western Illinois Home Care*, DeVry may avail itself of an administrative process, including an appeal to the Secretary, 34 C.F.R. § 668.91(c)(2); the Department's position concerning liability has not been determined with finality, *see* Initiation of Collection Letter at 7; and the Department's letter imposes no immediate legal consequences on DeVry, such as requiring DeVry to "face steeper penalties for future violations than [it] would otherwise have risked[,]" *W. Ill. Home Health Care*, 150 F.3d at 663.

Similarly, DeVry has not established that the Initiation of Collection Letter satisfies the second *Bennett* prong. DeVry again refers to the underlying loan discharges, Pl.'s Opp. at 14, but, to reiterate, those predate the Initiation of Collection Letter, *see* BD Claims Approval. The fact that the letter refers to the discharge decisions does not render the former a final agency action. Nor does the fact that a Department official determined that a recovery proceeding was appropriate. *See* Pl.'s Opp. at 14. Again, that reasoning would eviscerate the finality doctrine, as judicial review would be warranted at the outset of any administrative proceeding. DeVry has thus failed to demonstrate that legal consequences flow from the Initiation of Collection Letter itself.

## III.    DeVry Has Failed to Exhaust Available Administrative Remedies.

DeVry claims that exhaustion is not required because "[n]either the HEA nor the Department's regulations impose an exhaustion requirement." *Id.* at 18. This argument is based on a fundamental misunderstanding of the exhaustion doctrine, as DeVry is conflating statutory exhaustion with prudential exhaustion. *See Illinois Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 922 (7th Cir. 2022) ("Even when no statutory provision requires exhaustion, courts apply the doctrine prudentially."); *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746-47 (6th Cir. 2019) (distinguishing exhaustion doctrines). Only the latter is at issue here. Nor can DeVry demonstrate that exhaustion is not required by relying on *Darby v. Cisneros*, 509 U.S. 137, 153 (1993). *See*

Pl.'s Opp. at 18-19. In that case, the Supreme Court held that "[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under" 5 U.S.C. § 704. *Darby*, 509 U.S. at 154. As previously explained, the initiation of a recovery proceeding is not a final agency action; thus *Darby* does not apply.

The D.C. Circuit's decision in *Career Education, Inc. v. Department of Education*, 6 F.3d 817 (D.C. Cir. 1993), is on point. In that case, the Department determined that a school lost its eligibility to participate in the federal student loan program because its main campus closed. *Id.* at 818. The Department issued a notice of termination and immediately ended the school's eligibility, thereby initiating "extensive administrative procedures for hearing and appeal[.]" *Id.* The school initially did not utilize these remedies but filed a complaint in district court, arguing in part that the Department misconstrued its own regulation. *Id.* at 818-19.

The D.C. Circuit held that "[o]nce the Department acted on [the school's] reeligibility application, . . . no matter how tenuous the Department's interpretation of its own regulation, Career must exhaust its administrative remedies." *Id.* at 819-20. The court emphasized that the notice of termination "merely begins the termination proceedings, . . . and becomes final only after the requested hearing and an opportunity to appeal to the Secretary[.]" *Id.* at 820. It explained that "[i]t is now well-settled that in such a circumstance a plaintiff must exhaust administrative remedies—in order to give the Department's top level of appeal an opportunity to place an official imprimatur on the Department's interpretation of its regulations before it is reviewed by a federal court." *Id.* Further, the D.C. Circuit determined that *Darby* did not compel a different result: "There the Supreme Court held only that an exhaustion requirement—in that case permitting appeal to an agency head—may not be imposed by a federal court if the administrative adjudication is otherwise final and the available appeal is only a discretionary one." *Id.*

13

As in *Career Education*, the Department here has only initiated a recovery proceeding, and any liability determination is final only after an opportunity to appeal to the Secretary. 34 C.F.R. § 668.91(c)(2)(vii). And just as the existence of an underlying final rule did not alter the D.C. Circuit's exhaustion analysis, *see Career Educ.*, 6 F.3d at 819-20, neither should the underlying borrower defense rule, announcement, or loan discharges affect the Court's conclusion here.

DeVry's attempts to distinguish *Career Education* are unpersuasive. It first notes that case "concerned a writ of mandamus[,]" not an APA claim, and quotes the court's language that "mandamus is an extraordinary writ that will not issue where there exist other administrative or legal remedies." Pl.'s Opp. at 19. But exhaustion of administrative remedies is likewise a constraint on APA claims. *See Darby*, 509 U.S. at 146. Moreover, the mandamus issue appears to have become moot before the D.C. Circuit issued its decision. *See Career Educ.*, 6 F.3d at 818 (recounting that the school's complaint initially sought a writ of mandamus ordering the Department to act on its application, and "[t]hree weeks later the Department acted"). Additionally, DeVry fails to explain how *Career Education* is "in contravention of Supreme Court and Seventh Circuit precedent." Pl.'s Opp. at 19. As noted, the D.C. Circuit distinguished *Darby*, and DeVry cites no case where the Seventh Circuit applied *Darby* to non-final agency actions. *See Shawnee Trail Conservancy v. USDA*, 222 F.3d 383, 389 (7th Cir. 2000), cited in Pl.'s Opp. at 18-19 ("Although [§ 704] only permits review of agency actions that are 'final,' any definitive agency decision is considered 'final,' and therefore reviewable, unless the agency's regulations require exhaustion as a prerequisite to judicial review[,]" and citing *Darby*).

DeVry fares no better in arguing that the Court should excuse DeVry from the exhaustion requirement, particularly as DeVry itself elected further proceedings. Pl.'s Opp. at 19-20; *see* Compl. ¶ 37. According to DeVry, "[t]he Department's inability to resolve the legal issues raised

here in the Recoupment Action . . . excuses exhaustion." Pl.'s Opp. at 19-20. But again DeVry misconstrues the issue, which instead centers on whether the administrative process can grant the relief sought by the school. *See, e.g.*, *Gonzalez v. O'Connell*, 355 F.3d 1010, 1018 (7th Cir. 2004); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978). On that point, DeVry offers only that "[t]he remedy here . . . will protect DeVry (and others) in any number of potential future recoupment proceedings." Pl.'s Opp. at 20. But that theory, unsupported by any authority, is backwards; if exhaustion were excused whenever the remedy in district court were adequate, the exhaustion doctrine would cease to exist. Moreover, DeVry's reference to "potential future" actions affecting unnamed third parties only emphasizes the tenuousness of its position. *See, e.g.*, *Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020) (noting that a court may not issu[e] advisory opinions that do not affect the rights of the parties before the court.").

## IV.  The Court Should Reject DeVry's Request for Alternative Relief.

Defendants explained that the Court should reject DeVry's requested "alternative relief." Defs.' Br. at 19-20. In response, DeVry simply claims, without elaboration, that Defendants "stretch[] the holdings" of two cases that directly refute DeVry's position. Pl.'s Opp. at 20. Additionally, DeVry cites no authority to buttress its request that the Court "declare . . . what procedures would govern the rights of the parties" in the recovery proceeding. Compl., Relief Requested ¶ E; *see* Pl.'s Opp. at 20.[5] Thus, it appears DeVry is abandoning that request. And insofar as DeVry is simply repackaging its request for the type of relief afforded under the APA, *see* Pl.'s Opp. at 20, such a request is premature in light of the doctrines discussed above.

## CONCLUSION

The Court should grant Defendants' motion to dismiss pursuant to Rule 12(b)(1) and (b)(6).

---

[5] This request also contradicts DeVry's claim that it is not challenging the recovery proceeding.

Dated March 3, 2023                         Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave., Suite 7-5395
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
CA Bar No. 267183

*Counsel for Defendants*

16