# EXHIBIT 2

## UNITED STATES DEPARTMENT OF EDUCATION
### OFFICE OF HEARINGS AND APPEALS

| | | |
|---|---|---|
| *In the Matter of* | ) | |
| | ) | Docket No. 22-54-SP |
| DeVry University, | ) | Borrower Defense Proceeding |
| | ) | OPE ID: 01072700 |
| Respondent. | ) | |
| | ) | |

## BRIEF OF RESPONDENT DEVRY UNIVERSITY

## I.    Introduction

Per this Tribunal's November 1, 2022 order, Respondent DeVry University submits this brief to address (1) the "extent of an Administrative Law Judge's adjudicatory authority in this proceeding, particularly as it pertains to Departmental regulations and other policies" and (2) the "threshold legal issues identified in Respondent's November 1, 2022 prehearing brief."

*First*, this Tribunal lacks the authority to adjudicate several of the "threshold legal issues" underlying this proceeding ("Recoupment Action" or "Action"), as they concern the statutory validity and facial constitutionality of the Borrower Defense to Repayment ("BDR") regulations. *See, e.g.*, 34 C.F.R. § 668.90(d). These issues include (i) whether the underlying BDR regulations were lawfully promulgated; (ii) whether the Secretary may retroactively apply the 2017 BDR regulations' definition of "notice" to BDR Applications pertaining to loans disbursed before July 1, 2017; (iii) whether the Secretary improperly modified the definition of "notice" in the 2017 BDR regulations without notice and comment; and (iv) whether the BDR regulations are facially defective on due process grounds.

*Second*, because these threshold issues concern the ability of the Department of Education ("Department") to bring this action *ab initio*, and because their resolution is likely dispositive of most (if not all) of the claims underlying the Recoupment Action, and for other reasons set forth below, this Tribunal should stay this proceeding pending judicial review. Citing 34 C.F.R. § 668.81(g), the Department suggests a stay is improper, but the Department is wrong. Section 668.81(g) applies only to collateral attacks on inchoate agency decisions, whereas Respondent has initiated a federal challenge seeking direct review of two final agency actions, which is proper under 5 U.S.C. §§ 702, 704. *See DeVry Univ., Inc. v. U.S. Dep't of Educ.*, No. 1:22-cv-05549 (N.D. Ill. Oct. 11, 2022), ECF. No. 1, at ¶ 18. And, in any event, a stay would be warranted even if § 668.81(g) applied, as explained below.

*Finally*, if the federal court does not dispense with this Action altogether, this Tribunal will have the authority to adjudicate any remaining threshold issues before deciding the merits of the Department's recoupment claims, including (i) whether the Secretary may discharge loans *en masse* under the BDR regulations; (ii) whether the Department's prosecution of this Recoupment Action complies with due process requirements; and (iii) whether the Department has met its burden of proof in seeking recoupment. Resolution of these issues will require the Tribunal to analyze the plain language of the BDR regulations in view of their authorizing statute and legislative history, as well as relevant decisions of the Secretary. As shown below, this Tribunal should exercise its own judgment and need not defer to the Department's policy guidance or interpretation of the relevant BDR regulations.

## II.    Background

The Department currently seeks to recoup from Respondent more than $23 million in federal student loans that the Department unilaterally discharged on behalf of 649 borrowers, based on Respondent's allegedly misleading advertisements regarding the employment prospects of its graduates. The Department's discharge of the loans underlying this Action and the initiation of the Action itself violate regulatory, statutory, and constitutional principles. For that reason, on October 11, 2022, Respondent filed a federal action challenging the Department's recoupment demand under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., and the Due Process Clause of the Fifth Amendment to the United States Constitution. *See supra* at p. 2. The District Court for the Northern District of Illinois is well-equipped to adjudicate Respondent's claims as part of, *inter alia*, that Court's statutory authority to review final agency actions. *See* 5 U.S.C. § 704.

The same day, Respondent also formally responded to the Department's demand in order to preserve Respondent's ability to challenge the Recoupment Action, stay the payment deadline, and avoid financial penalties. On October 31, 2022, Respondent submitted to this Tribunal a prehearing brief identifying five threshold legal issues to be resolved before this Action may properly proceed:

1.    May the Secretary discharge loans *en masse* under any of the 1995, 2017, or 2020 versions of the Borrower Defense to Repayment ("BDR") regulations, and then seek recoupment for such loans?

2.    Did the Secretary properly promulgate the specific BDR regulations under which it has initiated the Recoupment Action?

3.    May the Secretary retroactively apply the 2017 BDR regulations' definition of "notice" to BDR Applications pertaining to loans disbursed before July 1, 2017?

3

4.    In promulgating the 2017 BDR regulations, did the Secretary improperly modify the definition of "notice" in violation of the mandatory notice-and-comment rules set forth under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq.?

5.    Is the Department's prosecution of the Recoupment Action, including its refusal to give Respondent the basic facts and documents upon which the Department relies for its recoupment claims (e.g., the exhibits and appendices to its own Common Statement of Facts), consistent with the requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution?

As explained below, because this Tribunal lacks the authority to adjudicate certain of these threshold issues, Respondent respectfully requests that this proceeding be stayed pending judicial review.

## III.    Argument

### A.    This Tribunal Cannot Address the Statutory Validity and Facial Constitutionality of the BDR Regulations

The law is clear that this Tribunal lacks the authority to address Respondent's questions 2–4, because they concern the statutory validity of the BDR regulations. *See* 34 C.F.R. § 668.90(d) (noting that a hearing official "is bound by all applicable statutes and regulations" and may not "[r]ule them invalid"). To the extent question 5 presents a facial constitutional challenge to the BDR regulations, such a challenge is also beyond this Tribunal's authority to adjudicate. *In re Smithville R-II School Dist. Impact Aid Program*, No. 91-4-I, 1992 WL 12936379, at *1, U.S. Dep't of Educ. (O.H.A. May 18, 1992) ("[A]n administrative law judge does not have the authority to overturn an established regulation of the Department."); *cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) ("Adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." (simplified)).

4

**B.      The Tribunal Should Stay This Proceeding**

This Tribunal's lack of authority notwithstanding, the above issues (which have never before been adjudicated under 34 C.F.R. Subpart G) must be promptly resolved not only for purposes of adjudicating this Action, but also in light of the Department's stated intent to seek recoupment from Respondent for thousands of *additional* loans beyond its current demand. *See DeVry Univ., Inc. v. U.S. Dep't of Educ.*, *supra* at p. 2, ECF. No. 1, at ¶ 29 (noting that the Department has already discharged "roughly $71.7 million . . . for approximately 1,800 students" and "inten[ds] to recoup the discharged sums from DeVry"). Thus, the immediate resolution of these preliminary issues may obviate not only the present dispute but also potential future recoupment disputes. *Cf. In re Lori L. Brattin*, 2012 WL 3586195, at ¶ 35,121 (C.B.C.A. Aug. 9, 2012) ("Tribunals write decisions not only to resolve particular disputes before them, but also to provide parties with advice which can be applied to similar situations in the future, so that additional disputes can be avoided.").

The Department's underlying loan discharge and subsequent recoupment demand are also final agency actions ripe for review in federal court. S*ee* 5 U.S.C. § 704.[1] And as noted, Respondent's federal action is pending before the Northern

---

[1] Agency action is "final" under the APA if it poses "direct and appreciable legal consequences." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). There are two final Department actions warranting judicial review: (1) the Department's recoupment demand and (2) the Department's discharge of the underlying loans. *First*, the recoupment demand constitutes final agency action insofar as it reflects that the Department has reached concrete legal conclusions regarding Respondent's liability for the loans the Department unilaterally discharged (without any input from Respondent). *See W. Illinois Home Health Care, Inc. v. Herman*, 150 F.3d 659, 661 (7th Cir. 1998) (finding final agency action for purposes of the

District of Illinois, which has both the authority and jurisdiction to adjudicate each of the threshold issues identified in Respondent's prehearing brief. As explained below, this proceeding should be stayed pending that review.

1. **Section 668.81(g) Does Not Bar This Tribunal from Staying This Proceeding**

The Department claims Respondent should have the "opportunity to raise [its] constitutional and APA-related arguments," but only *after* "the conclusion of these proceedings." *See* Dep't Prehearing Br. at 4–5. Although that view might make sense in some circumstances, it is illogical, inefficient, and not required here. The Department would commit this Tribunal to an extensive administrative process concerning questions that will likely be resolved in the pending federal action (not only for this Action, but for others that may follow). By contrast, staying this proceeding would maximize judicial economy by avoiding potentially unnecessary effort and expense. *See, e.g.*, *In re Elec. Boat Corp.*, 2019 WL 2235702, at ¶ 37,331 (A.S.B.C.A. May 7, 2019) (staying an administrative proceeding pending judicial review and finding the "risk of duplicative proceedings" weighs "strongly in favor of a stay for reasons of judicial economy"); *cf. De Almeida v. United States*, 459 F.3d 377,

---

APA under materially identical circumstances). *Second*, the Department's discharge of the underlying loans constitutes final agency action because it is an act by which "rights or obligations have been determined" (*i.e.*, the students' loan obligations). *Bennett*, 520 U.S. at 178 (citation omitted). Notably, Respondent need not bear the "legal consequences" flowing from the loan discharge. Rather, "the relevant inquiry" is the "existence" of legal consequences, "not who bears them." *Hoosier Env't Council v. Nat. Prairie Indiana Farmland Holdings, LLC*, 564 F. Supp. 3d 683, 703 (N.D. Ind. 2021). Thus, to the extent Respondent challenges the legality of the group adjudication process, the Department's seemingly unlawful loan discharge provides a proper basis for judicial review. *See Bennett*, 520 U.S. at 177–78 (finding reviewable an APA claim where, as here, the challenged action was not directed at the petitioners).

383 (2d Cir. 2006) (affirming district court order mandating a petitioner refile in another jurisdiction in part because refiling would avoid "the serious risk of duplicative proceedings and conflicting results").

A stay is particularly appropriate where, as here, "the outcome of the case pending before [a federal court] has the potential to impact the outcome of the instant case." *In re New Mexico Pub. Educ. Dep't*, No. 20-16-I, 2022 WL 6755551, at *1, U.S. Dep't of Educ. (O.H.A. July 29, 2022) (staying an administrative proceeding on jurisdictional grounds and "in the interest of judicial economy"). This Action may be the first of many similar recoupment actions, depending on threshold rulings by the federal district court, which may eliminate most (if not all) of the claims against Respondent. It is also a proceeding of first impression, and there is good reason to be concerned that the Department has exceeded its statutory and regulatory authority, as evidenced by the Department's recent adoption of new rules and procedures to replace the defective ones challenged here. *See* 87 Fed. Reg. 65,904 (Nov. 1, 2022). These issues are sufficiently serious to warrant a stay.

The Department objects to a potential stay, citing 34 C.F.R. § 668.81(g). That rule provides that "[u]nless directed by a court of competent jurisdiction, the hearing official, or the Secretary for good cause, if a collateral attack is brought in any court concerning all or any part of any proceeding under this subpart, the challenged proceeding shall continue without regard to the pendency of that court proceeding." The Department suggests that § 668.81(g) bars this Tribunal from entering a stay, but the Department is wrong for three reasons.

7

*First*, by its plain terms, § 668.81(g) limits the availability of an administrative stay only in the context of a "collateral attack" on a Subpart G proceeding. Here, Respondent directly challenges two final agency actions under the APA and has not mounted a collateral attack on an inchoate agency decision. *See supra* at p. 5 & n.1. The APA provides regulated entities an avenue for direct judicial review, which does not constitute a "collateral attack." *See Heikkila v. Barber*, 345 U.S. 229, 235–36 (1953) (clarifying that an APA challenge to an administrative action is a "direct attack"); *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1291 (11th Cir. 2015) ("We find persuasive the opinion of the Ninth Circuit sitting en banc, which recently held that California could not raise a collateral attack—that is, make *a challenge outside an APA claim*." (emphasis added)).

*Second*, even if § 668.81(g) were to apply here, it contemplates that this Tribunal may stay this proceeding for any lawful reason. The "good cause" modifier in § 668.81(g) does not limit this Tribunal's authority, because the grammatical structure of § 668.81(g) makes clear that "good cause" applies only to qualify the *Secretary's* authority to issue a stay. *See* 34 C.F.R. § 668.81(g) ("Unless directed by a court of competent jurisdiction, the hearing official, *or the Secretary for good cause*, if a collateral attack is brought in any court concerning all or any part of any proceeding under this subpart, the challenged proceeding shall continue without regard to the pendency of that court proceeding." (emphasis added)).

Under the rule of the last antecedent, the "good cause" modifier does not apply to "a court of competent jurisdiction" or a "hearing official," because "for good cause"

8

does not follow either phrase. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."); *see also* Rule of the Last Antecedent, *Black's Law Dictionary* (11th ed. 2019) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing."). Therefore, were this Tribunal to find § 668.81(g) applicable at all, a stay may be issued even without a formal finding of "good cause."

*Third*, and in any event, "good cause" exists sufficient to justify a stay of this proceeding, as explained below.

### 2.    Good Cause Justifies a Stay of this Action

This Tribunal has "good cause" to stay this proceeding. "Good cause" exists if (1) the applicant has shown a likelihood of success on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure other parties to the proceeding; and (4) the issuance of the stay will not frustrate the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see In re LabMD, Inc.*, No. 9357, 2013 WL 6826948, at *3–4 (F.T.C. Dec. 13, 2013) (finding "good cause" is shown via the four *Nken* factors); *In re Philadelphia Elec. Co.*, Nos. 50-277, 50-278, 1973 WL 18161, at *1 (A.E.C. Nov. 7, 1973) (similar). Respondent satisfies each element.

*First*, Respondent is likely to succeed on the merits of its claims before the federal court. To prevail on its APA claims, Respondent must show either (i) that the Department has exceeded its "statutory jurisdiction, authority or limitations";

(ii) that the Department has prosecuted the Recoupment Action "without observance of procedure required by law"; or (iii) that the Recoupment Action is "arbitrary, capricious, an abuse of discretion, or . . . not in accordance with law." *See* 5 U.S.C. §§ 706(2)(A), (C), (D).

While this Tribunal need not (and may not) rule on the merits of these issues, it can and should find that there is a substantial likelihood Respondent will prevail on multiple grounds, including but not limited to:

- **The Department Has Exceeded Its Statutory Authority**. The Department exceeded its statutory authority by adjudicating the BDR Applications in a single group (or groups) and by prosecuting the Recoupment Action. Congress has not authorized the Department to discharge Direct Loans *en masse*. *See, e.g.*, 20 U.S.C. §§ 1087e(f), 1087e(h), 1094(c)(3), 1098aa. Rather, Congress has explicitly authorized the discharge of repayment amounts or terms only in limited circumstances. Indeed, the Department itself concedes that "[n]either Title IV [of the HEA] nor the [APA] specifically authorizes" group discharge, including "the 'class action' provision of the [2017 BDR regulations], 34 C.F.R. §§ 685.222(f)–(h)."[2] The Recoupment Action must therefore be set aside. 5 U.S.C. § 706(2)(D).

- **The Department Violates Applicable Regulatory Requirements**. The Department violated its regulatory authority by failing to adjudicate the BDR Applications in accordance with the procedures specified in the BDR regulations. *Ind. Ass'n of Homes for the Aging Inc. v. Ind. Off. of Medicaid Pol'y & Plan.*, 60 F.3d 262, 266 (7th Cir. 1995) (finding an agency action is unlawful where it is "inconsistent with" governing regulations). The Department's recoupment demand, for example, does not indicate whether the Department considered any of the required factors relevant to determining the proper discharge amount for loans disbursed on or after July 1, 2017, including (i) the value of the education the borrower received; (ii) the value of the education that a reasonable borrower in the borrower's circumstances would have

---

[2] *See* Mem. from U.S. Dep't of Educ. Principal Deputy Gen. Counsel Reed Rubinstein to Sec'y of Educ. Betsy DeVos, at 4 n.2 (Jan. 12, 2021), https://static.politico.com/d6/ce/3edf6a3946afa98eb13c210afd7d/ogcmemohealoans.pdf.

received; or (iii) the value of the education the borrower should have expected given the information provided by Respondent. *See* 34 C.F.R. § 685.222(i)(2)(1) (2017 version). Further, in granting the underlying discharge, the Department wrongly applied a rebuttable presumption of full relief derived from policy memoranda that were issued in violation of then-controlling processes for issuing guidance documents. The presumption of complete relief is inappropriate, including because the Department failed to observe the required "period of public notice and comment of at least 30 calendar days" prior to issuance of said guidance. *See* 34 C.F.R. § 9.14(h)(1) (2020 version).

- **Recoupment is Barred by the Limitations Period in the 1995 BDR Regulations**. The Department ignores the limitations period set forth in 34 C.F.R. § 685.206(c)(3), which bars the Department from pursuing recoupment for a loan amount more than three years after the last day of the award year in which the borrower attended DeVry, absent actual notice of the claimed defense to repayment within that three-year period. Because Respondent did not receive any of the BDR Applications relating to 7,061 of the 7,512 underlying loans governed by the 1995 BDR regulations within this three-year period (and in fact, did not receive any notices related to the borrowers until 2020, at the earliest), the Secretary is time-barred from recouping any amounts for those 7,061 discharged loans (approximately $21,735,305).

- **The Department Has Failed to Show a Lawful Basis for Seeking Recoupment**. The Department's recoupment demand does not provide adequate information to assess the grounds on which the underlying borrowers purported to assert a defense to repayment. For example, many of the BDR Applications do not assert reliance on Respondent's allegedly deceptive advertisements (the supposed basis for the Department's recoupment demand).[3] Thus, the Department has failed to provide a factual basis—let alone evidence—to show that any of those BDR Applications have asserted an "act or omission" that would "give rise to a cause of action against [Respondent] under state law." *See* 34 C.F.R. § 685.206(c)(1) (1995 version). Nor has the Department provided sufficient facts or evidence to show that any of the underlying borrowers have stated a basis for finding a "substantial

---

[3] In any event, reliance could not have been credibly alleged as to loans disbursed after September 2015, when Respondent ceased running the disputed ads. *See* Hearing Request at 27–28. Nor could reliance have been credibly alleged after Respondent's highly publicized FTC settlement in January 2016. *Id*.

misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or continue attending, the school or decided to take out a Direct Loan." *Id*. § 685.222(d) (2017 version).

- **The Regulations Under Which the Department Purports to Act Are Facially Unconstitutional**. The Department relies on an impermissibly vague state-law standard that purports to allow the Department to grant relief and seek recoupment without any identification, analysis, or adjudication of a school's violation of pertinent state law. The relevant BDR regulations are therefore facially unconstitutional. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment."). The 2017 BDR regulations further violate due process principles because they do not provide a durational limit on the Department's ability to initiate a recoupment proceeding, including without limitation seeking recoupment based on BDR Applications the Department originally received as early as 2012 but delayed processing for years. For these and other reasons, Respondent is likely to prevail on the merits of its federal claims.

*Second*, Respondent will suffer irreparable harm if this proceeding is not stayed. As discussed, Respondent seeks to stay the Recoupment Action because it unlawfully disregards basic precepts of due process and is premised on regulations that are facially deficient on due-process grounds. Because the Recoupment Action presents an imminent and concrete threat to Respondent's due-process rights—which is mostly outside the authority of this Tribunal to abate—Respondent satisfies the required showing of "irreparable harm" sufficient to justify a stay. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (affirming the issuance of a preliminary injunction after the district court found that the "potential deprivation" of the "constitutional right to due process" posed irreparable harm, and noting that "suits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the

12

threatened constitutional deprivation itself" (citation omitted)); *Davis v. Dist. of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998) ("[A] prospective violation of a constitutional right constitutes irreparable injury.").

*Third*, the Department will suffer no harm from a stay. The Department is a party to Respondent's federal action and will have a fair opportunity to be heard. Nor will the underlying students be harmed or impacted in any way, as their loans have already been discharged and Respondent only challenges the Department's ability to seek recoupment based on those discharges. That the Department waited nearly ten years to initiate this Action after first receiving BDR Applications demonstrates that time is not of the essence for the Secretary.

*Finally*, the entry of a stay would serve the public interest. As noted, a stay would save resources and allow the parties to fully brief the threshold issues before a court of competent jurisdiction—which issues would also arise in any subsequent recoupment actions against Respondent—and if decided in Respondent's favor, would substantially limit the scope of this proceeding and save this Tribunal's time and resources. The public has an interest "in having legal questions decided on the merits, as correctly and expeditiously as possible." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see also Delisle v. Speedy Cash*, No. 3:18-CV-2042, 2019 WL 7755931, at *5 (S.D. Cal. Oct. 3, 2019) (finding a stay pending appellate review serves the public interest because the public has a prevailing interest in the efficient use of judicial resources and immediate review would reduce the risk of inconsistent rulings). A stay should therefore issue.

### C. If the Federal Court Does Not Resolve This Action Entirely, This Tribunal May Adjudicate Any Remaining Threshold Issues Without Deference to the Department's Interpretation of Applicable Regulations

As detailed below, and to the extent this Action proceeds, this Tribunal may adjudicate (i) whether the BDR regulations allow the Secretary to discharge loans *en masse* (they do not); (ii) whether the Department has met its burden of proof in seeking recoupment (it has not); and (iii) whether the Department has satisfied the demands of due process in prosecuting this Action (it has not). In so adjudicating, this Tribunal need not and should not defer to the Department's internal policy guidelines or interpretation of the BDR regulations.

### 1. This Tribunal Need Not and Should Not Defer to the Department's Internal Policy Guidelines or Interpretation of the BDR Regulations

The Department's interpretation of its own regulations is not determinative of their meaning or owed any deference in this proceeding. Here, the Department is "an advocate for its position and does not speak for or stand in the shoes of the Secretary," and therefore "is not entitled to clothe itself in the mantle of *Chevron* deference." *In re Tech. Career Inst.*, No. 92-91-ST, 1993 WL 13957187, at *11, U.S. Dep't of Educ. (O.H.A. Oct. 8, 1993). Rather, the Tribunal must interpret the BDR Regulations based on their plain language and in view of their authorizing statute and legislative history, as well as relevant decisions of the Secretary. *Id.*; *see also In re Phillips Colls., Inc.*, No. 94-27-ST, 1994 WL 1026091, at *6 n.3, U.S. Dep't of Educ. (O.H.A. Mar. 24, 1994) (refusing to apply *Chevron* deference).

Underscoring this conclusion is the fact that, in contrast to 34 C.F.R. Subpart

14

H, which explicitly demands deference to the agency's claimed interpretation, *see* 52 Fed. Reg. 30,114 (Aug. 12, 1987), 34 C.F.R. Subpart G (controlling here) contains no such instruction. *Cf. Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (citation omitted)). Nor must this Tribunal defer to Department "policy statements, agency manuals, and enforcement guidelines" as they "lack the force of law." *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

### 2. This Tribunal May Adjudicate the Remaining Legal Issues

#### a. The 1995 and 2020 BDR Regulations Do Not Authorize Group Discharge of BDR Applications

If this Tribunal is required to adjudicate this Action after the federal proceeding, or if this Tribunal decides to adjudicate this Action now, it must determine whether "the Secretary may discharge loans *en masse* under any of the 1995, 2017, or 2020 versions of the [BDR] regulations, and then seek recoupment for such loans." *See* Resp't Prehearing Br. at 2. This question involves a straightforward interpretation and application of the BDR regulations, an exercise squarely within this Tribunal's authority. As Respondent explained in its October 11, 2022 hearing request, the 1995 and 2020 versions of the BDR Regulations—***which together control over 99% of the loans underlying this Action***—do *not* permit mass discharge. *See* Hearing Request at 14–15. Rather, the Department is required to assess the merits of each BDR Application individually, along with applicable offsets and defenses (e.g., waiver and preclusion), *before* seeking recoupment from

15

Respondent. *Id.*

While the Department now claims that it individually adjudicated the underlying BDR Applications for which it seeks recoupment, *see* Dep't Prehearing Br. at 2, that claim lacks any support, and the Department has failed to *demonstrate* whether and how it has done so. Indeed, the overwhelming evidence suggests the Department did not engage in *any* critical individualized assessment of the merits of each BDR Application and each individual borrower's entitlement to relief.[4] And as explained below, the burden is on the Department to demonstrate the underlying discharge was proper *before* seeking recoupment. *See, e.g.*, 34 C.F.R. § 668.87(a)(1)(ii) (2017 version); *id.* § 668.87(a)(1)(ii) (2020 version).

> **b.** **The Department Has Not Met Its Burden of Proof Regarding Whether the Underlying Loans Were Properly Discharged**

This Tribunal must also assess whether the Department has satisfied its burdens of proof and persuasion in prosecuting the Recoupment Action. *See* 34 C.F.R. § 668.89(b)(3)(i) ("The proponent of any factual proposition has the burden of proof with respect thereto."); *id.* § 668.89(b)(3)(iii) ("The designated department official has the burden of persuasion in a borrower defense and recovery action.").

As Respondent detailed in its hearing request, the Department has wholly failed to meet its burden for at least the following reasons: (i) the Department has failed to provide sufficient evidence or explanation to support the discharge for the

---

[4] That many of the BDR Applications are patently inadequate—including, for example, because they fail to assert reliance and/or damages—is indicative of the Department's failure to conduct an individualized review.

16

individual loans underlying each BDR Application and instead relies on a "common" statement of facts; (ii) the Department has refused to provide the evidence supporting its common statement of facts; (iii) the Department has failed to provide evidence supporting the discharges it made for each borrower; (iv) the Department has not made the calculations required by 34 C.F.R. § 685.222(i) to assess the value of a DeVry education; (v) the Department has applied a "presumption of full relief" for each of the borrowers, in direct contradiction of the regulatory requirement in 34 C.F.R. § 685.222(i); and (vi) the Department has failed to demonstrate that each individual borrower satisfied the state law requirements necessary to establish a valid borrower defense. *See* Hearing Request at 19–20.

### c. The Department Has Violated Respondent's Due Process Rights in Prosecuting the Recoupment Action

Respondent is entitled to due process before the Department deprives it of a protected interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). But throughout the discharge of the underlying loans, Respondent was not provided sufficient notice and an opportunity to be heard at a "meaningful time and in a meaningful manner," as due process requires. *See id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). This Tribunal may rule on whether, in this Action, due process has been satisfied. *See Laurel Kash v. Texas Educ. Agency*, No. 19-73-CP, 2019 WL 9078399, at *13, U.S. Dep't of Educ. (O.H.A. Nov. 22, 2019) ("[T]his tribunal has the authority to interpret the constitutionality of the statute as it applies to TEA in this case."); *In re Liberty Acad. of Bus.*, No. 96-132-SP, 1997 WL 1048258, at *3, U.S. Dep't of Educ. (O.H.A. Dec. 8, 1997) (deciding whether due process was satisfied before reaching the

merits of the claims presented).

As Respondent has explained, *see* Hearing Request at 20–21, the Department violated Respondent's due process rights and continues to hamper Respondent's ability to meaningfully defend itself against the Recoupment Action by refusing to provide Respondent with basic information about the claims at issue, such as: (i) a calculation of the relief sought (e.g., the appropriate offsets and whether interest is included); (ii) a full statement of facts (e.g., all relied-upon exhibits and appendices); (iii) all other relevant documents and information (e.g., internal reports and policy directives considered by the Department in making its findings and determinations); and (iv) the BDR Applications of the nine borrowers for whom Respondent has not received a readable application.[5] This Tribunal should order the Department to provide this information to Respondent before any adjudication of individual recoupment claims, should this Action proceed at all.

## IV.     Conclusion

This Tribunal is confronted with several potentially dispositive threshold legal issues concerning the propriety of the Department's recoupment demand. The resolution of these issues would substantially limit the scope of this proceeding and would also obviate potential future demands. Because this Tribunal lacks the authority to adjudicate these threshold issues, however, this Action should be stayed pending judicial review. If this Action is not resolved in Respondent's pending federal

---

[5] Respondent also incorporates by reference its due process arguments outlined in its October 11, 2022 hearing request. *See* Hearing Request at 20–21.

action, this Tribunal should rule in Respondent's favor on any remaining threshold issues—without deference to the Department's interpretation of its own regulations or internal policies—before any surviving individual recoupment claims are adjudicated.

Dated: November 22, 2022        Respectfully submitted,

                            */s/ Jay Vaughan*

                            JAY VAUGHAN
                            DAVID E. MILLS
                            CAITLIN B. MUNLEY
                            COOLEY LLP
                            1299 Pennsylvania Avenue NW, Suite 700
                            Washington, D.C. 20004
                            Telephone: (202) 842-7800
                            jvaughan@cooley.com
                            dmills@cooley.com
                            cmunley@cooley.com

                            KATHERINE LEE CAREY
                            COOLEY LLP
                            10265 Science Center Drive
                            San Diego, CA 92121
                            Telephone: (858) 550-6000
                            kleecarey@cooley.com

                            *Attorneys for Respondent*
                            *DeVry University*

## **CERTIFICATE OF SERVICE**

This 22th day of November, 2022, a true and correct copy of the foregoing Brief of Respondent DeVry University was served via the Office of Hearings and Appeals Electronic Filing System (OES) and by e-mail, delivery requested, on the following counsel for the United States Department of Education.

> Todd Davis, Esq.
> Sue Lin
> Samuel R. Bissell
> John Patrick Bailey
> Office of General Counsel
> United States Department of Education
> 400 Maryland Avenue, S.W.
> Washington, D.C. 20202
> Email: Todd.Davis@ed.gov
> Email: Sue.Lin@ed.gov
> Email: Samuel.Bissell@ed.gov
> Email: John.Bailey@ed.gov


*/s/ Joseph J. Vaughan*
Joseph J. Vaughan


*Counsel for DeVry University*