## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEVRY UNIVERSITY, INC. | |
| Plaintiff, | Case No. 1:22-cv-05549 |
| v. | Honorable LaShonda A. Hunt |
| UNITED STATES DEPARTMENT OF EDUCATION and | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| DR. MIGUEL CARDONA, *in his official capacity as Secretary of the United States Department of Education*, | |
| Defendants. | |

## INTRODUCTION

1.      By this First Amended Complaint, DeVry University, Inc. ("DeVry") seeks to enjoin as a violation of Article I of the U.S. Constitution the elaborate recoupment adjudication scheme the United States Department of Education ("Department") has created by regulatory fiat—exceeding its delegated authority from Congress—and imposed on DeVry to force the school to pay for massive discharges of student debt the Department unilaterally granted.  DeVry also challenges as unconstitutional the structure of the adjudicatory process imposed on the school, which relies on administrative judges who are improperly insulated from and not accountable to the President in violation of Article II of the U.S. Constitution.  Finally, DeVry challenges related and equally improper final agency actions that undergird the recoupment action initiated against DeVry.

2.      Based on a single directive from Congress simply to determine the defenses students may assert to the repayment of federal loans—a "Borrower Defense to Repayment" ("BDR") rule that lay essentially dormant for two decades—the Department has fashioned an

1

extensive and convoluted scheme (a) to approve *en masse* borrower loan discharges, (b) to presume entitlement to full relief in amounts the Department determines on the basis of allegations for which the Department's officials alone make findings, and (c) to force institutions to pay these amounts through a Department-established and -controlled recoupment adjudication process. Officials from the Department prosecute the recoupment claims, and administrative law judges ("ALJs") from the Department adjudicate them. The ALJs, inferior officers of the United States, exercise executive authority but are insulated from and not accountable to the President of the United States.

3. In addition, the rules and regulations the Department recently enacted to modify the recoupment scheme improperly allow "group" adjudications, revive long-expired claims through a modification of the limitations period enacted in violation of notice-and-comment requirements, and establish a presumption of full relief against institutions in violation of internal agency notice requirements, among other legal infirmities.

4. DeVry is caught in the crosshairs of the Department's unconstitutional recoupment scheme. In August 2022, the Department declared that DeVry was liable to the Department for some $23 million—an amount reflecting federal student loans the Department unilaterally discharged on behalf of 649 borrowers without statutory authority and in violation of regulatory requirements (the "Recoupment Action"). Rather than pay the improper assessment (or risk default and a collection action), and in the absence (at the time) of a right to challenge the recoupment scheme in federal court before enduring the unconstitutional proceeding, DeVry was forced to request and endure a hearing before a Department ALJ to challenge the Department's findings and conduct.

5. At the same time, DeVry filed the Complaint in this case challenging certain final

agency actions that are part of the Recoupment Action because the Department (i) violated its authority in extending retroactively the limitations period on discharge and recoupment claims and otherwise in its prosecution of the Recoupment Action; (ii) exceeded its statutory mandate and violated controlling procedures in adjudicating the underlying borrower defense claims *en masse*; and (iii) violated DeVry's due process rights by failing to provide adequate notice or a meaningful opportunity to contest the discharged sums on which the recoupment claims are based. Recognizing the Recoupment Action might proceed even while its challenges were pending, DeVry alternatively seeks declaratory relief to clarify the recoupment scheme's procedures to ensure DeVry has a fair opportunity to present a meaningful defense and to clarify the appropriate legal basis (if any) for the Department's demand.

## BACKGROUND

6. Founded in 1931 by inventor Dr. Herman DeVry, Chicago-based DeVry University has become a leader in online education. Accredited by the Higher Learning Commission, DeVry offers academic programs in technology, business, and healthcare across a range of degree levels. DeVry has educated hundreds of thousands of students over its almost century-long history. Most have earned degrees, enjoyed successful careers and, to the extent they obtained loans to attend DeVry, repaid those loans.

7. In recent years, a number of former DeVry students have sought discharge of their federal loans by filing Borrower Defense to Repayment applications ("BDR Applications") with the Department. By filing a BDR Application, a qualifying borrower may seek discharge of his or her federal loans under certain conditions, which the Department may grant only after it has followed very particular rules. As to the 649 BDR Applications underlying this action, the Department has disregarded those rules by summarily discharging the underlying loans without

individualized assessment and by pursuing recoupment of the discharged sums without following applicable procedures or providing adequate notice of the underlying claims sufficient to allow DeVry to defend itself.

8.      In 1993, Congress authorized the federal government to lend directly to eligible students ("Direct Loans"). Ordinarily, Direct Loans must be repaid. However, Congress directed the Department to publish regulations specifying "which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment." 20 U.S.C. § 1087e(h). The Department thus published the initial BDR regulations, effective in 1995, establishing an "interim" process by which borrowers could assert a defense to repayment of their Direct Loans based on certain acts of the school they attended.

9.      However, in 2016—after more than two decades of agency inaction on the interim BDR process—the Department, without congressional approval, vastly expanded the BDR regulations by claiming authority to discharge loans *en masse*, and then to seek recoupment without meaningful school participation in the process. Pursuant to that supposed authority—and without affording basic due process—the Department now seeks to recoup millions of dollars in discharged loans from DeVry.

10.      Specifically, on February 16, 2022, the Department announced it had granted over 1,800 BDR Applications filed by former DeVry students based on allegedly deceptive advertising that DeVry ceased running by September 2015.[1] Like the rest of the world, DeVry learned of this action from the media, and despite DeVry's subsequent request for information, the Department

---

[1] *See* Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

provided none.

11.    Then, on August 15, 2022, the Department notified DeVry of its intent to recoup more than $23 million in discharged debt on behalf of 649 borrowers, based on DeVry's allegedly deceptive advertising that had ended years earlier ("Recoupment Notice"). The Department also provided—for the first time—some (but not all) of the students' identities referenced in the press release and the amounts of their discharged loans.

12.    The Recoupment Notice came on the heels of a proposed $6 billion class settlement involving almost 200,000 BDR Applications from students attending more than 150 colleges[2] (including many who are part of this action), and immediately before President Biden's declaration of loan forgiveness for millions of borrowers.

13.    The legal shortcomings presented by the Recoupment Notice are numerous. For example, nothing in the Recoupment Notice indicates (i) whether the Department determined that each of the underlying BDR Applications should be granted based on individualized facts; (ii) on what basis the Department is authorized to initiate a recoupment action beyond the regulatorily prescribed limitations period (which, if applied, would bar recovery of more than 90% of the $23 million the Department demands from DeVry); (iii) why the Department believes that DeVry is liable for claims of students who will receive (or have received) settlement funds or loan forgiveness outside of the BDR process; or (iv) whether the Department has ensured, as it must under 20 U.S.C. § 1087e(h), that no student has received "an amount in excess of the amount such borrower has repaid on such loan[s]."

14.    The Department has also grossly exceeded its statutory authority by enacting the

---

[2] *See* Order Granting Preliminary Approval of Class Action Settlement, *Sweet v. Cardona*, No. 3:19-cv-03674 (N.D. Cal. Aug. 4, 2022), ECF No. 307.

various versions of the BDR regulations that it now seeks to enforce against DeVry, and by discharging the underlying loans without proper adjudication, often beyond the applicable limitations period. Congress created a *limited* right to repayment relief for students in *specific* circumstances, subject to the Department defining defenses consistent with that mandate. But the Department issued regulations vastly exceeding that authority, and now attempts to apply those regulations to impose financial liability on DeVry without due process of law.

15.     The Department's regulations—specifically, beginning with the 2017 BDR Rules—vastly exceed the limited authority Congress delegated to the Department to specify by regulation the specific acts or omissions that a student may assert as a defense to repayment of federal student loans in an action. *See* 20 U.S.C. § 1087e(h). That specific and narrow delegation of authority provides no basis for the recoupment scheme that the Department has fashioned. The Department's recoupment scheme is thus an unconstitutional exercise of legislative authority by the Department.

16.     In the Department's scheme, the Department alone determines which borrower defense claims it can assert against an institution by approving discharges in amounts that the Department selects, as the Department's Recoupment Notice exemplifies. While the Department's regulations purport to authorize a Department ALJ to preside over recoupment proceedings brought against an institution, the Department's regulations authorize the Secretary to decide borrower defense claims asserted on the Secretary's behalf.

17.     The Department's regulations, which allow the Department's ALJs to preside over recoupment proceedings, including the Recoupment Action, also violate Article II because the Department's ALJs exercise executive authority but are not politically accountable to the President of the United States. Indeed, an ALJ subject to at least two layers of good cause removal presides

over the Recoupment Action.

18. The Department's final decision to discharge thousands of loans without meaningful participation from DeVry violates regulatory, statutory, and constitutional principles. Both the BDR regulations and the process by which the Department is prosecuting the Recoupment Action conflict with other applicable rules, the Administrative Procedure Act ("APA"), Articles I and II of the United States Constitution, and the Due Process Clause of the Fifth Amendment to the United States Constitution, in at least the following ways:

a.  The Department has discharged thousands of loans without providing DeVry a meaningful opportunity to participate in the discharge process or challenge the underlying obligations, as required by law.

b.  The Department has failed to provide sufficient notice to DeVry of the BDR Applications, including the basic information DeVry needs to understand and defend against both the individual student claims and the Recoupment Action. Here, that means providing, at a minimum, information about each student's attendance, the basis for each student's alleged defense to repayment, and any receipt of offsetting payments—among other things plainly relevant to the merits of the claims, DeVry's defenses, and amounts purportedly owed.

c.  The Department has adjudicated the underlying BDR Applications in a single group process, but there is no lawful basis for such an act. Congress has not authorized the Department to adjudicate BDR Applications and seek reimbursement in this manner, and the Department cannot circumvent controlling regulations or suspend due process because the volume of claims is large. Rather, the Department must *individually* assess the viability of each student's claimed defense to repayment—

and thereby eliminate ineligible claims and identify applicable offsets to relief—
*before* seeking reimbursement. Instead, the Department turned the process on its
head by requiring DeVry to sort it out, without providing the information DeVry
needs to do so.

d.  The Department relies on regulations promulgated without proper notice and
comment, and on policy memoranda issued in contravention of then-controlling
processes for issuing guidance documents.

e.  The haphazard process by which the Department has prosecuted the Recoupment
Action lacks clear standards for establishing liability, eliminates nearly every
protection to meaningful legal process to which DeVry is entitled, and eviscerates
congressional and constitutional limitations on the Department's power to seek
recoupment.

19.     DeVry thus is currently suffering considerable constitutional and pecuniary harm
by being forced to endure the ongoing Recoupment Action, which is exacerbated by the
Department's seemingly unfettered discretion to impose devastating financial and operational
demands on DeVry, including the possibility of a letter of credit that would irreversibly impact
DeVry during the administrative process and create needless uncertainty for thousands of current
students.

20.     Accordingly, DeVry seeks injunctive and declaratory relief to stay the
unconstitutional recoupment process, enforce pertinent constitutional and statutory limits on the
Department's authority, clarify the parties' rights and the governing rules, and, if a recoupment
action were to move forward, ensure a fair process so DeVry can present a meaningful defense.

## PARTIES

21.     Plaintiff DeVry is a university incorporated under Illinois law with a principal place of business in Naperville, Illinois.

22.     Defendant United States Department of Education is an executive agency of the United States Government. The Department's principal address is 400 Maryland Avenue SW, Washington, D.C. 20202.

23.     Defendant Dr. Miguel Cardona is the Secretary of the Department. Dr. Cardona is sued in his official capacity and maintains an office at 400 Maryland Avenue SW, Washington, D.C. 20202.

24.     All defendants are collectively referred to hereinafter as the "Department."

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1331, because this action arises under Articles I and II of the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, the APA, 5 U.S.C. § 500 et seq., and Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1001 et seq. The HEA provides federal courts with subject matter jurisdiction over actions against the Secretary of Education. 20 U.S.C. § 1082(a)(2).

26.     Judicial review of the Department's final agency actions is authorized under the APA. DeVry has "suffer[ed a] legal wrong because of agency action." 5 U.S.C. § 702. The Department's 2017 BDR Rules, discharges of the underlying loans, and the recoupment demand constitute final agency action permitting judicial review. *Id*. § 704; *see also Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

27.     Judicial review of Defendants' allegedly unconstitutional conduct is authorized

under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

28.     Because this is an action against an officer and agency of the United States, venue is proper under 28 U.S.C. § 1391(e)(1).

29.     This Court may award the requested declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, the APA, 5 U.S.C. § 706, the Mandamus Act, 28 U.S.C. § 1361, the HEA, 20 U.S.C. § 1082, and the Court's inherent equitable powers.

## FACTUAL ALLEGATIONS

**I.     DEVRY SETTLES CLAIMS RELATING TO THE "90-PERCENT ADS" WITHOUT A FINDING OR ADMISSION OF WRONGDOING**

30.     Beginning in 2014, certain governmental authorities investigated DeVry for advertised statements regarding the employment prospects of its graduates, namely, that 90-percent of students in certain of DeVry's programs obtained jobs in their field within six months of graduation ("90-percent ads").

31.     In January 2014, the Federal Trade Commission ("FTC") sent DeVry a civil demand for information regarding the 90-percent ads and other topics. Although DeVry had significant documentation and analysis supporting the 90-percent ads, it stopped running the ads in September 2015.

32.     On January 27, 2016, after a two-year investigation, the FTC filed a federal action against DeVry alleging the 90-percent ads violated section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by constituting deceptive practices affecting commerce.[3] DeVry vigorously disputed the FTC's allegations.

33.     On December 19, 2016, DeVry settled the FTC dispute and stipulated to a judgment

---

[3] *See* Complaint for Permanent Injunction and Other Equitable Relief, *FTC v. DeVry Educ. Grp.*, No. 2:16-cv-00579 (C.D. Cal. Jan. 27, 2016), ECF No. 1.

under which DeVry agreed—without admitting wrongdoing—to pay approximately $50 million to the FTC for distribution to eligible then-current and former DeVry students, and to forgive approximately $50 million in loan balances for eligible then-current and former DeVry students. Of the 649 borrowers underlying this action, 602 were eligible to receive relief under the FTC settlement.

34.    Around this time, DeVry also settled claims relating to the 90-percent ads with the Department and the Attorneys General of New York and Massachusetts. Under these settlements, DeVry paid—without admitting wrongdoing—$2.25 million for distribution to students in New York and $455,000 for distribution to students in Massachusetts. Under the settlement agreement with the Department, DeVry posted a letter of credit exceeding $68 million (which the Department has since allowed to expire). Over the next four years, DeVry settled other class and individual actions based on the 90-percent ads, also without any admission or finding of wrongdoing.[4]

35.    To date, DeVry has paid over $122 million to former students to resolve claims relating to the 90-percent ads.

## II.    THE DEPARTMENT GRANTS BDR RELIEF *EN MASSE* AND INITIATES THE RECOUPMENT ACTION

36.    On June 23, 2020, the Department informed DeVry that the Department had received and would investigate several thousand BDR Applications from then-current and former DeVry students. The Department undertook to inform DeVry of the applications on a rolling basis and allowed DeVry to respond to each, which DeVry promptly began to do.

37.    To date, DeVry has received over 47,000 BDR Applications from the Department. Many of the applications were filed as many as eight years before the Department sent them to

---

[4] *See, e.g.*, *McCormick, et al. v. Adtalem Global Education Inc., et al.*, No. 2018-CH-04872 (Cir. Ct. Cook Cty.).

DeVry. Equally problematic, many of the Department's notices to DeVry attached BDR Applications that are illegible, blank, or incomplete; contain names that do not match those provided by the Department; are duplicative of other applications; or are otherwise inaccessible (including because they are missing passwords or provided incorrect passwords). Other of the Department's notices failed to attach a BDR Application, or attached BDR Applications from students who did not attend DeVry.

38.     On February 16, 2022, without communicating with or notifying DeVry, the Department issued a press release (i) summarizing the "findings" of its "investigation" into the thousands of BDR Applications that it claims had been filed based on DeVry's 90-percent ads (conduct that DeVry settled with the FTC in 2016 without any admission or finding of wrongdoing); (ii) announcing roughly $71.7 million in discharges for approximately 1,800 students; and (iii) stating its intent to recoup the discharged sums from DeVry in the "first approved" recoupment action "associated with a currently operating institution."[5]  The Secretary publicly endorsed these findings, stating that the Department's "findings show too many instances in which students were misled into loans at institutions or programs that could not deliver what they'd promised."[6]

39.     Shortly thereafter, DeVry asked the Department for information about the announced discharge, including the identities of the borrowers. Apart from continuing to forward BDR Applications, the Department did not reply to DeVry's requests or contact DeVry about its decision. Indeed, after receiving several initial notices of individual BDR Applications, DeVry

---

[5] *See* Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.

[6] *See id.*

received no further communications from the Department, other than one isolated (and unexplained) e-mail directed to one borrower (who is not affiliated with the Recoupment Action) that the Department had granted that borrower's BDR Application.

40.     On March 31, 2022, James Kvaal, Undersecretary of the Department, sent a letter to Congressman Robert C. Scott stating that the Department had "recently announced the approval of more than $70 million in borrower defense claims for former students from DeVry" and that "[i]f those claims are ultimately adjudicated as final liabilities against DeVry, the Department will seek repayment of those liabilities under the authority granted by 34 C.F.R. § 685.308." *See* March 31, 2022 Letter from James Kvaal to Robert C. Scott ("Exhibit A").

41.     Then, on August 15, 2022, the Department sent DeVry the Recoupment Notice, purportedly under the authority of Title IV of the HEA, 20 U.S.C. § 1070 et seq. (as amended). *See* Aug, 15, 2022 Letter from Susan D. Crim to Thomas L. Monahan III ("Exhibit B"). The Department demands $23,638,104 in discharged amounts for 649 students who purportedly attended DeVry between 2008 and 2015, and who the Department claims have successfully asserted defenses to repayment based on alleged "substantial misrepresentations" and state law causes of action involving the 90-percent ads. The Recoupment Notice is signed by Susan D. Crim, Director of the Department's Administrative Actions and Appeals Service Group, who is authorized to seek recoupment on the Department's behalf.

42.     The Recoupment Notice states that the Department would impose the multimillion-dollar collection on September 6, 2022, unless DeVry responded as provided therein, and that the stated amount constitutes only a portion of the $71.7 million already discharged. *See* Ex. B at 6. The Notice also cautions that the "Department . . . anticipates the number of approved discharge amounts to continue to grow as the Department continues to adjudicate additional applications

from former DeVry students." *Id.* Accordingly, the Department reserves "the right to seek future recovery actions, as warranted, for collection from DeVry for those additional approved amounts." *Id.* The Department further threatens to impose financial penalties if DeVry fails to respond or timely pay the demanded sum. *Id.* at 7.

43.     On August 19, 2022, DeVry replied to the Recoupment Notice, raising critical deficiencies that encumbered DeVry's ability to respond. *See* Aug. 19, 2022 Letter from Joseph J. Vaughan to Susan D. Crim ("Exhibit C"). Accordingly, DeVry asked the Department for specific information and an extension of the allotted 20-day response period (the minimum provided under 34 C.F.R. § 668.87(a)(1)(iii)).

44.     On August 29, 2022, the Department answered by extending the response deadline to September 28, 2022, and by enclosing certain materials concerning the BDR Applications that had not previously been provided. *See* Aug. 29, 2022 Letter from Susan D. Crim to Joseph J. Vaughan ("Exhibit D"). Yet the Department declined DeVry's request for the exhibits and appendices supporting the Department's Statement of Facts, claiming that providing DeVry with the Statement of Facts alone (without its referenced exhibits and appendices) was sufficient under the BDR regulations. *Id.*

45.     On September 12, 2022, DeVry responded to the Department, reiterating its request for the missing BDR Applications and the exhibits and appendices to the Statement of Facts, and noting other serious legal deficiencies in the discharge and recoupment processes. *See* Sept. 12, 2022 Letter from Joseph J. Vaughan to Susan D. Crim ("Exhibit E"). The Department responded on September 19, 2022, restating its position "that it has met its obligation[s]" under applicable regulations, but providing information to assist DeVry in accessing all but two of the missing BDR Applications and a list of 36 state statutes on which the BDR Applications are purportedly based.

*See* Sept. 19, 2022 Letter from Susan D. Crim to Joseph J. Vaughan ("Exhibit F"). The Department also extended DeVry's response deadline to October 11, 2022. *Id*.

46.     On October 11, 2022, concurrently with filing this Complaint, and as circumstances at the time allowed, DeVry formally responded to the Recoupment Notice to stay the payment demand, preserve DeVry's ability to challenge the Recoupment Action, and avoid immediate financial and potentially other penalties.

47.     On October 25, 2023, an administrative law judge ("ALJ") in the Department's Office of Hearings and Appeals issued an order and notice of pre-hearing conference in *In the Matter of DeVry University*, Docket No. 22-54-BD.

48.     As of the filing of this First Amended Complaint, the Department's Recoupment Action remains ongoing.

## III.    THE DEPARTMENT'S BORROWER DEFENSE RULES

### A.    The Higher Education Act & Direct Loan Program

49.     In 1965, Congress adopted the HEA to "mak[e] available the benefits of postsecondary education to eligible students." 20 U.S.C. § 1070(a).

50.     In 1993, Congress amended Title IV of the HEA to establish the William D. Ford Federal Direct Loan Program ("Direct Loan Program"), under which students may borrow directly from the federal government to finance their postsecondary education. *See* Student Loan Reform Act of 1993 ("Student Loan Reform Act"), Pub. L. No. 103-66, 107 Stat. 341 (codified at 20 U.S.C. §§ 1087a–h); 20 U.S.C. § 1087a(a).

51.     To partake in the Direct Loan Program, a school must, among other things, "accept[] responsibility and financial liability stemming from its failure to perform its functions" under the program. 20 U.S.C. § 1087d(a)(3). Schools must also adhere to "such other provisions as the Secretary determines are necessary to . . . promote the purposes of [the program]."

*Id.* § 1087d(a)(6). For example, the Secretary may require an irrevocable letter of credit, or impose a heightened cash monitoring obligation requiring a school to credit a student's account with institutional funds before receiving those funds from the Title IV program. *See* 34 C.F.R. §§ 668.175(c), 668.162(d). Either of these actions may impose an extreme financial burden that alone would force a school to cease operations.[7]

52.     In connection with certain federal loans available to student borrowers, Congress has specified that: "[n]otwithstanding any other provision of State or Federal law, the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part, except that in no event may a borrower recover from the Secretary, in any action arising from or relating to a loan made under this part, an amount in excess of the amount such borrower has repaid on such loan."  20 U.S.C. § 1087e(h).

**B.     The Borrower Defense to Repayment Rules**

53.     Since the enactment of the Direct Loan Program, the procedures by which student borrowers may seek (and the Department may grant) repayment relief have been delineated by regulations referred to as the "BDR Rule." The BDR Rule allows a student borrower to seek discharge of his or her federal loan balance by asserting certain arguments depending on when the loan was disbursed. Such claims must generally assert that a participating school committed an act or omission relating "to the making of the loan for enrollment at the school" that would "give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1).

---

[7] *See* Danielle Douglas-Gabriel, *ITT Technical Institutes Shut Down After 50 Years in Operation*, The Washington Post (Sept. 6, 2016), https://www.washingtonpost.com/news/grade-point/wp/2016/09/06/itt-technical-institutes-shut-down-after-50-years-in-operations/ ("Financial analysts said the deathblow to ITT came in the form of a letter of credit.").

54.     There are three relevant versions of the BDR Rule at issue here: the "1995 BDR Rule"; the "2017 BDR Rule"; and the "2020 BDR Rule."  While the Department has issued another BDR Rule that is set to become effective in July 2023 ("the 2023 BDR Rule"), the Department has not invoked that Rule in the Recoupment Action.

55.     Pursuant to these BDR Rules, the Department seeks to recoup from DeVry amounts for 7,622 discharged loans on behalf of 649 borrowers.  As outlined below, the Recoupment Action is unconstitutional and unlawful, and must be enjoined.

## IV.     THE RECOUPMENT ACTION IS UNCONSTITUTIONAL

56.     The Department's ALJs—who preside over recoupment proceedings in the Department—are not removable by the President at will, thereby allowing unelected officials to wield significant executive power without political accountability in violation of Article II of the United States Constitution.  Moreover, the Department's complex recoupment scheme—fashioned without congressional authorization—violates Article I of the United States Constitution.

### A.     The Department's ALJs Lack Political Accountability in Violation of Article II

57.     Article II of the United States Constitution "vest[s]" all "executive Power" in the President of the United States.  U.S. Const., art. II, § 1, cl. 1.  The President alone is charged with "tak[ing] Care that the Laws be faithfully executed."  U.S. Const., art. II, § 3.  This command necessarily encompasses rules and regulations enacted pursuant to Congress's delegation of authority to the Department to specify by regulation defenses to repayment of federal student loans. 20 U.S.C. § 1087e(h).

58.     The concentration of Executive power solely in the President "ensure[s] . . . accountability" of the Executive Branch to the people.  *Printz v. United States*, 521 U.S. 898, 922 (1997).  Indeed, "the restraints of public opinion" is one of the "greatest securities" for the "faithful

exercise" of Executive power.  The Federalist No. 70 at 424, 428–29 (Alexander Hamilton).

59.     "[T]he President alone and unaided could not execute the laws."  *Myers v. United States*, 272 U.S. 52, 117 (1926).  Thus, the Constitution authorizes the President to delegate some executive authority to a "principal Officer in each of the executive Departments" as well as "inferior officers" of the United States in these executive departments.  U.S. Const. art. II., § 2, cl. 2.

60.     In connection with the President's delegation of executive authority, the President must have the "authority to remove those who assist him in carrying out his duties."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010).  "[T]he President's removal power is the rule, not the exception."  *Seila Law LLC v. CFPB*, 140 S.Ct. 2183, 2206 (2020).  This removal power applies both to principal officers of the United States as well as to inferior officers of the United States who wield executive power.

61.     The Department's ALJs are inferior officers of the United States, housed within the Department of Education, an executive department.  Yet, these ALJs are shielded from at-will removal by the President, thereby insulating them from the democratic accountability Article II requires for those who exercise executive power.  This scheme is unconstitutional.

## 1.     The Department's ALJs Are Inferior Officers of the United States

62.     The Department's ALJs satisfy each of the considerations the Supreme Court identified in *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018), to conclude that an agency's ALJs are inferior officers of the United States.

63.     First, the Department's ALJs "hold a continuing office established by law."  *Id.* at 2053.  Congress requires the Secretary to establish in the Department of Education an Office of Administrative Law Judges.  20 U.S.C. § 1234(a).  The ALJs "shall be appointed by the Secretary in accordance with [5 U.S.C. § 3105]."  20 U.S.C. § 1234(b).

—18—

64. Second, the Department's ALJs "have all the authority to ensure fair and orderly adversarial hearings," including taking testimony, conducting trials, ruling on the admissibility of evidence, and possessing the power to enforce compliance with discovery orders, *Lucia*, 138 S. Ct. at 2053:

a. Congress has authorized the Department's ALJs to "order a party to . . . (A) produce relevant documents; (B) answer written interrogatories that inquire into relevant matters; and (C) have depositions taken." 20 U.S.C. § 1234(g)(1).

b. Congress has provided that "[i]n order to carry out the provisions of subsections (f)(1) and (g)(1), the judge is authorized to issue subpoenas and apply to the appropriate court of the United States for enforcement of a subpoena. The court may enforce the subpoena as if it pertained to a proceeding before that court." *Id.* § 1234(g)(2).

c. In the context of the Department's recoupment scheme, ALJs presiding over the recoupment proceedings significantly shape the administrative record, through their powers to "accept only evidence that is relevant and material to the proceeding and is not unduly repetitious," 34 CFR § 668.89(b)(5), "restrict the number of witnesses or exclude witnesses to avoid undue delay or presentation of cumulative evidence," *id.* § 668.89(b)(6), and manage expert witnesses, *id.* § 668.89(b)(7).

d. Although ALJs presiding over recoupment proceeding are "not authorized to issue subpoenas," *id.* § 668.90(b)(1), the Department's regulations empower the ALJs to enforce compliance with discovery deadlines by authorizing the ALJs to "terminat[e] the hearing and issu[e] a decision against a party that does not meet those time limits" set by the ALJs, *id.* § 668.90(c)(3).

65.     Third, the Department's ALJs "issue decisions" that contain factual findings, legal conclusions, and appropriate remedies, with the "capacity" to be the "last-word" where the agency declines to review the decision, *Lucia*, 138 S. Ct. at 2053–54.  For example:

a.  By statute, in a recovery of funds proceeding, the Department's ALJs issue preliminary decisions with "findings of fact" that "if supported by substantial evidence, shall be conclusive."  20 U.S.C. § 1234a(d)(1).  A decision by the Department's ALJs "shall become final agency action 60 days after the recipient [of funds] receives written notice of the decision" when the Secretary takes no action.  *Id*. § 1234a(g).

b.  In the context of the Department's recoupment proceedings, the Department's regulations allow the Secretary to render a "final decision" when a party appeals the ALJ's initial decision.  *See* 34 C.F.R. § 668.91(c)(2)(vii).  The ALJ's decision is final where the parties do not appeal to the Secretary.

### 2.     The Department's ALJs Are Subject to Dual Layers of Removal Protection

66.     The Department's ALJs are subject to dual layers of removal protection that unconstitutionally insulate them from removal by the President.

67.     The Supreme Court has underscored that it is "incompatible with the Constitution's separation of powers" when there are two layers of for-cause removal protection between the President and an "inferior Officer."  *Free Enter. Fund*, 561 U.S. at 498.

68.     Here, at the first layer, the Department's ALJs may be removed only for good cause, as determined by the Merit System Protection Board ("MSPB").  5 U.S.C. § 7521(a).

69.     At the second layer, members of the MSPB can be removed only by the President for good cause.  5 U.S.C. § 1202(d).  MSPB members are principal officers of the United States.

*See McIntosh v. Dep't of Def.*, 53 F.4th 630, 639 (Fed. Cir. 2022) ("The MSPB itself is made up of three members who are appointed by the President with the advice and consent of the Senate, making them principal officers. 5 U.S.C. § 1201.").

70.     Although the Secretary is removable by the President at will, the Secretary cannot remove a Department ALJ unless the MSPB finds good cause.  5 U.S.C. § 7521(a).

71.     The dual layers of removal protection between the Department's ALJs and the President violate Article II of the United States Constitution.  *See Jarkesy v. SEC*, 34 F.4th 446, 464–65 (5th Cir. 2022) (striking down identical removal restrictions as unconstitutional as applied to SEC ALJs); *see also Free Enter. Fund*, 561 U.S. at 484.

72.     DeVry is subject to the Department's unconstitutionally insulated ALJs by virtue of the Recoupment Action, over which a Department ALJ presides.

**B.     The Department's Recoupment Scheme is Not Authorized by Any Congressional Delegation of Authority**

73.     Article I of the United States Constitution "vest[s]" all "legislative Powers" in Congress.  U.S. Const., art. I, § 1.

74.     Congress "may not transfer to another branch 'powers which are strictly and exclusively legislative.'"  *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. 1, 10 Wheat. 1, 42-43 (1825)).  But Congress "may 'obtain[ ] the assistance of its coordinate Branches'—and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws."  *Id.* (quoting *Mistretta v. United States*, 488 U. S. 361, 372 (1989).

75.     "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see also W. Va. v. EPA*, 142 S. Ct. 2587, 2609 (2022) ("Agencies have

only those powers *given* to them by Congress[.]" (emphasis added)).

76.     In 1993, Congress delegated specific and limited authority to the Department to determine the defenses borrowers may assert to avoid repayment of federal student loans. Specifically, Congress provided that: "[n]otwithstanding any other provision of State or Federal law, the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part, except that in no event may a borrower recover from the Secretary, in any action arising from or relating to a loan made under this part, an amount in excess of the amount such borrower has repaid on such loan." 20 U.S.C. § 1087e(h).

77.     Section 1087e(h)—a single subsection tucked within an extensive statutory provision—plainly provides only limited authority for the Secretary to promulgate regulations that specify which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a federal student loan.  Congress never authorized the Department to create an administrative adjudication system for recoupment claims, nor did Congress even mention recoupment against institutions of higher education.

78.     The Department promulgated a BDR rule in 1995.   34 C.F.R. § 685.206(c) (1995 version). This Rule allowed borrowers to "assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law" in certain specified formal proceedings—none of which concerned Department adjudication of borrower defense claims.  *Id.* § 685.206(c)(1) (1995 version).  The Department's 1995 BDR Rule also purported to authorize the Secretary to "initiate an appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment of a Direct Loan to pay to the Secretary the amount of the

loan to which the defense applies." *Id.* § 685.206(c)(3) (1995 version). The Rule did not specify what "an appropriate proceeding" would be.

79.     In 2016, without authorization from Congress, the Department began to fashion its extensive and complex administrative recoupment scheme, departing dramatically from § 2087e(h)'s text and the Department's 1995 BDR Rule. The Department promulgated the 2017 BDR Rule. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016) (codified at 34 C.F.R. § 685 *et seq.*); *see also* 34 C.F.R. § 685.22 ("2017 version"). The Department also promulgated a regulation creating "borrower defense and recovery proceedings." 34 C.F.R. § 668.87 (the "2017 BDR Recoupment Rule").

80.     The Department's scheme under these 2017 Rules operates, in relevant part, as follows:

   a.   The 2017 BDR Rule purported to allow the Secretary to designate a Department official to resolve borrower defenses by individual student borrowers. 34 C.F.R. § 685.222(e)(3) (2016 version). The Rule authorized the Secretary "to initiate a proceeding to collect from the school the amount of relief resulting from a borrower defense under this section." *Id.* § 685.222(e)(7).

   b.   The 2017 BDR Rule also authorized the Secretary to designate a Department official to assert borrower defenses against an open school on behalf of a group of borrowers before a Department "hearing official." *Id.* § 685.222(h). If successful, the Secretary "collects from the school any liability to the Secretary for any amounts discharged or reimbursed to borrowers," *id.* § 685.206(h)(5)(i), and "may initiate a proceeding to collect at any time." *Id.* § 685.222(h)(5)(ii).

   c.   The 2017 BDR Rule provided that "the granting of any relief under this section"

—23—

"transfer[s]" to the Secretary "the borrower's right of recovery against third parties," including "against the school." *Id.* § 685.222(k).

d. The Department's 2017 BDR Recoupment Rule refers to these proceedings as "borrower defense and recovery proceedings," governed by 34 C.F.R. Part 668, Subpart G. 34 C.F.R. § 668.81(a)(5)(ii); *see generally* 82 Fed. Reg. 6,253 (Jan. 19, 2017).

e. Subpart G provides that "[a] designated department official begins a borrower defense and recovery proceeding against an institution by sending the institution a notice by certified mail[.]" 34 C.F.R. § 668.87(a)(1). The notice "[i]ncludes a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief asserted within the statement, and recover for the amount of losses to the Secretary caused by the granting of such relief," *id.* § 668.87(a)(1)(ii), as well as "the date on which the Secretary intends to take action to recover the amount of losses arising from the granting of such relief, which date will be at least 20 days from mailing of the notice of intent." *Id.* § 668.87(a)(1)(iii).

f. The institution may submit a written response, which can include a request for a hearing. *Id.* If the institution submits such a response, "the Secretary will not take action" on the date specified in the notice. *Id.* If the institution submits no response, then the regulation contemplates, and the Department's Recoupment Notice confirms, that the institution will be deemed liable for the amount specified in the notice.

g. A "hearing official" presides over hearings related to recoupment proceedings. *See generally id.* § 668.90; *see also id.* § 668.89(a) ("A hearing is an orderly

presentation of arguments and evidence conducted by a hearing official."). As DeVry's experience confirms, the hearing official is a Department ALJ.

h. The hearing official is authorized to convene pre-hearing conferences to facilitate the efficient resolution of the matter. *See id.* § 668.88(a)–(c). During the hearing, parties may submit non-dispositive motions as well as motions for summary disposition. *Id.* § 668.88(d)–(e); *see also id.* § 668.89(a). The hearing official may also authorize "an oral evidentiary hearing conducted in person, by telephone, by video conference, or any combination thereof; or a review limited to written evidence." *Id.* § 668.89(a). Although formal discovery is not permitted, the hearing official may receive relevant documentary evidence and allow the testimony of witnesses, including expert witnesses. *Id.* § 668.89(b)(4)–(7).

i. After considering the evidence presented during the hearing, the hearing official issues an "initial decision." *Id.* § 668.91(a)(1)(i). That "initial decision states whether the imposition of the . . . recovery sought by the designated department official is warranted, in whole or in part." *Id.* § 668.91(a)(2)(i).

j. Either the institution or designated Department official may appeal the hearing official's initial decision to the Secretary within 30 days of receiving that decision. *Id.* § 668.91(c)(2). During the pendency of the appeal, the initial decision of the hearing official does not take effect. *See id.* § 668.91(c)(2)(vi). In an appeal, "[t]he Secretary renders a final decision." *Id.* § 668.91(c)(2)(vii).

81. In 2020, again without authorization from Congress, the Department promulgated another BDR Rule. *See* 34 CFR § 685.206; *see also* 84 Fed. Reg. 49,788 (Sept. 23, 2019) ("2020 version"). In relevant part, under the 2020 BDR Rule:

a. "[T]he Secretary issues a written decision" on a BDR application, 34 CFR § 685.206(e)(11)(i), and notifies the borrower and the school if the Secretary grants" relief. *Id.* § 685.206(e)(12)(i).

b. The Secretary's BDR determination is "final" and "not subject to appeal within the Department." *Id.* § 685.206(e)(13).

c. The 2020 BDR Rule also transfers to the Secretary "the borrower's right of recovery against third parties," including "against the school." *Id.* § 685.206(e)(15)(i).

d. The 2020 BDR Rule authorizes the Secretary to initiate a proceeding against a school "to pay to the Secretary the amount" discharged in accordance with 34 C.F.R., subpart G. *Id.* § 685.206(e)(16). Thus, the 2020 BDR Rule relies on the same "borrower defense and recovery proceedings" created by the 2017 BDR Recoupment Rule.

82. The Department's sprawling recoupment scheme contravenes the limited role Congress delegated to the Department over borrower defenses to repayment, which solely contemplates establishing permissible defenses for student borrowers, not the adjudication by the Department of recoupment claims.

83. Section 1087e(h) does not authorize the Department to establish an adjudicatory system, which is an extraordinary power for an executive agency. *See W. Va.*, 142 S. Ct. 2587 at 2610 (extraordinary powers should not be readily gleaned from "ancillary" statutory provisions). The statute does not mention adjudication *by the Department* at all—let alone adjudication of recoupment claims against an institution—but rather only authorizes the Department to specify borrower defenses.

84.     Although the Department labels its adjudication of recoupment claims as "recovery proceedings," Congress did not provide such authority to the Department in 20 U.S.C. § 1087e(h), in contrast to other situations where Congress expressly delegated to the Department authority to recover funds from a recipient for certain conduct by initiating an adjudicatory process through the Department's ALJs. *See, e.g.*, 20 U.S.C. § 1234a.

85.     The Department's promulgation of the recoupment scheme without congressional delegation of authority constitutes an unauthorized exercise of legislative power by an executive department in violation of Article I.

## V.     THE RECOUPMENT ACTION IS UNLAWFUL UNDER THE BDR RULES

86.     As outlined below, the Recoupment Action is not authorized under the 1995 BDR Rule, the 2017 BDR Rule, or the 2020 BDR Rule.

### A.     The Recoupment Action Is Not Authorized Under the 1995 BDR Rule

87.     The 1995 BDR Rule governs BDR Applications relating to loans disbursed before July 1, 2017. *See* 34 C.F.R. § 685.206(c)(1). Of the 7,622 loans underlying the Recoupment Action, 7,512 (98.6%) are controlled by the 1995 BDR Rule. Each of the 649 underlying borrowers held at least one of these 7,512 loans.

88.     Under the 1995 BDR Rule, a "borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1) (1995 version). References to an "act or omission" under "applicable State law" are "intended to reflect the *limited* scope" of available relief, such that relief may be awarded "*only* if the school's act or omission has a clear, direct relationship to the loan." *See* 60 Fed. Reg. 37,768, 37,769 (July 21, 1995) (emphases added). At the time of adoption, the Department also stated that it "expect[ed] . . . the adjudication of individual claims [would] provide further explanation of the Secretary's interpretation of the

regulatory requirements." *Id.*

89.     Under the 1995 BDR Rule, upon a successful showing, the Secretary may "relieve[]
[a borrower] of the obligation to repay all or part of the [challenged] loan," 34 C.F.R.
§ 685.206(c)(2) (1995 version), notwithstanding that the HEA by its own terms limits relief to "the
amount such borrower has repaid on such loan[s]," 20 U.S.C. § 1087e(h).

90.     Despite providing virtually no procedural guidance for adjudicating BDR
Applications, the 1995 BDR Rule empowers the Secretary to "initiate an appropriate proceeding
to require the school whose act or omission resulted in the borrower's successful defense against
repayment . . . to pay . . . the amount of the loan to which the defense applies." 34 C.F.R.
§ 685.206(c)(3) (1995 version).

91.     The regulations limit this recoupment power, however, by barring the Secretary
from initiating a recoupment proceeding "after the period for the retention of records described in
§ 685.309(c) unless the school receive[s] actual notice of the claim during that period." 34 C.F.R.
§ 685.206(c)(3) (1995 version). Since its promulgation, § 685.309(c) has referenced § 668.24,
which imposes a three-year record retention requirement following the end of the "award year" in
which the student last attended the institution. *See* 61 Fed. Reg. 60,490, 60,492 (Nov. 27, 1996).
Thus, absent actual notice of a borrower's claim for relief during the three-year retention period,
the 1995 BDR Rule allows the Department to seek recoupment only within the three-year period
after the borrower stopped attending DeVry.

92.     In pursuing recoupment, the Department disregards or violates several dispositive
sections of the 1995 BDR Rule. For example:

        a.      The Department ignores the limitations period set forth in § 685.206(c)(3), which
                bars the Department from pursuing recoupment for a loan amount more than three

—28—

years after the last day of the last award year in which the borrower attended DeVry, absent actual notice of the claimed defense to repayment within that three-year period. Because DeVry did not receive any of the BDR Applications relating to 7,061 of the 7,512 loans governed by the 1995 BDR Rule within this three-year period (and in fact did not receive any notices related to any of the underlying borrowers until 2020, at the earliest), the Secretary is time-barred from recouping any amounts for those 7,061 discharged loans (approximately $21,735,305).

b.  The Recoupment Notice does not provide adequate information to assess the grounds on which the underlying borrowers purported to assert a defense to repayment. For example, many of the BDR Applications do not assert reliance upon the 90-percent ads (the supposed basis for the Recoupment Action). Thus, the Department has failed to provide a factual basis—let alone evidence—to show that any of those BDR Applications governed by the 1995 BDR Rule have asserted an "act or omission" that would "give rise to a cause of action against [DeVry] under applicable State law." 34 C.F.R. § 685.206(c)(1) (1995 version).

c.  The Department has ostensibly adjudicated the underlying BDR Applications in a single "group" process, which the 1995 BDR Rule does not authorize. Indeed, the regulatory history of the 1995 BDR Rule shows that BDR Applications were to be adjudicated *individually*, not in batches. *See* 60 Fed. Reg. at 37,769 (noting that the Department "expect[ed] that the adjudication of *individual claims* [would] provide further explanation of the Secretary's interpretation of the regulatory requirements" (emphasis added)).

d.  The Department has not provided any information by which to verify that the

—29—

amounts it seeks were accurately calculated under the state law governing each BDR Application. Rather, to avoid its obligation to analyze the relief to which each individual borrower is actually entitled, the Department applies a presumption of total relief derived from an August 2021 policy memorandum issued in contravention of then-effective Department processes for issuing guidance documents. This is particularly vexing given the Department's previously articulated position that quantification of BDR relief is governed by state law. *See, e.g.*, Ex. 8 to Decl. of Joshua D. Rovenger in Supp. of Pls.' Mot. for Prelim. Inj. at 73–82, 86–99, *Calvillo Manriquez v. DeVos*, No. 3:17-cv-07210 (N.D. Cal. Mar. 17, 2018), ECF No. 35-8 (detailing the Department's position that BDR relief must be calculated by reference to state law).

93.     For these and other reasons, the Recoupment Action is unlawful with respect to loans governed by the 1995 BDR Rule.

**B.      The Recoupment Action Is Not Authorized Under the 2017 BDR Rule**

94.     The 2017 BDR Rule governs BDR Applications relating to loans disbursed on or after July 1, 2017 but before July 1, 2020. *See* 34 C.F.R. §§ 685.206(d), 685.222. Of the 7,622 loans underlying the Recoupment Action, 98 (about 1.3%) are controlled by the 2017 BDR Rule. These 98 loans were held by 32 of the 649 underlying borrowers.

95.     In 2016, the Department published sweeping changes to the BDR Rule, despite no intervening changes to the relevant statutory provisions governing the Direct Loan Program. *See* 81 Fed. Reg. 75,926 (Nov. 1, 2016) (codified at 34 C.F.R. § 685 et seq. ("2017 version")). The 2017 BDR Rule took effect on October 18, 2018.

96.     As relevant here, under the 2017 BDR Rule, a borrower may assert a defense to repayment of a loan disbursed on or after July 1, 2017 based on a "substantial misrepresentation

. . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." 34 C.F.R. § 685.222(d) (2017 version). In so doing, individual borrowers may seek "to recover amounts previously collected by the Secretary on the Direct Loan," *id*. § 685.206(c)(ii) (2017 version), but only within the six-year period after the borrower could have reasonably discovered the purported misrepresentation upon which the borrower's claim is based, *id*. § 685.222(d)(1) (2017 version). The borrower must also offer "evidence that supports the borrower['s] defense [to repayment]." *Id*. § 685.222(e)(1)(i)(B) (2017 version).

97.     If a borrower states an appropriate claim for relief, the Department must notify the borrower's school and initiate an investigation during which the Department must consider any response submitted by the school. *See* 34 C.F.R. § 685.222(e)(3) (2017 version).

98.     The 2017 BDR Rule also purports to provide the Secretary with authority to forgo individualized assessment of BDR Applications and instead adjudicate BDR Applications in groups. *See* 34 C.F.R. § 685.222(e)(6) (2017 version) ("The Secretary may consolidate applications . . . that have common facts and claims, and resolve the borrowers' borrower defense claims as provided in paragraphs (f), (g), and (h) of this section." (together, the "Group Adjudication Provisions")); *see generally id*. § 685.222(f) (2017 version).

99.     To initiate group adjudication under the 2017 BDR Rule, the Secretary must identify a subset of borrowers sharing "common facts and claims." 34 C.F.R. § 685.222(e)(6) (2017 version). After considering the common facts and claims and other factors (e.g., the fiscal impact of affording relief and the public interest in promoting compliance), the Secretary must then assess whether the borrower group has a valid defense. *Id*. § 685.222(f)(1) (2017 version). To that end, the Secretary must notify "the school of the basis of the group's borrower defense, the

initiation of the fact-finding process," and "any procedure by which the school may request records and respond." *Id*. § 685.222(f)(2)(iv) (2017 version). As with individualized adjudication of BDR Applications, the Department must "consider[] any evidence and argument presented by the school." *Id*. § 685.222(h)(1) (2017 version).

100.    If the Secretary grants relief (either on an individual or group basis), the Department may "discharge[] the borrower's [or borrowers'] obligation to repay all or part of the [applicable] loan . . . and, if applicable, reimburse[] the borrower [or borrowers] for amounts paid toward the loan voluntarily or through enforced collection." 34 C.F.R. §§ 685.222(i)(1), (6) (2017 version). However, such relief must be "reduced by the amount of any refund, reimbursement, indemnification, restitution, compensatory damages, settlement, debt forgiveness, discharge, cancellation, compromise, or any other financial benefit received by . . . the borrower that was related to the borrower defense." *Id*. § 685.222(i)(8) (2017 version).

101.    Where the 2017 BDR Rule is successfully asserted, and upon the Department's grant of relief, "the borrower is deemed to have assigned to, and relinquished in favor of, the Secretary any right to a loan refund (up to the amount discharged) that the borrower may have by contract or applicable law with respect to the loan or the contract for educational services for which the loan was received, against the school." 34 C.F.R. § 685.222(k) (2017 version).

102.    Following a grant of relief, the 2017 BDR Rule authorizes the Secretary to initiate recoupment proceedings against the borrower's school. *See* 34 C.F.R. §§ 685.222(h)(5), 685.222(e)(7), 685.206(c)(3) (2017 version). Before seeking recoupment, however, the Department must provide the targeted school with "a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief asserted." *Id*. § 668.87(a)(1)(ii) (2017 version).

103.     Recoupment actions under the 2017 BDR Rule are also limited in time. Unless the targeted school has "notice" of a borrower's claimed defense to repayment, a recoupment proceeding must be initiated within (1) six years for BDR Applications based on breach of contract or substantial misrepresentation by the school; or (2) any time for BDR Applications based on a judgment against the school. 34 C.F.R. §§ 685.222(e)(7)(i)–(iii) (2017 version). Notably, in adopting the 2017 BDR Rule—but without following the mandatory notice-and-comment procedures that accompanied the changes to the 1995 BDR Rule—the Department significantly and substantively expanded the definition of "notice" to purportedly allow the Secretary to initiate recoupment proceedings *at any time* and resurrect long-expired claims. *See id*. § 685.206(c)(4) (2017 version).

104.     Specifically, under the 2017 BDR Rule, the Secretary modified the definition of "notice" to mean (1) "[a]ctual notice from the borrower, from a representative of the borrower, or from the Department," (2) a "class action complaint asserting relief for a class that may include the borrower," or (3) "[w]ritten notice, including a civil investigative demand or other written demand for information, from a Federal or State agency that has power to initiate an investigation into conduct of the school relating to specific programs, periods, or practices that may have affected the borrower." 34 C.F.R. §§ 685.206(c)(4)(i)–(iii) (2017 version).

105.     In pursuing recoupment against DeVry, the Department disregards or violates several dispositive sections of the 2017 BDR Rule. For example:

>     a.  The Recoupment Notice fails to provide adequate information to assess the basis on which the underlying borrowers purportedly asserted a defense to repayment. Many of the BDR Applications, for example, do not indicate whether the pertinent borrowers relied upon (or even knew of) the 90-percent ads (the purported basis for

the Recoupment Action). Thus, the Department has failed to provide sufficient facts—let alone evidence—to show that any of the 32 relevant borrowers have stated a basis for finding a "substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." 34 C.F.R. § 685.222(d) (2017 version).

b. The Recoupment Notice fails to provide sufficient information to assess the relief available to each borrower under the 36 state statutes the Department claims govern the BDR Applications. Indeed, the Recoupment Notice does not indicate whether the Department considered *any* of the required factors relevant to determining the proper discharge amounts for loans disbursed on or after July 1, 2017, including (i) the value of the education the borrower received, (ii) the value of the education that a reasonable borrower in the borrower's circumstances would have received, or (iii) the value of the education the borrower should have expected given the information provided by DeVry. *See* 34 C.F.R. § 685.222(i)(2)(i) (2017 version).

c. The Recoupment Notice fails to provide any information to verify that the Department accurately offset from the demanded sums the "amount of . . . any other financial benefit received by, on or behalf of the borrower that was related to the borrower defense," 34 C.F.R. § 685.222(i)(8), including, for example, the numerous settlements related to the 90-percent ads, outlined *supra* at paragraphs 21–26.

106. For these and other reasons, the Recoupment Action is unlawful with respect to loans governed by the 2017 BDR Rule.

**C.      The Recoupment Action Is Not Authorized Under the 2020 BDR Rule**

107.     The 2020 BDR Rule governs BDR Applications relating to loans disbursed on or after July 1, 2020. *See* 34 C.F.R. § 685.206(e). Of the 7,622 loans underlying the Recoupment Action, 12 loans (less than 1%) are controlled by the 2020 BDR Rule. These 12 loans (which were disbursed nearly five years after DeVry ceased using the 90-percent ads) were held by six of the 649 underlying borrowers.

108.     On September 23, 2019, the Department published a modified BDR Rule for loans disbursed on or after July 1, 2020. *See* 84 Fed. Reg. 49,788 (Sept. 23, 2019) (codified at 34 CFR § 685.206(e) ("2020 version")). Under these regulations, a borrower may assert a repayment defense based on a misrepresentation of "material fact upon which the borrower reasonably relied in deciding to obtain a Direct Loan" if it "directly and clearly relates to [the borrower's] [e]nrollment or continuing enrollment," and if the "borrower was financially harmed by the misrepresentation." 34 C.F.R. §§ 685.206(e)(2)(i)–(ii) (2020 version). Such a defense must be asserted "within three years from the date the student is no longer enrolled at the institution." *Id*. § 685.206(e)(6)(i) (2020 version).

109.     An actionable "misrepresentation" is one that is (i) "false, misleading, or deceptive" and (ii) "made with knowledge of its false, misleading, or deceptive nature or with a reckless disregard for the truth." 34 C.F.R. § 685.206(e)(3) (2020 version).

110.     Importantly, a borrower must have suffered "financial harm" from the misrepresentation, exclusive of damages resulting from (i) "nonmonetary loss" such as "inconvenience" or "opportunity costs," (ii) "intervening . . . labor market conditions," or (iii) the "borrower's voluntary decision to pursue less than full-time work." 34 C.F.R. § 685.206(e)(4) (2020 version).

111.     After receiving a BDR Application, the Department must "notify the school" and

provide the school (i) "a copy of the borrower's request," (ii) "any supporting documents," (iii) "a copy of any evidence otherwise in the possession of the Secretary," and (iv) "a waiver . . . permitting the institution to provide the Department with items from the student's education record relevant to the defense to repayment claim." 34 C.F.R. § 685.206(e)(10)(i) (2020 version).

112.    The school must be allowed to "respond and to submit evidence," after which the borrower may submit a reply. *See* 34 C.F.R. §§ 685.206(e)(10)(i)–(ii) (2020 version). Following this process, the Secretary must "specify[] the relief determination" in writing. *Id*. §§ 685.206(e)(11)(i)(A)–(C) (2020 version).

113.    The 2020 BDR Rule also removed the 2017 BDR Rule's Group Adjudication Provisions for loans disbursed on or after July 1, 2020. *See* 34 C.F.R. § 685.206(e).

114.    In seeking recoupment from an institution under the 2020 BDR Rule, the Department must provide "a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief" for which it seeks to recover. 34 C.F.R. § 668.87(a)(1)(ii) (2020 version).

115.    In pursuing recoupment from DeVry, the Department disregards or violates several dispositive sections of the 2020 BDR Rule. For example:

    a.  The 2020 BDR Rule does not authorize the Department to adjudicate BDR Applications by group, as the Department has ostensibly done here. In modifying the BDR Rule, the Department *removed* the 2017 BDR Rule's Group Adjudication Provisions such that they do not apply to BDR Applications relating to loans disbursed on or after July 1, 2020. Just as the Recoupment Action is unlawful as to loans controlled by the 1995 BDR Rule, the Recoupment Action is unlawful as to loans controlled by the 2020 BDR Rule because the Department improperly

—36—

discharged the loans in a group adjudication and may not pursue recoupment for such unlawfully discharged sums. *See* 34 C.F.R. § 668.87(a)(1)(ii) (2020 version) (requiring the Department show a legal basis for granting BDR relief before pursuing recoupment).

b.  The Department has failed to provide any information to suggest that, for the six borrowers for whom the 2020 BDR Rule applies, the Department considered whether the borrowers have proven "by a preponderance of the evidence," 34 C.F.R. § 685.206(e)(2) (2020 version), that (i) DeVry made a "false, misleading, or deceptive" statement with *scienter*, *id*. § 685.206(e)(3) (2020 version); (ii) reasonable reliance on that statement, *id*. § 685.206(e)(2)(i) (2020 version); and (iii) resulting financial harm, *id*. §§ 685.206(e)(2)(ii), 685.206(e)(4) (2020 version).

c.  The Department has not provided any information by which to verify that the amounts it seeks were accurately assessed. *See supra* at paragraph 62.

116.    For these and other reasons, the Recoupment Action is unlawful with respect to loans governed by the 2020 BDR Rule.

**D.    The Department Proposes Additional Changes to the BDR Rule**

117.    In July 2022, the Department announced it would revise the BDR rules for the third time in six years to (i) to resurrect the broad bases of relief afforded under the 2017 BDR Rule; (ii) to reinstate the 2017 BDR Rule's Group Adjudication Provisions; and (iii) to change many of the evidentiary presumptions for obtaining relief. *See* 87 Fed. Reg. 41,878 (July 13, 2022). The revised BDR regulations are expected to take effect in 2023. *Id.* at 41,880.

## VI. DEVRY SUFFERS ONGOING HARM FROM THE RECOUPMENT ACTION AND FACES AN IMMINENT THREAT OF SUBSTANTIAL INJURY FROM THE RECOUPMENT ACTION

118.    DeVry currently suffers and will continue to suffer ongoing harm as a result of the Recoupment Action given the structural constitutional flaws in the Department's recoupment scheme. *See Bond v. United States*, 564 U.S. 211, 223 (2011) ("[I]ndividuals, too, are protected by the operations of separation of powers and checks and balances; and they are not disabled from relying on those principles in otherwise justiciable cases and controversies.").

119.    DeVry is harmed by being subjected to the Recoupment Action because the ALJ who presides over the Recoupment Action is unconstitutionally insulated from removal by the President, thereby depriving DeVry of the political checks and safeguards under the President's Article II power to remove inferior officers of the United States.

120.    DeVry is also harmed by being subjected to the Recoupment Action because the Department exceeded its authority in establishing the regulatory scheme pursuant to which the Action is being prosecuted in violation of Article I of the U.S. Constitution.

121.    The harm to DeVry from being subjected to the Department's unconstitutional recoupment scheme is a "here-and-now injury" that cannot be remedied by later judicial review. *Axon*, 143 S. Ct. at 903; *Seila Law*, 140 S. Ct. at 2196.

122.    In addition, if not enjoined, the Recoupment Action poses considerable harm to DeVry by, among other things, forcing DeVry to endure an administrative proceeding that denies DeVry due process of law. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013); *Davis v. D.C.*, 158 F.3d 1342, 1346 (D.C. Cir. 1998).

123.    Moreover, DeVry faces an imminent threat of substantial injury from the Recoupment Action because the Department seeks to recoup $23 million from DeVry, which threatens substantial financial injury, and also because the Department has stated its intent to

recoup significantly more from DeVry, including—but not limited to—approximately $71.7 million in already-discharged loans. Taken together, the Recoupment Action (and similar actions the Department has stated will follow) will burden DeVry's ability to continue operating, thereby imposing existential pecuniary and reputational damage.

## FIRST CLAIM FOR RELIEF
### Violation of APA—Action in Excess of Statutory Jurisdiction, Authority, or Limitations

124.    The above paragraphs are incorporated by reference herein.

125.    The APA, 5 U.S.C. § 706(2)(C), provides that a reviewing court shall "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." There are at least two grounds to do so here.

126.    *First*, the Department claims to have initiated the Recoupment Action "in accordance with the procedures" promulgated under Title IV of the HEA. Yet the Group Adjudication Provisions by which the Department purports to act are not authorized under the HEA.

127.    Under Title IV of the HEA, the Department is directed to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan." 20 U.S.C. § 1087e(h). The Department is also directed to collect payment on loans funded pursuant to the HEA. *See, e.g.*, *id.* §§ 1087e(d)–(e).

128.    The Department issued regulations exceeding this prescribed power that purportedly authorize the group discharge of Direct Loans. *See* 34 C.F.R. §§ 685.222(f)–(h). And although Congress may choose to authorize the Department to discharge Direct Loans *en masse*, it has not done so. Rather, Congress has explicitly authorized discharge of repayment amounts or terms only in very limited circumstances. *See, e.g.*, 20 U.S.C. §§ 1087e(f), 1087e(h), 1094(c)(3), 1098aa.

129.    For this reason, the Department itself has conceded that "[n]either Title IV [of the HEA] nor the [APA] specifically authorizes" the Group Adjudication Provisions, including "the 'class action' provision of the [2017 BDR Rule], 34 C.F.R. §§ 685.222(f)–(h), providing for blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances based on substantial misrepresentations." Mem. from U.S. Dep't of Educ. Principal Deputy Gen. Counsel Reed Rubinstein to Sec'y of Educ. Betsy DeVos, at 4 n.2 (Jan. 12, 2021), https://static.politico.com/d6/ce/3edf6a3946afa98eb13c210afd7d/ogcmemohealoans.pdf.

130.    Accordingly, through its collective "group" determination of the BDR Applications and initiation of a Recoupment Action, the Department's actions exceed its statutory authority.

131.    *Second*, the Department's redefining of the term "notice" in the 2017 BDR Rule is unlawful because, in adopting a substantively modified and expanded definition, the Department failed to follow required notice and comment procedures. *See* 5 U.S.C. § 553(b) (requiring the terms or substance of a proposed rule to be published in the Federal Register so that the public may submit written comments).

132.    For these reasons, the Group Adjudication Provisions in the 2017 BDR Rule, the adjudication of the BDR Applications, and the Department's prosecution of the Recoupment Action violate the APA.

### SECOND CLAIM FOR RELIEF
#### Violation of APA—Failure to Observe Procedure Required by Law

133.    The above paragraphs are incorporated by reference herein.

134.    The APA, 5 U.S.C. § 706(2)(D), provides that a reviewing court shall "hold unlawful and set aside agency action" that is "without observance of procedure required by law."

135.    Agency action is unlawful if it is "inconsistent with" governing regulations. *Ind.*

*Ass'n of Homes for the Aging Inc. v. Ind. Off. of Medicaid Pol'y & Plan.*, 60 F.3d 262, 266 (7th Cir. 1995). The Department's conduct underlying the Recoupment Action is unlawful because the Department has failed to adjudicate the BDR Applications underlying the Recoupment Action in accordance with the procedures specified in the Department's own regulations.

136.     As to the 7,512 underlying loans disbursed before July 1, 2017, the Department has failed to apply the governing standards set forth in the 1995 BDR Rule. Namely, the Department has failed to establish that any of the BDR Applications for which it seeks to recoup funds stated a basis for a discharge, including: (a) that an "act or omission" of DeVry gave rise to a state law claim, as required under 34 C.F.R. § 685.206(c) (1995 version); (b) that the Recoupment Action falls within the applicable limitations period, *see id*. § 685.206(c)(3) (1995 version); (c) that group discharge and recoupment processes apply to these loans; or (d) that the relief for which the Department seeks recoupment was rightly assessed under the state laws applicable to each individual borrower.

137.     As to the 93 loans at issue in the Recoupment Notice that were disbursed on or after July 1, 2017 but before July 1, 2020, the Department has failed to apply the standards set forth in the 2017 BDR Rule. *See supra* at paragraphs 51–63.

138.     As to the 12 loans at issue in the Recoupment Notice that were disbursed on or after July 1, 2020, the Department has failed to apply the standards set forth in the 2020 BDR Rule, including by failing to establish, among other things, that the applicable borrowers have shown "by a preponderance of the evidence," *see* 34 C.F.R. § 685.206(e)(2), (i) that DeVry made a "false, misleading, or deceptive" statement with *scienter*, *id*. § 685.206(e)(3) (2020 version); (ii) reasonable reliance on that statement, *id*. § 685.206(e)(2)(i)–(ii) (2020 version); and (iii) resulting financial harm, *id*. § 685.206(e)(4) (2020 version).

139.    As to *all* of the loans at issue in the Recoupment Action, the Department has failed to establish that the full relief granted to the individual borrowers is not improper or excessive, including where borrowers have already received relief through settlement with DeVry, FTC settlement proceeds, or other circumstances, *see* 34 C.F.R. § 685.222(i)(8), or that the Department is legally entitled to discharge the underlying loans, a prerequisite to recoupment, *see id.*, § 668.87(a)(1)(ii). These failures are of particular concern considering the Department's ostensible failure to consider:

> a.   whether any claims or rights, including those that would be transferred to the Department to bring a Recoupment Action, have been waived in or precluded by prior settlement agreements with or judgments involving DeVry;

> b.   whether any prior settlements can be properly considered evidence of wrongdoing, including when those agreements expressly disclaim any admission or finding of fault or wrongdoing; and

> c.   any individualized facts regarding the 649 borrowers underlying the Recoupment Notice, including whether each of the 649 borrowers attended DeVry and enrolled in a relevant program and could have reasonably relied on the misrepresentations alleged by the Department (which ceased in 2015), took out the borrowed funds for the purpose of attending DeVry, graduated from DeVry, or received any proceeds as part of settlements or other adjudications regarding the 90-percent ads.

140.    Moreover, in its June 23, 2020 letter, the Department notified DeVry that it would undertake *individualized* assessment of each of the BDR Applications under 34 C.F.R. § 685.222(e). The Department has failed to follow the procedures governing the adjudication of individual BDR Applications, including by failing to:

a. consider "evidence or argument presented by the borrower" as required under 34 C.F.R. § 685.222(e)(3)(i);

b. provide any written decision of the Department's determination as required under 34 C.F.R. § 685.222(e)(4)(i);

c. notify DeVry of the fact-finding process or any procedure by which the school could request records and respond as required under 34 C.F.R. § 685.222(f)(2); and

d. provide DeVry with other basic information about the underlying borrowers as required under 34 C.F.R. § 685.222(e)(1).

141. Finally, in granting the underlying discharge, the Department wrongly applied a rebuttable presumption of full relief derived from policy memoranda that were issued in violation of then-controlling processes for issuing guidance documents.[8] The rebuttable presumption of complete relief is inappropriate, including because the Department failed to observe the required "period of public notice and comment of at least 30 calendar days" prior to its issuance. *See* 34 C.F.R. § 9.14(h)(1) (2020 version).

142. For these reasons, the adjudication of the BDR Applications and the prosecution of the Recoupment Action violate the APA.

### THIRD CLAIM FOR RELIEF
### Violation of APA—Arbitrary & Capricious Agency Action

143. The above paragraphs are incorporated by reference herein.

---

[8] *See* Rescission of Borrower Defense Partial Relief Methodology, Office of the Under Secretary of the U.S. Dep't of Educ. (Aug. 24, 2021), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2021-08-24/rescission-borrower-defense-partial-relief-methodology-ea-id-general-21-51; Department of Education Announces Action to Streamline Borrower Defense Relief Process, U.S. Dep't of Educ. (March 18, 2021), https://www.ed.gov/news/press-releases/department-education-announces-action-streamline-borrower-defense-relief-process; *see also* Rulemaking & Guidance Procedures, 85 Fed. Reg. 62,597 (Oct. 5, 2020); Exec. Order No. 13,891, 84 Fed. Reg. 55,235 (Oct. 9, 2019).

144.    The APA, 5 U.S.C. § 706(2)(A), states that a reviewing court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or . . . not in accordance with law."

145.    Under this provision, agency action is unlawful where the agency fails to articulate a rational connection between the facts found and a decision rendered, fails to consider an important aspect of the issue underlying the agency action, or fails to explain its decision that runs counter to the evidence. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

146.    The Department's initiation of the Recoupment Action is "arbitrary, capricious, an abuse of discretion, or . . . not in accordance with law," including for the reasons stated in paragraphs 77–95.

147.    For these reasons, the adjudication of the BDR Applications and prosecution of the Recoupment Action violate the APA.

### FOURTH CLAIM FOR RELIEF
### Violation of APA—Agency Action Contrary to the Fifth Amendment to the United States Constitution

148.    The above paragraphs are incorporated by reference herein.

149.    The APA, 5 U.S.C. § 706(2)(B), provides that a reviewing court shall "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity."

150.    The Fifth Amendment to the United States Constitution demands DeVry be afforded due process before it is deprived of a protected interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). DeVry is thus entitled to notice and an opportunity to be heard at a "meaningful time and in a meaningful manner." *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S.

545, 552 (1965)).

151. DeVry's right to due process has been violated by the Department's prosecution of the Recoupment Action because it adversely affects a protected interest of DeVry and poses a risk of erroneous deprivation of that interest.

152. The Department's prosecution of the Recoupment Action violates the Due Process Clause of the Fifth Amendment because it relies on an impermissibly vague state-law standard that purports to allow the Department to grant relief and seek recoupment without any identification, analysis, or adjudication of a school's violation of pertinent state law. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.").

153. The 2017 BDR Rule violates the Due Process Clause because it does not provide a durational limit on the Department's ability to initiate a recoupment proceeding, including without limitation seeking recoupment based on BDR Applications the Department originally received as early as 2012 but delayed processing for years.

154. The Department failed to provide DeVry with sufficient notice of the underlying BDR Applications for DeVry to meaningfully respond either to the claims or to the Recoupment Action, including by failing to provide DeVry with: (a) a calculation of the relief sought, including with respect to appropriate offsets and whether interest is included; (b) a full statement of facts, including all relied upon exhibits and appendices; or (c) all other documents and information, including internal reports and policy directives, considered by the Department in making its findings and determinations, including in granting the BDR Applications and prosecuting the Recoupment Action against DeVry.

155. The Department has not provided sufficient time for DeVry to respond to the

—45—

Recoupment Action on behalf of 649 individual claimants with 7,622 loans in a reasonable time and manner under the circumstances here. *See Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (noting that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

156.   The Rules relating to the Department's assertion of consolidated, group recoupment actions are also facially defective under the Due Process Clause of the Fifth Amendment to the United States Constitution.

157.   For these reasons, the prosecution of the Recoupment Action violates the Fifth Amendment to the United States Constitution, which guarantees the right to due process of law.

<div align="center">

**FIFTH CLAIM FOR RELIEF**
**Violation of Article II, U.S. Constitution – Unconstitutional Structure of the Department's ALJs**

</div>

158.   The above paragraphs are incorporated by reference herein, as applicable.

159.   The Department's ALJs are inferior officers of the United States who, by statute, may be removed only for good cause, as determined by the MSPB.  5 U.S.C. § 7521(a).  Members of the MSPB can only be removed by the President for good cause.  5 U.S.C. § 1202(d).  Although the Secretary is removable by the President at will, the Secretary cannot remove a Department ALJ unless the MSPB finds good cause to do so.  5 U.S.C. § 7521(a).

160.   As currently structured, the multiple layers of tenure protection for the Department's ALJs violate Article II of the United States Constitution.

161.   For these reasons, the Department's BDR Rules and the Recoupment Action violate Article II of the United States Constitution.

162.   DeVry is irreparably harmed by the ongoing violation of Article II because DeVry is subject to the Recoupment Action over which a Department ALJ who is unconstitutionally

insulated from removal presides.  Monetary damages cannot remedy the harm to DeVry from the deprivation of fundamental protections offered by the constitutional separation of powers.

## SIXTH CLAIM FOR RELIEF
### Violation of Article I, U.S. Constitution – Unconstitutional Exercise of Legislative Power by an Executive Department

163.    The above paragraphs are incorporated by reference herein, as applicable.

164.    Congress did not delegate authority to the Department to create a recoupment or administrative adjudication scheme to recoup discharged loans, yet the Department has fashioned by regulations with the force of law a recoupment scheme in which the Department unilaterally approves borrower defense discharges in amounts the Department determines based on alleged misrepresentations or omissions by an institution for which the Department's officials alone make findings.  The Department requires an institution to agree to pay the amount of loans for which the Department approves a discharge or to subject itself to an administrative recoupment action.

165.    Congress did not delegate authority to the Department to create the recoupment scheme, so the Department's promulgation of regulations creating this scheme was an unconstitutional exercise of legislative power by an executive department.

166.    For these reasons, the Department's BDR Rules and the Recoupment Action violate Article I of the United States Constitution.

167.    DeVry is irreparably harmed by the Department's Article I violations because the Department is subjecting DeVry to the Recoupment Action, a proceeding that is beyond the delegated authority of the Department to establish and prosecute.  Monetary damages cannot remedy the harm to DeVry from the deprivation of fundamental protections offered by the constitutional separation of powers.

## RELIEF REQUESTED

WHEREFORE, Plaintiff asks that this Court issue judgment in its favor and against the

Department, and to grant the following relief:

A.   Declare that the Department's recoupment scheme is unconstitutional because it violates Article I;

B.   Declare that the Department's ALJs are unconstitutionally insulated from at-will removal by the President in violation of Article II;

C.   Declare that the Recoupment Action is (i) contrary to and exceeds the Department's statutory and administrative authority under the HEA, the APA, and rules promulgated thereunder; (ii) arbitrary, capricious, an abuse of discretion, and not in accordance with law; (iii) contrary to the requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution; and (iv) otherwise unlawful;

D.   Issue a preliminary and permanent injunction enjoining the Department from enforcing the unconstitutional recoupment scheme, including a prohibition on the Department from continuing to prosecute the Recoupment Action and/or any further proceedings in the Recoupment Action;

E.   Issue a permanent injunction enjoining (i) the Recoupment Action from proceeding without strict compliance with all applicable rules and laws; (ii) the Department from taking any further action under the Recoupment Notice; and (iii) the Department from taking other related punitive, prejudicial, or adverse actions against DeVry, including requiring a letter of credit from or imposing heightened cash monitoring over DeVry;

F.   Grant reasonable attorney's fees and expenses; and

G.   Award such further relief as this Court deems just and proper.

H.      In the alternative, if the Recoupment Action is permitted to proceed, Plaintiff asks that this Court declare (i) the appropriate legal basis (if any) for the Recoupment Action and (ii) what procedures would govern the rights of the parties in adjudicating the merits of the underlying BDR Applications and the Recoupment Action to ensure DeVry is provided due process of law.

Dated: July 10, 2023                    Respectfully submitted,

<div style="margin-left: 40%;">

*/s/ Matthew Kutcher*
MATTHEW KUTCHER
BOBBY EARLES
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
rearles@cooley.com

DAVID E. MILLS (*pro hac vice*)
JAY VAUGHAN (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
dmills@cooley.com
jvaughan@cooley.com

*Attorneys for Plaintiff*
*DeVry University, Inc.*

</div>