**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

DEVRY UNIVERSITY, INC.

               Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
EDUCATION and

DR. MIGUEL CARDONA, *in his official*
*capacity as Secretary of the United States*
*Department of Education*,

               Defendants.

Case No. 1:22-cv-05549

Honorable LaShonda A. Hunt

<u>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.    DeVry Is Likely to Succeed on Its Constitutional Claims. .................................. 2

        A.    DeVry Is Likely to Succeed on Its Article II Claim. ................................. 2

            1.    The Dual Layers of Removal Protection at Issue Violate Article II. ........................................................................................ 2

            2.    DeVry Is Not Required to Show Harm to Obtain Relief on Its Article II Claim in this Case, but *Axon* Confirms that DeVry Suffers Harm. ....................................................................... 6

        B.    DeVry Is Likely to Succeed on Its Claim that the Department's BDR Recoupment Scheme Violates Article I. ........................................... 7

            1.    DeVry's Article I Claim Is Ripe Because It Raises Pure Questions of Law and Withholding Judicial Review of the Claim Will Harm DeVry. ................................................................ 7

            2.    DeVry Need Not Exhaust Its Article I Claim in the Recoupment Action. ............................................................................ 8

            3.    The Department's Sprawling BDR Recoupment Scheme Violates Article I Because Congress Did Not Authorize Its Creation. ...................................................................................... 9

    II.    The Department's Ongoing Recoupment Action Irreparably Harms DeVry. ........................................................................................................ 13

    III.    The Equities and Public Interest Strongly Favor a Preliminary Injunction. ........ 15

CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
141 S. Ct. 2485 (2021) ...................................................................................13

*Aluminum Co. of Am. v. United 141 States*,
790 F.2d 938 (D.C. Cir. 1986) ..........................................................................7

*Atl. City Elec. Co. v. Fed. Energy Regul. Comm'n*,
295 F.3d 1 (D.C. Cir. 2002) .............................................................................11

*Axon Enterprise, Inc. v. FTC*,
143 S. Ct. 890 (2023) .............................................................................. *passim*

*Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*,
516 U.S. 264 (1996) .........................................................................................12

*Biden v. Nebraska*,
143 S. Ct. 2355 (2023) ........................................................................10, 11, 12

*Boire v. Pilot Freight Carriers, Inc.*,
515 F.2d 1185 (5th Cir. 1975) .........................................................................14

*Borden, Inc. v. FTC*,
495 F.2d 785 (7th Cir. 1974) .............................................................................8

*Brendsel v. Off. of Fed. Hous. Enter. Oversight*,
339 F. Supp. 2d 52 (D.D.C. 2004) ..................................................................15

*Brumfield v. City of Chi.*,
735 F.3d 619 (7th Cir. 2013) .............................................................................9

*Burgess v. FDIC*,
2023 WL 4354219 (N.D. Tex. July 5, 2023) .....................................................8

*Calcutt v. FDIC*,
37 F.4th 293 (6th Cir. 2022) .........................................................................4, 6

*Career Colls. & Sch. v. U.S. Dep't of Educ.*,
No. 23-50491 (5th Cir. Aug. 7, 2023) .............................................................13

*Career Educ., Inc. v. Dep't of Educ.*,
6 F.3d 817 (D.C. Cir. 1993) ..............................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chauffeur's Training Sch., Inc. v. Spellings*,
478 F.3d 117 (2d Cir. 2007) .................................................................................11

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ..............................................................................................9

*Cirko v. Comm'r of Soc. Sec.*,
948 F.3d 148 (3d Cir. 2020) ..................................................................................8

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bur.*,
51 F.4th 616 (5th Cir. 2022) .................................................................................6

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021). ............................................................................1, 6

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ...........................................................................1, 6, 7, 13

*Cornish v. Dudas*,
540 F. Supp. 2d 61 (D.D.C. 2008) ......................................................................15

*D.U. v. Rhoades*,
825 F.3d 331 (7th Cir. 2016) ..............................................................................15

*Daniels v. Dumsdorff*,
2019 WL 3322344 (S.D. Ill. July 24, 2019) .......................................................14

*Decker Coal Co. v. Pehringer*,
8 F.4th 1123 (9th Cir. 2021) ........................................................................4, 5, 6

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ............................................................................................10

*Exodus Refugee Immigr., Inc. v. Pence*,
165 F. Supp. 3d 718 (S.D. Ind. 2016) .............................................................2, 15

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ............................................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ...........................................................................1, 2, 3, 5, 6

*Glisson v. U.S. Forest Serv.*,
55 F.3d 1325 (7th Cir. 1995) ................................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013) ............................................................................15

*In re Griffith*,
    206 F.3d 1389 (11th Cir. 2000) ..........................................................................11

*Hartford Fire Ins. Co. v. United States*,
    544 F.3d 1289 (Fed. Cir. 2009) ..........................................................................12

*Humphrey's Executor v. United States*,
    295 U.S. 629 (1935) ..............................................................................................6

*Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*,
    634 F.2d 871 (5th Cir. Unit B 1981) ....................................................................7

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) .................................................................................4

*Life Spine, Inc. v. Aegis Spine, Inc.*,
    8 F.4th 531 (7th Cir. 2021) .................................................................................14

*Morrison v. Olson*,
    487 U.S. 654 (1988) ..........................................................................................5, 6

*Nash v. Califano*,
    613 F.2d 10 (2d Cir. 1980) ...................................................................................6

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ..........................................................................................1, 7

*Nerium Int'l, LLC v. FTC*,
    2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) ......................................................7

*North Carolina v. EPA*,
    531 F.3d 896 (D.C. Cir. 2008) ..............................................................................9

*Paul's Beauty Coll. v. United States*,
    885 F. Supp. 1468 (D. Kan. 1995) ........................................................................9

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ..............................................................................7

*Rogers v. Bennett*,
    873 F.2d 1387 (11th Cir. 1989) ............................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*,
   2023 WL 3864557 (D.D.C. June 7, 2023) ............................................................................14

*Seila Law LLC v. Consumer Fin. Prot. Bur.*,
   140 S. Ct. 2183 (2020) .........................................................................................................5

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) ............................................................................................2, 15

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
   1987 WL 6300 (N.D. Ill. Jan. 30, 1987) ............................................................................14

*Ty, Inc. v. Jones Grp., Inc.*,
   237 F.3d 891 (7th Cir. 2001) ............................................................................................2, 14

*United States v. Arthrex, Inc.*,
   141 S. Ct. 1970 (2021) .........................................................................................................5

*United States v. Dvorkin*,
   799 F.3d 867 (7th Cir. 2015) ............................................................................................11

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014) .............................................................................................................9

*Vara v. DeVos*,
   2020 WL 3489679 (D. Mass. June 25, 2020) ...................................................................10

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) .......................................................................................................9, 12

*Wiener v. United States*,
   357 U.S. 349 (1958) .............................................................................................................6

**Statutes**

5 U.S.C. § 1202(d) .......................................................................................................................3

5 U.S.C. § 3105 ...........................................................................................................................4

5 U.S.C. § 5514 ...........................................................................................................................10

5 U.S.C. § 7521(a) .......................................................................................................................3

20 U.S.C. § 1080a(c)(4) ..............................................................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

20 U.S.C. § 1087(c) ..............................................................................................11

20 U.S.C. § 1087d(a)(3) .......................................................................................11

20 U.S.C. § 1087e(h) .......................................................................................*passim*

20 U.S.C. § 1094 .............................................................................................4, 10

20 U.S.C. § 1095a ..............................................................................................10

20 U.S.C. § 1234 ................................................................................................4

31 U.S.C. § 3711(e) ............................................................................................10

31 U.S.C. § 3716 ................................................................................................10

31 U.S.C. § 3720B ..............................................................................................10

31 U.S.C. § 3720D ..............................................................................................10

**Regulations**

34 C.F.R § 668.81(g) ........................................................................................2, 15

34 C.F.R. § 685.206) .......................................................................................12, 13

34 C.F.R. § 668.90 ..............................................................................................8

57 Fed. Reg. 47,752, 1992 WL 292860 (Oct. 19, 1992) .........................................4

59 Fed. Reg. 61,664 (Dec. 1, 1994) ......................................................................12

87 Fed. Reg. 65,904 (Nov. 1, 2022) ......................................................................13

**Other Sources**

U.S. Dep't of Educ., *Apply for Borrower Defense Loan Discharge*
   https://studentaid.gov/borrower-defense/ ...........................................................12

U.S. Dep't of Educ., *Federal Student Loan Portfolio*, https://studentaid.gov/data-
   center/student/portfolio ...................................................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

U.S. Dep't of Educ., 2023–2024 Federal School Code List of Participating
    Schools (May 2023), https://fsapartners.ed.gov/knowledge-
    center/library/federal-school-code-lists/2023-04-27/2023-24-federal-school-
    code-list-participating-schools-may-2023 .............................................................................12

## INTRODUCTION

DeVry seeks to enjoin preliminarily the Department's administrative student loan Recoupment Action to allow this Court to rule on whether that proceeding violates Articles I and II of the U.S. Constitution. These claims became available to DeVry in April 2023 after the Supreme Court issued its decision in *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023). The Department's opposition to DeVry's Motion (ECF No. 50 ("Opp.")) fails to refute that the preliminary injunction factors strongly weigh in favor of granting the injunction.

*First*, DeVry is likely to succeed on the merits of its constitutional claims. As to Count V, which is DeVry's Article II claim, Congress has interposed two layers of removal protection between the Department's ALJs (inferior officers of the United States) and the President in violation of Article II. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010). DeVry is not required to show further "harm" to obtain relief. *Collins v. Yellen*, 141 S. Ct. 1761 (2021) is inapplicable because DeVry does not seek to void any agency order, but rather "seeks an administrative adjudication untainted by separation-of-powers violations." *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021), *aff'd Axon*, 143 S. Ct. at 891. In any event, DeVry plainly suffers "here-and-now injury" from the Recoupment Action, *Axon*, 143 S. Ct. at 903–04, which is sufficient to stay that proceeding while this Court reviews the merits of DeVry's claims.

DeVry is also likely to succeed on its Article I claim, which challenges the Department's regulations concerning adjudication of borrower defenses to repayment ("BDR") and recoupment claims (the "BDR Recoupment Scheme"). The claim is ripe: it raises pure questions of law, and DeVry would be harmed if it is forced to proceed in an administrative action that could ultimately be deemed unconstitutional. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Moreover, DeVry is not required to administratively "exhaust" the Recoupment Action, as the Department contends. If DeVry were so required, DeVry would lose "[its] rights not to undergo

-1-

the complained-of agency proceeding[]." *Axon*, 143 S. Ct. at 904. That result would conflict with *Axon*, which allows immediate review of structural constitutional claims in federal court.

*Second*, absent a limited preliminary injunction, DeVry faces ongoing irreparable harm that is "impossible to remedy" with later judicial review. *Id.* at 903–04. The Department errs in arguing undue delay (Opp. at 19); DeVry sought a preliminary injunction on its structural constitutional claims *before* the Court granted DeVry leave to add these claims and soon after *Axon* was decided. The Department has not produced and cannot produce "affirmative evidence" that any purported delay "negatively" affected it, *Ty, Inc. v. Jones Group., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001), and cannot credibly claim undue delay of a few weeks when the Department waited several years to bring the Recoupment Action.

*Third*, the equities and the public interest weigh decisively in DeVry's favor. "The public interest in ensuring protection of th[e] separation of powers is foundational," *Sierra Club v. Trump*, 929 F.3d 670, 707 (9th Cir. 2019), and warrants temporarily enjoining the Recoupment Action, especially because "a governmental entity[] cannot claim that being required to comply with the Constitution is harmful." *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 739 (S.D. Ind. 2016), *aff'd*, 838 F.3d 902 (7th Cir. 2016). Nor is the requested relief a "significant intrusion," as the Department contends, given that the Department's own regulations explicitly permit a stay of proceedings by federal court order. *See* 34 C.F.R § 668.81(g).

## ARGUMENT

### I. DeVry Is Likely to Succeed on Its Constitutional Claims.

#### A. DeVry Is Likely to Succeed on Its Article II Claim.

##### 1. The Dual Layers of Removal Protection at Issue Violate Article II.

Under Article II, the President *must* have the power "to remove those who assist him in carrying out his duties." *Free Enter. Fund*, 561 U.S. at 513–14. As DeVry has explained—and

the Department does not contest—the Department's ALJs are "inferior officers of the United States." (Mot. at 9–12; Opp. at 14–18.) Contrary to the Department's attempts to distinguish its ALJs from the Public Company Accounting Oversight Board members in *Free Enterprise Fund*, (Opp. at 14–15), the dual layers of removal protection Congress placed between the Department's ALJs and the President violate Article II for the same reason: both unconstitutionally impair the President's power to remove inferior executive officers. *See Free Enter. Fund*, 561 U.S. at 484 ("Multilevel protection from removal is contrary to Article II[].").

At the first layer here, the Department's ALJs cannot be removed except "for good cause" determined by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a). Similarly, the Board members in *Free Enterprise Fund* could not be removed "except for good cause," determined by the Securities and Exchange Commission ("SEC"). 561 U.S. at 495. The "less stringent" good cause standard applicable to the Department's ALJs is irrelevant. (Opp. at 15.) In *Free Enterprise Fund*, the "sharply circumscribed definition" of good cause to remove a Board member at the first layer was not the defect. 561 U.S. at 505. Rather, "[a] *second level* of tenure protection change[d] the nature of the President's review." *Id.* at 496 (emphasis added).

At the second layer here, the President cannot remove MSPB members except "for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Likewise, in *Free Enterprise Fund*, the President could not remove SEC Commissioners except for "inefficiency, neglect of duty, or malfeasance in office." 561 U.S. at 496. The Department's assertion that "the MSPB's role" places "no additional burden on the President[]" is incorrect. (Opp. at 16 & n.7.) As in *Free Enterprise Fund*, the scheme "*withdraws from the President* any decision on whether that good cause [to remove a Department ALJ] exists." 561 U.S. at 495 (emphasis added). Instead, the "decision [to remove the Department's ALJs] is vested instead in *other tenured officers*—the

[MSPB]—none of whom is subject to the President's direct control." *Id.* (emphasis added). This second level of tenure protection "strip[s]" the President of the power to remove and "impair[s]" "his ability to execute the laws [] by holding his subordinates accountable." *Id.* at 496.

The most relevant analog is the Fifth Circuit's decision in *Jarkesy v. SEC*, where it applied *Free Enterprise Fund* to a scheme involving the same layers of protection at issue here and held that SEC ALJs are subject to "at least two layers" of removal protection in violation of Article II. *Jarkesy*, 34 F.4th 446, 464–65 (5th Cir. 2022), *cert. granted*, *SEC v. Jarkesy*, 2023 WL 4278448 (U.S. June 30, 2023). The Ninth and Sixth Circuit decisions the Department cites do not undermine the analysis here as to the Department's ALJs. (Opp. at 16–17); *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021). In *Decker*, "Congress expressly refused to require that" adjudicators in the Department of Labor ("DOL") "be ALJs appointed under 5 U.S.C. § 3105." 8 F.4th at 1134 (emphasis omitted). And in *Calcutt*, Congress required the agency to conduct hearings consistent with the APA, which gives an agency a choice to use an ALJ or another officer. 37 F.4th at 319. Here, in contrast, Congress has mandated that the Department use ALJs subject to dual layers of removal protection. *See* 20 U.S.C. § 1234(a) ("[t]he Secretary shall establish in the Department of Education an Office of [ALJs] which shall conduct" certain proceedings); *id.* § 1234(b) (Department's ALJs "shall be appointed by the Secretary in accordance with [5 U.S.C. § 3105]"). Nor does the President have a choice about whether to use Department ALJs subject to dual layers of removal protection.[1] Either way, the law is clear that the President "cannot . . . choose to bind

---

[1] The Department's suggestion that it has a choice about whether to use ALJs (Opp. at 17) rests on its interpretation of the impact of a statutory amendment that merely removed the requirement for "on the record" hearings related to audits or program review determinations. *See* 20 U.S.C. §§ 1094(b), (c); 57 Fed. Reg. 47,752, 1992 WL 292860 (Oct. 19, 1992). That amendment has no application to the Department's BDR and recoupment proceedings.

his successors by diminishing their powers, nor can he escape responsibility for his choices by pretending that they are not his own." *Free Enter. Fund*, 561 U.S. at 497.

The Secretary's ability to review ALJ decisions does not, as the Department contends, (Opp. at 17), cure the Article II violation. Article II gives the President *distinct* powers to remove inferior executive officials *and* review their decisions. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1980 (2021) ("An inferior officer must be 'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'"); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2206 (2020) ("[T]he President's removal power is the rule."). Article II does not tolerate congressional encroachments on one power simply because Congress has not encroached on the other. *See Arthrex*, 141 S. Ct. at 1977, 1980–82 (invalidating scheme in which "no principal officer . . . within the Executive Branch" supervised members of an "executive adjudicatory body" even though "the Secretary can fire them" for "cause"). The Department and *Decker* elide the encroachment on the President's removal power by erroneously focusing on the ability to review ALJ decisions.[2] 8 F.4th at 1134.

The "adjudicatory functions" performed by the Department's ALJs do not, as the Department contends, change the constitutional calculus. (Opp. at 16–17.) "The activities of executive officers may take . . . judicial forms, but they are exercises of . . . executive Power, for which the President is ultimately responsible." *Arthrex*, 141 S. Ct. at 1982 (internal quotations and citations omitted). Even if a good cause standard supports the "proper functioning" of an executive ALJ with "quasi-judicial functions," *Morrison v. Olson*, 487 U.S. 654, 691 n.30 (1988),

---

[2] Moreover, in *Decker*, the Secretary could fire at will members of an administrative appellate body that reviewed ALJ decisions. 8 F.4th at 1134–35. There is no such appellate body here. While the President can fire the Secretary at will and the Secretary can review ALJ decisions that a party appeals, the ability to review a particular ALJ decision does not alter the dual layers of unconstitutional removal protection that stand between the ALJs and the President. (Mot. at 13.)

that justifies only a *single layer* of removal protection. *Contrast id.* at 695–96 (upholding single layer in which the Attorney General—whom the President could remove at will—had power to remove the inferior executive officer "for good cause"), *with Free Enter. Fund*, 561 U.S. at 490 ("*Morrison* did not . . . address the consequences of *more than one level* of good-cause tenure.").[3] "By granting [the Department's ALJs] executive power without the Executive's oversight," the dual-layer removal scheme here is "incompatible with the Constitution's separation of powers." *Free Enter. Fund*, 561 U.S. at 498. Thus, DeVry is likely to succeed on its Article II claim.

### 2. DeVry Is Not Required to Show Harm to Obtain Relief on Its Article II Claim in this Case, but *Axon* Confirms that DeVry Suffers Harm.

Misreading *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Department incorrectly argues that DeVry must show "harm" to "the President's control" over the Recoupment Action to obtain relief. (Opp. at 13–14.) In *Collins*, however, the Supreme Court required the plaintiffs to show "harm" because the plaintiffs sought to *void past actions* by executive officials subject to the restriction. 141 S. Ct. at 1787. DeVry does not seek to void the ALJ's acts, but rather "seeks an administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16.[4] This is a structural challenge that does not require a showing that the unconstitutional restrictions here impeded the President's desire to remove the ALJ. *Id.* But even assuming *Collins* somehow applied, *Axon* confirms that DeVry suffers a "here-and-now injury" from the

---

[3] The Department's cases are inapposite. *Humphrey's Executor v. United States*, 295 U.S. 629 (1935), did not address the removal of inferior officers. *Free Enter. Fund*, 561 U.S. at 493. *Wiener v. United States*, 357 U.S. 349 (1958), is inapposite because the Department "is not an adjudicatory body." *Collins*, 141 S. Ct. at 1783 n.18 (*Wiener* was inapplicable because the Federal Housing Finance Agency ("FHFA") was not an adjudicatory body). *Nash v. Califano*, 613 F.2d 10 (2d Cir. 1980), did not concern Article II.

[4] The Department's inapposite cases involve requests to *void* agency action. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bur.*, 51 F.4th 616, 632 (5th Cir. 2022) (declining to void agency rule); *Decker*, 8 F.4th at 1137 (declining to void ALJ decision); *Calcutt*, 37 F.4th at 316–18 (refusing to void agency order).

Department's Recoupment Action, *i.e.*, "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" that "cannot be undone" after it ends. *Axon*, 143 S. Ct. at 903–04. The remedy DeVry seeks—enjoining the Recoupment Action pending final resolution of the Article II claim—fits that injury. *See Collins*, 141 S. Ct. at 1789 (Thomas, J., concurring) ("[T]o the extent a Government action violates the Constitution, the remedy should fit the injury.").

> **B.**    **DeVry Is Likely to Succeed on Its Claim that the Department's BDR Recoupment Scheme Violates Article I.**
>
>     **1.**    **DeVry's Article I Claim Is Ripe Because It Raises Pure Questions of Law and Withholding Judicial Review of the Claim Will Harm DeVry.**

The Department's threshold ripeness challenge to DeVry's Article I claim (Opp. at 6–8) fails because the claim raises pure questions of law and withholding judicial review would harm DeVry. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808 (Ripeness "evaluate[s] (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding" review.).

*First*, DeVry's Article I claim is ripe for judicial review because it raises pure questions of law—a point the Department does not contest and that the parties' purely legal arguments reinforce. (Mot. at 13–17; Opp. at 9–13.) This claim is not, as the Department argues, an "ordinary APA claim" about the agency's jurisdiction that the ALJ can decide. (Opp. at 7 (citing *Nerium Int'l, LLC v. FTC*, 2020 WL 5217152, at *6 (N.D. Ill. Aug. 31, 2020)).) This is a *separation-of-powers* challenge to the Department's sweeping assertion of legislative authority in regulations, without congressional authority. *See infra* Part I.B.3. *Axon* makes clear that DeVry need not await a final agency order in the Recoupment Action to pursue this claim.[5]  143 S. Ct. at 906; *Burgess*

---

[5] The Department's cases pre-date *Axon* and did not involve structural constitutional claims. *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732–33 (D.C. Cir. 2003); *Rogers v. Bennett*, 873 F.2d 1387, 1392 (11th Cir. 1989); *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 941–42 (D.C. Cir. 1986); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. Unit B 1981).

*v. FDIC*, 2023 WL 4354219, at *5 (N.D. Tex. July 5, 2023) (claim ripe under *Axon*).

*Second*, DeVry faces substantial hardship as a result of the Department's unconstitutional legislation through the BDR Recoupment Scheme. The hardship to DeVry is not, as the Department contends (Opp. at 7), an "uncertain" outcome in the Recoupment Action, but, rather, the "here-and-now injury" of being subjected to a constitutionally illegitimate agency proceeding, which "is impossible to remedy once the [Recoupment Action] is over." *Axon*, 143 S. Ct. at 903. Unlike *Borden, Inc. v. FTC*, 495 F.2d 785, 789 (7th Cir. 1974), DeVry does not claim harm from the cost or inconvenience of the Recoupment Action (although those are significant as well).

### 2. DeVry Need Not Exhaust Its Article I Claim in the Recoupment Action.

The Department cannot rely on the doctrine of administrative exhaustion to derail DeVry's Article I claim. (Opp. at 8–9.) The doctrine has no application because DeVry does not seek to "invalidate an administrative order" subject to intra-agency review. *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326 (7th Cir. 1995). Instead, DeVry challenges the Recoupment Action's constitutional legitimacy. *Axon* confirms that DeVry "will lose [its] rights not to undergo the complained-of agency proceeding[] if [it] cannot assert [these] rights until the proceeding [is] over," *Axon*, 143 S. Ct. at 904, which is why the Supreme Court allows immediate review of structural constitutional claims in federal court. Nor is exhaustion appropriate here. *See id.* at 905 ("[A]gency adjudications are generally ill suited to address structural constitutional challenges."); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 153 (3d Cir. 2020) ("[E]xhaustion is generally inappropriate" for "structural constitutional claims."). That is especially true because the ALJ cannot "waive" or "rule [] invalid" the Department's regulations. 34 C.F.R. § 668.90(d). An order in the Recoupment Action "would not 'obviate the need' to address [DeVry's] constitutional claims which, again, allege[s] injury not from this or that ruling but from subjection to all agency authority" at issue here. *Axon*, 143 S. Ct. at 906. The Department's arguments (Opp. at 8–9) rely

-8-

on cases *without* structural constitutional claims. *Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817, 820 (D.C. Cir. 1993) (challenge to termination of institution's participation in federal student loan program); *Paul's Beauty Coll. v. United States*, 885 F. Supp. 1468, 1473 (D. Kan. 1995) (similar).

### 3. The Department's Sprawling BDR Recoupment Scheme Violates Article I Because Congress Did Not Authorize Its Creation.

DeVry's Article I challenge follows well-settled principles: an agency "has only those authorities conferred upon it by Congress; if there is no statute conferring authority, a federal agency has none." *N. Carolina v. EPA*, 531 F.3d 896, 922 (D.C. Cir. 2008) (internal quotations and citation omitted); *W. Va. v. EPA*, 142 S. Ct. 2587, 2609 (2022) (same). When an agency rewrites statutory language, it encroaches on the power Article I reserves to Congress. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 325 (2014) ("Congress makes laws and the President, acting at times through agencies . . . 'faithfully execute[s]' them. . . . The power of executing the laws . . . does not include a power to revise clear statutory terms.") (citations omitted).

The Department mistakenly asserts that its BDR Recoupment Scheme is a "reasonable" interpretation of its authority entitled to deference. (Opp. at 10 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).) A court, however, "do[es] not address the [*Chevron*] deference question unless the statute is silent or ambiguous regarding the matter at hand." *Brumfield v. City of Chi.*, 735 F.3d 619, 626 (7th Cir. 2013). "If the statute is unambiguous on the question, [a court] give[s] effect to the unambiguous statutory language and the inquiry goes no further." *Id.* The statute here plainly does not authorize the BDR Recoupment Scheme.

Section 1087e(h) is the *only* statutory provision that speaks to "borrower defenses." It authorizes the Secretary only to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part" in an "action." 20 U.S.C. § 1087e(h); (Mot. at 14–17). "[B]y selecting the word 'defense,'

Congress chose a word associated with adjudication." *Vara v. DeVos*, 2020 WL 3489679, at *2 (D. Mass. June 25, 2020). By selecting "action," Congress tethered that adjudication to a lawsuit. (Mot. at 14.) Thus, § 1087e(h) is unambiguously limited to *specifying* borrower defenses in lawsuits, notwithstanding the Department's desire for more expansive authority. (Opp. at 14–15.)[6]

Unable to rely on § 1087e(h)'s text, the Department invokes its general rulemaking authority under the Higher Education Act ("HEA"). (Opp. at 9 (string citing 20 U.S.C. §§ 1094(c)(1), 1099c(c), 1221e-3, 1082, 3441, 3471, 3474).) But the Department cannot rely on general rulemaking authority to rewrite, let alone expand, a statutory directive. "The rulemaking power granted to an administrative agency . . . is not the power to make law." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14 (1976). This principle is critical here because the authority the Department has asserted is *inconsistent* with the scheme Congress enacted. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (agency "may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law") (internal quotations and citation omitted).

Indeed, as the Supreme Court made clear very recently, "[the HEA] authorizes the Secretary to cancel or reduce loans . . . *only in certain limited circumstances and to a particular extent*." *Biden v. Nebraska*, 143 S. Ct. 2355, 2363 (2023) (cataloging the provisions allowing the Secretary to cancel or reduce loan debt) (emphasis added). As DeVry has explained (Mot. at 16–17), Congress expressly identified the limited circumstances when the Department is authorized to "discharge the borrower's liability on the loan" and "subsequently pursue any claim available

---

[6] The Department cites non-HEA provisions or ones limited to discrete issues. *See* 20 U.S.C. § 1080a(c)(4) (notice to a borrower before credit report); 31 U.S.C. § 3711(e) (credit reports); 5 U.S.C. § 5514 (federal salary offset); 20 U.S.C. § 1095a, 31 U.S.C. § 3720D (wage garnishment); 31 U.S.C. §§ 3716, 3720B (federal payment offset).

to such borrower against the institution." 20 U.S.C. § 1087(c) (titled "discharge"); *see also Biden*, 143 S. Ct. at 2363 (identifying § 1087(c) as a "limited circumstance[]").

That Congress expressly delimited in § 1087(c) the circumstances—not present here—in which the Secretary may discharge loans and recoup, alone warrants rejecting the Department's attempt to confer upon itself that very authority for borrower defenses, which Congress intentionally did not provide. *See United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015) ("Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another."); *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (en banc) ("Where Congress knows how to say something but chooses not to, its silence is controlling.").

The Department also cannot claim "inherent" authority under the HEA's program participation provisions.[7] (Opp. at 10.) 20 U.S.C. § 1087d(a)(3)—a statute that does not refer to borrower defenses, discharges, or recoupment—does not allow the Department to expand the "limited circumstances" Congress specified in which the Department may discharge student loans and recoup. *Biden*, 143 S. Ct. at 2363. Nor does it allow the Department to "rewrite" § 1087e(h) "from the ground up." *Id.* at 2368. *Chauffeur's Training School, Inc. v. Spellings*, 478 F.3d 117 (2d Cir. 2007), does not show otherwise.[8] There, the Second Circuit opined that the "HEA is silent" on whether the Department may "administratively assess a liability for loan program violations" against a school in the FFEL Loan program, and deemed "reasonable" the Department's claim of authority. *Id.* at 128 n.13, 129. Here, however, Congress chose *not* to grant

---

[7] The Department has no "common law right" to recoup. (Opp. at 10 n.3 (citing 81 Fed. Reg. at 75,932).) "As a federal agency, [the Department] is a creature of statute, having no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress." *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002) (internal quotations citation omitted).
[8] *Pro Schools, Inc. v. Riley* merely referenced in passing an ability to "demand repayment of improperly utilized [FFEL] funds." 824 F. Supp. 1314, 1316 (E.D. Wis. 1993).

-11-

the Department authority in § 1087e(h) to discharge loans for borrower defenses or recoupment.

DeVry's entitlement to a preliminary injunction is clear without reference to the major questions doctrine. But despite the Department's assertion (Opp. at 11–12), this *is* an "extraordinary case[]" warranting its application. *W. Va.*, 142 S. Ct. at 2608. The bulk of the $1.6 trillion in federal student loan debt comprises Direct Loans.[9] The BDR Recoupment Scheme applies to *all* institutions participating in the Direct Loan program.[10] And any federal student loan borrower can submit a borrower defense application.[11] Thus, the authority the Department asserts *is* "highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Va.*, 142 S. Ct. at 2609; *see also Biden*, 143 S. Ct. at 2368 (Department's loan debt cancellation program "affect[ed] 43 million borrowers."). The doctrine reinforces that "nothing in" § 1087e(h) "suggests that Congress meant" the Department "to function as both regulator and adjudicator." *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 273–74 (1996).[12]

The authority that the Department asserts bears *no* resemblance to the Department's first BDR Rule, which did not purport to authorize Department adjudication of BDR defenses or recoupment. *See* 59 Fed. Reg. 61,664 (Dec. 1, 1994) (codified at 34 C.F.R. § 685.206(c)(3)). Since 2017, the Department has claimed the authority to adjudicate *state law claims*, *see* 34 C.F.R. § 685.206(c) (defining a borrower defense for loans disbursed prior to July 1, 2017 to mean

---

[9] U.S. Dep't of Educ., *Federal Student Loan Portfolio*, https://studentaid.gov/data-center/student/portfolio (last visited July 30, 2023).

[10] Nearly 6,200 institutions of higher education in the United States participate in Title IV. *See* U.S. Dep't of Educ., 2023–2024 Federal School Code List of Participating Schools, https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-04-27/2023-24-federal-school-code-list-participating-schools-may-2023 (last accessed Aug. 11, 2023).

[11] *See* U.S. Dep't of Educ., *Apply for Borrower Defense Loan Discharge*, https://studentaid.gov/borrower-defense/ (last accessed July 30, 2023).

[12] *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1291–92 (Fed. Cir. 2009), is inapposite because Congress expressly created an agency procedure that the petitioner failed to pursue, which deprived the court of subject matter jurisdiction. Congress created no such procedure here.

-12-

conduct that "would give rise to a cause of action against the school . . . under applicable state law"); *id.* § 668.87(a)(1)(i)(A) (authorizing adjudication to determine "validity" of a defense). The Department has also claimed authority to adjudicate misrepresentation claims. *See* 34 C.F.R. § 685.206(e) (basing defenses for loans disbursed after July 1, 2020 on a "misrepresentation"); *id.* § 685.222(d) (basing defenses for loans disbursed after July 1, 2017 and before July 1, 2020 on a "substantial misrepresentation"); *id.* § 668.87(a)(1)(i)(A). And the Department has claimed the authority to override state law to "transfer" the borrower's "right of recovery" to the Secretary. 34 C.F.R. § 685.206(e)(15) (transferring rights "notwithstanding any provision of state law"); *id.* § 685.222(k)(1)–(2) (same). Congress surely did not envision that it had authorized the Department to adjudicate state law claims or have the power to preempt state law under § 1087e(h).

Section 1087e(h) "is a wafer-thin reed on which to rest [the] sweeping" power the Department asserts here. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021). Because Congress did not authorize the BDR Recoupment Scheme, DeVry has a substantial likelihood of succeeding on its claim that the Department has violated Article I.[13]

## II.   THE DEPARTMENT'S ONGOING RECOUPMENT ACTION IRREPARABLY HARMS DEVRY.

DeVry is currently subject to an unconstitutional agency proceeding. (Mot. at 17–18.) Under *Axon*, "subjection to an illegitimate [administrative] proceeding, led by an illegitimate decisionmaker," is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." 143 S. Ct. at 903–04. The Department's rehashed arguments about ripeness, administrative exhaustion, and *Collins* do not contravene this here-and-now injury. (Opp. at 18); *see supra* Parts

---

[13] While not at issue in the Recoupment Action, the Fifth Circuit has enjoined the borrower-defense and closed-school provisions of the Department's most recent BDR Rule, 87 Fed. Reg. 65,904 (Nov. 1, 2022), pending the resolution of an appeal challenging the lack of congressional authorization for that Rule under § 1087e(h). *See* Order, *Career Colls. & Sch. v. U.S. Dep't of Educ.*, No. 23-50491, ECF No. 42-1 (5th Cir. Aug. 7, 2023).

I.A.2, I.B.1–2. The injury to DeVry, which will have no legal remedy, is unquestionably irreparable. *See Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) (An injury "is irreparable if legal remedies are inadequate to cure it."); *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth.*, *Inc.*, 2023 WL 3864557, at *13 (D.D.C. June 7, 2023) ("[U]nder . . . [*Axon*], the nature of the constitutional claims asserted here . . . suffice[s] to show irreparable harm."). The Department ignores *Scottsdale* altogether, a decision that confirms the irreparable harm to DeVry.

The Department's assertion that DeVry delayed seeking preliminary injunctive relief is erroneous and irrelevant. (Opp. at 19.) DeVry could not obtain relief until the structural constitutional claims became a part of the operative complaint on July 10, 2023. (ECF No. 42); *Daniels v. Dumsdorff*, 2019 WL 3322344, at *1 (S.D. Ill. July 24, 2019) ("[A] preliminary injunction is appropriate only if it . . . deals with a matter presented in that underlying suit."). DeVry moved for leave to amend the complaint within nine weeks of *Axon*, time DeVry used to consider the claims and prepare its papers. (ECF No. 33.) DeVry then sought a preliminary injunction *before* the Court had even granted DeVry leave to amend its complaint. (ECF No. 41.)

Even assuming delay, however, "mere delay alone" does not preclude relief. *Ty*, 237 F.3d at 903. The Department identifies no "affirmative evidence" that any delay "negatively" affected it. *Id.* (8-month delay did not undermine irreparable harm because defendant gave no "affirmative evidence" that delay "lulled [it] into a false sense of security" or that it "had acted in reliance on the plaintiff's delay").[14] This case is also unlike *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 1987 WL 6300, at *3 (N.D. Ill. Jan. 30, 1987), where the irreparable harm to the defendant from a preliminary injunction exceeded the harm to the plaintiff. The Department merely seeks monetary

---

[14] *Citibank, N.A. v. Citytrust* is an inapposite case about "delay in . . . a trademark case." 756 F.2d 273, 276 (2d Cir. 1985). *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975), confirms that delay is "not determinative."

relief in the Recoupment Action; a preliminary injunction here would merely affect the timing of any legitimate claim to relief. *See D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016) (no irreparable harm "[b]ecause money damages could make [the party] whole").

## III. THE EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR A PRELIMINARY INJUNCTION.

The equities and public interest strongly favor enjoining the Recoupment Action given the Article I and II violations here. (Mot. at 19–20); *Sierra Club*, 929 F.3d at 707 (9th Cir. 2019); *Gordon v. Holder*, 721 F.3d 638, 652–53 (D.C. Cir. 2013) ("[T]he Constitution is the ultimate expression of the public interest."); *Exodus Refugee*, 165 F. Supp. 3d at 739 (no harm to government from compliance with the Constitution); *Brendsel v. Off. of Fed. Hous. Enter. Oversight*, 339 F. Supp. 2d 52, 67 (D.D.C. 2004) ("[T]he public has a profound interest in ensuring that . . . [an agency] acts within the limits on its authority established by Congress."). The Department would not, as it claims, suffer "inherent harm" from enjoining the Recoupment Action. (Opp. at 19.) Unlike in *Cornish v. Dudas*, Congress did not authorize the BDR Recoupment Scheme the Department seeks to enforce. 540 F. Supp. 2d 61, 65 (D.D.C. 2008); *see also supra* Part II.B.3. Nor is the relief sought here a "significant judicial intrusion into the workings of the Department." (Opp. at 19.)[15] The relief merely amounts to a temporary stay of proceedings, which the Department's regulations contemplate. *See* 34 C.F.R § 668.81(g). That stay will allow the Court to address the constitutional claims and avoid irreparable harm, exactly as *Axon* envisioned.

## CONCLUSION

For the above reasons and those in DeVry's Motion, DeVry requests that this Court enjoin the Recoupment Action.

---

[15] *Chicago Teachers Union v. Devos* is inapposite because the relief here would not direct the Secretary to seek anything from Congress, nor intrude on the "local autonomy of school districts." 468 F. Supp. 3d 974, 991 (N.D. Ill. 2020).

Dated: August 11, 2023

Respectfully submitted,

/s/ Matthew Kutcher

MATTHEW KUTCHER
BOBBY EARLES
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
rearles@cooley.com

DAVID E. MILLS (*pro hac vice*)
JAY VAUGHAN (*pro hac vice*)
ROBBY L.R. SALDAÑA (*pro hac vice filed*)
COOLEY LLP
1299 Pennsylvania Avenue
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
dmills@cooley.com
jvaughan@cooley.com
rsaldana@cooley.com

*Attorneys for Plaintiff*
*DeVry University, Inc.*