**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DEVRY UNIVERSITY, INC., | |
| Plaintiff, | Case No. 1:22-cv-05549 |
| v. | Judge LaShonda A. Hunt |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................1

BACKGROUND .................................................................................................................................2

I.    Statutory and Regulatory Background ...............................................................................2

II.    Factual Background ...........................................................................................................4

III.    Procedural History ............................................................................................................5

LEGAL STANDARDS .......................................................................................................................7

ARGUMENT .....................................................................................................................................7

I.    Counts I-IV and Count VI Should be Dismissed as Premature. ........................................7

    A.    Claims Concerning the Recovery Proceeding are not Ripe for Review. ......................7

    B.    The Recovery Proceeding is not Final Agency Action. ..................................10

    C.    DeVry has Failed to Exhaust Available Administrative Remedies. ..............................12

    D.    DeVry Cannot Challenge Other Agency Actions ..........................................................14

II.    The Court Should Reject DeVry's Request for Alternative Relief. ............................................17

III.    The Borrower Defense Rules are Statutorily Authorized. ...................................................18

    A.    Adjudication of Borrower Defense Claims and Recoupment (Count VI) ..................18

    B.    Group Claims (Count I) ....................................................................................23

IV.    DeVry Cannot Proceed on Its ALJ Claim. ........................................................................25

    A.    DeVry Fails to Allege Prejudicial Harm. ............................................................25

    B.    The Department ALJs' Removal Protections are Constitutional. ...............................27

CONCLUSION ..................................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967) ................................................................................................ 8

*Abbs v. Sullivan*,
  963 F.2d 918 (7th Cir. 1992) ...................................................................... 11, 15, 18

*Acosta v. Hensel Phelps Constr. Co.*,
  909 F.3d 723 (5th Cir. 2018) .................................................................................. 22

*Aluminum Co. of Am. v. United States*,
  790 F.2d 938 (D.C. Cir. 1986) ............................................................................... 12

*Am. Petroleum Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) ................................................................................. 8

*Am. Sav. Bank, FSB v. UBS Fin. Servs. Inc.*,
  347 F.3d 436 (2d Cir. 2003) .................................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 7

*Augusta Bakery Corp. v. NLRB*,
  846 F.2d 445 (7th Cir. 1988) ................................................................................. 11

*Axon Enterprise, Inc. v. FTC*,
  598 U.S. 175 (2023) ........................................................................................... 6, 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 7

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...................................................................................... 11, 15, 17

*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023) .......................................................................................... 22

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) ................................................................................. 24

*Boim v. Am. Muslims for Palestine*,
  9 F.4th 545 (7th Cir. 2021) ..................................................................................... 7

*Borden, Inc. v. FTC*,
  495 F.2d 785 (7th Cir. 1974) ................................................................................. 10

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022), *cert. granted, opinion rev'd on other grounds*, 143 S. Ct. 1317 (2023) ..... 25, 26, 29, 30

*Career Educ., Inc. v. Dep't of Educ.*,
  6 F.3d 817 (D.C. Cir. 1993) ........................................................................................... 13

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023) ........................................................................................... 26

*Chauffeur's Training Sch., Inc. v. Spellings*,
  478 F.3d 117 (2d Cir. 2007) ........................................................................................... 20

*Chauffeur's Training Schs., Inc. v. Riley*,
  967 F. Supp. 719 (N.D.N.Y. 1997) ................................................................................ 13

*Chevron, USA, Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984) ...................................................................................................... 21

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ........................................................................................................ 15

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ..................................................................................... 25, 26

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ............................................................................................. 25, 26

*Colwell v. HHS*,
  558 F.3d 1112 (9th Cir. 2009) ....................................................................................... 17

*Ctr. for Biological Diversity v. Haaland*,
  849 F. App'x 2 (D.C. Cir. 2021) ................................................................................... 16

*Davis v. U.S. Dep't of Hous. & Urb. Dev.*,
  94 F.3d 647 (7th Cir. 1996) ....................................................................................... 9, 10

*Decker Coal Co. v. Pehringer*,
  8 F.4th 1123 (9th Cir. 2021) ....................................................................... 25, 28, 29, 30

*Dhakal v. Sessions*,
  895 F.3d 532 (7th Cir. 2018) ......................................................................................... 11

*Energy Transfer Partners, L.P. v. FERC*,
  567 F.3d 134 (5th Cir. 2009) ........................................................................................... 9

*Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*,
  728 F.3d 1229 (10th Cir. 2013) ..................................................................................... 10

*Fourth Branch Assocs. (Mechanicville) v. FERC*,
  253 F.3d 741 (D.C. Cir. 2001) ....................................................................................... 11

iii

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................................ 28

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ........................................................................... 11, 15

*Geinosky v. City of Chi.*,
   675 F.3d 743 (7th Cir. 2012) ................................................................... 7

*Glisson v. U.S. Forest Serv.*,
   55 F.3d 1325 (7th Cir. 1995) ................................................................. 12

*Gonzalez v. O'Connell*,
   355 F.3d 1010 (7th Cir. 2004) ............................................................... 13

*Hardy v. Hamburg*,
   69 F. Supp. 3d 1 (D.D.C. 2014) ............................................................... 9

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) .............................................................................. 28

*Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*,
   634 F.2d 871 (5th Cir. Unit B 1981) ..................................................... 10

*In re Aiken Cnty.*,
   645 F.3d 428 (D.C. Cir. 2011) ............................................................. 8, 9

*In re Establishment Inspection of Kohler Co.*,
   935 F.2d 810 (7th Cir. 1991) ................................................................. 12

*James v. City of Evanston*,
   No. 20-cv-00551, 2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ...................... 8

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022), *cert. granted*, No. 22-859, 2023 WL 4278448 (S. Ct. June 30, 2023) 25

*King v. Burwell*,
   576 U.S. 473 (2015) .............................................................................. 19

*LaMarca v. United States*,
   34 F. Supp. 3d 796 (N.D. Ohio 2014) .................................................... 11

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
   982 F.3d 1060 (7th Cir. 2020) ................................................... 14, 15, 17

*Leisgang v. Kijakazi*,
   72 F.4th 216 (7th Cir. 2023) ................................................................. 14

*Matushkina v. Nielsen*,
   877 F.3d 289 (7th Cir. 2017) ................................................................. 11

*McFarland-Lawson v. Ammon*,

847 F. App'x 350 (7th Cir. 2021) ................................................................................. 13

*Mo. Pet Breeders Ass'n v. Cnty. of Cook*,
119 F. Supp. 3d 865 (N.D. Ill. 2015) ........................................................................ 8

*Morrison v. Olson*,
487 U.S. 654 (1988) ........................................................................... 27, 28, 29

*Myers v. United States*,
272 U.S. 52 (1926) .................................................................................... 27

*N. Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) ................................................................. 13

*Nash v. Califano*,
613 F.2d 10 (2d Cir. 1980) ...................................................................... 27

*Nat'l Ass'n of Home Builders v. Norton*,
415 F.3d 8 (D.C. Cir. 2005) .............................................................. 17, 18

*Nat'l Mining Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ................................................................. 17

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ............................................................................ 8, 10

*Nerium Int'l, LLC v. FTC*,
No. 19-cv-7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) .................. 7, 8, 11, 15

*Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*,
855 F.3d 773 (7th Cir. 2017) ................................................................... 21

*Pac. Gas & Elec. Co. v. FPC*,
506 F.2d 33 (D.C. Cir. 1974) ................................................................... 17

*Paul's Beauty Coll. v. United States*,
885 F. Supp. 1468 (D. Kan. 1995) ..................................................... 13, 14

*Pro Schs., Inc. v. Riley*,
824 F. Supp. 1314 (E.D. Wis. 1993) ................................................... 13, 20

*R.R. Donnelley & Sons Co. v. FTC*,
931 F.2d 430 (7th Cir. 1991) ................................................................... 11

*Ramspeck v. Fed. Trial Exam'rs Conf.*,
345 U.S. 128 (1953) ................................................................................ 27

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2003) ................................................................. 12

*Rogers v. Bennett*,
873 F.2d 1387 (11th Cir. 1989) ............................................................... 10

v

*Rosenthal & Co. v. Bagley,*
    581 F.2d 1258 (7th Cir. 1978) ............................................................................ 13

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020) ............................................................................ 26, 27

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ............................................................................ 16, 17

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ............................................................................ 16

*Sweet v. Cardona,*
    641 F. Supp. 3d 814 (N.D. Cal. 2022) ............................................................................ 16, 20

*Ticor Title Ins. Co. v. FTC,*
    814 F.2d 731 (D.C. Cir. 1987) ............................................................................ 12

*Top Choice Distribs., Inc. v. U.S. Postal Serv.,*
    138 F.3d 463 (2d Cir. 1998) ............................................................................ 11

*Trump v. New York,*
    141 S. Ct. 530 (2020) ............................................................................ 8

*United States v. Arthrex, Inc.,*
    141 S. Ct. 1970 (2021) ............................................................................ 30

*United States v. Perkins,*
    116 U.S. 483 (1886) ............................................................................ 27

*UPS v. Postal Regulatory Comm'n,*
    890 F.3d 1053 (D.C. Cir. 2018) ............................................................................ 20

*Vara v. DeVos,*
    No. CV 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020) ............................................................................ 19

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) ............................................................................ 18

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ............................................................................ 22

*Wiener v. United States,*
    357 U.S. 349 (1958) ............................................................................ 28

## U.S. Constitution

Article I of the Constitution ............................................................................ 6, 24

## United States Code

1 U.S.C. § 1 ............................................................................ 24

5 U.S.C. § 702 ............................................................................................................ 13

5 U.S.C. § 704 ............................................................................................................ 11

5 U.S.C. § 706 ............................................................................................................ 1

5 U.S.C. § 1202 ...................................................................................................... 27, 29

5 U.S.C. § 5514 .......................................................................................................... 19

5 U.S.C. § 7521 .................................................................................................. 27, 28, 29

20 U.S.C. § 1070 ........................................................................................................ 2

20 U.S.C. § 1080a ...................................................................................................... 19

20 U.S.C. § 1087 ........................................................................................................ 2

20 U.S.C. § 1087d ...................................................................................................... 20

20 U.S.C. § 1087e ................................................................................................. *passim*

20 U.S.C. § 1094 .................................................................................................... 3, 20

20 U.S.C. § 1095a ...................................................................................................... 19

20 U.S.C. § 1099c ...................................................................................................... 3

20 U.S.C. §§ 1071–1087-4 ......................................................................................... 2

20 U.S.C. §§ 1087a, 1087d, 1094 ....................................................................... 2, 20, 22

20 U.S.C. §§ 1221e-3, 1082, 3441, 3471, 3474 ........................................................ 19

31 U.S.C. § 3720D ..................................................................................................... 19

31 U.S.C. §§ 3716, 3720B .......................................................................................... 19

**Regulations**

34 C.F.R. Part 668, Subpart G .............................................................................. 3, 13, 20

34 C.F.R. § 668.81 ...................................................................................................... 3

34 C.F.R. § 668.86 ...................................................................................................... 13

34 C.F.R. § 668.87 ...................................................................................................... 3

34 C.F.R. § 668.89 .................................................................................................. 3, 8, 16

34 C.F.R. § 668.89-.90 ............................................................................................... 4

34 C.F.R. § 668.91 ............................................................................................... *passim*

34 C.F.R. § 685.206 .................................................................................................... 23

34 C.F.R. § 685.222 .................................................................................................. 23, 24

34 C.F.R. §§ 685.206 .................................................................................................. 3

34 C.F.R. §§ 685.206, .222 (2022) ......................................................................... 3, 10

34 C.F.R. §§ 685.222 .................................................................................................. 23

57 Fed. Reg. 47,752 (Oct. 19, 1992) ....................................................................... 4, 30

59 Fed. Reg. 42,646 (Aug. 18, 1994) ......................................................................... 2

59 Fed. Reg. 61,664 (Dec. 1, 1994) ................................................................ 3, 21, 24

81 Fed. Reg. 75,926 (Nov. 1, 2016) ................................................................ *passim*

82 Fed. Reg. 6,253 (Jan. 19, 2017) ................................................................ 3, 23

84 Fed. Reg. 49,788 (Sept. 23, 2019) ................................................................ 3

87 Fed. Reg. 52,944 (Aug. 30, 2022) ................................................................ 23

87 Fed. Reg. 65,904 (Nov. 1, 2022) ................................................................ 3

**Other Authorities**

Black's Law Dictionary 822 (4th ed. 1951) ................................................................ 29

Rescission of Borrower Defense Partial Relief Methodology (Aug. 24, 2021),
    https://perma.cc/F2HJ-73QN ................................................................ 17

U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022),
    https://perma.cc/W4A9-SZV6 ................................................................ 4

## INTRODUCTION

The Department of Education ("Department") determined that Plaintiff DeVry University, Inc. ("DeVry") misled prospective students by inflating the job placement rate of its graduates. Acting under its statutory and regulatory authority, the Department consequently discharged federal student loans owed by students who had relied on DeVry's misleading claims. The Department also initiated a proceeding against DeVry to recover some of the losses caused by the discharges. DeVry then requested a hearing, the first step in an administrative process provided by Department regulations. In that proceeding, a hearing official will issue an initial decision on whether recovery is warranted, based on the arguments and evidence submitted by the parties. Either party can appeal that initial decision to the Secretary of Education ("Secretary"). At the end of this process, the Secretary's final decision may determine that recovery is not warranted. Alternatively, the Secretary may determine that the standard for recoupment is met, in which case DeVry may seek relief in district court.

Unsatisfied with the administrative process—including the hearing the school itself elected—DeVry filed the instant lawsuit. The theories underlying DeVry's First Amended Complaint ("FAC"), however, are without merit. For instance, in asserting claims under the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"), as well as an APA claim dressed in constitutional garb, DeVry has failed to abide by a core principle of administrative law: the Judiciary, as the governmental branch of last resort, should generally allow agencies' processes to conclude before wading into a dispute. This principle is expressed through the doctrines of ripeness, finality, and exhaustion, which separately and collectively compel the conclusion that the Court should decline to consider DeVry's APA claims at this juncture. Nor can DeVry proceed on its constitutional claims. There is no separation of powers problem with the Department's ALJs' removal protections and, even if there were, DeVry has not plausibly alleged prejudicial harm, and therefore is not entitled to any relief. And, contrary to DeVry's

arguments, Congress provided the Secretary with authority to create and administer borrower defense regulations, including recoupment proceedings. Accordingly, the Court should dismiss DeVry's FAC.

## BACKGROUND

### I.     Statutory and Regulatory Background

Title IV of the Higher Education Act of 1965 ("HEA") charges the Department with the administration of federal student loan programs to "mak[e] available the benefits of postsecondary education to eligible students." 20 U.S.C. § 1070(a). Initially, the largest such program involved Federal Family Education Loans ("FFEL")—loans issued by non-federal lenders and reinsured by the government. *See id.* §§ 1071–1087-4. Although borrowers generally were obligated to repay any federal loans, under the FFEL program, the Secretary could discharge a borrower's liability based on the school's actions, such as if the school closed before the borrower completed their program or if the school falsely certified the student's eligibility to borrow, and the Secretary could then "pursue any claim available to such borrower against the institution[.]" *Id.* § 1087(c).

In 1993, Congress created the Federal Direct Student Loan Program, through which "loan capital is provided directly to student and parent borrowers by the Federal Government rather than through private lenders." 59 Fed. Reg. 42,646 (Aug. 18, 1994); Student Loan Reform Act of 1993, Pub. L. No. 103-66, § 4021, 107 Stat. 312, 341 (1993). Schools that wish to receive federal student loan funding must enter into a program participation agreement with the Secretary and must "accept[] responsibility and financial liability stemming from its failure to perform its functions pursuant to the agreement." *Id.* § 1087d(a)(3); 20 U.S.C. §§ 1087a, 1087d, 1094. Congress directed that Direct Loans "shall have the same terms, conditions, and benefits" as FFEL loans, "unless otherwise specified in this part." 20 U.S.C. § 1087e(a). Section 1087e(h), known as the "borrower defense" provision, specifies that, "[n]otwithstanding any other provision of State or Federal law, the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may

assert as a defense to repayment of a loan made under this part[.]" Congress has conferred upon the Secretary the authority to promulgate regulations that "may be necessary" for ensuring compliance with the Title IV program requirements. *Id.* § 1094(c)(1); *see id.* § 1099c(c).

In accordance with these authorities, the Department has promulgated four iterations of regulations—in 1994, 2016, 2019,[1] and 2022[2]—concerning the standards that a borrower must meet in asserting a defense to loan repayment, known as borrower defense regulations or rules. Each version, starting from the first regulations in 1994, has retained the same core structure: when a school engages in certain acts or omissions (defined by the Department), the Department may discharge the borrower's loans and may hold the school accountable. 34 C.F.R. §§ 685.206, .222 (2022); *see also id.* §§ 685.400-.499 (2023). Under each of the regulations, the Secretary may initiate proceedings to recover from the school the loan amount that was discharged because of the borrower's successful defense to repayment. *Id.* §§ 685.206(e)(16), 685.222(e)(7). The Department bears the burden of persuasion in such proceedings. *Id.* § 668.89(b)(3)(iii). Findings made in the borrower defense proceeding between the borrower and the government are not binding in the recovery proceeding between the school and the government. *See id.*; 82 Fed. Reg. 6,253, 6,255 (Jan. 19, 2017).

The administrative proceedings relevant to this case are governed by 34 C.F.R. Part 668, Subpart G. 34 C.F.R. § 668.81(a)(5)(ii); *see generally* 82 Fed. Reg. 6,253 (Jan. 19, 2017). Under Subpart G, "[a] designated department official begins a borrower defense and recovery proceeding against an institution by sending the institution a notice by certified mail." 34 C.F.R. § 668.87(a)(1). The institution may submit a written response or request a hearing, and if it does either, no liability will be imposed until the written material has been considered or the hearing has concluded. *Id.*

---

[1] 59 Fed. Reg. 61,664 (Dec. 1, 1994); 81 Fed. Reg. 75,926 (Nov. 1, 2016); 84 Fed. Reg. 49,788 (Sept. 23, 2019).

[2] The most recent version, 87 Fed. Reg. 65,904 (Nov. 1, 2022), is not at issue here. A copy of the regulations from the July 1, 2022 C.F.R. print edition, which reflects the regulations as they were prior to the most recent amendments, is attached. All C.F.R. citations are to the 2022 edition unless otherwise indicated.

§ 668.87(a)(1)(iii), (b)(1)-(2).

A hearing official presides over hearings related to recovery proceedings. *See id.* § 668.89-.90. Hearing officials do not need to be ALJs. 57 Fed. Reg. 47,752, 47,753 (Oct. 19, 1992). After considering the evidence, the hearing official issues an "initial decision" that "states whether the imposition of the . . . recovery sought by the designated department official is warranted, in whole or in part." 34 C.F.R. § 668.91(a). Either the school or the designated Department official may appeal to the Secretary within 30 days. *Id.* § 668.91(c)(2). While the appeal is pending, the initial decision of the hearing official does not take effect. *See id.* § 668.91(c)(2)(vi). The Secretary then renders a final decision on any appeal, *id.* § 668.91(c)(2)(vii)-(viii), which can be challenged in district court.

## II.    Factual Background

DeVry is a for-profit university based in Chicago. FAC ¶ 21, ECF No. 42. Between 2008 and 2015, DeVry advertised that "90 percent of [its] graduates who actively seek employment obtained jobs in their field of study within six months of graduation." U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://perma.cc/W4A9-SZV6 ("BD Claims Approval"), cited in FAC ¶ 38 n.5. DeVry used this supposed job placement rate "as the way to convince prospective students to enroll." *Id.*

The Department conducted a review of these advertisements and their effect on DeVry's students. *See id.* ¶ 36; BD Claims Approval; Letter from Susan D. Crim to Thomas L. Monahan III (Aug. 15, 2022) ("Initiation Letter"), Ex. B, ECF No. 42-2. As part of its investigation, the Department notified DeVry that DeVry's conduct was at issue in thousands of borrower defense applications, and the Department began providing information to DeVry regarding individual borrower applications. Initiation Letter at 1-2. Beginning in September of 2020, DeVry submitted responses to some but not all such notification letters concerning individual borrower applications. *Id.* at 2.

Based on its "review of voluminous amounts of evidence, the Department found that from

4

2008 to 2015 DeVry repeatedly misled prospective students across the country with" its claims. BD Claims Approval. According to the Department, DeVry's "actual job placement rate was around 58 percent." *Id.* Further, "[t]he Department also found that senior DeVry officials knew of the problems with the 90 percent statistic for years, in part due to concerns about its accuracy raised by alumni." *Id.*; *see also* Initiation Letter at 2-5. In light of these "widespread substantial misrepresentations about [DeVry's] job placement rates," the Department approved approximately $71.1 million in borrower defense discharges for approximately 1,800 former students of DeVry. BD Claims Approval. In February 2022, the Department issued a press release summarizing its findings and announcing that it "will seek to recoup the cost of the discharges from DeVry." *Id.*

On August 15, 2022, the Department informed DeVry that it "intends to initiate a recovery proceeding against DeVry" to recoup a portion of this loss—specifically, $23,638,104. Initiation Letter at 1. As the Department explained, "[t]he collection of $23,638,104 will be imposed on September 6, 2022, unless DeVry submits a request for a hearing or written material indicating why the collection action should not be undertaken by that date[.]" *Id.* at 6. The Department also confirmed that "[i]f a timely request for review is filed, the Department will defer offset until completion of the review[.]" *Id.* at 7. On October 11, 2022, DeVry requested an administrative hearing. FAC ¶¶ 45-46.

### III. Procedural History

The same day that DeVry requested an administrative hearing, it filed this lawsuit against the Department and the Secretary in his official capacity. Compl. ¶¶ 14-15, 37. In its Complaint, DeVry brought four claims under the APA. Count I alleges that the Department used certain group claim procedures in adjudicating the borrower defense applications and initiating the recoupment action against DeVry and that those procedures, promulgated in the 2016 rule, exceed the Department's statutory authority under the HEA. *Id.* ¶¶ 79-83. Count I also alleges that, in the 2016 rule, the Department re-defined when a school has "notice" of a borrower claim, for purposes of setting a

statute of limitations for the Department to initiate recovery actions, without following notice and comment procedures. *Id.* ¶¶ 60-61, 84.[3] Count II alleges, in essence, that the Department has not established that each borrower was harmed by DeVry and the extent of each borrower's financial harm, in violation of the regulations. *Id.* ¶¶ 49-50, 62, 72, 88-94. Count III alleges that the Department acted arbitrarily and capriciously based on the same conduct alleged in Counts I and II. *Id.* ¶ 99. Count IV alleges that the Department did not give DeVry sufficient documents and information about the borrower defense claims against it or enough time to respond, among other procedural due process violations. *Id.* ¶¶ 101-10. Counts I-IV are each tied to the Department's recovery proceeding. *E.g.*, *id.* ¶¶ 126, 130, 132, 146-47, 151, 157.

DeVry later amended its Complaint to add two constitutional claims alleging that the Department's ALJs' removal protections violated the separation of powers (Count V) and that the Department's recoupment action and regulations exceeded its statutory authority, in violation of Article I of the Constitution (Count VI). FAC ¶¶ 158-167. DeVry requests both declaratory and injunctive relief, including an order permanently enjoining the Department from seeking recovery from DeVry. *Id.*, Relief Requested ¶¶ (A)-(H). DeVry also moved for a preliminary injunction based on its two new constitutional claims. ECF No. 38.

On October 17, 2023 the ALJ temporarily stayed the administrative proceeding. ECF No. 55 at 4-5.[4] The ALJ explained that "[w]hile it remains unclear that the *Axon* [*Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023)] decision mandates issuing a stay, the [ALJ] has been following other developments,

---

[3] Although Count I focuses heavily on the 2016 rule, DeVry also alleges that only 1.3% of the loans at issue in the recoupment action are controlled by it. Compl. ¶ 51; FAC ¶ 94.

[4] Previously, the ALJ had twice denied DeVry's request for a stay. *In re DeVry Univ.*, Order at 1-3 (Apr. 6, 2023), Dkt. No. 22-54-BD, Ex. 3, ECF No. 38-5 (explaining that "the general principle of administrative adjudication is a process designed to allow for a full administrative adjudication before proceedings in an Article III court, in order to not require the courts to litigate a huge volume of administrative actions, many of which are successfully addressed in the administrative adjudication"); *In re DeVry Univ.*, Order at 1-2 (June 22, 2023), Dkt. No. 22-54-BD, Ex. 5, ECF No. 38-7 (rejecting argument that *Axon* mandates a stay).

including arguments articulated in *Career Colleges and Schools of Texas v. United States Department of Education*, (US Court of Appeals, Fifth Circuit Case No. 23-50491)[,]" and "[t]hose arguments call into question several relevant issues." *Id.* at 5. The same day, DeVry withdrew its motion for preliminary relief. *Id.* at 1. The Court terminated DeVry's motion as moot. ECF No. 56.

## LEGAL STANDARDS

"Because federal courts possess limited jurisdiction, and jurisdiction is power to declare the law, the first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in short, that it has jurisdiction over the subject matter." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) (cleaned up and citation omitted). Where a plaintiff fails to demonstrate a court's subject-matter jurisdiction, dismissal is warranted under Rule 12(b)(1). *Nerium Int'l, LLC v. FTC*, No. 19-cv-7189, 2020 WL 5217152, at *2 (N.D. Ill. Aug. 31, 2020).

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. For Rule 12(b)(6) purposes, a court may consider not only the complaint itself, but also "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## ARGUMENT

### I.     Counts I-IV and Count VI Should be Dismissed as Premature.

#### A.     Claims Concerning the Recovery Proceeding are not Ripe for Review.

Rooted in Article III limitations and prudential considerations, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). "Refusing to involve the courts in ongoing administrative matters both protects judicial resources and comports with the judiciary's role as the governmental branch of last resort." *In re Aiken Cnty.*, 645 F.3d 428, 433-34 (D.C. Cir. 2011).

Ripeness requires that the alleged injury be "certainly impending[.]" *Mo. Pet Breeders Ass'n v. Cnty. of Cook*, 119 F. Supp. 3d 865, 870 (N.D. Ill. 2015). By contrast, a claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (citation omitted). "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808. A claim that is unripe should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *James v. City of Evanston*, No. 20-cv-00551, 2021 WL 4459508, at *4 n.2 (N.D. Ill. Sept. 29, 2021).

DeVry's APA claims concerning the recoupment proceeding (Counts I-IV) fail to satisfy both the fitness and hardship prongs of the ripeness inquiry. "An issue is fit for judicial resolution if it involves a 'final agency action' and presents a 'purely legal' issue." *Nerium Int'l*, 2020 WL 5217152, at *6 (quoting *Abbott Lab'ys*, 387 U.S. at 149). Here the Department has only *initiated* recovery proceedings against DeVry, and in those proceedings the Department bears the burden of proof, including with respect to the underlying decision to approve student loan discharges. Initiation Letter at 1; FAC ¶¶ 11, 38, 123, 130, 146; 34 C.F.R. § 668.89(b)(3)(iii). Those proceedings may lead to a decision that DeVry is not liable for losses arising from approved borrower defense applications

because, for example, the Secretary may find that the standard for recoupment is not met, or the Department failed to adhere to its regulations. *See* 34 C.F.R. § 668.91(a)(2), (c)(2)(vii), (c)(2)(x). DeVry can therefore only speculate about what a final decision may be. *Cf. In re Aiken Cnty.*, 645 F.3d at 434 ("[W]hen an agency decision may never have its effects felt in a concrete way by the challenging parties, the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well." (citation omitted)). This lack of finality demonstrates that Counts I-IV are not ripe, as judicial review at this juncture would constitute an undue interference in ongoing administrative activity. *See, e.g.*, *In re Aiken Cnty.*, 645 F.3d at 435; *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141-42 (5th Cir. 2009); *Am. Sav. Bank, FSB v. UBS Fin. Servs. Inc.*, 347 F.3d 436, 440 (2d Cir. 2003); *Hardy v. Hamburg*, 69 F. Supp. 3d 1, 11-12 (D.D.C. 2014).[5]

Further, DeVry does not advance a "purely legal" challenge to the Department's initiation of recovery proceedings. For instance, it claims that the Department failed to properly apply the operative borrower defense regulations to 7,617 separate loans. FAC ¶¶ 136-38. It also asserts that, as to each of these loans, "the Department has failed to establish that the full relief granted to the individual borrowers is not improper or excessive." *Id.* ¶ 139. Moreover, according to DeVry, "[t]he Department has failed to follow the procedures governing the adjudication of individual BDR Applications, including by failing to [] consider" the borrower's evidence. *Id.* ¶ 140(a). DeVry similarly alleges that the Department failed to provide adequate notice of the borrower defense applications that the Department has approved, as well as "sufficient time" to respond. *Id.* ¶¶ 154-55. Consideration of these claims is necessarily fact-dependent; indeed, in DeVry's view, factual development—including expert testimony and an evidentiary hearing—is needed at the administrative stage. *See* ECF No. 20-2 at 4-6. These factors weigh heavily against a finding of fitness. *See Davis v. U.S. Dep't of Hous. & Urb.*

---

[5] Finality is also discussed in Part I.B, *infra*.

*Dev.*, 94 F.3d 647 (7th Cir. 1996) (noting that "[a]n agency, not a court, is generally the appropriate site for an initial determination of the merits of an action committed by statute to the agency's discretion").

Additionally, DeVry's only potential "hardship" is uncertainty as to the outcome of the administrative process, which is insufficient to demonstrate ripeness: "[T]he cost and inconvenience of defending [oneself] . . . is not alone sufficient to justify judicial intervention in the administrative process." *Borden, Inc. v. FTC*, 495 F.2d 785, 789 (7th Cir. 1974). And during the pendency of the proceedings, DeVry is not required to pay any money to the Department, nor take any kind of corrective action, nor alter its day-to-day operations in any way. 34 C.F.R. §§ 668.87(b), 668.91(c)(2)(vi); Initiation Letter at 7; *see Nat'l Park Hosp. Ass'n*, 538 U.S. at 810; *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 (10th Cir. 2013) (no hardship because "[p]ertinent administrative review . . . has stayed all [] enforcement").

Count VI—which claims that the Department's borrower defense rules and recoupment scheme exceed its statutory authority, FAC ¶¶ 164-66—can be raised in any appeal to the Secretary and therefore is similarly unripe, and DeVry cannot avoid this result by dressing up what would otherwise be an ordinary APA claim as a constitutional one. *Rogers v. Bennett*, 873 F.2d 1387, 1392 (11th Cir. 1989) (case not ripe because plaintiff failed to exhaust administrative remedies, even though "suit challeng[ed] an agency's jurisdiction to act"); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. Unit B 1981) ("Questions of an agency's authority and jurisdiction have long been held by the courts to be particularly appropriate for initial agency determination.").

DeVry's challenges to the recovery proceeding in Counts I-IV and Count VI are thus not ripe and should be dismissed pursuant to Rule 12(b)(1).

## B. The Recovery Proceeding is not Final Agency Action.

Counts I-IV and VI should also be dismissed because the Department has taken no final

agency action. The APA expressly limits judicial review to "final agency action." 5 U.S.C. § 704. To be final, an action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). "A final agency action ordinarily 'means a final order imposing some sort of sanction' and 'emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding.'" *Nerium Int'l*, 2020 WL 5217152, at *4 (quoting *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992)). In determining whether to dismiss a claim brought under the APA for lack of final agency action, a court should apply the 12(b)(6) standard. *See Dhakal v. Sessions*, 895 F.3d 532, 538-41 (7th Cir. 2018); *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017).

As detailed above, there is no dispute that the Department has only *initiated* recovery proceedings against DeVry. Furthermore, the hearing DeVry requested will culminate in only an "initial decision," which is appealable to the Secretary, who is charged with rendering a "final decision" for the Department. *See generally* 34 C.F.R. § 668.91. Plainly, then, the initiation of recovery proceedings does not "mark the 'consummation' of the agency's decisionmaking process[.]" *Bennett*, 520 U.S. at 177-78; *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-44 (1980) (rejecting argument that issuance of complaint was final agency action); *Augusta Bakery Corp. v. NLRB*, 846 F.2d 445, 446-47 (7th Cir. 1988); *Top Choice Distribs., Inc. v. U.S. Postal Serv.*, 138 F.3d 463, 467 (2d Cir. 1998); *LaMarca v. United States*, 34 F. Supp. 3d 796, 806 (N.D. Ohio 2014). Likewise, the initiation of a recovery proceeding, by itself, does not determine any rights or obligations of DeVry; rather, it merely sets in motion a process whereby those rights or obligations will be adjudicated. *See Standard Oil*, 449 U.S. at 241-42; *see also Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001); *Abbs*, 963 F.2d at 925-26; *Nerium Int'l*, 2020 WL 5217152, at *3-4. That DeVry must bear the expense of the hearing is immaterial. *See R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431 (7th Cir. 1991).

Allegations that the recovery proceeding exceeds the Department's statutory authority, FAC ¶¶ 126-130, 164-66 (Counts I, VI), do not transform the proceeding into reviewable action. There is no "special rule [of finality that] applies when a litigant challenges the agency's authority to regulate rather than the merits of an agency's act of regulation." *The Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732-33 (D.C. Cir. 2003); *see Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986) (Scalia, J.) (holding claim that agency action is beyond statutory authority does not "make any difference" for finality analysis); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 747 (D.C. Cir. 1987) (Williams, J., concurring) ("[A]n agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attack raises a pure question of law"). Thus, Counts I-IV and VI should be dismissed.

## C.      DeVry has Failed to Exhaust Available Administrative Remedies.

"Exhaustion of administrative remedies is a doctrine—originally and still to a large extent judge-made though now codified in cases governed by the [APA]—under which a court asked to invalidate an administrative order will stay its hand until the plaintiff has exhausted whatever internal remedies the agency provides." *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326 (7th Cir. 1995). Like the doctrines of ripeness and finality, "[t]he [exhaustion] doctrine cuts down on the work of the courts, preserves the integrity and autonomy of the administrative process, and ensures that when the administrative proceeding does come before the court, the court will have before it the mature, considered, and final articulation of the basis of the agency's action." *Id.* at 1326-27; *see In re Establishment Inspection of Kohler Co.*, 935 F.2d 810, 812 (7th Cir. 1991). Moreover, "[t]he rationale for applying the doctrine may be even stronger in the context of a case . . . that raises a constitutional question, because the exhaustion requirement enables courts to avoid deciding cases on constitutional grounds unnecessarily[,]" as the administrative proceeding may provide all the relief sought by a plaintiff. *In re Establishment Inspection of Kohler Co.*, 935 F.2d at 812-13 (explaining that "during

12

administrative proceedings the constitutional issue, or the entire case, for that matter, may be resolved favorably for the aggrieved party, obviating the need for the courts to address the constitutional claim"); *see also, e.g.*, *Gonzalez v. O'Connell*, 355 F.3d 1010, 1018 (7th Cir. 2004); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978). Whether a plaintiff has failed to exhaust administrative remedies is analyzed under Rule 12(b)(6). *McFarland-Lawson v. Ammon*, 847 F. App'x 350, 355 (7th Cir. 2021).

DeVry has failed to exhaust the administrative remedies that it elected. The hearing official might conclude that the Department has not met its burden to show that recovery is warranted. 34 C.F.R. § 668.91(a)(2)(i). Moreover, any initial decision by the hearing official is appealable to the Secretary, whose final decision can afford DeVry more substantive relief than what is available through its APA claims, i.e., "identif[ication of] a legal error and then remand to the agency," *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012); *see* 34 C.F.R. § 668.91(c); 5 U.S.C. § 702.

Notably, courts have recognized the adequacy of the types of proceedings DeVry elected. *See Chauffeur's Training Schs., Inc. v. Riley*, 967 F. Supp. 719, 729-30 (N.D.N.Y. 1997) (hearing conducted pursuant to 34 C.F.R. Part 668 comported with due process rights of school); *Pro Schs., Inc. v. Riley*, 824 F. Supp. 1314, 1320 (E.D. Wis. 1993) (similar). Courts have also held that these types of proceedings are prerequisites to exhaustion. As the D.C. Circuit observed with respect to a notice of termination issued by the Department, such a notice "merely begins the termination proceedings, . . . and becomes final only after the requested hearing and an opportunity to appeal to the Secretary[.]" *Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817, 820 (D.C. Cir. 1993) (citing 34 C.F.R. § 668.86(b)(1), § 668.90(c)(1)). The plaintiff's complaint should therefore be dismissed, the court explained, because "in such a circumstance a plaintiff must exhaust administrative remedies—in order to give the Department's top level of appeal an opportunity to place an official imprimatur on the Department's interpretation of its regulations before it is reviewed by a federal court." *Id.*; *see also Paul's Beauty Coll. v. United States*, 885 F. Supp. 1468, 1473 (D. Kan. 1995) (review unavailable where plaintiff failed to

appeal calculation of loan default rates). There is no basis to depart from this well-worn ground here, including with respect to the due process and Article I claims asserted in Count IV and Count VI.[6]

### D. DeVry Cannot Challenge Other Agency Actions.

Perhaps sensing these constraints, DeVry purports to challenge separate "final agency actions that undergird the recoupment action[.]" FAC ¶ 1; *see id.* ¶ 5. These include the 2016 borrower defense rule, "discharges of the underlying loans, [] the recoupment demand," and an announcement concerning a rebuttable presumption of relief. *Id.* ¶¶ 26, 141. But a plaintiff cannot circumvent the ripeness, finality, and exhaustion doctrines simply by challenging findings or actions that are predicate to or "part of" an ongoing agency proceeding. *Id.* ¶ 5. That is especially true here, where DeVry's FAC—whether viewed in terms of its timing, content, or requested relief—makes clear that its challenge centers on the ongoing administrative proceeding. *See, e.g.*, FAC, Relief Requested (seeking an injunction against the recovery proceeding, with no request to set aside the 2016 rule, announcement, or loan discharges). But even if the Court were to entertain DeVry's arguments, they fail for the reasons set out below.

*The "Recoupment Demand."* "To establish standing, a plaintiff has the burden to establish that he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (citation omitted). DeVry has identified no cognizable harm traceable to the Department's August 15, 2022 letter itself, which informed DeVry that the Department "intends to initiate a recovery proceeding[.]" Initiation Letter at 1. Nor can it, as the letter merely apprised DeVry of the Department official's finding and allowed DeVry to seek review. *Id.*

---

[6] *Axon* should not be read to indicate that a plaintiff may always avoid the exhaustion doctrine by simply asserting any type of constitutional violation. *Cf. Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023) (noting, in decision post-*Axon*, that "several other circuits generally require claimants to exhaust their arguments at the administrative level, with a limited exception for constitutional claims arising out of the Appointments Clause").

Because DeVry responded by requesting a hearing, no penalty has been imposed. *Id.* at 7. While that hearing may result in a finding of liability, DeVry can only speculate about any such outcome. *See, e.g.,* *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (citation omitted)).

DeVry has also failed to demonstrate that the letter constitutes final agency action. *See Bennett*, 520 U.S. at 177-78. At most, the Initiation Letter reflects a decision to start a recovery proceeding, but "[a] final agency action ordinarily 'means a final order imposing some sort of sanction' and 'emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding.'" *Nerium Int'l*, 2020 WL 5217152, at *4 (quoting *Abbs*, 963 F.2d at 926). Indeed, if DeVry were correct, the initiation of any administrative proceeding would constitute final agency action, simply because the agency had decided to pursue an action against a regulated entity. Both binding and persuasive authority foreclose such an argument. *See, e.g.*, *Standard Oil*, 449 U.S. at 239-44; *Abbs*, 963 F.2d at 926.

DeVry also has not established that the Initiation Letter satisfies the second *Bennett* prong, as it is not one "by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. at 177-78 (citation omitted). The fact that the letter refers to the discharge decisions does not render the letter a final agency action. Nor does the fact that a Department official determined that a recovery proceeding was appropriate. That reasoning would eviscerate the finality doctrine, as judicial review would be warranted at the outset of any administrative proceeding.

*Loan Discharges*. Assuming the Department's decisions to discharge certain loans of former DeVry students constituted final agency actions, DeVry lacks standing to challenge those decisions. As another district court has explained:

> [S]chools cannot be held liable for any remedial measures absent proceedings initiated specifically against them. . . . When a borrower-defense application criticizes a school, the Department gives the school notice and the opportunity to file a responsive statement, although the school is not required to do so. *Regardless of whether the school files such a statement (or*

15

> *not), the grant of a borrower-defense application has no binding effect on the school*. If the Department approves a borrower-defense application, then that can be the predicate for the department *initiating* a proceeding against the school for recoupment. But even in such an instance, the school still retains all due process rights, is not bound by the success of the student's application, and is free to litigate *ab initio* the merits of its performance.

*Sweet v. Cardona*, 641 F. Supp. 3d 814, 828 (N.D. Cal. 2022), *appeal filed*, No. 23-15049 (9th Cir. July 18, 2023). DeVry at most asserts a procedural injury in connection with these discharges, FAC ¶ 7, but it cannot identify a concrete and particularized harm beyond this alleged procedural right, which is insufficient for standing on its own. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (explaining that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing"). Additionally, in any recovery proceeding—including the one DeVry elected—the Department must establish that the standard for borrower defense has been met. 34 C.F.R. § 668.89(b)(3)(iii). DeVry has therefore failed to establish that it has suffered any cognizable harm resulting from the underlying loan discharges. To the extent the FAC attempts to plead harm to DeVry, it is from the recoupment action, not the underlying loan discharges. *See* FAC ¶¶ 118-123.

*2016 Borrower Defense Rule*. The Department agrees that the 2016 rule is final agency action. But DeVry has not demonstrated its standing to challenge that rule. DeVry fails to identify any harm that stems from the 2016 rule; rather, its theories of harm are entirely based on the initiation of the recoupment proceeding. *See* FAC ¶¶ 118-23. And while DeVry has alleged that the Department improperly promulgated the rule without notice and comment, *id.* ¶ 131, that only states a procedural injury, which is insufficient without more to establish standing, *see, e.g.*, *Ctr. for Biological Diversity v. Haaland*, 849 F. App'x 2, 3 (D.C. Cir. 2021). Nor can DeVry show that "the requested relief will redress" any infirmities in the 2016 rule. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

*2021 Announcement*. DeVry also complains that an electronic announcement issued by the Department improperly established a presumption of full relief for student borrowers. FAC ¶¶ 3, 141.

16

Again, to the extent DeVry's supposed injury is based on its inability to object to the announcement through notice and comment, *id.*, this alleged procedural injury is inadequate to establish standing. DeVry bears the burden to show a concrete and particularized injury that it has suffered as a result of the announcement, not that the announcement might affect hypothetical recovery proceedings. *See Larkin*, 982 F.3d at 1064. It has not carried that burden.

Even if DeVry had standing to challenge the announcement—and it does not—it has failed to establish that the announcement constitutes final agency action. *See Bennett*, 520 U.S. at 177-78. The challenged presumption itself has no legal effect on borrowers or institutions such as DeVry, and is at most a general statement of policy meant to "announce[] the course which the agency intends to follow in future adjudications," *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974). *See* Rescission of Borrower Defense Partial Relief Methodology (Aug. 24, 2021), https://perma.cc/F2HJ-73QN; *Colwell v. HHS*, 558 F.3d 1112, 1124 (9th Cir. 2009) (a general statement of policy "does not have 'a present-day binding effect,' that is, it does not 'impose any rights and obligations'" (citations omitted)); *see also Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005). The announcement is not the Department's final word on any borrower defense application or on any school's liability.

## II.    The Court Should Reject DeVry's Request for Alternative Relief.

DeVry fares no better in making its "alternative" request for relief. DeVry first asks the Court to "declare . . . the appropriate legal basis (if any) for the Recoupment Action[.]" FAC, Relief Requested ¶ H. But that request is simply a repackaging of DeVry's request that the Court declare the Department has exceeded its authority in initiating the recovery proceeding; for the reasons described above, the Court should not reach the merits of that claim now.

Nor can DeVry demonstrate that the Court should "declare . . . what procedures would govern the rights of the parties in adjudicating the merits of the underlying BDR Applications and the

17

Recoupment Action to ensure DeVry is provided due process of law." *Id.*; *see id.* ¶ 5. The Seventh Circuit rejected a similar request in *Abbs*, where the plaintiff asked the court "to determine the ground rules by which the administrative investigation and any further administrative proceedings are to be conducted." 963 F.2d at 926. As the Seventh Circuit held, the appropriate time to bring suit to challenge the procedures utilized by an agency is "if and when a sanction of any sort is meted out[.]" *Id.* at 926-27 ("[I]f the challenge succeeds he will be home free. If the challenge fails, he will be no worse off than he would have been had he never brought the present suit, assuming (for symmetry) that this suit terminated adversely to him on the merits."). Moreover, "the formulation of procedures [is] basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *see id.* at 525 (courts should not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress."). DeVry offers no reason to deviate from that principle in this case, particularly given the adequacy of the Department's procedures, as noted above.

### III.    The Borrower Defense Rules are Statutorily Authorized.

The Court need not reach the merits of DeVry's Counts I and VI, both claiming that various aspects of the borrower defense rules exceed the Department's statutory authority, if it dismisses them for the reasons described above. But if the Court does reach the merits, the Court should dismiss those claims under Rule 12(b)(6).

#### A.    Adjudication of Borrower Defense Claims and Recoupment (Count VI)

Contrary to DeVry's assertions, the Secretary has authority to adjudicate borrower defense claims and recoup the amounts discharged from schools. *See* FAC ¶¶ 76-77, 82-85, 164-67 (Count

VI).[7] DeVry focuses too narrowly on § 1087e(h), without properly considering the context of other statutory provisions governing the federal student loan programs. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (recognizing "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme") (cleaned up). In addition to directing the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan," 20 U.S.C. § 1087e(h), Congress gave the Department broad authority to promulgate regulations to administer the student loan program and carry out its duties under Title IV of the HEA. *See, e.g.*, *id.* §§ 1221e-3, 1082, 3441, 3471, 3474. Adjudication of borrower defenses and recoupment falls within that general authority to administer the student loan program. *Vara v. DeVos*, No. CV 19-12175-LTS, 2020 WL 3489679, at *3 (D. Mass. June 25, 2020) (where "Congress has delegated to an agency the task of administering federal programs, that agency undertakes a non-discretionary duty to adjudicate claims or applications that are essential to the administration of those programs").

The notion that borrower defenses cannot be adjudicated by the Department is untenable in light of the many statutory provisions allowing the Department to use non-judicial methods to collect repayments from borrowers and requiring the Department to conduct pre-deprivation hearings when using these methods. These procedures necessarily require the Department to adjudicate, if raised, whether borrowers have any defenses. 20 U.S.C. § 1080a(c)(4), 31 U.S.C. § 3711(e) (credit bureau reporting); 5 U.S.C. § 5514 (Federal salary offset); 20 U.S.C. § 1095a, 31 U.S.C. § 3720D (wage garnishment); 31 U.S.C. §§ 3716, 3720B (Federal payment offset). There is no indication that Congress meant to limit borrower defenses to those few cases that might arise in court, as opposed to making borrower defenses available to any borrower affected by a school's misconduct.

---

[7] A similar challenge to the 2022 Rule is currently being litigated in the Fifth Circuit. *Career Colleges & Schools of Texas v. U.S. Dep't of Educ.*, No. 23-50491 (oral argument held Nov. 6, 2023). However, the 2022 Rule is not being applied to DeVry. Nor would any Fifth Circuit decision be binding on this Court.

The HEA also authorizes administrative recoupment. Although § 1087e(h) does not specifically discuss recoupment, it must be read in light of the structure of the HEA. Congress has authorized the Department to issue regulations to ensure that the schools that participate in the Title IV programs and receive Title IV funds comply with program requirements. *See* 20 U.S.C. §§ 1094(c)(1); 1099c(c). The Department also has authority to hold institutions liable for losses that they generate through participation in Title IV, including through acts and omissions that give rise to borrower defenses that cause loss to the Department. Under 20 U.S.C. § 1087d(a)(3), to participate in the Direct Loan Program, a school must agree to "accept[] responsibility and financial liability stemming from its failure to perform its functions pursuant to the [participation] agreement." In addition, the HEA has long authorized recovery against FFEL Program participants based on institutional misconduct, and Congress provided that the Direct Loans would have "the same terms, conditions, and benefits" as FFEL loans. 20 U.S.C. §§ 1087(c), 1087e(a); *see Chauffeur's Training Sch., Inc. v. Spellings*, 478 F.3d 117, 125–30 (2d Cir. 2007) (upholding Department's authority to "administratively assess a liability for loan program violations" against a FFEL-participating school even where the HEA was "silent" with respect to the particular context at issue); *Pro Schs.*, 824 F. Supp. at 1316 (recognizing Department's ability to "demand repayment of improperly utilized funds" under the FFEL Program) (citing 20 U.S.C. § 1094(b)-(c); 34 C.F.R. Part 668, Subparts G and H); *cf. Sweet*, 641 F. Supp. 3d at 823, 827 (approving use of the Department's settle and compromise authority in § 1082(b)(6), which appears in the FFEL part of the HEA, for Direct Loans because § 1087e(a)(1) requires Direct Loans to have the same terms, conditions, and benefits as FFEL loans). Thus, "from the inception of the Direct Loan Program, [the Department has] considered its administrative authority under the HEA for the Direct Loan Program to authorize the Department to hold schools liable for losses incurred through borrower defenses." 81 Fed. Reg. at 75,931; *see also UPS v. Postal*

*Regulatory Comm'n*, 890 F.3d 1053, 1065 (D.C. Cir. 2018) (deferring to agency interpretation that created "no anomalies and flow[ed] sensibly from text, history, and statutory structure").[8]

The Department's authority to adjudicate borrower defenses and recoupment actions is evident from the statute, but even if the Court determines that Congress has not "directly spoken to the precise question at issue," courts defer to the agency's interpretation so long as it is a permissible construction of the statute. *Chevron, USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984). The court "need not conclude that the [agency's] interpretation is the best interpretation from a textual or policy standpoint. So long as the [agency's] interpretation is reasonable, [the court] must apply it." *Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 787 (7th Cir. 2017) (citation omitted). The Department's interpretation that the HEA permits it to adjudicate defense to repayment claims from borrowers and to initiate corresponding administrative recoupment proceedings is reasonable for the reasons described above and therefore warrants deference. This is especially true because the interpretations have not changed for nearly 30 years. Congress created the Direct Loan Program (including the borrower defense provision, § 1087e(h)) in 1993, Pub. L. No. 103-66, sec. 4021, § 455(h), 107 Stat. 312, 351, and the next year, the Department promptly promulgated regulations identifying the institutional acts and omissions that could constitute a borrower defense and establishing procedures for discharging borrowers' debts and recovering those amounts from schools, 59 Fed. Reg. at 61,664. Although the borrower defense was rarely used until Corinthian Colleges

---

[8] In any event, regardless of the HEA, the Department has a common law right to recover borrower defense losses from schools. As the Department explained in the Final Rule:

> To the extent that the borrower proves that the act or omission of the school gave the borrower a defense, the amount not recoverable from the borrower was a loss incurred because of the Department's legal obligation to honor that defense. That loss . . . is not one incurred voluntarily, but . . . by legal obligation. By honoring the proven defense of the Direct Loan borrower . . . the Secretary acquires by subrogation the claim of the Direct Loan borrower . . . , as well as a claim for reimbursement from the [school] that caused the loss . . . .

81 Fed. Reg. at 75,932.

collapsed in 2015, 81 Fed. Reg. at 75,926, the foundations of the borrower defense regulations—misconduct by the school, discharge of the borrower's loans, and school accountability—have been in place for decades and have not changed across the four different versions of the same regulation from 1994 until now. *See, e.g., Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 735-36 (5th Cir. 2018) (upholding as "well within the bounds of permissible interpretation" agency position that "makes practical sense" and was "consistently held . . . for decades").

In earlier filings, DeVry has attempted to invoke the major questions doctrine, *see* ECF No. 38-1, at 14, but that doctrine is reserved for "extraordinary cases," involving "extravagant statutory power over the national economy" or "highly consequential power beyond what Congress could reasonably be understood to have granted," *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (citations omitted), and it has no application here. The features of the borrower defenses regulations that DeVry challenges—the adjudication of borrower defenses and administrative recoupment actions—have been in effect for more than 30 years, since shortly after Congress enacted the Direct Loan Program. Moreover, they were enacted pursuant to statutory provisions requiring the Department to define the circumstances under which borrowers can obtain relief from their obligations to repay Direct Loans based on institutional misconduct, and to model the Direct Loan Program on the FFEL Program, where the Department's history of discharging borrowers' loans based on school misconduct and recouping money from those schools goes back even further. *See* 20 U.S.C. §§ 1087(c), 1087e(h). Also, the rules operate as a condition on the receipt of federal funds, applicable only to the entities that choose to participate in a federal program administered by the Department. The rules do not apply outside of the schools' agreements to participate in the Direct Loan Program or the field of federal student financial aid and are thus in the heartland of the Department's statutory expertise. Finally, unlike the loan forgiveness program at issue in *Biden v. Nebraska*, which affected "nearly every borrower in the country," 143 S. Ct. 2355, 2369 (2023), the

borrower defense regulations at issue here affect only borrowers from a small minority of schools—schools that defraud borrowers and therefore must return to the Department the federal student loan funding they never should have received. Thus, DeVry's Count VI fails and should be dismissed.

### B.   Group Claims (Count I)

In Count I, DeVry alleges that the Department has adjudicated the borrower defense claims at issue in DeVry's case on a group basis and that the Department lacks authority to do so. FAC ¶¶ 18.c, 92.c, 98-99, 115, 126-130.[9] In 2016, the Department promulgated regulations allowing borrower defense claims to be adjudicated on either an individual basis or a group basis. In individual claims, the borrower defense claim is adjudicated first, followed by a recoupment proceeding, if the Department initiates one. *See* 34 C.F.R. § 685.222(e)(1)-(5), (7). If multiple borrower defense applications present common facts and claims, the Department can consolidate them into group claims. *Id.* §§ 685.222(e)(6), (f)(1). In group claims against open schools, the borrower defense and the recoupment claims are adjudicated in a single proceeding. *Id.* § 685.222(h)(1).[10] Whether the Department is seeking to recover losses based on an individual or group borrower defense claim, the Department must prove the merits of the underlying claim in order to recoup, although individual discharges already granted are not affected if the Department is unsuccessful in proving the claim in the recoupment proceeding. *See* 82 Fed. Reg. at 6,255. These procedures apply to loans disbursed on or after July 1, 2017 and before July 1, 2020. *See* 34 C.F.R. § 685.206(d).

---

[9] DeVry cites a January 12, 2021 memorandum from the Department's former Principal Deputy General to the former Secretary, which expressed in a footnote a belief that the "class action" provision of the 2016 Rule was "problematic." FAC ¶ 129. The Rubinstein memorandum was primarily concerned with the Department's authority to establish a mass student loan forgiveness program outside of the borrower defense context. In any event, it was later rescinded by current General Counsel. 87 Fed. Reg. 52,944, 52,945 (Aug. 30, 2022).

[10] In group claims where the borrower defense is based on a substantial misrepresentation that has been widely disseminated, there is a rebuttable presumption that each member of the group reasonably relied on the misrepresentation. 34 C.F.R. § 685.222(f)(3).

As discussed, DeVry lacks standing to challenge the borrower defense discharges because they have no binding effect on the recoupment action. *See supra* at 15-16. But the claim should also be dismissed under Rule 12(b)(6) because DeVry has not plausibly alleged that the Department actually used the group procedures here. On a motion to dismiss, reasonable inferences are drawn in the plaintiff's favor; however, "when an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Here, despite DeVry's allegations that the Department adjudicated BDR applications as a group, *see* FAC ¶¶ 92, 115, 126-130, the Department's Initiation Letter (attached to the FAC) shows the Department began a recoupment proceeding after the borrowers' loans had already been discharged, a process that only applies to individual claims. The Letter also cites a regulation that only applies to individual claims, 34 C.F.R. § 685.222(e)(7). Initiation Letter at 1. Further, as DeVry itself alleges, 98.6% of the claims at issue were subject to the 1994 Rule, which did not include group claim procedures. FAC ¶ 87; *see* 59 Fed. Reg. at 61,696.

But even if group claim procedures were used in this case, these procedural regulations were authorized by statute. In 20 U.S.C. § 1087e(h), Congress directs the Department to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan."[11] This provision not only leaves the details of the substantive elements of those defenses to the Department, but when read in concert with the statutory provisions delegating general authority to the Department to administer the student loan programs, it also allows the Department to determine how such defenses should be adjudicated. *See supra* at 18-20.[12] Much like

---

[11] As the Department explained in promulgating the 2016 rule, although § 1087e(h) refers to "a borrower," a default rule of statutory interpretation is that a term includes both the singular and the plural, absent a contrary indication in the statute, which there is not. 1 U.S.C. § 1; 81 Fed. Reg. at 75,965.

[12] Moreover, in 2020, Congress recognized that borrower defenses may be "provided to . . . groups of students." Pub. L. No. 116-260, div. FF, tit. VII, sec. 703, § 401(d)(5)(B)(ii)(II)(bb)(CC), 134 Stat. 1182, 3198 (Dec. 27,

class actions in the judicial system, a group-based process for adjudicating borrower-defense claims is reasonable given the common and recurring issues involved: often, an institution's act or omission (such as misrepresenting its graduates' employment rates in mass communications to prospective students) will have affected many borrowers. It would be inefficient—and a waste of public resources—for the Department to conduct individualized adjudications of virtually identical claims involving the same facts and circumstances. *See* 81 Fed. Reg. at 75,965. For these reasons, the Court should dismiss Count I as to the group procedures claim.

## IV. DeVry Cannot Proceed on Its ALJ Claim.

### A. DeVry Fails to Allege Prejudicial Harm.

DeVry's Count V should be dismissed because, even if the ALJs' removal protections are unconstitutional, DeVry cannot get relief where, as here, there is no dispute that the ALJ presiding over this proceeding was properly appointed, and DeVry has not alleged that the challenged removal provision "cause[d] harm" by prejudicing the President's control of the administrative proceeding. *Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021). A party alleging a removal violation can show entitlement to relief only when there is a substantiated desire to remove the insulated actor, a perceived inability to do so, and a nexus between the desire to remove and the challenged actions taken by the insulated actor. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022); *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137-38 (9th Cir. 2021) (denying relief in light of failure to establish a link between an ALJ's decision and the ALJ's removal protections); *Calcutt v. FDIC*, 37

---

2020). Specifically, Congress amended the HEA to provide that, if a student receives a Pell Grant and a loan to attend a school for a period of time, that time period would not count against the 12-semester cap on Pell Grants if the loan is discharged "under section 1087e(h) . . . due to the student's successful assertion of a defense to repayment of the loan, including defenses provided to any applicable groups of students." *Id.*

F.4th 293, 318-20 (6th Cir. 2022) ("*Collins* decisively precludes relief" where litigant made only a generalized allegation of harm), *cert. granted, opinion rev'd on other grounds*, 143 S. Ct. 1317 (2023).[13]

A showing of harm is required regardless of whether the challenger tries to characterize the relief it seeks as voiding past agency actions or preventing ongoing or future actions. For example, in *CFPB v. Law Offices of Crystal Moroney, P.C.*, the CFPB sought to enforce a civil investigative demand ("CID") for production of documents as part of an ongoing investigation into whether Ms. Moroney's law office was violating debt collection laws. 63 F.4th 174, 178, 185 (2d Cir. 2023). Moroney tried to distinguish *Collins* on the ground that the relief she sought was prospective (protection from having to produce documents) and not retrospective (voiding the issued CID). The Second Circuit rejected this argument because "the Supreme Court's reasoning that an officer's actions are valid so long as she was validly appointed applies with equal force regardless of the relief sought by the party challenging the officer's actions." *Id.* at 180–81. The Fifth and Sixth Circuits have rejected similar arguments for similar reasons. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th at 631-32; *Calcutt*, 37 F.4th at 316.

Here, DeVry has not alleged that the President or the Secretary has sought to remove the presiding ALJ or that either is displeased by the ALJ's handling of the recoupment proceeding.[14] *See*

---

[13] Although the Fifth Circuit held in *Jarkesy v. SEC* that SEC ALJs' removal protections were unconstitutional, it avoided the *Collins* issue by declining to decide whether "vacating would be the appropriate remedy based on this error alone." 34 F.4th 446, 463 n.17 (5th Cir. 2022), *cert. granted*, No. 22-859, 2023 WL 4278448 (S. Ct. June 30, 2023). Instead, the Fifth Circuit granted relief on other constitutional grounds.

[14] Mere incantation of "here-and-now injury" under *Axon* or *Seila Law* is insufficient to establish harm. *See* FAC ¶ 121. *Axon* held that federal district courts have subject-matter jurisdiction over the plaintiffs' claims that SEC and FTC ALJs' removal protections were unconstitutional, in part. 598 U.S. at 191-92. However, *Axon* did not address whether the ALJs' removal protections are indeed unconstitutional or, if they are, what a plaintiff needs to show to obtain a remedy. Similarly, *Seila Law* referred to a "here-and-now injury" in the context of holding that a private party aggrieved by the CFPB Director's exercise of executive power had Article III standing to challenge the Director's removal protections. 140 S. Ct. at 2196. *Seila Law* did not discuss any injury in determining the remedy. *Id.* at 2208. *Collins*, though, was issued the following year and involved a challenge to the Federal Housing Finance Agency Director's similar removal protections, and it required a showing of harm beyond the existence of an unconstitutional removal provision for relief. 141 S. Ct. at 1783, 1788-89.

*Collins*, 141 S. Ct. at 1789. Whether DeVry tries to frame this case as seeking prospective (enjoining ongoing proceedings) or retrospective (voiding the "recoupment demand") relief, this failure is dispositive. Accordingly, the Court should dismiss DeVry's ALJ removal claim.

### B. The Department ALJs' Removal Protections are Constitutional.

Although the Court need not reach the question of whether the ALJs' removal protections are constitutional, if it does, the Court should hold that they are. Congress created ALJs when it enacted the APA in 1946. *See* Pub. L. No. 79-404 § 11, 60 Stat. 237, 244 (1946). ALJs were "[s]ubject to the civil-service" and "shall be removable by the agency in which they are employed only for good cause established and determined by the Civil Service Commission." *Id.* That provision is now codified in 5 U.S.C. § 7521(a), which provides that ALJs may be removed by their appointing agency "only for good cause established and determined by the Merit Systems Protection Board [(MSPB)]." MSPB members, in turn, are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This longstanding scheme gives ALJs a "qualified right of decisional independence," *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir. 1980), and was designed to rebut allegations that ALJs might be "mere tools of the agency[.]" *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 131 (1953).

Article II grants the President the power to appoint "lesser officers," and "[t]hat power . . . includes the ability to remove" those officers. *Seila Law*, 140 S. Ct. at 2197. However, just as the "power to remove" is considered "an incident of the power to appoint," "the power of Congress to regulate removals" is "incidental to the exercise of its constitutional power to vest appointments." *Myers v. United States*, 272 U.S. 52, 161 (1926); *see United States v. Perkins*, 116 U.S. 483, 485 (1886). The key inquiry in removal cases like this one is whether Congress has "interfere[d] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 689 (1988) (citation omitted).

Congress has not, in this case, so interfered. The Supreme Court has repeatedly recognized that Congress may regulate removals of inferior officers. In *Perkins*, the Court upheld a restriction on the Secretary of the Navy's power to remove a naval officer. 116 U.S. at 484-85. In *Morrison*, the Court upheld a restriction on the Attorney General's power to remove an independent counsel. 487 U.S. at 685-96. The Court has also recognized that the scope of the President's constitutional power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers. For example, in *Morrison*, the Court observed that tenure protection may be "necessary to the proper functioning" of "an official performing 'quasi-judicial' functions." 487 U.S. at 691 n.30; *see also Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (holding that Congress could limit the President's power to remove members of the War Claims Commission, an "adjudicatory body," because of "the intrinsic judicial character of the task with which the Commission was charged"); *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935) (finding it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" charged with "quasi-judicial" duties).

Congress's authority to regulate removals is not limitless. In *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, the Supreme Court held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal protections of a particular set of officers—members of the PCAOB. 561 U.S. 477, 505 (2010). But, contrary to DeVry's assertion, FAC ¶ 67, the Supreme Court "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." *Decker Coal*, 8 F.4th at 1132. Nor did it rule on the constitutionality of ALJ or other civil service protections. *Free Enter.*, 561 U.S. at 506-07 & n.10. Further, this case is distinguishable from *Free Enterprise Fund*. As the Court observed there, ALJs "perform adjudicative rather than enforcement or policymaking functions." 561 U.S. at 507 n.10. Also, ALJs' removal protections are not as stringent as the PCAOB's "novel" and "rigorous" removal limitations. *Id.* at 496, 503. Congress made PCAOB

members removable by the SEC Commissioners only for "willful violations of the [Sarbanes-Oxley] Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance," 561 U.S. at 503, while the SEC Commissioners were presumed to be removable only for inefficiency, neglect of duty, or malfeasance in office, *id.* at 487. In contrast, the "good cause" standard in 5 U.S.C. § 7521 is less strict. It allows ALJs to be removed for misconduct, poor performance, or insubordination. *See* Black's Law Dictionary 822 (4th ed. 1951) (defining "good cause" to include "any ground which is put forward by authorities in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the duties with which such authorities are charged"); *Morrison*, 487 U.S. at 724 n.4 (Scalia, J., dissenting) ("*for cause* . . . would include, of course, the failure to accept supervision"). Also, unlike the SEC Commissioners, who were understood to have for-cause removal protections of their own, the Secretary of Education is removable at will by the President.

The MSPB's involvement does not, "by itself, put any additional burden on the President's exercise of executive authority"; rather, it simply "ensure[s] that an [ALJ] is removed only in accordance with" the good-cause standard prescribed by Congress. *See Morrison*, 487 U.S. at 693 n.33.[15] That is because an ALJ is removable "by the agency in which the [ALJ] is employed," 5 U.S.C. § 7521(a), not by the MSPB. The MSPB's role is to hold a hearing and determine whether the requisite "good cause" exists if the agency removes an ALJ and the ALJ challenges that decision. *See id.*

The other case cited by DeVry, the Fifth Circuit's decision in *Jarkesy*, is neither binding nor persuasive. *See* FAC ¶ 71. This Court should instead follow the reasoning of the Ninth and Sixth Circuit in upholding the removal protections of Department of Labor ("DOL") and Federal Deposit

---

[15] Just as the Attorney General's decision to fire an "inferior officer" for good cause was allowable in *Morrison* even though it was subject to judicial review, so too is the Secretary's decision to fire an ALJ for good cause allowable even though it may be reviewed by the MSPB. *Morrison*, 487 U.S. at 663-64, 686-93. If anything, the President has *more* control over removal where, as here, the reviewers of a subordinate's firing decision are *also* removable by the President, than in cases where the reviewers are Article III judges who cannot be removed by the President at all. *Compare id.* at 663-64 *with* 5 U.S.C. § 1202(d).

Insurance Corporation ("FDIC") ALJs, respectively. *See Decker Coal*, 8 F.4th at 1133; *see also Calcutt*, 37 F.4th at 319 ("doubt[ing]" that petitioner "could establish a constitutional violation from the ALJ removal restrictions"). In *Decker Coal*, the Ninth Circuit held that the President had sufficient control over ALJs to satisfy the separation of powers because, although the ALJs were removable only for good cause, the ALJs' decisions were reviewable by an administrative appellate board whose members served at the pleasure of the Secretary of Labor, who in turn was removable at will by the President. 8 F.4th at 1133-35. The Ninth Circuit also reasoned that "Congress has not tied the President's hands and hindered his control over his subordinates here," on the ground that no statute required DOL to use ALJs in black lung benefits cases in the first place. Rather, the Executive Branch chose on its own to use ALJs. *Id.* at 1133-34. *Calcutt* relied on similar reasoning in finding no separation of powers problem with the FDIC ALJs' removal protections. 37 F.4th at 319.[16]

Here, the President likewise has ample tools available to hold his subordinates accountable. When the ALJ in this case makes his initial decision, it will be subject to review by the Secretary of Education, 34 C.F.R. § 668.91(c)(2), who is removable at will by the President—a more direct review process than in *Decker Coal.* And no statute requires the use of ALJs in the Department's proceedings in the first place. *See* 57 Fed. Reg. at 47,753 (removing regulatory requirement that hearings be conducted by ALJs after Congress amended the HEA to no longer require hearings on the record). These factors, along with the quasi-judicial nature of the ALJs' role and the relatively limited protection offered by the good cause standard, compared to the PCAOB members' standard in the *Free Enterprise Fund*, indicate the ALJs' removal protections are compatible with the separation of powers.

## CONCLUSION

For these reasons, the Court should dismiss DeVry's FAC.

---

[16] The Ninth and Sixth Circuits' emphasis on the reviewability of the ALJs' decisions is consistent with the Supreme Court's similar emphasis in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1987 (2021).

Dated: November 8, 2023                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Branch Director

                                           */s/ Stuart J. Robinson*
                                           STUART J. ROBINSON
                                           Senior Counsel
                                           CYNTHIA LIAO
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           450 Golden Gate Ave., Suite 7-5395
                                           San Francisco, CA 94102
                                           Tel: (415) 436-6635
                                           Email: stuart.j.robinson@usdoj.gov

                                           *Counsel for Defendants*