# APPENDIX

**Code of Federal Regulations (July 1, 2022 print edition)**

- 34 C.F.R. § 685.206
- 34 C.F.R. § 685.222
- 34 C.F.R. §§ 668.81-.99 (Subpart G)

**Ofc. of Postsecondary Educ., Education** § 685.206

(2) The period for which payments are overdue at the beginning of an authorized deferment or forbearance period;

(3) The period beginning when the borrower entered repayment without the Secretary's knowledge until the first payment due date was established;

(4) The period prior to a borrower's filing of a bankruptcy petition;

(5) A period after the Secretary receives reliable information indicating that the borrower (or the student in the case of a Direct PLUS Loan obtained by a parent borrower) has died, or the borrower has become totally and permanently disabled, until the Secretary receives documentation of death or total and permanent disability;

(6) Periods necessary for the Secretary to determine the borrower's eligibility for discharge—

(i) Under 685.206(c), (d) and (e);

(ii) Under §685.214;

(iii) Under §685.215;

(iv) Under §685.216;

(v) Under §685.217;

(vi) Under §685.222; or

(vii) Due to the borrower's or endorser's (if applicable) bankruptcy;

(7) A period of up to three years in cases where the effect of a variable interest rate on a fixed-amount or graduated repayment schedule causes the extension of the maximum repayment term;

(8) A period during which the Secretary has authorized forbearance due to a national military mobilization or other local or national emergency;

(9) A period of up to 60 days necessary for the Secretary to collect and process documentation supporting the borrower's request for a deferment, forbearance, change in repayment plan, or consolidation loan. Interest that accrues during this period is not capitalized; or

(10) For Direct PLUS Loans first disbursed before July 1, 2008, to align repayment with a borrower's Direct PLUS Loans that were first disbursed on or after July 1, 2008, or with Direct Subsidized Loans or Direct Unsubsidized Loans that have a grace period in accordance with §685.207(b) or (c). The Secretary notifies the borrower that the borrower has the option to

cancel the forbearance and continue paying on the loan.

(c) *Period of forbearance.* (1) The Secretary grants forbearance for a period of up to one year.

(2) The forbearance is renewable, upon request of the borrower, for the duration of the period in which the borrower meets the condition required for the forbearance.

(Approved by the Office of Management and Budget under control number 1845–0021)

[59 FR 61690, Dec. 1, 1994, as amended at 61 FR 29900, June 12, 1996; 64 FR 58968, Nov. 1, 1999; 65 FR 65629, Nov. 1, 2000; 66 FR 34765, June 29, 2001; 68 FR 75430, Dec. 31, 2003; 71 FR 45712, Aug. 9, 2006; 73 FR 63255, Oct. 23, 2008; 74 FR 56003, Oct. 29, 2010; 78 FR 65832, Nov. 1, 2013; 81 FR 76080, Nov. 1, 2016; 84 FR 49926, Sept. 23, 2019]

**§ 685.206  Borrower responsibilities and defenses.**

(a) The borrower must give the school the following information as part of the origination process for a Direct Subsidized, Direct Unsubsidized, or Direct PLUS Loan:

(1) A statement, as described in 34 CFR part 668, that the loan will be used for the cost of the student's attendance.

(2) Information demonstrating that the borrower is eligible for the loan.

(3) Information concerning the outstanding FFEL Program and Direct Loan Program loans of the borrower and, for a parent borrower, of the student, including any Federal Consolidation Loan or Direct Consolidation Loan.

(4) A statement authorizing the school to release to the Secretary information relevant to the student's eligibility to borrow or to have a parent borrow on the student's behalf (e.g., the student's enrollment status, financial assistance, and employment records).

(b)(1) The borrower must promptly notify the Secretary of any change of name, address, student status to less than half-time, employer, or employer's address; and

(2) The borrower must promptly notify the school of any change in address during enrollment.

(c) *Borrower defense to repayment for loans first disbursed prior to July 1, 2017.*

251

(1) For loans first disbursed prior to July 1, 2017, the borrower may assert a borrower defense under this paragraph. A ''borrower defense'' refers to any act or omission of the school attended by the student that relates to the making of the loan for enrollment at the school or the provision of educational services for which the loan was provided that would give rise to a cause of action against the school under applicable State law, and includes one or both of the following:

(i) A defense to repayment of amounts owed to the Secretary on a Direct Loan, in whole or in part.

(ii) A claim to recover amounts previously collected by the Secretary on the Direct Loan, in whole or in part.

(2) The order of objections for defaulted Direct Loans are as described in § 685.222(a)(6). A borrower defense claim under this section must be asserted, and will be resolved, under the procedures in § 685.222(e) to (k).

(3) For an approved borrower defense under this section, except as provided in paragraph (c)(4) of this section, the Secretary may initiate an appropriate proceeding to collect from the school whose act or omission resulted in the borrower defense the amount of relief arising from the borrower defense, within the later of—

(i) Three years from the end of the last award year in which the student attended the institution; or

(ii) The limitation period that State law would apply to an action by the borrower to recover on the cause of action on which the borrower defense is based.

(4) The Secretary may initiate a proceeding to collect at any time if the institution received notice of the claim before the end of the later of the periods described in paragraph (c)(3) of this section. For purposes of this paragraph, notice includes receipt of—

(i) Actual notice from the borrower, from a representative of the borrower, or from the Department;

(ii) A class action complaint asserting relief for a class that may include the borrower; and

(iii) Written notice, including a civil investigative demand or other written demand for information, from a Federal or State agency that has power to initiate an investigation into conduct of the school relating to specific programs, periods, or practices that may have affected the borrower.

(d) *Borrower defense to repayment for loans first disbursed on or after July 1, 2017, and before July 1, 2020.* For borrower defense to repayment for loans first disbursed on or after July 1, 2017, and before July 1, 2020, a borrower asserts and the Secretary considers a borrower defense in accordance with § 685.222.

(e) *Borrower defense to repayment for loans first disbursed on or after July 1, 2020.* This paragraph (e) applies to borrower defense to repayment for loans first disbursed on or after July 1, 2020.

(1) *Definitions.* For the purposes of this paragraph (e), the following definitions apply:

(i) A ''Direct Loan'' means a Direct Subsidized Loan, a Direct Unsubsidized Loan, or a Direct PLUS Loan.

(ii) ''Borrower'' means

(A) The borrower; and

(B) In the case of a Direct PLUS Loan, any endorsers, and for a Direct PLUS Loan made to a parent, the student on whose behalf the parent borrowed.

(iii) A ''borrower defense to repayment'' includes—

(A) A defense to repayment of amounts owed to the Secretary on a Direct Loan, or a Direct Consolidation Loan that was used to repay a Direct Loan, FFEL Program Loan, Federal Perkins Loan, Health Professions Student Loan, Loan for Disadvantaged Students under subpart II of part A of title VII of the Public Health Service Act, Health Education Assistance Loan, or Nursing Loan made under part E of the Public Health Service Act; and

(B) Any accompanying request for reimbursement of payments previously made to the Secretary on the Direct Loan or on a loan repaid by the Direct Consolidation Loan.

(iv) The term ''provision of educational services'' refers to the educational resources provided by the institution that are required by an accreditation agency or a State licensing or authorizing agency for the completion of the student's educational program.

(v) The terms "school" and "institution" may be used interchangeably and include an eligible institution, one of its representatives, or any ineligible institution, organization, or person with whom the eligible institution has an agreement to provide educational programs, or to provide marketing, advertising, recruiting, or admissions services.

(2) *Federal standard for loans first disbursed on or after July 1, 2020.* For a Direct Loan or Direct Consolidation Loan first disbursed on or after July 1, 2020, a borrower may assert a defense to repayment under this paragraph (e),if the borrower establishes by a preponderance of the evidence that—

(i) The institution at which the borrower enrolled made a misrepresentation, as defined in §685.206(e)(3), of material fact upon which the borrower reasonably relied in deciding to obtain a Direct Loan, or a loan repaid by a Direct Consolidation Loan, and that directly and clearly relates to:

(A) Enrollment or continuing enrollment at the institution or

(B) The provision of educational services for which the loan was made; and

(ii) The borrower was financially harmed by the misrepresentation.

(3) *Misrepresentation.* A "misrepresentation," for purposes of this paragraph (e), is a statement, act, or omission by an eligible school to a borrower that is false, misleading, or deceptive; that was made with knowledge of its false, misleading, or deceptive nature or with a reckless disregard for the truth; and that directly and clearly relates to enrollment or continuing enrollment at the institution or the provision of educational services for which the loan was made. Evidence that a misrepresentation defined in this paragraph (e) may have occurred includes, but is not limited to:

(i) Actual licensure passage rates materially different from those included in the institution's marketing materials, website, or other communications made to the student;

(ii) Actual employment rates materially different from those included in the institution's marketing materials, website, or other communications made to the student;

(iii) Actual institutional selectivity rates or rankings, student admission profiles, or institutional rankings that are materially different from those included in the institution's marketing materials, website, or other communications made to the student or provided by the institution to national ranking organizations;

(iv) The inclusion in the institution's marketing materials, website, or other communication made to the student of specialized, programmatic, or institutional certifications, accreditation, or approvals not actually obtained, or the failure to remove within a reasonable period of time such certifications or approvals from marketing materials, website, or other communication when revoked or withdrawn;

(v) The inclusion in the institution's marketing materials, website, or other communication made to the student of representations regarding the widespread or general transferability of credits that are only transferrable to limited types of programs or institutions or the transferability of credits to a specific program or institution when no reciprocal agreement exists with another institution or such agreement is materially different than what was represented;

(vi) A representation regarding the employability or specific earnings of graduates without an agreement between the institution and another entity for such employment or sufficient evidence of past employment or earnings to justify such a representation or without citing appropriate national, State, or regional data for earnings in the same field as provided by an appropriate Federal agency that provides such data. (In the event that national data are used, institutions should include a written, plain language disclaimer that national averages may not accurately reflect the earnings of workers in particular parts of the country and may include earners at all stages of their career and not just entry level wages for recent graduates.);

(vii) A representation regarding the availability, amount, or nature of any financial assistance available to students from the institution or any other entity to pay the costs of attendance

253

at the institution that is materially different in availability, amount, or nature from the actual financial assistance available to the borrower from the institution or any other entity to pay the costs of attendance at the institution after enrollment;

(viii) A representation regarding the amount, method, or timing of payment of tuition and fees that the student would be charged for the program that is materially different in amount, method, or timing of payment from the actual tuition and fees charged to the student;

(ix) A representation that the institution, its courses, or programs are endorsed by vocational counselors, high schools, colleges, educational organizations, employment agencies, members of a particular industry, students, former students, governmental officials, Federal or State agencies, the United States Armed Forces, or other individuals or entities when the institution has no permission or is not otherwise authorized to make or use such an endorsement;

(x) A representation regarding the educational resources provided by the institution that are required for the completion of the student's educational program that are materially different from the institution's actual circumstances at the time the representation is made, such as representations regarding the institution's size; location; facilities; training equipment; or the number, availability, or qualifications of its personnel; and

(xi) A representation regarding the nature or extent of prerequisites for enrollment in a course or program offered by the institution that are materially different from the institution's actual circumstances at the time the representation is made, or that the institution knows will be materially different during the student's anticipated enrollment at the institution.

(4) *Financial harm.* Financial harm is the amount of monetary loss that a borrower incurs as a consequence of a misrepresentation, as defined in § 685.206(e)(3). Financial harm does not include damages for nonmonetary loss, such as personal injury, inconvenience, aggravation, emotional distress, pain and suffering, punitive damages, or op-

portunity costs. The Department does not consider the act of taking out a Direct Loan or a loan repaid by a Direct Consolidation Loan, alone, as evidence of financial harm to the borrower. Financial harm is such monetary loss that is not predominantly due to intervening local, regional, or national economic or labor market conditions as demonstrated by evidence before the Secretary or provided to the Secretary by the borrower or the school. Financial harm cannot arise from the borrower's voluntary decision to pursue less than full-time work or not to work or result from a voluntary change in occupation. Evidence of financial harm may include, but is not limited to, the following circumstances:

(i) Periods of unemployment upon graduating from the school's programs that are unrelated to national or local economic recessions;

(ii) A significant difference between the amount or nature of the tuition and fees that the institution represented to the borrower that the institution would charge or was charging and the actual amount or nature of the tuition and fees charged by the institution for which the Direct Loan was disbursed or for which a loan repaid by the Direct Consolidation Loan was disbursed;

(iii) The borrower's inability to secure employment in the field of study for which the institution expressly guaranteed employment; and

(iv) The borrower's inability to complete the program because the institution no longer offers a requirement necessary for completion of the program in which the borrower enrolled and the institution did not provide for an acceptable alternative requirement to enable completion of the program.

(5) *Exclusions.* The Secretary will not accept the following as a basis for a borrower defense to repayment—

(i) A violation by the institution of a requirement of the Act or the Department's regulations for a borrower defense to repayment under paragraph (c) or (d) of this section or under § 685.222, unless the violation would otherwise constitute the basis for a successful borrower defense to repayment under this paragraph (e); or

**Ofc. of Postsecondary Educ., Education** §685.206

(ii) A claim that does not directly and clearly relate to enrollment or continuing enrollment at the institution or the provision of educational services for which the loan was made, including, but not limited to—

(A) Personal injury;

(B) Sexual harassment;

(C) A violation of civil rights;

(D) Slander or defamation;

(E) Property damage;

(F) The general quality of the student's education or the reasonableness of an educator's conduct in providing educational services;

(G) Informal communication from other students;

(H) Academic disputes and disciplinary matters; and

(I) Breach of contract, unless the school's act or omission would otherwise constitute the basis for a successful defense to repayment under this paragraph (e).

(6) *Limitations period and tolling of the limitations period for arbitration proceedings.* (i) A borrower must assert a defense to repayment under this paragraph (e) within three years from the date the student is no longer enrolled at the institution. A borrower may only assert a defense to repayment under this paragraph (e) within the timeframes set forth in §685.206(e)(6)(i) and (ii) and (e)(7).

(ii) For pre-dispute arbitration agreements, as defined in §668.41(h)(2)(iii), the limitations period will be tolled for the time period beginning on the date that a written request for arbitration is filed, by either the student or the institution, and concluding on the date the arbitrator submits, in writing, a final decision, final award, or other final determination, to the parties.

(7) *Extension of limitation periods and reopening of applications.* For loans first disbursed on or after July 1, 2020, the Secretary may extend the time period when a borrower may assert a defense to repayment under §685.206(e)(6) or may reopen a borrower's defense to repayment application to consider evidence that was not previously considered only if there is:

(i) A final, non-default judgment on the merits by a State or Federal Court that has not been appealed or that is not subject to further appeal and that

establishes the institution made a misrepresentation, as defined in §685.206(e)(3); or

(ii) A final decision by a duly appointed arbitrator or arbitration panel that establishes that the institution made a misrepresentation, as defined in §685.206(e)(3).

(8) *Application and Forbearance.* To assert a defense to repayment under this paragraph (e), a borrower must submit an application under penalty of perjury on a form approved by the Secretary and sign a waiver permitting the institution to provide the Department with items from the borrower's education record relevant to the defense to repayment claim. The form will note that pursuant to paragraph (b)(6)(i) of this section, if the borrower is not in default on the loan for which a borrower defense has been asserted, the Secretary will grant forbearance and notify the borrower of the option to decline forbearance. The application requires the borrower to—

(i) Certify that the borrower received the proceeds of a loan, in whole or in part, to attend the named institution;

(ii) Provide evidence that supports the borrower defense to repayment application;

(iii) State whether the borrower has made a claim with any other third party, such as the holder of a performance bond, a public fund, or a tuition recovery program, based on the same act or omission of the institution on which the borrower defense to repayment is based;

(iv) State the amount of any payment received by the borrower or credited to the borrower's loan obligation through the third party, in connection with a borrower defense to repayment described in paragraph (e)(2) of this section;

(v) State the financial harm, as defined in paragraph (e)(4) of this section, that the borrower alleges to have been caused and provide any information relevant to assessing whether the borrower incurred financial harm, including providing documentation that the borrower actively pursued employment in the field for which the borrower's education prepared the borrower if the borrower is a recent graduate (failure to provide such information results in

255

a presumption that the borrower failed to actively pursue employment in the field); whether the borrower was terminated or removed for performance reasons from a position in the field for which the borrower's education prepared the borrower, or in a related field; and whether the borrower failed to meet other requirements of or qualifications for employment in such field for reasons unrelated to the school's misrepresentation underlying the borrower defense to repayment, such as the borrower's ability to pass a drug test, satisfy driving record requirements, and meet any health qualifications; and

(vi) State that the borrower understands that in the event that the borrower receives a 100 percent discharge of the balance of the loan for which the defense to repayment application has been submitted, the institution may, if allowed or not prohibited by other applicable law, refuse to verify or to provide an official transcript that verifies the borrower's completion of credits or a credential associated with the discharged loan.

(9) *Consideration of order of objections and of evidence in possession of the Secretary.* (i) If the borrower asserts both a borrower defense to repayment and any other objection to an action of the Secretary with regard to a Direct Loan or a loan repaid by a Direct Consolidation Loan, the order in which the Secretary will consider objections, including a borrower defense to repayment, will be determined as appropriate under the circumstances.

(ii) With respect to the borrower defense to repayment application submitted under this paragraph (e), the Secretary may consider evidence otherwise in the possession of the Secretary, including from the Department's internal records or other relevant evidence obtained by the Secretary, as practicable, provided that the Secretary permits the institution and the borrower to review and respond to this evidence and to submit additional evidence.

(10) *School response and borrower reply.* (i) Upon receipt of a borrower defense to repayment application under this paragraph (e), the Department will notify the school of the pending applica-

tion and provide a copy of the borrower's request and any supporting documents, a copy of any evidence otherwise in the possession of the Secretary, and a waiver signed by the student permitting the institution to provide the Department with items from the student's education record relevant to the defense to repayment claim to the school, and invite the school to respond and to submit evidence, within the specified timeframe included in the notice, which shall be no less than 60 days.

(ii) Upon receipt of the school's response, the Department will provide the borrower a copy of the school's submission as well as any evidence otherwise in possession of the Secretary, which was provided to the school, and will give the borrower an opportunity to submit a reply within a specified timeframe, which shall be no less than 60 days. The borrower's reply must be limited to issues and evidence raised in the school's submission and any evidence otherwise in the possession of the Secretary.

(iii) The Department will provide the school a copy of the borrower's reply.

(iv) There will be no other submissions by the borrower or the school to the Secretary, unless the Secretary requests further clarifying information.

(11) *Written decision.* (i) After considering the borrower's application and all applicable evidence, the Secretary issues a written decision—

(A) Notifying the borrower and the school of the decision on the borrower defense to repayment;

(B) Providing the reasons for the decision; and

(C) Informing the borrower and the school of the relief, if any, that the borrower will receive, consistent with paragraph (e)(12) of this section, and specifying the relief determination.

(ii) If the Department receives a borrower defense to repayment application that is incomplete and is within the limitations period in § 685.206(e)(6) or (7), the Department will not issue a written decision on the application and instead will notify the borrower in writing that the application is incomplete and will return the application to the borrower.

(12) *Borrower defense to repayment relief.* (i) If the Secretary grants the borrower's request for relief based on a borrower defense to repayment under this paragraph (e), the Secretary notifies the borrower and the school that the borrower is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay or will be reimbursed for amounts paid toward the loan voluntarily or through enforced collection. The amount of relief that a borrower receives may exceed the amount of financial harm, as defined in §685.206(e)(4), that the borrower alleges in the application pursuant to §685.206(e)(8)(v). The Secretary determines the amount of relief and awards relief limited to the monetary loss that a borrower incurred as a consequence of a misrepresentation, as defined in §685.206(e)(3). The amount of relief cannot exceed the amount of the loan and any associated costs and fees and will be reduced by the amount of refund, reimbursement, indemnification, restitution, compensatory damages, settlement, debt forgiveness, discharge, cancellation, compromise, or any other financial benefit received by, or on behalf of, the borrower that was related to the borrower defense to repayment. In awarding relief, the Secretary considers the borrower's application, as described in §685.206(e)(8), which includes information about any payments received by the borrower and the financial harm alleged by the borrower. In awarding relief, the Secretary also considers the school's response, the borrower's reply, and any evidence otherwise in the possession of the Secretary, which was previously provided to the borrower and the school, as described in §685.206(e)(10). The Secretary also updates reports to consumer reporting agencies to which the Secretary previously made adverse credit reports with regard to the borrower's Direct Loan or loans repaid by the borrower's Direct Consolidation Loan.

(ii) The Secretary affords the borrower such further relief as the Secretary determines is appropriate under the circumstances. Further relief may include one or both of the following, if applicable:

(A) Determining that the borrower is not in default on the loan and is eligible to receive assistance under title IV of the Act and

(B) Eliminating or recalculating the subsidized usage period that is associated with the loan or loans discharged pursuant to §685.200(f)(4)(iii).

(13) *Finality of borrower defense to repayment decisions.* The determination of a borrower's defense to repayment by the Department included in the written decision referenced in paragraph (e)(11) of this section is the final decision of the Department and is not subject to appeal within the Department.

(14) *Cooperation by the borrower.* The Secretary may revoke any relief granted to a borrower under this section who refuses to cooperate with the Secretary in any proceeding under paragraph (e) of this section or under 34 CFR part 668, subpart G. Such cooperation includes, but is not limited to—

(i) Providing testimony regarding any representation made by the borrower to support a successful borrower defense to repayment; and

(ii) Producing, within timeframes established by the Secretary, any documentation reasonably available to the borrower with respect to those representations and any sworn statement required by the Secretary with respect to those representations and documents.

(15) *Transfer to the Secretary of the borrower's right of recovery against third parties.* (i) Upon the grant of any relief under this paragraph (e), the borrower is deemed to have assigned to, and relinquished in favor of, the Secretary any right to a loan refund (up to the amount discharged) that the borrower may have by contract or applicable law with respect to the loan or the provision of educational services for which the loan was received, against the school, its principals, its affiliates and their successors, or its sureties, and any private fund, including the portion of a public fund that represents funds received from a private party. If the borrower asserts a claim to, and recovers from, a public fund, the Secretary may reinstate the borrower's obligation to repay on the loan an amount based on the amount recovered from

257

§ 685.207                                                34 CFR Ch. VI (7–1–22 Edition)

the public fund, if the Secretary determines that the borrower's recovery from the public fund was based on the same borrower defense to repayment and for the same loan for which the discharge was granted under this section.

(ii) The provisions of this paragraph (e)(15) apply notwithstanding any provision of State law that would otherwise restrict transfer of those rights by the borrower, limit or prevent a transferee from exercising those rights, or establish procedures or a scheme of distribution that would prejudice the Secretary's ability to recover on those rights.

(iii) Nothing in this paragraph (e)(15) limits or forecloses the borrower's right to pursue legal and equitable relief arising under applicable law against a party described in this paragraph (e)(15) for recovery of any portion of a claim exceeding that assigned to the Secretary or any other claims arising from matters unrelated to the claim on which the loan is discharged.

(16) *Recovery from the school.* (i) The Secretary may initiate an appropriate proceeding to require the school whose misrepresentation resulted in the borrower's successful borrower defense to repayment under this paragraph (e) to pay to the Secretary the amount of the loan to which the defense applies in accordance with 34 CFR part 668, subpart G. This paragraph (e)(16) would also be applicable for provisionally certified institutions.

(ii) The Secretary will not initiate such a proceeding more than five years after the date of the final determination included in the written decision referenced in paragraph (e)(11) of this section. The Department will notify the school of the borrower defense to repayment application within 60 days of the date of the Department's receipt of the borrower's application.

(Approved by the Office of Management and Budget under control number 1845–0021)

[59 FR 61690, Dec. 1, 1994, as amended at 60 FR 33345, June 28, 1995; 64 FR 58972, Nov. 1, 1999; 78 FR 65832, Nov. 1, 2013; 81 FR 76080, Nov. 1, 2016; 84 FR 49926, Sept. 23, 2019]

§ 685.207   Obligation to repay.

(a) *Obligation of repayment in general.* (1) A borrower is obligated to repay the full amount of a Direct Loan, including the principal balance, fees, any collection costs charged under § 685.202(e), and any interest not subsidized by the Secretary, unless the borrower is relieved of the obligation to repay as provided in this part.

(2) The borrower's repayment of a Direct Loan may also be subject to the deferment provisions in § 685.204, the forbearance provisions in § 685.205, the discharge provisions in § 685.212, and the loan forgiveness provisions in §§ 685.217 and 685.219.

(3) A borrower's first payment on a Direct Loan is due within 60 days of the beginning date of the repayment period as determined in accordance with paragraph (b), (c), (d), or (e) of this section.

(b) *Direct Subsidized Loan repayment.* (1) During the period in which a borrower is enrolled at an eligible school on at least a half-time basis, the borrower is in an "in-school" period and is not required to make payments on a Direct Subsidized Loan unless—

(i) The loan entered repayment before the in-school period began; and

(ii) The borrower has not been granted a deferment under § 685.204(b).

(2)(i) When a borrower ceases to be enrolled at an eligible school on at least a half-time basis, a six-month grace period begins, unless the grace period has been previously exhausted.

(ii)(A) Any borrower who is a member of a reserve component of the Armed Forces named in section 10101 of title 10, United States Code and is called or ordered to active duty for a period of more than 30 days is entitled to have the active duty period excluded from the six-month grace period. The excluded period includes the time necessary for the borrower to resume enrollment at the next available regular enrollment period. Any single excluded period may not exceed 3 years.

(B) Any borrower who is in a grace period when called or ordered to active duty as specified in paragraph (b)(2)(ii)(A) of this section is entitled to a full six-month grace period upon completion of the excluded period.

(iii) During a grace period, the borrower is not required to make any principal payments on a Direct Subsidized Loan.

(E) If the borrower did not make a payment or receive an economic hardship deferment on the loan under paragraph (f)(3)(i) or (f)(3)(ii) of this section, the date the borrower made a payment under the income-based repayment plan on the loan.

(4) Any payments made on a defaulted loan are not made under a qualifying repayment plan and are not counted toward the applicable loan forgiveness period.

(5)(i) When the Secretary determines that a borrower has satisfied the loan forgiveness requirements under paragraph (f) of this section on an eligible loan, the Secretary cancels the outstanding balance and accrued interest on that loan. No later than six months prior to the anticipated date that the borrower will meet the forgiveness requirements, the Secretary sends the borrower a written notice that includes—

(A) An explanation that the borrower is approaching the date that he or she is expected to meet the requirements to receive loan forgiveness;

(B) A reminder that the borrower must continue to make the borrower's scheduled monthly payments; and

(C) General information on the current treatment of the forgiveness amount for tax purposes, and instructions for the borrower to contact the Internal Revenue Service for more information.

(ii) The Secretary determines when a borrower has met the loan forgiveness requirements under paragraph (f) of this section and does not require the borrower to submit a request for loan forgiveness.

(iii) After determining that a borrower has satisfied the loan forgiveness requirements, the Secretary—

(A) Notifies the borrower that the borrower's obligation on the loans is satisfied;

(B) Provides the borrower with the information described in paragraph (f)(5)(i)(C) of this section; and

(C) Returns to the sender any payment received on a loan after loan forgiveness has been granted in accord-

ance with paragraph (f)(5)(i) of this section.

(Authority: 20 U.S.C. 1098e)

[73 FR 63258, Oct. 23, 2008, as amended at 74 FR 56006, Oct. 29, 2009; 77 FR 66145, Nov. 1, 2012; 80 FR 67242, Oct. 30, 2015]

§ 685.222  Borrower defenses and procedures for loans first disbursed on or after July 1, 2017, and before July 1, 2020, and procedures for loans first disbursed prior to July 1, 2017.

(a) *General.* (1) For loans first disbursed prior to July 1, 2017, a borrower asserts and the Secretary considers a borrower defense in accordance with the provisions of § 685.206(c), unless otherwise noted in § 685.206(c).

(2) For loans first disbursed on or after July 1, 2017, and before July 1, 2020, a borrower asserts and the Secretary considers a borrower defense in accordance with this section. To establish a borrower defense under this section, a preponderance of the evidence must show that the borrower has a borrower defense that meets the requirements of this section.

(3) A violation by the school of an eligibility or compliance requirement in the Act or its implementing regulations is not a basis for a borrower defense under either this section or § 685.206(c) unless the violation would otherwise constitute a basis for a borrower defense under this section or § 685.206(c), as applicable.

(4) For the purposes of this section and § 685.206(c), ''borrower'' means—

(i) The borrower; and

(ii) In the case of a Direct PLUS Loan, any endorsers, and for a Direct PLUS Loan made to a parent, the student on whose behalf the parent borrowed.

(5) For the purposes of this section and § 685.206(c), a ''borrower defense'' refers to an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided, and includes one or both of the following:

(i) A defense to repayment of amounts owed to the Secretary on a Direct Loan, in whole or in part; and

(ii) A right to recover amounts previously collected by the Secretary on the Direct Loan, in whole or in part.

(6) If the borrower asserts both a borrower defense and any other objection to an action of the Secretary with regard to that Direct Loan, the order in which the Secretary will consider objections, including a borrower defense, will be determined as appropriate under the circumstances.

(b) *Judgment against the school.* The borrower has a borrower defense under this section if the borrower, whether as an individual or as a member of a class, or a governmental agency, has obtained against the school a nondefault, favorable contested judgment based on State or Federal law in a court or administrative tribunal of competent jurisdiction. A borrower may assert a borrower defense under this paragraph at any time.

(c) *Breach of contract by the school.* The borrower has a borrower defense under this section if the school the borrower received the Direct Loan to attend failed to perform its obligations under the terms of a contract with the student. A borrower may assert a defense to repayment of amounts owed to the Secretary under this paragraph at any time after the breach by the school of its contract with the student. A borrower may assert a right to recover amounts previously collected by the Secretary under this paragraph not later than six years after the breach by the school of its contract with the student.

(d) *Substantial misrepresentation by the school.* (1) A borrower has a borrower defense under this section if the school or any of its representatives, or any institution, organization, or person with whom the school has an agreement to provide educational programs, or to provide marketing, advertising, recruiting, or admissions services, made a substantial misrepresentation in accordance with 34 CFR part 668, subpart F, that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan. A borrower may assert, at any time, a defense to repayment under this paragraph (d) of amounts owed to the Sec-

retary. A borrower may assert a claim under this paragraph (d) to recover funds previously collected by the Secretary not later than six years after the borrower discovers, or reasonably could have discovered, the information constituting the substantial misrepresentation.

(2) For the purposes of this section, a designated Department official pursuant to paragraph (e) of this section or a hearing official pursuant to paragraph (f), (g), or (h) of this section may consider, as evidence supporting the reasonableness of a borrower's reliance on a misrepresentation, whether the school or any of the other parties described in paragraph (d)(1) engaged in conduct such as, but not limited to:

(i) Demanding that the borrower make enrollment or loan-related decisions immediately;

(ii) Placing an unreasonable emphasis on unfavorable consequences of delay;

(iii) Discouraging the borrower from consulting an adviser, a family member, or other resource;

(iv) Failing to respond to the borrower's requests for more information including about the cost of the program and the nature of any financial aid; or

(v) Otherwise unreasonably pressuring the borrower or taking advantage of the borrower's distress or lack of knowledge or sophistication.

(e) *Procedure for an individual borrower.* (1) To assert a borrower defense under this section, an individual borrower must—

(i) Submit an application to the Secretary, on a form approved by the Secretary—

(A) Certifying that the borrower received the proceeds of a loan, in whole or in part, to attend the named school;

(B) Providing evidence that supports the borrower defense; and

(C) Indicating whether the borrower has made a claim with respect to the information underlying the borrower defense with any third party, such as the holder of a performance bond or a tuition recovery program, and, if so, the amount of any payment received by the borrower or credited to the borrower's loan obligation; and

(ii) Provide any other information or supporting documentation reasonably requested by the Secretary.

(2) Upon receipt of a borrower's application submitted under this section, the Secretary—

(i) If the borrower is not in default on the loan for which a borrower defense has been asserted, grants forbearance and—

(A) Notifies the borrower of the option to decline the forbearance and to continue making payments on the loan; and

(B) Provides the borrower with information about the availability of the income-contingent repayment plans under § 685.209 and the income-based repayment plan under § 685.221; or

(ii) If the borrower is in default on the loan for which a borrower defense has been asserted—

(A) Suspends collection activity on the loan until the Secretary issues a decision on the borrower's claim;

(B) Notifies the borrower of the suspension of collection activity and explains that collection activity will resume if the Secretary determines that the borrower does not qualify for a full discharge; and

(C) Notifies the borrower of the option to continue making payments under a rehabilitation agreement or other repayment agreement on the defaulted loan.

(3) The Secretary designates a Department official to review the borrower's application submitted under this section to determine whether the application states a basis for a borrower defense, and resolves the claim through a fact-finding process conducted by the Department official.

(i) As part of the fact-finding process, the Department official notifies the school of the borrower defense application and considers any evidence or argument presented by the borrower and also any additional information, including—

(A) Department records;

(B) Any response or submissions from the school; and

(C) Any additional information or argument that may be obtained by the Department official.

(ii) For borrower defense applications under this section, upon the borrower's request, the Department official identifies to the borrower the records the Department official considers relevant to the borrower defense. The Secretary provides to the borrower any of the identified records upon reasonable request of the borrower.

(4) At the conclusion of the fact-finding process under this section, the Department official issues a written decision as follows:

(i) If the Department official approves the borrower defense in full or in part, the Department official notifies the borrower in writing of that determination and of the relief provided as described in paragraph (i) of this section.

(ii) If the Department official denies the borrower defense in full or in part, the Department official notifies the borrower of the reasons for the denial, the evidence that was relied upon, any portion of the loan that is due and payable to the Secretary, and whether the Secretary will reimburse any amounts previously collected, and informs the borrower that if any balance remains on the loan, the loan will return to its status prior to the borrower's submission of the application. The Department official also informs the borrower of the opportunity to request reconsideration of the claim based on new evidence pursuant to paragraph (e)(5)(i) of this section.

(5) The decision of the Department official under this section is final as to the merits of the claim and any relief that may be granted on the claim. Notwithstanding the foregoing—

(i) If the borrower defense is denied in full or in part, the borrower may request that the Secretary reconsider the borrower defense upon the identification of new evidence in support of the borrower's claim. "New evidence" is relevant evidence that the borrower did not previously provide and that was not identified in the final decision as evidence that was relied upon for the final decision. If accepted for reconsideration by the Secretary, the Secretary follows the procedure in paragraph (e)(2) of this section for granting forbearance and for defaulted loans; and

(ii) The Secretary may reopen a borrower defense application at any time

to consider evidence that was not considered in making the previous decision. If a borrower defense application is reopened by the Secretary, the Secretary follows the procedure paragraph (e)(2) of this section for granting forbearance and for defaulted loans.

(6) The Secretary may consolidate applications filed under this paragraph (e) that have common facts and claims, and resolve the borrowers' borrower defense claims as provided in paragraphs (f), (g), and (h) of this section.

(7) The Secretary may initiate a proceeding to collect from the school the amount of relief resulting from a borrower defense under this section—

(i) Within the six-year period applicable to the borrower defense under paragraph (c) or (d) of this section;

(ii) At any time, for a borrower defense under paragraph (b) of this section; or

(iii) At any time if during the period described in paragraph (e)(7)(i) of this section, the institution received notice of the claim. For purposes of this paragraph, notice includes receipt of—

(A) Actual notice from the borrower, a representative of the borrower, or the Department of a claim, including notice of an application filed pursuant to this section or §685.206(c);

(B) A class action complaint asserting relief for a class that may include the borrower for underlying facts that may form the basis of a claim under this section or §685.206(c);

(C) Written notice, including a civil investigative demand or other written demand for information, from a Federal or State agency that has power to initiate an investigation into conduct of the school relating to specific programs, periods, or practices that may have affected the borrower, for underlying facts that may form the basis of a claim under this section or §685.206(c).

(f) *Group process for borrower defense, generally.* (1) Upon consideration of factors including, but not limited to, common facts and claims, fiscal impact, and the promotion of compliance by the school or other title IV, HEA program participant, the Secretary may initiate a process to determine whether a group of borrowers, identified by the Secretary, has a borrower defense under this section.

(i) The members of the group may be identified by the Secretary from individually filed applications pursuant to paragraph (e)(6) of this section or from any other source.

(ii) If the Secretary determines that there are common facts and claims that apply to borrowers who have not filed an application under paragraph (e) of this section, the Secretary may identify such borrowers as members of a group.

(2) Upon the identification of a group of borrowers under paragraph (f)(1) of this section, the Secretary—

(i) Designates a Department official to present the group's claim in the fact-finding process described in paragraph (g) or (h) of this section, as applicable;

(ii) Provides each identified member of the group with notice that allows the borrower to opt out of the proceeding;

(iii) If identified members of the group are borrowers who have not filed an application under paragraph (f)(1)(ii) of this section, follows the procedures in paragraph (e)(2) of this section for granting forbearance and for defaulted loans for such identified members of the group, unless an opt-out by such a member of the group is received; and

(iv) Notifies the school of the basis of the group's borrower defense, the initiation of the fact-finding process described in paragraph (g) or (h) of this section, and of any procedure by which the school may request records and respond. No notice will be provided if notice is impossible or irrelevant due to a school's closure.

(3) For a group of borrowers identified by the Secretary, for which the Secretary determines that there may be a borrower defense under paragraph (d) of this section based upon a substantial misrepresentation that has been widely disseminated, there is a rebuttable presumption that each member reasonably relied on the misrepresentation.

(g) *Procedures for group process for borrower defenses with respect to loans made to attend a closed school.* For groups

323

identified by the Secretary under paragraph (f) of this section, for which the borrower defense under this section is asserted with respect to a Direct Loan to attend a school that has closed and has provided no financial protection currently available to the Secretary from which to recover any losses arising from borrower defenses, and for which there is no appropriate entity from which the Secretary can otherwise practically recover such losses—

(1) A hearing official resolves the borrower defense under this section through a fact-finding process. As part of the fact-finding process, the hearing official considers any evidence and argument presented by the Department official on behalf of the group and, as necessary to determine any claims at issue, on behalf of individual members of the group. The hearing official also considers any additional information the Department official considers necessary, including any Department records or response from the school or a person affiliated with the school as described in § 668.174(b), if practicable. The hearing official issues a written decision as follows:

(i) If the hearing official approves the borrower defense in full or in part, the written decision states that determination and the relief provided on the basis of that claim as determined under paragraph (i) of this section.

(ii) If the hearing official denies the borrower defense in full or in part, the written decision states the reasons for the denial, the evidence that was relied upon, the portion of the loans that are due and payable to the Secretary, and whether reimbursement of amounts previously collected is granted, and informs the borrowers that if any balance remains on the loan, the loan will return to its status prior to the group claim process.

(iii) The Secretary provides copies of the written decision to the members of the group and, as practicable, to the school.

(2) The decision of the hearing official is final as to the merits of the group borrower defense and any relief that may be granted on the group claim.

(3) After a final decision has been issued, if relief for the group has been denied in full or in part pursuant to paragraph (g)(1)(ii) of this section, an individual borrower may file a claim for relief pursuant to paragraph (e)(5)(i) of this section.

(4) The Secretary may reopen a borrower defense application at any time to consider evidence that was not considered in making the previous decision. If a borrower defense application is reopened by the Secretary, the Secretary follows the procedure in paragraph (e)(2) of this section for granting forbearance and for defaulted loans.

(h) *Procedures for group process for borrower defenses with respect to loans made to attend an open school.* For groups identified by the Secretary under paragraph (f) of this section, for which the borrower defense under this section is asserted with respect to Direct Loans to attend a school that is not covered by paragraph (g) of this section, the claim is resolved in accordance with the procedures in this paragraph (h).

(1) A hearing official resolves the borrower defense and determines any liability of the school through a fact-finding process. As part of the fact-finding process, the hearing official considers any evidence and argument presented by the school and the Department official on behalf of the group and, as necessary to determine any claims at issue, on behalf of individual members of the group. The hearing official issues a written decision as follows:

(i) If the hearing official approves the borrower defense in full or in part, the written decision establishes the basis for the determination, notifies the members of the group of the relief as described in paragraph (i) of this section, and notifies the school of any liability to the Secretary for the amounts discharged and reimbursed.

(ii) If the hearing official denies the borrower defense for the group in full or in part, the written decision states the reasons for the denial, the evidence that was relied upon, the portion of the loans that are due and payable to the Secretary, and whether reimbursement of amounts previously collected is granted, and informs the borrowers that their loans will return to their statuses prior to the group borrower

defense process. The decision notifies the school of any liability to the Secretary for any amounts discharged or reimbursed.

(iii) The Secretary provides copies of the written decision to the members of the group, the Department official, and the school.

(2) The decision of the hearing official becomes final as to the merits of the group borrower defense and any relief that may be granted on the group borrower defense within 30 days after the decision is issued and received by the Department official and the school unless, within that 30-day period, the school or the Department official appeals the decision to the Secretary. In the case of an appeal—

(i) The decision of the hearing official does not take effect pending the appeal; and

(ii) The Secretary renders a final decision.

(3) After a final decision has been issued, if relief for the group has been denied in full or in part pursuant to paragraph (h)(1)(ii) of this section, an individual borrower may file a claim for relief pursuant to paragraph (e)(5)(i) of this section.

(4) The Secretary may reopen a borrower defense application at any time to consider evidence that was not considered in making the previous decision. If a borrower defense application is reopened by the Secretary, the Secretary follows the procedure in paragraph (e)(2) of this section for granting forbearance and for defaulted loans.

(5)(i) The Secretary collects from the school any liability to the Secretary for any amounts discharged or reimbursed to borrowers under this paragraph (h).

(ii) For a borrower defense under paragraph (b) of this section, the Secretary may initiate a proceeding to collect at any time.

(iii) For a borrower defense under paragraph (c) or (d) of this section, the Secretary may initiate a proceeding to collect within the limitation period that would apply to the borrower defense, provided that the Secretary may bring an action to collect at any time if, within the limitation period, the school received notice of the borrower's borrower defense claim. For purposes

of this paragraph, the school receives notice of the borrower's claim by receipt of—

(A) Actual notice of the claim from the borrower, a representative of the borrower, or the Department, including notice of an application filed pursuant to this section or § 685.206(c);

(B) A class action complaint asserting relief for a class that may include the borrower for underlying facts that may form the basis of a claim under this section or § 685.206(c); or

(C) Written notice, including a civil investigative demand or other written demand for information, from a Federal or State agency that has power to initiate an investigation into conduct of the school relating to specific programs, periods, or practices that may have affected the borrower, of underlying facts that may form the basis of a claim under this section or § 685.206(c).

(i) *Relief.* If a borrower defense is approved under the procedures in paragraph (e), (g), or (h) of this section, the following procedures apply:

(1) The Department official or the hearing official deciding the claim determines the appropriate amount of relief to award the borrower, which may be a discharge of all amounts owed to the Secretary on the loan at issue and may include the recovery of amounts previously collected by the Secretary on the loan, or some lesser amount.

(2) For a borrower defense brought on the basis of—

(i) A substantial misrepresentation, the Department official or the hearing official will factor the borrower's cost of attendance to attend the school, as well as the value of the education the borrower received, the value of the education that a reasonable borrower in the borrower's circumstances would have received, and/or the value of the education the borrower should have expected given the information provided by the institution, into the determination of appropriate relief. A borrower may be granted full, partial, or no relief. Value will be assessed in a manner that is reasonable and practicable. In addition, the Department official or the hearing official deciding the claim may consider any other relevant factors;

(ii) A judgment against the school—

(A) Where the judgment awards specific financial relief, relief will be the amount of the judgment that remains unsatisfied, subject to the limitation provided for in § 685.222(i)(8) and any other reasonable considerations; and

(B) Where the judgment does not award specific financial relief, the Department will rely on the holding of the case and applicable law to monetize the judgment; and

(iii) A breach of contract, relief will be determined according to the common law of contracts, subject to the limitation provided for in § 685.222(i)(8) and any other reasonable considerations.

(3) In a fact-finding process brought against an open school under paragraph (h) of this section on the basis of a substantial misrepresentation, the school has the burden of proof as to any value of the education.

(4) In determining the relief, the Department official or the hearing official deciding the claim may consider—

(i) Information derived from a sample of borrowers from the group when calculating relief for a group of borrowers; and

(ii) The examples in Appendix A to this subpart.

(5) In the written decision described in paragraphs (e), (g), and (h) of this section, the designated Department official or hearing official deciding the claim notifies the borrower of the relief provided and—

(i) Specifies the relief determination;

(ii) Advises that there may be tax implications; and

(iii) Advises the borrower of the requirements to file a request for reconsideration upon the identification of new evidence.

(6) Consistent with the determination of relief under paragraph (i)(1) of this section, the Secretary discharges the borrower's obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay and, if applicable, reimburses the borrower for amounts paid toward the loan voluntarily or through enforced collection.

(7) The Department official or the hearing official deciding the case, or the Secretary as applicable, affords the borrower such further relief as appropriate under the circumstances. Such further relief includes, but is not limited to, one or both of the following:

(i) Determining that the borrower is not in default on the loan and is eligible to receive assistance under title IV of the Act.

(ii) Updating reports to consumer reporting agencies to which the Secretary previously made adverse credit reports with regard to the borrower's Direct Loan.

(8) The total amount of relief granted with respect to a borrower defense cannot exceed the amount of the loan and any associated costs and fees and will be reduced by the amount of any refund, reimbursement, indemnification, restitution, compensatory damages, settlement, debt forgiveness, discharge, cancellation, compromise, or any other financial benefit received by, or on behalf of, the borrower that was related to the borrower defense. The relief to the borrower may not include non-pecuniary damages such as inconvenience, aggravation, emotional distress, or punitive damages.

(j) *Cooperation by the borrower.* To obtain relief under this section, a borrower must reasonably cooperate with the Secretary in any proceeding under paragraph (e), (g), or (h) of this section. The Secretary may revoke any relief granted to a borrower who fails to satisfy his or her obligations under this paragraph (j).

(k) *Transfer to the Secretary of the borrower's right of recovery against third parties.* (1) Upon the granting of any relief under this section, the borrower is deemed to have assigned to, and relinquished in favor of, the Secretary any right to a loan refund (up to the amount discharged) that the borrower may have by contract or applicable law with respect to the loan or the contract for educational services for which the loan was received, against the school, its principals, its affiliates, and their successors, its sureties, and any private fund. If the borrower asserts a claim to, and recovers from, a public fund, the Secretary may reinstate the borrower's obligation to repay on the loan an amount based on the amount recovered from the public fund, if the

**Ofc. of Postsecondary Educ., Education** **Pt. 685, Subpt. B, App. A**

Secretary determines that the borrower's recovery from the public fund was based on the same borrower defense and for the same loan for which the discharge was granted under this section.

(2) The provisions of this paragraph (k) apply notwithstanding any provision of State law that would otherwise restrict transfer of those rights by the borrower, limit or prevent a transferee from exercising those rights, or establish procedures or a scheme of distribution that would prejudice the Secretary's ability to recover on those rights.

(3) Nothing in this paragraph (k) limits or forecloses the borrower's right to pursue legal and equitable relief against a party described in this paragraph (k) for recovery of any portion of a claim exceeding that assigned to the Secretary or any other claims arising from matters unrelated to the claim on which the loan is discharged.

(Authority: 20 U.S.C. 1087a *et seq.*; 28 U.S.C. 2401; 31 U.S.C. 3702)

[81 FR 76083, Nov. 1, 2016, as amended at 84 FR 49932, Sept. 23, 2019]

§ 685.223  Severability.

If any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby.

(Authority: 20 U.S.C. 1087a *et seq.*)

[81 FR 76086, Nov. 1, 2016]

APPENDIX A TO SUBPART B OF PART 685—EXAMPLES OF BORROWER RELIEF

As provided in 34 CFR 685.222(i)(4), the Department official or the hearing official deciding a borrower defense claim determines the amount of relief to award the borrower, which may be a discharge of all amounts owed to the Secretary on the loan at issue and may include the recovery of amounts previously collected by the Secretary on the loan, or some lesser amount. The following are some conceptual examples demonstrating relief. The actual relief awarded will be determined by the Department official or the hearing official deciding the claim, who shall not be bound by these examples.

1. A school represents to prospective students, in widely disseminated materials, that its educational program will lead to employment in an occupation that requires State licensure. The program does not in fact meet minimum education requirements to enable its graduates to sit for the exam necessary for them to obtain licensure. The claims are adjudicated in a group process.

Appropriate relief: Borrowers who enrolled in this program during the time that the misrepresentation was made should receive full relief. As a result of the schools' misrepresentation, the borrowers cannot work in the occupation in which they reasonably expected to work when they enrolled. Accordingly, borrowers received limited or no value from this educational program because they did not receive the value that they reasonably expected.

2. A school states to a prospective student that its medical assisting program has a faculty composed of skilled nurses and physicians and offers internships at a local hospital. The borrower enrolls in the school in reliance on that statement. In fact, none of the teachers at the school other than the Director is a nurse or physician. The school has no internship program. The teachers at the school are not qualified to teach medical assisting and the student is not qualified for medical assistant jobs based on the education received at the school.

Appropriate relief: This borrower should receive full relief. None of the teachers at the school are qualified to teach medical assisting, and there was no internship. In contrast to reasonable students' expectations, based on information provided by the school, the typical borrower received no value from the program.

3. An individual interested in becoming a registered nurse meets with a school's admissions counselor who explains that the school does not have a nursing program but that completion of a medical assisting program is a prerequisite for any nursing program. Based on this information, the borrower enrolls in the school's medical assisting program rather than searching for another nursing program, believing that completing a medical assisting program is a necessary step towards becoming a nurse. After one year in the program, the borrower realizes that it is not necessary to become a medical assistant before entering a nursing program. The borrower's credits are not transferrable to a nursing program.

Appropriate relief: This borrower should receive full relief. Because it is not necessary to become a medical assistant prior to entering a nursing program, she has made no progress towards the career she sought, and in fact has received an education that cannot be used for its intended purpose.

4. A school tells a prospective student, who is actively seeking an education, that the cost of the program will be $20,000. Relying on that statement, the borrower enrolls. The

327

institution will confer upon completion of the course of study has been authorized by the appropriate State educational agency. This type of misrepresentation includes, in the case of a degree that has not been authorized by the appropriate State educational agency or that requires specialized accreditation, any failure by an eligible institution to disclose these facts in any advertising or promotional materials that reference such degree; or

(o) Any matters required to be disclosed to prospective students under §§ 668.42 and 668.43 of this part.

(Authority: 20 U.S.C. 1094)

### § 668.73  Nature of financial charges.

Misrepresentation concerning the nature of an eligible institution's financial charges includes, but is not limited to, false, erroneous, or misleading statements concerning—

(a) Offers of scholarships to pay all or part of a course charge;

(b) Whether a particular charge is the customary charge at the institution for a course;

(c) The cost of the program and the institution's refund policy if the student does not complete the program;

(d) The availability or nature of any financial assistance offered to students, including a student's responsibility to repay any loans, regardless of whether the student is successful in completing the program and obtaining employment; or

(e) The student's right to reject any particular type of financial aid or other assistance, or whether the student must apply for a particular type of financial aid, such as financing offered by the institution.

(Authority: 20 U.S.C. 1094)

### § 668.74  Employability of graduates.

Misrepresentation regarding the employability of an eligible institution's graduates includes, but is not limited to, false, erroneous, or misleading statements concerning—

(a) The institution's relationship with any organization, employment agency, or other agency providing authorized training leading directly to employment;

(b) The institution's plans to maintain a placement service for graduates or otherwise assist its graduates to obtain employment;

(c) The institution's knowledge about the current or likely future conditions, compensation, or employment opportunities in the industry or occupation for which the students are being prepared;

(d) Whether employment is being offered by the institution or that a talent hunt or contest is being conducted, including, but not limited to, through the use of phrases such as ''Men/women wanted to train for * * *,'' ''Help Wanted,'' ''Employment,'' or ''Business Opportunities'';

(e) Government job market statistics in relation to the potential placement of its graduates; or

(f) Other requirements that are generally needed to be employed in the fields for which the training is provided, such as requirements related to commercial driving licenses or permits to carry firearms, and failing to disclose factors that would prevent an applicant from qualifying for such requirements, such as prior criminal records or preexisting medical conditions.

(Authority: 20 U.S.C. 1094)

## Subpart G—Fine, Limitation, Suspension and Termination Proceedings

SOURCE: 51 FR 43325, Dec. 1, 1986, unless otherwise noted.

### § 668.81  Scope and special definitions.

(a) This subpart establishes regulations for the following actions with respect to a participating institution or third-party servicer:

(1) An emergency action.

(2) The imposition of a fine.

(3) The limitation, suspension, or termination of the participation of the institution in a title IV, HEA program.

(4) The limitation, suspension, or termination of the eligibility of the servicer to contract with any institution to administer any aspect of the institution's participation in a Title IV, HEA program.

(5) The determination of—

(i) Borrower defense to repayment claims that are brought by the Department against an institution under § 685.206 or § 685.222; and

(ii) Liability of an institution to the Secretary for losses to the Secretary arising from these claims.

(b) This subpart applies to an institution or a third-party servicer that violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA.

(c) This subpart does not apply to a determination that—

(1) An institution or any of its locations or educational programs fails to qualify for initial designation as an eligible institution, location, or educational program because the institution, location, or educational program fails to satisfy the statutory and regulatory provisions that define an eligible institution or educational program with respect to the Title IV, HEA program for which a designation of eligibility is sought;

(2) An institution fails to qualify for initial certification or provisional certification to participate in any Title IV, HEA program because the institution does not meet the factors of financial responsibility and standards of administrative capability contained in subpart B of this part;

(3) A participating institution's or a provisionally certified participating institution's period of participation, as specified under § 668.13, has expired; or

(4) A participating institution's provisional certification is revoked under the procedures in § 668.13.

(d) This subpart does not apply to a determination by the Secretary of the system to be used to disburse Title IV, HEA program funds to a participating institution (i.e., advance payments and payments by way of reimbursements).

(e) The proceedings described in this subpart provide the institution's sole opportunity for a hearing on the existence and amount of the debt that is required by applicable law prior to the Department collecting the debt from any available funds, including but not limited to offsetting the debt or any liability against funds to be provided to an institution pursuant to any Title IV, HEA program in which that institution participates.

(f) Nothing contained in this subpart limits the right of the Department to gather information, including by subpoena, or conduct any examination, audit, program review, investigation, or other review authorized by other applicable law.

(g) Unless directed by a court of competent jurisdiction, the hearing official, or the Secretary for good cause, if a collateral attack is brought in any court concerning all or any part of any proceeding under this subpart, the challenged proceeding shall continue without regard to the pendency of that court proceeding. No default or other failure to timely act as directed in a proceeding authorized by this subpart shall be excused based on the pendency of such court proceeding.

(Authority: 20 U.S.C. 1094)

[51 FR 43325, Dec. 1, 1986, as amended at 55 FR 32183, Aug. 7, 1990; 58 FR 13344, Mar. 10, 1993; 59 FR 22443, Apr. 29, 1994; 59 FR 61186, Nov. 29, 1994; 63 FR 40626, July 29, 1998; 82 FR 6256, Jan. 19, 2017]

**§ 668.82   Standard of conduct.**

(a) A participating institution or a third-party servicer that contracts with that institution acts in the nature of a fiduciary in the administration of the Title IV, HEA programs. To participate in any Title IV, HEA program, the institution or servicer must at all times act with the competency and integrity necessary to qualify as a fiduciary.

(b) In the capacity of a fiduciary—

(1) A participating institution is subject to the highest standard of care and diligence in administering the programs and in accounting to the Secretary for the funds received under those programs; and

(2) A third-party servicer is subject to the highest standard of care and diligence in administering any aspect of the programs on behalf of the institutions with which the servicer contracts and in accounting to the Secretary and those institutions for any funds administered by the servicer under those programs.

(c) The failure of a participating institution or any of the institution's third-party servicers to administer a Title IV, HEA program, or to account for the funds that the institution or servicer receives under that program, in accordance with the highest standard of care and diligence required of a fiduciary, constitutes grounds for—

(1) An emergency action against the institution, a fine on the institution, or the limitation, suspension, or termination of the institution's participation in that program; or

(2) An emergency action against the servicer, a fine on the servicer, or the limitation, suspension, or termination of the servicer's eligibility to contract with any institution to administer any aspect of the institution's participation in that program.

(d)(1) A participating institution or a third-party servicer with which the institution contracts violates its fiduciary duty if—

(i)(A) The servicer has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving those funds;

(B) A person who exercises substantial control over the servicer, as determined according to §668.15, has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving those funds;

(C) The servicer employs a person in a capacity that involves the administration of Title IV, HEA programs or the receipt of Title IV, HEA program funds who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or who has been administratively or judicially determined to have committed fraud or any other material violation of law involving those funds; or

(D) The servicer uses or contracts in a capacity that involves any aspect of the administration of the Title IV, HEA programs with any other person, agency, or organization that has been or whose officers or employees have been—

(1) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(2) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; and

(ii) Upon learning of a conviction, plea, or administrative or judicial determination described in paragraph (d)(1)(i) of this section, the institution or servicer, as applicable, does not promptly remove the person, agency, or organization from any involvement in the administration of the institution's participation in Title IV, HEA programs, or, as applicable, the removal or elimination of any substantial control, as determined according to §668.15, over the servicer.

(2) A violation for a reason contained in paragraph (d)(1) of this section is grounds for terminating—

(i) The servicer's eligibility to contract with any institution to administer any aspect of the institution's participation in a Title IV, HEA program; and

(ii) The participation in any Title IV, HEA program of any institution under whose contract the servicer committed the violation, if that institution had been aware of the violation and had failed to take the appropriate action described in paragraph (d)(1)(ii) of this section.

(e)(1) A participating institution or third-party servicer, as applicable, violates its fiduciary duty if—

(i)(A) The institution or servicer, as applicable, is debarred or suspended under Executive Order (E.O.) 12549 (3 CFR, 1986 Comp., p. 189) or the Federal Acquisition Regulations (FAR), 48 CFR part 9, subpart 9.4; or

(B) Cause exists under 2 CFR 180.700 or 180.800, as both those sections are adopted at 2 CFR 3485.12, for debarring or suspending the institution, servicer,

or any principal or affiliate of the institution or servicer under E.O. 12549 (3 CFR, 1986 Comp., p. 189) or the FAR, 48 CFR part 9, subpart 9.4; and

(ii) Upon learning of the debarment, suspension, or cause for debarment or suspension, the institution or servicer, as applicable, does not promptly—

(A) Discontinue the affiliation; or

(B) Remove the principal from responsibility for any aspect of the administration of an institution's or servicer's participation in the Title IV, HEA programs.

(2) A violation for a reason contained in paragraph (e)(1) of this section is grounds for terminating—

(i) The institution's participation in any Title IV, HEA program; and

(ii) The servicer's eligibility to contract with any institution to administer any aspect of the institution's participation in any Title IV, HEA program. The violation is also grounds for terminating, under this subpart, the participation in any Title IV, HEA program of any institution under whose contract the servicer committed the violation, if that institution knew or should have known of the violation.

(f)(1) The debarment of a participating institution or third-party servicer, as applicable, under E.O. 12549 (3 CFR, 1986 Comp., p. 189) or the FAR, 48 CFR part 9, subpart 9.4, or another Federal agency from participation in Federal programs, under the procedures described in 2 CFR 3485.612(d) terminates, for the duration of the debarment—

(i) The institution's participation in any Title IV, HEA program; and

(ii) The servicer's eligibility to contract with any institution to administer any aspect of the institution's participation in any Title IV, HEA program.

(2)(i) The suspension of a participating institution or third-party servicer, as applicable, under E.O. 12549 (3 CFR, 1986 Comp., p. 189) or the FAR, 48 CFR part 9, subpart 9.4, or another Federal agency from participation in Federal programs, under the procedures described in 2 CFR 3485.612(d), suspends—

(A) The institution's participation in any Title IV, HEA program; and

(B) The servicer's eligibility to contract with any institution to administer any aspect of the institution's participation in any Title IV, HEA program.

(ii) A suspension described in paragraph (f)(2) of this section lasts for a period of 60 days, beginning on the effective date specified in the notice by the Secretary under 2 CFR 3485.612(c), unless—

(A) The institution or servicer, as applicable, and the Secretary, agree to an extension of the suspension; or

(B) The Secretary begins a limitation or termination proceeding against the institution or servicer, as applicable, under this subpart before the 60th day of the suspension.

(3) A debarment or suspension not described in (f)(1) or (f)(2) of this section of a participating institution or third-party servicer by another Federal agency constitutes prima facie evidence in a proceeding under this subpart that cause for suspension or debarment and termination, as applicable, exists.

(Authority: E.O. 12549 (3 CFR, 1986 Comp., p. 189), E.O. 12689 (3 CFR, 1989 Comp., p. 235); 20 U.S.C. 1070, *et seq.*, 1082(a)(1) and (h)(1), 1094(c)(1)(D) and (H), and 3474)

[59 FR 22444, Apr. 29, 1994, as amended at 60 FR 33058, June 26, 1995; 68 FR 66615, Nov. 26, 2003; 77 FR 18679, Mar. 28, 2012]

§ 668.83 Emergency action.

(a) Under an emergency action, the Secretary may—

(1) Withhold Title IV, HEA program funds from a participating institution or its students, or from a third-party servicer, as applicable;

(2)(i) Withdraw the authority of the institution or servicer, as applicable, to commit, disburse, deliver, or cause the commitment, disbursement, or delivery of Title IV, HEA program funds; or

(ii) Withdraw the authority of the institution or servicer, as applicable, to commit, disburse, deliver, or cause the commitment, disbursement, or delivery of Title IV, HEA program funds except in accordance with a particular procedure; and

(3)(i) Withdraw the authority of the servicer to administer any aspect of

any institution's participation in any Title IV, HEA program; or

(ii) Withdraw the authority of the servicer to administer any aspect of any institution's participation in any Title IV, HEA program except in accordance with a particular procedure.

(b)(1) An initiating official begins an emergency action against an institution or third-party servicer by sending the institution or servicer a notice by registered mail, return receipt requested. In an emergency action against a third-party servicer, the official also sends the notice to each institution that contracts with the servicer. The official also may transmit the notice by other, more expeditious means if practical.

(2) The emergency action takes effect on the date the initiating official mails the notice to the institution or servicer, as applicable.

(3) The notice states the grounds on which the emergency action is based, the consequences of the emergency action, and that the institution or servicer, as applicable, may request an opportunity to show cause why the emergency action is unwarranted.

(c)(1) An initiating official takes emergency action against an institution or third-party servicer only if that official—

(i) Receives information, determined by the official to be reliable, that the institution or servicer, as applicable, is violating any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA;

(ii) Determines that immediate action is necessary to prevent misuse of Title IV, HEA program funds; and

(iii) Determines that the likelihood of loss from that misuse outweighs the importance of awaiting completion of any proceeding that may be initiated to limit, suspend, or terminate, as applicable—

(A) The participation of the institution in one or more Title IV, HEA programs; or

(B) The eligibility of the servicer to contract with any institution to ad-

minister any aspect of the institution's participation in a Title IV, HEA program.

(2) Examples of violations of a Title IV, HEA program requirement that cause misuse and the likely loss of Title IV, HEA program funds include—

(i) Causing the commitment, disbursement, or delivery by any party of Title IV, HEA program funds in an amount that exceeds—

(A) The amount for which students are eligible; or

(B) The amount of principal, interest, or special allowance payments that would have been payable to the holder of a Federal Stafford or Federal PLUS loan if a refund allocable to that loan had been made in the amount and at the time required;

(ii) Using, offering to make available, or causing the use or availability of Title IV, HEA program funds for educational services if—

(A) The institution, servicer, or agents of the institution or servicer have made a substantial misrepresentation as described in §§ 668.72, 668.73, or 668.74 related to those services;

(B) The institution lacks the administrative or financial ability to provide those services in full; or

(C) The institution, or servicer, as applicable, lacks the administrative or financial ability to make all required payments under § 668.22; and

(iii) Engaging in fraud involving the administration of a Title IV, HEA program. Examples of fraud include—

(A) Falsification of any document received from a student or pertaining to a student's eligibility for assistance under a Title IV, HEA program;

(B) Falsification, including false certifications, of any document submitted by the institution or servicer to the Secretary;

(C) Falsification, including false certifications, of any document used for or pertaining to—

(*1*) The legal authority of an institution to provide postsecondary education in the State in which the institution is located; or

(*2*) The accreditation or preaccreditation of an institution or any of the institution's educational programs or locations;

(D) Falsification, including false certifications, of any document submitted to a guaranty agency under the Federal Stafford Loan or Federal PLUS programs or an independent auditor;

(E) Falsification of any document submitted to a third-party servicer by an institution or to an institution by a third-party servicer pertaining to the institution's participation in a Title IV, HEA program; and

(F) Falsification, including false certifications, of any document pertaining to the performance of any loan collection activity, including activity that is not required by the HEA or applicable program regulations.

(3) If the Secretary begins an emergency action against a third-party servicer, the Secretary may also begin an emergency action against any institution under whose contract a third-party servicer commits the violation.

(d)(1) Except as provided in paragraph (d)(2) of this section, after an emergency action becomes effective, an institution or third-party servicer, as applicable, may not—

(i) Make or increase awards or make other commitments of aid to a student under the applicable Title IV, HEA program;

(ii) Disburse either program funds, institutional funds, or other funds as assistance to a student under that Title IV, HEA program;

(iii) In the case of an emergency action pertaining to participation in the Federal Stafford Loan or Federal PLUS programs—

(A) Certify an application for a loan under that program;

(B) Deliver loan proceeds to a student under that program; or

(C) Retain the proceeds of a loan made under that program that are received after the emergency action takes effect; or

(iv) In the case of an emergency action against a third-party servicer, administer any aspect of any institution's participation in any Title IV, HEA program.

(2) If the initiating official withdraws, by an emergency action, the authority of the institution or servicer to commit, disburse, deliver, or cause the commitment, disbursement, or delivery of Title IV, HEA program funds, or the authority of the servicer to administer any aspect of any institution's participation in any Title IV, HEA program, except in accordance with a particular procedure specified in the notice of emergency action, the institution or servicer, as applicable, may not take any action described in paragraph (d)(1) of this section except in accordance with the procedure specified in the notice.

(e)(1) Upon request by the institution or servicer, as applicable, the Secretary provides the institution or servicer, as soon as practicable, with an opportunity to show cause that the emergency action is unwarranted or should be modified.

(2) An opportunity to show cause consists of an opportunity to present evidence and argument to a show-cause official. The initiating official does not act as the show-cause official for any emergency action that the initiating official has begun. The show-cause official is authorized to grant relief from the emergency action. The institution or servicer may make its presentation in writing or, upon its request, at an informal meeting with the show-cause official.

(3) The show-cause official may limit the time and manner in which argument and evidence may be presented in order to avoid unnecessary delay or the presentation of immaterial, irrelevant, or repetitious matter.

(4) The institution or servicer, as applicable, has the burden of persuading the show-cause official that the emergency action imposed by the notice is unwarranted or should be modified because—

(i) The grounds stated in the notice did not, or no longer, exist;

(ii) The grounds stated in the notice will not cause loss or misuse of Title IV, HEA program funds; or

(iii) The institution or servicer, as applicable, will use procedures that will reliably eliminate the risk of loss from the misuse described in the notice.

(5) The show-cause official continues, modifies, or revokes the emergency action promptly after consideration of any argument and evidence presented by the institution or servicer, as applicable, and the initiating official.

(6) The show-cause official notifies the institution or servicer, as applicable, of that official's determination promptly after the completion of the show-cause meeting or, if no meeting is requested, after the official receives all the material submitted by the institution in opposition to the emergency action. In the case of a notice to a third-party servicer, the official also notifies each institution that contracts with the servicer of that determination. The show-cause official may explain that determination by adopting or modifying the statement of reasons provided in the notice of emergency action.

(f)(1) An emergency action does not extend more than 30 days after initiated unless the Secretary initiates a limitation, suspension, or termination proceeding under this part or under 34 CFR part 600 against the institution or servicer, as applicable, within that 30-day period, in which case the emergency action continues until a final decision is issued in that proceeding, as provided in §668.91(c), as applicable.

(2) Until a final decision is issued by the Secretary in a proceeding described in paragraph (f)(1) of this section, any action affecting the emergency action is at the sole discretion of the initiating official, or, if a show- cause proceeding is conducted, the show-cause official.

(3) If an emergency action extends beyond 180 days by virtue of paragraph (f)(1) of this section, the institution or servicer, as applicable, may then submit written material to the show-cause official to demonstrate that because of facts occurring after the later of the notice by the initiating official or the show-cause meeting, continuation of the emergency action is unwarranted and the emergency action should be modified or ended. The show-cause official considers any written material submitted and issues a determination that continues, modifies, or revokes the emergency action.

(g) The expiration of an emergency action, or its modification or revocation by the show-cause official, does not bar subsequent emergency action on a ground other than one specifically identified in the notice imposing the prior emergency action. Separate grounds may include violation of an agreement or limitation imposed or resulting from the prior emergency action.

(Authority: 20 U.S.C. 1094)

[59 FR 22445, Apr. 29, 1994, as amended at 60 FR 34432, June 30, 1995; 63 FR 40626, July 29, 1998; 64 FR 59042, Nov. 1, 1999; 82 FR 6257, Jan. 19, 2017]

### § 668.84 Fine proceedings.

(a) *Scope and consequences.* (1) The Secretary may impose a fine of up to $62,689[1] per violation on a participating institution or third-party servicer that—

(i) Violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or

(ii) Substantially misrepresents the nature of—

(A) In the case of an institution, its educational program, its financial charges, or the employability of its graduates; or

(B) In the case of a third-party servicer, as applicable, the educational program, financial charges, or employability of the graduates of any institution that contracts with the servicer.

(2) If the Secretary begins a fine proceeding against a third-party servicer, the Secretary also may begin a fine, limitation, suspension, or termination proceeding against any institution under whose contract a third-party servicer commits the violation.

(b) *Procedures.* (1) A designated department official begins a fine proceeding by sending the institution or servicer, as applicable, a notice by certified mail, return receipt requested. In the case of a fine proceeding against a third-party servicer, the official also sends the notice to each institution that is affected by the alleged violations identified as the basis for the fine action, and, to the extent possible, to each institution that contracts with

---

[1] As adjusted in accordance with the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended (28 U.S.C. 2461 note).

the servicer for the same service affected by the violation. This notice—

(i) Informs the institution or servicer of the Secretary's intent to fine the institution or servicer, as applicable, and the amount of the fine and identifies the alleged violations that constitute the basis for the action;

(ii) Specifies the proposed effective date of the fine, which is at least 20 days from mailing of the notice of intent;

(iii) Informs the institution or servicer that the fine will not be effective on the date specified in the notice if the designated department official receives from the institution or servicer, as applicable, by that date a written request for a hearing or written material indicating why the fine should not be imposed; and

(iv) In the case of a fine proceeding against a third-party servicer, informs each institution that is affected by the alleged violations of the consequences of the action to the institution.

(2) If the institution or servicer does not request a hearing but submits written material, the designated department official, after considering that material, notifies the institution or, in the case of a third-party servicer, the servicer and each institution affected by the alleged violations that—

(i) The fine will not be imposed; or

(ii) The fine is imposed as of a specified date, and in a specified amount.

(3) If the institution or servicer requests a hearing by the time specified in paragraph (b)(1)(iii) of this section, the designated department official transmits the request for hearing and response to the Office of Hearings and Appeals, which sets the date and the place. The date is at least 15 days after the designated department official receives the request.

(4) A hearing official conducts a hearing in accordance with § 668.89.

(c) *Expedited proceedings.* With the approval of the hearing official and the consent of the designated department official and the institution or servicer,

any time schedule specified in this section may be shortened.

(Authority: 20 U.S.C. 1094)

[59 FR 22446, Apr. 29, 1994, as amended at 67 FR 69655, Nov. 18, 2002; 82 FR 6257, Jan. 19, 2017; 83 FR 2065, Jan. 15, 2018; 84 FR 974, Feb. 1, 2019; 85 FR 2036, Jan. 14, 2020; 86 FR 7977, Feb. 3, 2021; 87 FR 23453, Apr. 20, 2022]

### § 668.85  Suspension proceedings.

(a) *Scope and consequences.* (1) The Secretary may suspend an institution's participation in a Title IV, HEA program or the eligibility of a third-party servicer to contract with any institution to administer any aspect of the institution's participation in any Title IV, HEA program, if the institution or servicer—

(i) Violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or

(ii) Substantially misrepresents the nature of—

(A) In the case of an institution, its educational program, its financial charges, or the employability of its graduates; or

(B) In the case of a third-party servicer, as applicable, the educational program, financial charges, or employability of the graduates of any institution that contracts with the servicer.

(2) If the Secretary begins a suspension proceeding against a third-party servicer, the Secretary also may begin a fine, limitation, suspension, or termination proceeding against any institution under whose contract a third-party servicer commits the violation.

(3) The suspension may not exceed 60 days unless—

(i) The institution or servicer and the Secretary agree to an extension if the institution or servicer, as applicable, has not requested a hearing; or

(ii) The designated department official begins a limitation or termination proceeding under § 668.86.

(b) *Procedures.* (1) A designated department official begins a suspension proceeding by sending a notice to an institution or third-party servicer by

**Ofc. of Postsecondary Educ., Education** §668.86

certified mail, return receipt requested. In the case of a suspension proceeding against a third-party servicer, the official also sends the notice to each institution that contracts with the servicer. The designated department official may also transmit the notice by other, more expeditious means if practical. The notice—

(i) Informs the institution or servicer of the intent of the Secretary to suspend the institution's participation or the servicer's eligibility, as applicable, cites the consequences of that action, and identifies the alleged violations that constitute the basis for the action;

(ii) Specifies the proposed effective date of the suspension, which is at least 20 days after the date of mailing of the notice of intent;

(iii) Informs the institution or servicer that the suspension will not be effective on the date specified in the notice, except as provided in §668.91(b)(2), if the designated department official receives from the institution or servicer, as applicable, by that date a request for a hearing or written material indicating why the suspension should not take place; and

(iv) In the case of a suspension proceeding against a third-party servicer, informs each institution that contracts with the servicer of the consequences of the action to the institution.

(2) If the institution or servicer does not request a hearing, but submits written material, the designated department official, after considering that material, notifies the institution or, in the case of a third-party servicer, the servicer and each institution that contracts with the servicer that—

(i) The proposed suspension is dismissed; or

(ii) The suspension is effective as of a specified date.

(3) If the institution or servicer requests a hearing by the time specified in paragraph (b)(1)(iii) of this section, the designated department official transmits the request for hearing and response to the Office of Hearings and Appeals, which sets the date and the place. The date is at least 15 days after the designated department official receives the request. The suspension does not take place until the requested hearing is held.

(4) A hearing official conducts a hearing in accordance with §668.89.

(c) *Expedited proceedings.* With the approval of the hearing official and the consent of the designated department official and the institution or servicer, as applicable, any time period specified in this section may be shortened.

(Authority: 20 U.S.C. 1094)

[59 FR 22447, Apr. 29, 1994, as amended at 60 FR 61773, Dec. 1, 1995; 65 FR 65537, Nov. 1, 2000; 82 FR 6257, Jan. 19, 2017]

**§668.86 Limitation or termination proceedings.**

(a) *Scope and consequences.* (1) The Secretary may limit or terminate an institution's participation in a Title IV, HEA program or the eligibility of a third-party servicer to contract with any institution to administer any aspect of the institution's participation in any Title IV, HEA program, if the institution or servicer—

(i) Violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or

(ii) Substantially misrepresents the nature of—

(A) In the case of an institution, its educational program, its financial charges, or the employability of its graduates; or

(B) In the case of a third-party servicer, as applicable, the educational program, financial charges, or employability of the graduates of any institution that contracts with the servicer.

(2) If the Secretary begins a limitation or termination proceeding against a third-party servicer, the Secretary also may begin a fine, limitation, suspension, or termination proceeding against any institution under whose contract a third-party servicer commits the violation.

(3) The consequences of the limitation or termination of the institution's participation or the servicer's eligibility are described in §§668.94 and 668.95, respectively.

(b) *Procedures.* (1) A designated department official begins a limitation or termination proceeding by sending an institution or third-party servicer a notice by certified mail, return receipt requested. In the case of a limitation or termination proceeding against a third-party servicer, the official also sends the notice to each institution that contracts with the servicer. The designated department official may also transmit the notice by other, more expeditious means if practical. This notice—

(i) Informs the institution or servicer of the intent of the Secretary to limit or terminate the institution's participation or servicer's eligibility, as applicable, cites the consequences of that action, and identifies the alleged violations that constitute the basis for the action, and, in the case of a limitation proceeding, states the limits to be imposed;

(ii) Specifies the proposed effective date of the limitation or termination, which is at least 20 days after the date of mailing of the notice of intent;

(iii) Informs the institution or servicer that the limitation or termination will not be effective on the date specified in the notice if the designated department official receives from the institution or servicer, as applicable, by that date a request for a hearing or written material indicating why the limitation or termination should not take place; and

(iv) In the case of a limitation or termination proceeding against a third-party servicer, informs each institution that contracts with the servicer of the consequences of the action to the institution.

(2) If the institution or servicer does not request a hearing but submits written material, the designated department official, after considering that material, notifies the institution or, in the case of a third-party servicer, the servicer and each institution that contracts with the servicer that—

(i) The proposed action is dismissed;

(ii) Limitations are effective as of a specified date; or

(iii) The termination is effective as of a specified date.

(3) If the institution or servicer requests a hearing by the time specified in paragraph (b)(1)(iii) of this section, the designated department official transmits the request for hearing and response to the Office of Hearings and Appeals, which sets the date and place. The date is at least 15 days after the designated department official receives the request. The limitation or termination does not take place until after the requested hearing is held.

(4) A hearing official conducts a hearing in accordance with § 668.89.

(c) *Expedited proceeding.* With the approval of the hearing official and the consent of the designated department official and the institution or servicer, as applicable, any time schedule specified in this section may be shortened.

(Authority: 20 U.S.C. 1094)

[59 FR 22447, Apr. 29, 1994, as amended at 60 FR 61774, Dec. 1, 1995; 65 FR 65637, Nov. 1, 2000; 82 FR 6257, Jan. 19, 2017]

## § 668.87 Borrower defense and recovery proceedings.

(a) *Procedures.* (1) A designated department official begins a borrower defense and recovery proceeding against an institution by sending the institution a notice by certified mail, return receipt requested. This notice—

(i) Informs the institution of the Secretary's intent—

(A) To determine the validity of borrower defense claims on behalf of a group under § 685.222(h), to demonstrate the validity of borrower defense claims already approved, or both, as applicable; and

(B) To recover from the institution by offset, by claim on a letter of credit or other protection provided by the institution, or otherwise, for losses on account of borrower defense claims asserted on behalf of the group and borrower defense claims already approved, as applicable;

(ii) Includes a statement of facts and law sufficient to show that the Department is entitled to grant any borrower defense relief asserted within the statement, and recover for the amount of losses to the Secretary caused by the granting of such relief;

(iii) Specifies the date on which the Secretary intends to take action to recover the amount of losses arising from the granting of such relief, which date will be at least 20 days from mailing of

the notice of intent and informs the institution that the Secretary will not take action to recover the amount of such loss on the date specified if the designated department official receives, by that date, a written response from the institution indicating why the Secretary should not recover. The notice shall also inform the institution that if it wishes to request a hearing pursuant to this subpart, the institution must include such a request with its written response; and

(iv) Informs the institution whether the designated Department official intends to proceed with—

(A) A single action; or

(B) An action in two phases—

(*1*) The determination whether the institution's act or omission gave rise to valid borrower defense claims; and

(*2*) The determination of the amount of borrower defense relief.

(2) Although the hearing official shall have the discretion to bifurcate proceedings with, or without, a motion of either party, any decision by the designated department official to bifurcate the proceeding in accordance with paragraph (a)(1)(iv)(B) of this section may only be modified on motion with good cause shown.

(3) A hearing official conducts a hearing in accordance with §668.89.

(b) *Effect of a response by the institution.* (1) If the institution submits a written response, but does not therein request a hearing, the designated department official, after considering that material, notifies the institution whether the Secretary will take the proposed recovery action for borrower defense claims and, if so, the date of such action and the amount of losses.

(2) If the institution submits a response and requests a hearing by the time specified in the notice under paragraph (a)(1)(iii) of this section, the designated department official may, in that official's sole discretion, withdraw the notice or transmit the response and request for hearing to the Office of Hearings and Appeals, which sets the date and the place for the hearing. The date of the hearing is at least 15 days after the designated department official receives the request. No liability shall be imposed on the institution prior to the hearing.

(c) *Limitations on participation.* The parties in any borrower defense and recovery proceeding are the Department and the institution(s) against which the Department seeks to recover losses caused to the Department as a result of borrower defense relief. Borrowers are not permitted to intervene or appear in this proceeding, either on their own behalf or on behalf of any purported group, except as witnesses put forth by either party. However, nothing in this section limits the rights available to borrowers under other regulations, including 34 CFR 685.206 and 685.222.

(d) *Effect on the borrower.* No proceeding under this subpart imposes liability on any borrower who has already obtained a discharge in an individual proceeding under 34 CFR 685.206(c) or 34 CFR 685.222(e). A borrower defense and recovery proceeding may determine whether and how much relief is due to, and whether and how much of a loan remains owing by, a borrower participating in a group process proceeding as defined in 34 CFR 685.222(f) through (h).

(Authority: 20 U.S.C. 1087a *et seq.,* 1094)

[82 FR 6257, Jan. 19, 2017]

**§ 668.88 Prehearing conference and motion practice.**

(a) A hearing official may convene a prehearing conference if he or she thinks that the conference would be useful, or if the conference is requested by—

(1) The designated department official who brought a proceeding against an institution or third-party servicer under this subpart; or

(2) The institution or servicer, as applicable.

(b) The purpose of a prehearing conference is to allow the parties to settle or narrow the dispute.

(c) If the hearing official, the designated department official, and the institution, or servicer, as applicable, agree, a prehearing conference may consist of—

(1) A conference telephone call;

(2) An informal meeting; or

(3) The submission and exchange of written material.

(d) A non-dispositive motion shall be made, if at all, consistent with any

§ 668.89                                                          34 CFR Ch. VI (7–1–22 Edition)

procedures set forth by the hearing official. In the absence of such procedures, non-dispositive motions shall be permitted, and responses to such motions shall be permitted though not required.

(e)(1) A party may make a motion for summary disposition asserting that the undisputed facts, admissions, affidavits, stipulations, documentary evidence, matters as to which official notice may be taken, and any other evidentiary materials properly submitted in connection with a motion for summary disposition establish that—

(i) There is no genuine issue as to any material fact; and

(ii) The moving party is entitled to a decision in its favor as a matter of law.

(2) A motion for summary disposition must be accompanied by a statement of the material facts as to which the moving party contends there is no genuine issue. Such motion must be supported by evidence that the moving party contends support his or her position. The motion must be accompanied by a brief containing the points and authorities supporting the motion.

Any party may oppose such a motion by filing a response setting forth those material facts as to which he or she contends a genuine dispute exists. Such response must be supported by evidence of the same type as may be submitted in support of a motion for summary disposition and a brief containing the points and authorities in support of the contention that summary disposition would be inappropriate.

(f) A motion under consideration by the Secretary or the hearing official shall not stay proceedings before the hearing official unless the Secretary or the hearing official, as appropriate, so orders.

(Authority: 20 U.S.C. 1094)

[82 FR 6258, Jan. 19, 2017]

§ 668.89  Hearing.

(a) A hearing is an orderly presentation of arguments and evidence conducted by a hearing official. At the discretion of the hearing official, any right to a hearing may be satisfied by one or more of the following: Summary disposition pursuant to § 668.88(e), with or without oral argument; an oral evidentiary hearing conducted in person, by telephone, by video conference, or any combination thereof; or a review limited to written evidence.

(b)(1) Notwithstanding any provision to the contrary, the hearing official sets the procedures to be used in the hearing, and may take steps to expedite the proceeding as appropriate.

(2) The formal rules of evidence and procedures applicable to proceedings in a court of law are not applicable. However, discussions of settlement between the parties or the terms of settlement offers are not admissible to prove the validity or invalidity of any claim or defense.

(3)(i) The proponent of any factual proposition has the burden of proof with respect thereto.

(ii) The designated department official has the burden of persuasion in any fine, suspension, limitation, or termination proceeding under this subpart.

(iii) The designated department official has the burden of persuasion in a borrower defense and recovery action; however, for a borrower defense claim based on a substantial misrepresentation under § 682.222(d), the designated department official has the burden of persuasion regarding the substantial misrepresentation, and the institution has the burden of persuasion in establishing any offsetting value of the education under § 685.222(i)(2)(i).

(4) Discovery, as provided for under the Federal Rules of Civil Procedure, is not permitted.

(5) The hearing official accepts only evidence that is relevant and material to the proceeding and is not unduly repetitious.

(6) The hearing official may restrict the number of witnesses or exclude witnesses to avoid undue delay or presentation of cumulative evidence. Any witness permitted to appear may do so via telephonic, video, or other means, with the approval of the hearing official.

(7) Either party may call qualified expert witnesses. Each party will be limited to calling three expert witnesses, as a matter of right, including any rebuttal or surrebuttal witnesses.

460

Additional expert witnesses shall be allowed only by order of the hearing official, granted only upon a showing of good cause.

(i) At a date set by the hearing official, each party shall serve the other with any report prepared by each of its expert witnesses. Each party shall serve the other party with a list of any rebuttal expert witnesses and a rebuttal report prepared by each such witness not later than 60 days after the deadline for service of expert reports, unless another date is set by the hearing official. A rebuttal report shall be limited to rebuttal of matters set forth in the expert report for which it is offered in rebuttal. If material outside the scope of fair rebuttal is presented, a party may file a motion not later than five days after the deadline for service of rebuttal reports, seeking appropriate relief with the hearing official, including striking all or part of the report, leave to submit a surrebuttal report by the party's own experts, or leave to call a surrebuttal witness and to submit a surrebuttal report by that witness.

(ii) No party may call an expert witness at the hearing unless the party has listed the expert and has provided reports as required by this section.

(iii) Each report shall be signed by the expert and contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data, materials, or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored or co-authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified or sought to testify as an expert at trial or hearing, or by deposition, within the preceding four years. A rebuttal or surrebuttal report need not include any information already included in the initial report of the witness.

(8)(i) Except as provided in paragraph (b)(8)(ii) of this section, if an institution has been required through compulsory process under section 490A of the HEA or other applicable law to submit to the United States or to the Department material regarding an express or an implied representation, the institution cannot thereafter, in any proceeding under this subpart in which it is alleged that the representation was false, erroneous, or misleading, and for any purpose relating to the defense of such allegation, introduce into the record, either directly or indirectly through references contained in documents or oral testimony, any material of any type that was required to be but was not timely submitted in response to that compulsory process.

(ii) The hearing official shall, upon motion at any stage, exclude all material that was required to be but was not timely submitted in response to a compulsory process described in paragraph (b)(8)(i) of this section, or any reference to such material, unless the institution demonstrates, and the hearing official finds, that by the exercise of due diligence the material could not have been timely submitted in response to the compulsory process, and the institution notified the Department or such other party that issued the order to produce, of the existence of the material immediately upon its discovery. The hearing official shall specify with particularity the evidence relied upon.

(9) When issues not raised in the notice of proposed action are tried without objection at the hearing, they will be treated in all respects as if they had been raised in the notice of proposed action, and no formal amendments are required.

(c) The hearing official makes a transcribed record of the proceeding and makes a copy of the record available to the designated Department official and to the institution or servicer.

(Authority: 20 U.S.C. 1094)

[82 FR 6258, Jan. 19, 2017]

§ 668.90 **Authority and responsibilities of the hearing official.**

(a) The hearing official regulates the course of a hearing and the conduct of the parties during the hearing. The hearing official takes all necessary steps to conduct a fair and impartial hearing.

(b)(1) The hearing official is not authorized to issue subpoenas.

(2) If requested by the hearing official, the parties to a hearing shall provide available personnel who have knowledge about the matter under review for oral or written examination.

(c) The hearing official takes whatever measures are appropriate to expedite a hearing. These measures may include, but are not limited to, the following—

(1) Scheduling of conferences;

(2) Setting time limits for hearings and submission of written documents; and

(3) Terminating the hearing and issuing a decision against a party if that party does not meet those time limits.

(d) The hearing official is bound by all applicable statutes and regulations. The hearing official may not—

(1) Waive applicable statutes and regulations; or

(2) Rule them invalid.

(Authority: 20 U.S.C. 1094)

[51 FR 43325, Dec. 1, 1986, as amended at 57 FR 47753, Oct. 19, 1992; 59 FR 22448, Apr. 29, 1994. Redesignated at 82 FR 6257, Jan. 19, 2017]

### § 668.91 Initial and final decisions.

(a)(1)(i) A hearing official issues a written initial decision in a hearing by certified mail, return receipt requested to—

(A) The designated department official who began a proceeding against an institution or third-party servicer;

(B) The institution or servicer, as applicable; and

(C) In the case of a proceeding against a third-party servicer, each institution that contracts with the servicer.

(ii) The hearing official may also transmit the notice by other, more expeditious means if practical.

(iii) The hearing official issues the decision within the latest of the following dates:

(A) The 30th day after the last submission is filed with the hearing official.

(B) The 60th day after the last submission is filed with the hearing official if the Secretary, upon request of the hearing official, determines that the unusual complexity of the case requires additional time for preparation of the decision.

(C) The 50th day after the last day of the hearing, if the hearing official does not request the parties to make any posthearing submission.

(2)(i) The hearing official's initial decision states whether the imposition of the fine, limitation, suspension, or termination or recovery sought by the designated department official is warranted, in whole or in part. If the designated department official brought a termination action against the institution or servicer, the hearing official may, if appropriate, issue an initial decision to fine the institution or servicer, as applicable, or, rather than terminating the institution's participation or servicer's eligibility, as applicable, impose one or more limitations on the institution's participation or servicer's eligibility.

(ii) In a borrower defense and recovery proceeding conducted in two phases under § 668.87(a)(1)(iv)(B), the hearing official's initial decision determines whether the institution is liable for the act or omission described in the notice of intent to recover, and the hearing official issues an initial decision on liability only.

(3) Notwithstanding the provisions of paragraph (a)(2) of this section—

(i) If, in a termination action against an institution, the hearing official finds that the institution has violated the provisions of § 668.14(b)(18), the hearing official also finds that termination of the institution's participation is warranted;

(ii) If, in a termination action against a third-party servicer, the hearing official finds that the servicer has violated the provisions of § 668.14(b)(18), the hearing official also finds that termination of the institution's participation or servicer's eligibility is warranted;

(iii) In an action brought against an institution or third-party servicer that involves its failure to provide a letter of credit, or other financial protection under § 668.15 or § 668.171(c) or (d), the hearing official finds that the amount of the letter of credit or other financial protection established by the Secretary under § 668.175 is appropriate, unless

462

the institution demonstrates that the amount was not warranted because—

(A) For financial protection demanded based on events or conditions described in §668.171(c) or (d), the events or conditions no longer exist, have been resolved, or the institution demonstrates that it has insurance that will cover all potential debts and liabilities that arise from the triggering event or condition. The institution can demonstrate it has insurance that covers risk by presenting the Department with a copy of the insurance policy that makes clear the institution's coverage;

(B) For financial protection demanded based on the grounds identified in §668.171(d), the action or event does not and will not have a material adverse effect on the financial condition, business, or results of operations of the institution;

(C) The institution has proffered alternative financial protection that provides students and the Department adequate protection against losses resulting from the risks identified by the Secretary. Adequate protection may consist of one or more of the following—

(*1*) An agreement with the Secretary that a portion of the funds due to the institution under a reimbursement or heightened cash monitoring funding arrangement will be temporarily withheld in such amounts as will meet, no later than the end of a six to 12 month period, the amount of the required financial protection demanded; or

(*2*) Other form of financial protection specified by the Secretary in a notice published in the FEDERAL REGISTER.

(iv) In a termination action taken against an institution or third-party servicer based on the grounds that the institution or servicer failed to comply with the requirements of §668.23(c)(3), if the hearing official finds that the institution or servicer failed to meet those requirements, the hearing official finds that the termination is warranted;

(v)(A) In a termination action against an institution based on the grounds that the institution is not financially responsible under §668.15(c)(1), the hearing official finds that the termination is warranted un-

less the institution demonstrates that all applicable conditions described in §668.15(d)(4) have been met; and

(B) In a termination or limitation action against an institution based on the grounds that the institution is not financially responsible—

(*1*) Upon proof of the conditions in §668.174(a), the hearing official finds that the limitation or termination is warranted unless the institution demonstrates that all the conditions in §668.175(h)(2) have been met; and

(*2*) Upon proof of the conditions in §668.174(b)(1), the limitation or termination is warranted unless the institution demonstrates that all applicable conditions described in §668.174(b)(2) or §668.175(h)(2) have been met.

(4) The hearing official bases findings of fact only on evidence considered at the hearing and on matters given judicial notice.

(b)(1) In a suspension proceeding, the Secretary reviews the hearing official's initial decision and issues a final decision within 20 days after the initial decision. The Secretary adopts the initial decision unless it is clearly unsupported by the evidence presented at the hearing.

(2) The Secretary notifies the institution or servicer and, in the case of a suspension proceeding against a third-party servicer, each institution that contracts with the servicer of the final decision. If the Secretary suspends the institution's participation or servicer's eligibility, the suspension takes effect on the later of—

(i) The day that the institution or servicer receives the notice; or

(ii) The date specified in the designated department official's original notice of intent to suspend the institution's participation or servicer's eligibility.

(3) A suspension may not exceed 60 days unless a designated department official begins a limitation or termination proceeding under this subpart before the expiration of that period. In that case, the period may be extended until a final decision is issued in that proceeding according to paragraph (c) of this section.

(c)(1) In a fine, limitation, or termination proceeding, the hearing official's initial decision automatically becomes the Secretary's final decision 30 days after the initial decision is issued and received by both parties unless, within that 30-day period, the institution or servicer, as applicable, or the designated department official appeals the initial decision to the Secretary.

(2)(i) A party may appeal the hearing official's initial decision by submitting to the Secretary, within 30 days after the party receives the initial decision, a brief or other written statement that explains why the party believes that the Secretary should reverse or modify the decision of the hearing official.

(ii) At the time the party files its appeal submission, the party shall provide a copy of that submission to the opposing party.

(iii) The opposing party shall submit its brief or other responsive statement to the Secretary, with a copy to the appellant, within 30 days after the opposing party receives the appellant's brief or written statement.

(iv) The appealing party may submit proposed findings of fact or conclusions of law. However, the proposed findings of fact must be supported by—

(A) The evidence introduced into the record at the hearing;

(B) Stipulations of the parties if the hearing consisted of written submissions; or

(C) Matters that may be judicially noticed.

(v) Neither party may introduce new evidence on appeal.

(vi) The initial decision of the hearing official imposing a fine or limiting or terminating the institution's participation or servicer's eligibility does not take effect pending the appeal.

(vii) The Secretary renders a final decision. The Secretary may delegate to a designated department official the functions described in paragraph (c)(2) (vii) through (ix) of this section.

(viii) In rendering a final decision, the Secretary considers only evidence introduced into the record at the hearing and facts agreed to by the parties if the hearing consisted only of written submissions and matters that may be judicially noticed.

(ix) If the hearing official finds that a termination is warranted pursuant to paragraph (a)(3) of this section, the Secretary may affirm, modify, or reverse the initial decision, or may remand the case to the hearing official for further proceedings consistent with the Secretary's decision. If the Secretary affirms the initial decision without issuing a statement of reasons, the Secretary adopts the opinion of the hearing official as the decision of the Secretary. If the Secretary modifies, remands, or reverses the initial decision, in whole or in part, the Secretary's decision states the reasons for the action taken.

(x) In a borrower defense and recovery proceeding conducted in two phases under §668.87(a)(1)(iv)(B), if a party appeals an initial decision of the hearing official in the first phase, the Secretary may affirm, modify, or reverse the initial decision, or may remand the case to the hearing official for further proceedings consistent with the Secretary's decision.

(Approved by the Office of Management and Budget under control number 1840–0537)

[59 FR 22448, Apr. 29, 1994, as amended at 59 FR 34964, July 7, 1994; 60 FR 61774, Dec. 1, 1995; 65 FR 65637, Nov. 1, 2000. 81 FR 76072, Nov. 1, 2016. Redesignated and amended at 82 FR 6257, 6259, Jan. 19, 201 7; 84 FR 49910, Sept. 23, 2019]

§ 668.92  Filing of requests for hearings and appeals; confirmation of mailing and receipt dates.

(a) *Filing of request for hearing, show-cause opportunity, or appeal.* (1)(i) A request by an institution or third-party servicer for a hearing or show-cause opportunity, or other material submitted by an institution or third-party servicer in response to a notice of proposed action under this subpart, must be filed with the designated department official by hand-delivery, mail, or facsimile transmission.

(ii) An appeal to the Secretary by a party must be filed with the designated department official by hand-delivery, mail, facsimile transmission, or by use of the Office of Hearings and Appeals Electronic Filing System (OES).

(2) Documents filed by facsimile transmission must be transmitted to the designated department official

**Ofc. of Postsecondary Educ., Education** §668.93

identified, either in the notice initiating the action, or, for an appeal, in instructions provided by the hearing official, as the individual responsible to receive them. A party filing a document by facsimile transmission must confirm that a complete and legible copy of the document was received by the Department of Education, and may be required by the designated department official to provide a hard copy of the document.

(3) The Secretary discourages the use of facsimile transmission for documents longer than five pages.

(4)(i) A party may file an appeal to the Secretary, and any other pleading or other document submitted in a proceeding under this subpart, by use of the Office of Hearings and Appeals Electronic Filing System (OES), by hand-delivery, by mail, or by facsimile transmission.

(ii) A party must serve a copy on the other party of any pleading or other document it files, including an appeal to the Secretary, in a proceeding under this subpart. A party must do so by certified mail, return receipt requested; by hand-delivery; or, if agreed upon by the parties, service may also be made by use of the OES or any other means agreed to by the parties.

(iii) A party who agrees to receive a document by any means other than service by certified mail, return receipt requested or hand-delivery may limit that agreement to one or more particular documents.

(iv) A party who agrees to service of a document through the OES thereby agrees that the notice of such filing provided to the party by the OES suffices to meet any obligation of the filing party under these regulations to provide a copy of that document.

(5) Documents filed using the OES must be transmitted to the designated department official identified in instructions provided by the hearing official as the individual responsible to receive them. A party filing a document using the OES must ensure that the party has received an electronic confirmation that the document was accepted and approved for filing by the OES, and may be required by the designated department official to provide a hard copy of the document.

(6) Electronic documents must be formatted in Adobe Portable Document Format (PDF). To use PDF you must have Adobe Acrobat Reader, which is available free at *www.adobe.com.*

(b) *Confirmation of mailing and receipt dates.* (1) The mailing date of a notice from a designated department official initiating an action under this subpart is the date evidenced on the original receipt of mailing from the U.S. Postal Service.

(2) The date on which a request for a show-cause opportunity, a request for a hearing, other material submitted in response to a notice of action under this subpart, a decision by a hearing official, or a notice of appeal is received is, as applicable—

(i) The date of receipt evidenced on the original receipt for a document sent by certified mail.

(ii) The date following the date recorded by the delivery service as the date material was sent for a document sent by next-day delivery service.

(iii) The date a document sent by regular mail is recorded, according to the regular business practice of the office receiving the document, as received.

(iv) The date a document sent by facsimile transmission is recorded as received by the facsimile equipment that receives the transmission.

(v) The date a document sent electronically via the OES is recorded as received by the OES as indicated in the confirmation of receipt email for E-filing.

(c) *Refusals.* If an institution or third-party servicer refuses to accept a notice mailed under this subpart, the Secretary considers the notice as being received on the date that the institution or servicer refuses to accept the notice.

(Authority: 20 U.S.C. 1094)

[51 FR 43325, Dec. 1, 1986, as amended at 58 FR 13345, Mar. 10, 1993; 59 FR 22450, Apr. 29, 1994; 78 FR 48050, Aug. 7, 2013. Redesignated at 82 FR 6257, Jan. 19, 2017]

**§668.93 Fines.**

(a) In determining the amount of a fine, the designated department official, hearing official, and Secretary take into account—

(1) (i) The gravity of an institution's or third-party servicer's violation or

465

failure to carry out the relevant statutory provision, regulatory provision, special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or

(ii) The gravity of the institution's or servicer's misrepresentation;

(2) The size of the institution;

(3) The size of the servicer's business, including the number of institutions and students served by the servicer;

(4) In the case of a violation by a third-party servicer, the extent to which the servicer can document that the institution contributed to that violation; and

(5) For purposes of assessing a fine on a third-party servicer, the extent to which—

(i) Violations are caused by repeated mechanical systemic unintentional errors. The Secretary counts the total of violations caused by a repeated mechanical systemic unintentional error as a single violation, unless the servicer has been cited for a similar violation previously and had failed to make the appropriate corrections to the system; and

(ii) The financial loss of Title IV, HEA program funds was attributable to a repeated mechanical systemic unintentional error.

(b) In determining the gravity of the institution's or servicer's violation, failure, or misrepresentation under paragraph (a) of this section, the designated department official, hearing official, and Secretary take into account the amount of any liability owed by the institution and any third-party servicer that contracts with the institution, and the number of students affected as a result of that violation, failure, or misrepresentation on—

(1) Improperly expended or unspent Title IV, HEA program funds received by the institution or servicer, as applicable; or

(2) Required refunds, including the treatment of title IV, HEA program funds when a student withdraws under § 668.22.

(c) Upon the request of the institution or third-party servicer, the Secretary may compromise the fine.

(d)(1) Notwithstanding any other provision of statute or regulation, any individual described in paragraph (d)(2) of this section, in addition to other penalties provided by law, is liable to the Secretary for amounts that should have been refunded or returned under § 668.22 of the title IV program funds not returned, to the same extent with respect to those funds that such an individual would be liable as a responsible person for a penalty under section 6672(a) of Internal Revenue Code of 1986 with respect to the nonpayment of taxes.

(2) The individual subject to the penalty described in paragraph (d)(1) is any individual who—

(i) The Secretary determines, in accordance with § 668.174(c), exercises substantial control over an institution participating in, or seeking to participate in, a program under this title;

(ii) Is required under § 668.22 to return title IV program funds to a lender or to the Secretary on behalf of a student or borrower, or was required under § 668.22 in effect on June 30, 2000 to return title IV program funds to a lender or to the Secretary on behalf of a student or borrower; and

(iii) Willfully fails to return those funds or willfully attempts in any manner to evade that payment.

(Authority: 20 U.S.C. 1094 and 1099c)

[59 FR 22450, Apr. 29, 1994, as amended at 64 FR 58618, Oct. 29, 1999; 64 FR 59042, Nov. 1, 1999. Redesignated at 82 FR 6257, Jan. 19, 2017]

§ 668.94 Limitation.

A limitation may include, as appropriate to the Title IV, HEA program in question—

(a) A limit on the number or percentage of students enrolled in an institution who may receive Title IV, HEA program funds;

(b) A limit, for a stated period of time, on the percentage of an institution's total receipts from tuition and fees derived from Title IV, HEA program funds;

(c) A limit on the number or size of institutions with which a third-party servicer may contract;

(d) A limit on the number of borrower or loan accounts that a third-party servicer may service under a contract with an institution;

(e) A limit on the responsibilities that a third-party servicer may perform under a contract with an institution;

(f) A requirement for a third-party servicer to perform additional responsibilities under a contract with an institution;

(g) A requirement that an institution obtain surety, in a specified amount, to assure its ability to meet its financial obligations to students who receive Title IV, HEA program funds;

(h) A change in the participation status of the institution from fully certified to participate to provisionally certified to participate under §668.13(c).

(i) A requirement that a third-party servicer obtain surety, in a specified amount, to assure the servicer's ability to meet the servicer's financial obligations under a contract; or

(j) Other conditions as may be determined by the Secretary to be reasonable and appropriate.

(Authority: 20 U.S.C. 1094)

[59 FR 22450, Apr. 29, 1994. 81 FR 76072, Nov. 1, 2016. Redesignated at 82 FR 6257, Jan. 17, 2017]

## §668.95  Termination.

(a) *A termination*—(1) Ends an institution's participation in a Title IV, HEA program or ends a third-party servicer's eligibility to contract with any institution to administer any aspect of the institution's participation in a Title IV, HEA program;

(2) Ends the authority of a third-party servicer to administer any aspect of any institution's participation in that program;

(3) Prohibits an institution or third-party servicer, as applicable, or the Secretary from making or increasing awards under that program;

(4) Prohibits an institution or third-party servicer, as applicable, from making any other new commitments of funds under that program; and

(5) If an institution's participation in the Federal Stafford Loan Program or Federal PLUS programs has been terminated, prohibits further guarantee commitments by the Secretary for loans under that program to students to attend that institution, and, if the institution is a lender under that program, prohibits further disbursements by the institution (whether or not guarantee commitments have been issued by the Secretary or a guaranty agency for those disbursements).

(b) After its participation in a Title IV, HEA program has been terminated, an institution may disburse or deliver funds under that Title IV, HEA program to students enrolled at the institution only in accordance with §668.26 and with any additional requirements imposed under this part.

(c) If a third-party servicer's eligibility is terminated, the servicer must return to each institution that contracts with the servicer any funds received by the servicer under the applicable Title IV, HEA program on behalf of the institution or the institution's students or otherwise dispose of those funds under instructions from the Secretary. The servicer also must return to each institution that contracts with the servicer all records pertaining to the servicer's administration of that program on behalf of that institution.

(Authority: 20 U.S.C. 1094)

[59 FR 22450, Apr. 29, 1994, as amended at 63 FR 40626, July 29, 1998. Redesignated at 82 FR 6257, Jan. 19, 2017]

## §668.96  Reimbursements, refunds, and offsets.

(a) In an action to fine an institution or servicer, or to limit, suspend, or terminate the participation of an institution or the eligibility of a servicer, the designated department official, hearing official, or Secretary may require an institution or third-party servicer to take reasonable and appropriate corrective action to remedy the institution's or servicer's violation, as applicable, of any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA.

(b) The corrective action under paragraph (a) of this section may include payment of any funds to the Secretary, or to designated recipients, that the institution or servicer, as applicable, improperly received, withheld, disbursed, or caused to be disbursed. Corrective action may, for example, relate to—

(1) With respect to the Federal Stafford Loan, Federal PLUS, and Federal SLS programs—

(i) Ineligible interest benefits, special allowances, or other claims paid by the Secretary; and

(ii) Discounts, premiums, or excess interest paid in violation of 34 CFR part 682; and

(2) With respect to all Title IV, HEA programs—

(i) Refunds or returns of title IV, HEA program funds required under program regulations when a student withdraws.

(ii) Any grants, work-study assistance, or loans made in violation of program regulations.

(c) If any final decision in any action under this subpart requires an institution or third-party servicer to reimburse or make any other payment to the Secretary, the Secretary may offset these claims against any benefits or claims due to the institution or servicer.

(d) If an institution's violation in paragraph (a) of this section results from an administrative, accounting, or recordkeeping error, and that error was not part of a pattern of error, and there is no evidence of fraud or misconduct related to the error, the Secretary permits the institution to correct or cure the error. If the institution corrects or cures the error, the Secretary does not limit, suspend, terminate, or fine the institution for that error.

(Authority: 20 U.S.C. 1094 and 1099c–1)

[59 FR 22451, Apr. 29, 1994, as amended at 64 FR 58619, Oct. 29, 1999; 64 FR 59042, Nov. 1, 1999; Redesignated and amended at 82 FR 6257, 6259, Jan. 19, 2017]

## § 668.97 Reinstatement after termination.

(a)(1) An institution whose participation in a Title IV, HEA program has been terminated may file a request for reinstatement of that participation.

(2) A third-party servicer whose eligibility to contract with any institution to administer any aspect of the institution's participation in a Title IV, HEA program has been terminated may file a request for reinstatement of that eligibility.

(b) An institution whose participation has been terminated or a third-party servicer whose eligibility has been terminated may request reinstatement only after the later of the expiration of—

(1) Eighteen months from the effective date of the termination; or

(2) A debarment or suspension under Executive Order 12549 (3 CFR, 1986 Comp., p. 189) or the Federal Acquisition Regulations, 48 CFR part 9, subpart 9.4.

(c) To be reinstated, an institution or third-party servicer must submit its request for reinstatement in writing to the Secretary and must—

(1) Demonstrate to the Secretary's satisfaction that it has corrected the violation or violations on which its termination was based, including payment in full to the Secretary or to other recipients of funds that the institution or servicer, as applicable, has improperly received, withheld, disbursed, or caused to be disbursed;

(2) Meet all applicable requirements of this part; and

(3) In the case of an institution, enter into a new program participation agreement with the Secretary.

(d) The Secretary, within 60 days of receiving the reinstatement request—

(1) Grants the request;

(2) Denies the request; or

(3) Grants the request subject to a limitation or limitations.

(Approved by the Office of Management and Budget under control number 1840–0537)

(Authority: 20 U.S.C. 1094; E.O. 12549 (3 CFR, 1986 Comp., p. 189), 12689 (3 CFR, 1989 Comp., p. 235))

[59 FR 22451, Apr. 29, 1994, as amended at 59 FR 34964, July 7, 1994. Redesignated at 82 FR 6257, Jan. 19, 2017]

## § 668.98 Removal of limitation.

(a) An institution whose participation in a Title IV, HEA program has been limited may not apply for removal of the limitation before the expiration of 12 months from the effective date of the limitation.

(b) A third-party servicer whose eligibility to contract with any institution to administer any aspect of the institution's participation in a Title IV, HEA program has been limited may request removal of the limitation.

(c) The institution or servicer may not apply for removal of the limitation before the later of the expiration of—

(1) Twelve months from the effective date of the limitation; or

(2) A debarment or suspension under Executive Order 12549 (3 CFR, 1986 Comp., p. 189) or the Federal Acquisition Regulations, 48 CFR part 9, subpart 9.4.

(d) If the institution or servicer requests removal of the limitation, the request must be in writing and show that the institution or servicer, as applicable, has corrected the violation or violations on which the limitation was based.

(e) No later than 60 days after the Secretary receives the request, the Secretary responds to the institution or servicer—

(1) Granting its request;

(2) Denying its request; or

(3) Granting the request subject to other limitation or limitations.

(f) If the Secretary denies the request or establishes other limitations, the Secretary grants the institution or servicer, upon the institution's or servicer's request, an opportunity to show cause why the participation or eligibility, as applicable, should be fully reinstated.

(g) The institution's or servicer's request for an opportunity to show cause does not waive—

(1) The institution's right to participate in any or all Title IV, HEA programs if it complies with the continuing limitation or limitations pending the outcome of the opportunity to show cause; and

(2) The servicer's right to contract with any institution to administer any aspect of the institution's participation in any Title IV, HEA program, if the servicer complies with the continuing limitation pending the outcome of the opportunity to show cause.

(Authority: 20 U.S.C. 1094; E.O. 12549 (3 CFR, 1986 Comp., p. 189), 12689 (3 CFR, 1989 Comp., p. 235))

[59 FR 22451, Apr. 29, 1994. Redesignated at 82 FR 6257, Jan. 19, 2017]

### §668.99 Interlocutory appeals to the Secretary from rulings of a hearing official.

(a) A ruling by a hearing official may not be appealed to the Secretary until the issuance of an initial decision, except that the Secretary may, at any time prior to the issuance of the initial decision, grant a review of a ruling upon either a certification by a hearing official of the ruling to the Secretary for review or the filing of a petition for review of a ruling by one or both of the parties, if—

(1) That ruling involves a controlling question of substantive or procedural law; and

(2) The immediate resolution of the question will materially advance the final disposition of the proceeding or subsequent review will be an inadequate remedy.

(b)(1) A petition for interlocutory review of an interim ruling must include the following:

(i) A brief statement of the facts necessary to an understanding of the issue on which review is sought.

(ii) A statement of the issue.

(iii) A statement of the reasons showing that the ruling complained of involves a controlling question of substantive or procedural law and why immediate review of the ruling will materially advance the disposition of the case, or why subsequent review will be an inadequate remedy.

(2) A petition may not exceed ten pages, double-spaced, and must be filed with a copy of the ruling and any findings and opinions relating to the ruling.

(c) A copy of the petition must be provided to the hearing official at the time of filing with the Secretary, and a copy of a petition or any certification must be served upon the parties as provided in §668.92(a)(4). The petition or certification must reflect this service.

(d) If a party files a petition under this section, the hearing official may state to the Secretary a view as to whether review is appropriate or inappropriate by submitting a brief statement addressing the party's petition within 10 days of the receipt of that petition by the hearing official. A copy of the statement must be served on all

parties in the manner provided in §668.91(a)(4)(ii).

(e) A party's response to a petition or certification for interlocutory review must be filed within 7 days after service of the petition or statement, as applicable, and may not exceed 10 pages, double-spaced, in length. The response must be filed, and a copy served on the other party, as provided in §668.91(a)(4).

(f) The filing of a petition for interlocutory review does not automatically stay the proceedings. A stay during consideration of a petition for review may be granted by the hearing official if that official has certified or stated to the Secretary that review of the ruling is appropriate. The Secretary may order a stay of proceedings at any time after the filing of a request for interlocutory review.

(g) The Secretary notifies the parties if a petition or certification for interlocutory review is accepted, and may provide the parties a reasonable time within which to submit written argument with regard to the merit of the petition or certification.

(h) If the Secretary takes no action on a petition or certification for review within 15 days of receipt of it, the request is deemed to be denied.

(i) The Secretary may affirm, modify, set aside, or remand the interim ruling of the hearing official.

(j) The Secretary may delegate to a designated department official the functions described in paragraphs (f) through (i) of this section.

(Authority: 20 U.S.C. 1094)

(Approved by the Office of Management and Budget under control number 1801–0003)

[57 FR 60034, Dec. 17, 1992, as amended at 58 FR 14153, Mar. 16, 1993; 78 FR 48051, Aug. 7, 2013. Redesignated and amended at 82 FR 6257, 6259, Jan. 19, 2017]

## Subpart H—Appeal Procedures for Audit Determinations and Program Review Determinations

SOURCE: 52 FR 30115, Aug. 12, 1987, unless otherwise noted. Correctly designated at 52 FR 46354, Dec. 7, 1987.

### § 668.111   Scope and purpose.

(a) This subpart establishes rules governing the issuance by the Department of and appeal by an institution or third-party servicer from a final audit determination or a final program review determination arising from an audit or program review of the institution's participation in any Title IV, HEA program or of the servicer's administration of any aspect of an institution's participation in any Title IV, HEA program.

(b) This subpart applies to any participating institution or third-party servicer that appeals a final audit determination or final program review determination.

(c) This subpart does not apply to proceedings governed by subpart G of this part or to a determination that—

(1) An institution fails to meet the applicable statutory definition set forth in sections 435, 481, or 1201 of the HEA, except to the extent that such a determination forms the basis of a final audit determination or a final program review determination; or

(2) An institution fails to qualify for certification to participate in the title IV, HEA programs because it does not meet the fiscal and administrative standards set forth in subpart B of this part, except to the extent that such a determination forms the basis of a final audit determination or a program review determination.

[52 FR 30115, Aug. 12, 1987, correctly designated at 52 FR 46354, Dec. 7, 1987, as amended at 59 FR 22452, Apr. 29, 1994; 85 FR 54818, Sept. 2, 2020]

### § 668.112   Definitions.

The following definitions apply to this subpart:

(a) *Final audit determination* means the written notice of a determination issued by a designated department official based on an audit of—

(1) An institution's participation in any or all of the Title IV, HEA programs; or

(2) A third-party servicer's administration of any aspect of an institution's participation in any or all of the Title IV, HEA programs.

(b) *Final program review determination* means the written notice of a determination issued by a designated department official and resulting from a program compliance review of—