## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

DEVRY UNIVERSITY, INC.

                    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
EDUCATION and

DR. MIGUEL CARDONA, *in his official
capacity as Secretary of the United States
Department of Education*,

                 Defendants.

Case No. 1:22-cv-05549

Honorable LaShonda A. Hunt

## <ins>PLAINTIFF'S OPPOSITION TO DEPARTMENT'S MOTION TO DISMISS</ins>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 4

I.      THE DEPARTMENT'S SWEEPING REVISION OF LIMITED STATUTORY
        AUTHORITY. ........................................................................................................ 4

II.     DEVRY'S CHALLENGES TO THE DEPARTMENT'S OVERREACHES. ................ 6

LEGAL STANDARD........................................................................................................ 7

ARGUMENT .................................................................................................................... 7

I.      DEVRY HAS ARTICLE III STANDING TO CHALLENGE EACH
        DEPARTMENT ACTION...................................................................................... 7

II.     DEVRY'S CLAIMS SATISFY APPLICABLE FINALITY REQUIREMENTS. ......... 11

        A.      DeVry's Article I Claim Does Not Require a Final Agency Decision. ............... 11

        B.      DeVry's APA Claims Challenge Final Agency Actions. ................................... 13

III.    DEVRY'S CLAIMS ARE RIPE FOR JUDICIAL REVIEW. ...................................... 14

        A.      DeVry's Article I Claim (Count VI) Is Ripe. ................................................... 15

        B.      DeVry's APA Claims (Counts I–IV) Are Ripe. ................................................ 17

IV.     DEVRY'S CLAIMS ARE NOT SUBJECT TO ADMINISTRATIVE
        EXHAUSTION....................................................................................................... 18

        A.      No Statute or Regulation Requires DeVry to Exhaust the Recoupment
                Action. ........................................................................................................... 19

        B.      DeVry's Claims Are Excused from Exhaustion. ............................................. 20

V.      DEVRY STATES CONSTITUTIONAL AND APA CLAIMS AGAINST THE
        DEPARTMENT...................................................................................................... 21

        A.      The Department's BDR Recoupment Scheme Vastly Exceeds Any
                Authority Under § 1087e(h) and Thereby Usurps Legislative Power
                (Counts I, VI). ............................................................................................... 21

        B.      The Department's ALJ Structure Violates Article II (Count V)......................... 26

                1.      Dual Layers of Removal Protection Insulate the ALJs from
                        Removal. ............................................................................................. 26

                2.      *Collins* Does Not Preclude DeVry's Article II Claim. ........................... 29

        C.      DeVry States a Claim Against the Collective BDR Discharges (Count I). ......... 30

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)................................................................17

*Abbs v. Sullivan*,
    963 F.2d 918 (7th Cir. 1992) .......................................................8

*In re Aiken Cty.*,
    645 F.3d 428 (D.C. Cir. 2011) ...................................................17

*Air All. Hous. v. EPA*,
    906 F.3d 1049 (D.C. Cir. 2018) ..................................................24

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021)..............................................................26

*Aluminum Co. of Am. v. United States*,
    790 F.2d 938 (D.C. Cir. 1986) ...................................................12

*Am. Petroleum Inst. v. EPA*,
    706 F.3d 474 (D.C. Cir. 2013) ...................................................24

*Am. Sav. Bank, FSB v. UBS Fin. Servs.*,
    347 F.3d 436 (2d Cir. 2003).......................................................18

*Ass'n of Am. R.Rs. v. Dep't of Transp.*,
    38 F.3d 582 (D.C. Cir. 1994)......................................................8

*Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*,
    707 F.2d 1485 (D.C. Cir. 1983) ............................................17, 18

*Atl. City Elec. Co. v. FERC*,
    295 F.3d 1 (D.C. Cir. 2002).......................................................24

*Atl. Richfield Co. v. United States Dep't of Energy*,
    769 F.2d 771 (1984)............................................................16, 17

*Augusta Bakery Corp. v. NLRB*,
    846 F.2d 445 (7th Cir. 1988) .....................................................12

*Axon Enterprise, Inc. v. Fed. Trade Comm'n*,
    598 U.S. 175 (2023)......................................................... *passim*

*Baker Hughes Inc. v. Kirk*,
    921 F.Supp.801 (D.D.C. 1995) ..................................................15

# TABLE OF AUTHORITIES
## continued

**Page(s)**

*Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*,
    516 U.S. 264 (1996) ........................................................................................25

*Bennett v. Spear*,
    520 U.S. 154 (1997) ..................................................................................12, 13

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Ass'n*,
    972 F.3d 83 (D.C. Cir. 2020) ..........................................................................14

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) ..............................................................................23, 25

*Biden v. Texas*,
    142 S. Ct. 2528 (2022) ....................................................................................14

*Bilek v. Fed. Ins. Co.*,
    8 F.4th 581 (7th Cir. 2021) ...............................................................................7

*Borden, Inc. v. FTC*,
    495 F.2d 785 (7th Cir. 1974) ..........................................................................15

*Burgess v. Fed. Deposit Ins. Corp.*,
    2023 WL 4354219 (N.D. Tex. July 5, 2023) ...................................................16

*Calcutt v. Fed. Deposit Ins. Corp.*,
    37 F.4th 293 (6th Cir. 2022) .....................................................................27, 29

*Career Coll. & Schs. v. U.S. Dep't of Educ.*,
    No. 23-50491 (5th Cir.) .....................................................................................1

*Career Education, Inc. v. Department of Education*,
    6 F.3d 817 (D.C. Cir. 1993) ............................................................................20

*Chauffeur's Training Sch., Inc. v. Riley*,
    967 F.Supp.719 (N.D.N.Y. 1997) ...................................................................19

*Chauffeur's Training School, Inc. v. Spellings*,
    478 F.3d 117 (2d Cir. 2007) ............................................................................24

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ........................................................................................22

*Cirko v. Comm'r of Soc. Sec.*,
    948 F.3d 148 (3d Cir. 2020) ...........................................................................20

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Citizens for Appropriate Rural Rds. v. Foxx*,
    815 F.3d 1068 (7th Cir. 2016) ........................................................................17

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) .........................................................................29

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ...................................................................15, 29

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021)..................................................................................29

*Colwell v. Dep't of Health & Hum. Servs.*,
    558 F.3d 1112 (9th Cir. 2009) .......................................................................14

*Contender Farms, L.L.P. v. USDA*,
    779 F.3d 258 (5th Cir. 2015) ....................................................................8, 16

*Darby v. Cisneros*,
    509 U.S. 137 (1993).......................................................................................19

*Davis v. U.S. Dep't of Hous. & Urb. Dev.*,
    94 F.3d 647 (7th Cir. 1996) ...........................................................................18

*Decker Coal Co. v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021) .............................................................27, 28, 29

*Dhakal v. Sessions*,
    895 F.3d 532 (7th Cir. 2018) .........................................................................13

*Energy Transfer Partners, L.P. v. FERC*,
    567 F.3d 134 (5th Cir. 2009) .........................................................................17

*Env't Health Tr. v. FCC*,
    9 F.4th 893 (D.C. Cir. 2021)..........................................................................13

*In re Establishment Inspection of Kohler Co.*,
    935 F.2d 810 (7th Cir. 1991) .........................................................................19

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
    954 F.3d 118 (2d Cir. 2020)............................................................................9

*Fed. Election Comm'n v. Swallow*,
    304 F.Supp.3d 1113 (D. Utah 2018)..............................................................21

**TABLE OF AUTHORITIES**
continued

Page(s)

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003) ............................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................. *passim*

*Friedler v. Gen. Servs. Admin.*,
    271 F.Supp.3d 40 (D.D.C. 2017) ..........................................................16

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980) ...........................................................................15

*Genendo Pharm. N.V. v. Thompson*,
    308 F.Supp.2d 881 (N.D. Ill. 2003) .....................................................13

*Gonzalez v. O'Connell*,
    355 F.3d 1010 (7th Cir. 2004) ......................................................19, 20

*Gully v. Nat'l Credit Union Admin. Bd.*,
    341 F.3d 155 (2d Cir. 2003) .................................................................10

*Hardy v. Hamburg*,
    69 F.Supp.3d 1 (D.D.C. 2014) .............................................................18

*Hoosier Env't Council v. Nat. Prairie Ind. Farmland Holdings, LLC*,
    564 F.Supp.3d 683 (N.D. Ind. 2021) ..................................................14

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ...........................................................................29

*Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*,
    634 F.2d 871 (5th Cir. Unit B 1981) ....................................................12

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) (2023) .....................................................27

*Jones v. Bock*,
    549 U.S. 199 (2007) ...........................................................................19

*King v. Burwell*,
    576 U.S. 473 (2015) ...........................................................................23

*LaMarca v. United States*,
    34 F.Supp.3d 796 (N.D. Ohio 2014) ....................................................12

**TABLE OF AUTHORITIES**
continued

Page(s)

*Leisgang v. Kijakazi,*
   72 F.4th 216 (7th Cir. 2023) ................................................................20

*Lujan v. Def. of Wildlife,*
   504 U.S. 555 (1992)...................................................................8, 9

*Mendoza v. Perez,*
   754 F.3d 1002 (D.C. Cir. 2014) ............................................................18

*Michigan v. DeVos,*
   481 F.Supp.3d 984 (N.D. Cal. 2020) .............................................22, 23

*Morrison v. Olson,*
   487 U.S. 654 (1988).................................................................28, 29

*N. Air Cargo v. United States Postal Serv.,*
   674 F.3d 852 (D.C. Cir. 2012) ............................................................19

*N. Carolina v. EPA,*
   531 F.3d 896 (D.C. Cir. 2008).............................................................12

*Nash v. Califano,*
   613 F.2d 10 (2d Cir. 1980).................................................................29

*Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA,*
   752 F.3d 999 (D.C. Cir. 2014) ...................................................13, 16, 30

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003).......................................................................15

*Nava v. Dep't of Homeland Sec.,*
   435 F.Supp.3d 880 (N.D. Ill. 2020) .......................................................13

*Nerium Int'l, LLC v. FTC,*
   2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) .......................................17, 18

*Niz-Chavez v. Garland,*
   141 S. Ct. 1474 (2021).....................................................................30

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
   572 U.S. 545 (2014)........................................................................22

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.,*
   656 F.3d 580 (7th Cir. 2011) ..............................................................17

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n*,
    506 F.2d 33 (D.C. Cir. 1974) ........................................................................14

*Panama Ref. Co. v. Ryan*,
    293 U.S. 388 (1935) ...................................................................................12

*Paul's Beauty Coll. v. United States*,
    885 F.Supp.1468 (D. Kan. 1995) ...............................................................19

*Pro Schs., Inc. v. Riley*,
    824 F.Supp. 1314 (E.D. Wis. 1993) ....................................................19, 24

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ...................................................................12

*Rogers v. Bennett*,
    873 F.2d 1387 (11th Cir. 1989) .................................................................16

*Rosenthal & Co. v. Bagley*,
    581 F.2d 1258 (7th Cir. 1978) ...................................................................19

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ...............................................................................26

*Sierra Club v. EPA*,
    699 F.3d 530 (D.C. Cir. 2012) ...................................................................10

*Sierra Club v. United States EPA*,
    774 F.3d 383 (7th Cir. 2014) ...........................................................2, 8, 11

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) .......................................................................7

*Star Way Lines v. Walsh*,
    596 F.Supp.3d 1142 (N.D. Ill. 2022) .........................................................19

*State v. Ctrs. For Medicare & Medicaid Servs.*,
    2010 WL 1268090 (M.D. Ala. Mar. 30, 2010) ..........................................18

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) .......................................................................................9

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .....................................................................................9

## TABLE OF AUTHORITIES
### continued

**Page(s)**

*Sweet v. Cardona,*
    641 F.Supp.3d 814 (N.D. Cal. 2022) ........................................................................10

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) .......................................................................................9

*Texas v. United States,*
    555 F.Supp.3d 351 (S.D. Tex. 2021) ........................................................................13

*Ticor Title Ins. Co. v. FTC,*
    814 F.2d 731 (D.C. Cir. 1987) ..................................................................................12

*Top Choice Distribs., Inc. v. U.S. Postal Serv.,*
    138 F.3d 463 (2d Cir. 1998) ......................................................................................12

*United States v. Arthrex, Inc.,*
    141 S. Ct. 1970 (2021) ..............................................................................................28

*United States v. Dvorkin,*
    799 F.3d 867 (7th Cir. 2015) .....................................................................................23

*United States v. Perkins,*
    116 U.S. 483 (1886) ..................................................................................................29

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) ..................................................................................................21

*Vara v. DeVos,*
    2020 WL 3489679 (D. Mass. June 25, 2020) ..........................................................22

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) ....................................................................................................8

*W. Ill. Home Health Care, Inc. v. Herman,*
    150 F.3d 659 (7th Cir. 1998) .....................................................................................14

*W. Va. v. EPA,*
    142 S. Ct. 2587 (2022) ........................................................................................21, 24

*Warth v. Seldin,*
    422 U.S. 490 (1975) ..................................................................................................15

*Wiener v. United States,*
    357 U.S. 349 (1958) ..................................................................................................29

**TABLE OF AUTHORITIES**
continued

Page(s)

*Williams v. Devos*,
  2018 WL 5281741 (D. Mass. Oct. 24, 2018)..........................................................................19

**Agency Proceedings**

*In the Matter of DeVry Univ.*,
  No. 22-54-BD (O.H.A. Dec. 5, 2023)...............................................................................2, 21

**Constitutional Provisions**

U.S. Const., art. I.................................................................................................... *passim*

U.S. Const., art. II ................................................................................................... *passim*

**Statutes**

5 U.S.C.
  § 702.........................................................................................................................13
  § 704.....................................................................................................................12, 13
  § 706..................................................................................................................8, 21, 30
  § 1202(d)...................................................................................................................26
  § 3105........................................................................................................................27
  § 5514........................................................................................................................23
  § 7521(a)...................................................................................................................26

20 U.S.C.
  § 1080a(c)(4)..............................................................................................................23
  § 1082........................................................................................................................23
  § 1087a........................................................................................................................4
  § 1087(c)...................................................................................................................23
  § 1087d(a)(3).............................................................................................................23
  § 1087e(a)(1)..............................................................................................................24
  § 1087e(h)........................................................................................................... *passim*
  § 1094...............................................................................................................20, 23, 28
  § 1095a........................................................................................................................23
  § 1099c(c)...................................................................................................................23
  § 1221e-3.....................................................................................................................23
  § 1234........................................................................................................................27
  § 3441........................................................................................................................23
  § 3471........................................................................................................................23
  § 3474........................................................................................................................23

**TABLE OF AUTHORITIES**
continued

Page(s)

31 U.S.C.
    § 3711(e) ................................................................................................23
    § 3716 .....................................................................................................23
    § 3720B .................................................................................................23
    § 3720D .................................................................................................23

Dictionary Act, 1 U.S.C. § 1 ...........................................................................30

**Federal Rules**

Federal Rule of Civil Procedure
    8(a)(2) ......................................................................................................7
    12(b)(1) ....................................................................................................7
    12(b)(6) ....................................................................................................7

**Regulations & Federal Register**

34 C.F.R.
    § 9.14(h)(1) ..........................................................................................5, 9
    § 668.87 ............................................................................................19, 25
    § 668.90(d) ............................................................................................21
    § 685.206(c) ........................................................................................5, 25
    § 685.206(e) ..........................................................................................25
    § 685.222 ...........................................................................................4, 25
    § 685.222(i)(2)(i) ....................................................................................5
    § 685.222(a)(2) .......................................................................................5
    § 685.222(d) ..........................................................................................25
    § 685.222(e)(5) ..................................................................................11, 14
    § 685.222(e)(6) ......................................................................................30
    § 685.222(e)(7) ......................................................................................30
    § 685.222(k)(1) ......................................................................................26

57 Fed. Reg. 47,752, 1992 WL 292860 (Oct. 19, 1992) ................................28

87 Fed. Reg.
    41,878 (July 13, 2022) ..........................................................................13
    65,904 (Nov. 1, 2022) ...........................................................................13

**Dictionaries**

*Action*, Black's Law Dictionary (6th ed. 1990) ............................................22

*Claim*, Black's Law Dictionary (6th ed. 1990) .............................................22

**TABLE OF AUTHORITIES**
continued

Page(s)

*Defense*, Black's Law Dictionary (6th ed. 1990).........................................................................22

**U.S. Department of Education Sources**

Office of the Under Secretary of the U.S. Dep't of Educ., *Rescission of Borrower Defense Partial Relief Methodology* (Aug. 24, 2021) ...............................................................5

U.S. Dep't of Educ., *Apply for Borrower Defense Loan Discharge*, https://studentaid.gov/borrower-defense/ (last accessed Dec. 13, 2023)................................25

U.S. Dep't of Educ., *DeVry University (DeVry)*, https://studentaid.gov/announcements-events/borrower-defense-update/findings#devry-university ......................................................................6

U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022) ............................................................................................................................6

U.S. Dep't of Educ., *Federal Student Loan Portfolio*, https://studentaid.gov/data-center/student/portfolio (last visited Dec. 13, 2023)........................................................25

U.S. Dep't of Educ., (GENERAL-23-96) *Borrower Defense School Notification Process Under the 2016 Regulation (34 C.F.R. 685.222)* (Updated Dec. 7, 2023) ...............................................................................................................................25

U.S. Dep't of Educ., 2023-24 Federal School Code List of Participating Schools (Apr. 27, 2023)..............................................................................................................25

U.S. Dep't of Educ., *Department of Education Announces Action to Streamline Borrower Defense Relief Process* (Mar. 18, 2021), https://www.ed.gov/news/press-releases/department-education-announces-action-streamline-borrower-defense-relief-process ...................................................5

## INTRODUCTION

Since 2016, the United States Department of Education (the "Department") has built a loan cancellation program on the wafer-thin foundation of a single statutory provision that authorizes the Secretary simply to specify defenses a borrower may assert to repayment of a federal student loan. 20 U.S.C. § 1087e(h). From this precise and narrow delegation of authority, the Department has fashioned an elaborate borrower defense to repayment ("BDR") discharge and recoupment scheme ("BDR Recoupment Scheme") that would allow both cancellation of billions in debt and agency adjudication to assign that massive liability to schools—without congressional authorization.

DeVry challenges the Department's unconstitutional and unauthorized overreaches. Relying on exaggerated and unproven allegations of "misleading" representations that ceased years ago—which DeVry can and will rebut, as necessary—the Department urged tens of thousands of students to file BDR claims against DeVry. Exercising appropriated authority, and in violation of its regulations, the Department unilaterally discharged their student loans in full and now seeks a massive "repayment" from DeVry in recoupment proceedings ("Recoupment Action") the Department invented. In seeking recoupment, the Department relies on a Department administrative law judge ("ALJ"), who is unconstitutionally insulated from the President's Article II removal power.

The lack of authority for this BDR Recoupment Scheme is readily apparent. The Fifth Circuit has enjoined the borrower defense provisions of the Department's current BDR Rules in a case challenging the Department's lack of authority under §1087e(h).[1] And the ALJ has stayed the Recoupment Action given the "compelling argument . . . that the Department lacks statutory

---

[1] Order, *Career Coll. & Schs. v. U.S. Dep't of Educ.*, No. 23-50491 (5th Cir. Aug. 7, 2023), ECF No. 42-1.

authority to recoup funds from a school under the borrower defenses statute."[2]

DeVry contends that in fashioning the BDR Recoupment Scheme and attempting to recoup from DeVry under it, the Department violated constitutional constraints as well as the Administrative Procedure Act's ("APA") procedural requirements and the Department's own regulations, adversely affecting DeVry's concrete interests. As the Supreme Court held in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), the structural constitutional claims alone establish here-and-now injury to DeVry and permit judicial review before requiring DeVry to endure the Recoupment Action. Notwithstanding the validity and significance of these claims, however, the Department relies primarily on a series of jurisdictional arguments to assert that DeVry cannot bring any claims against the Department until the conclusion of the Recoupment Action—the first ever—that the Department brought against DeVry. The Department is wrong. None of the obstacles the Department seeks to erect can block this Court from deciding this case on the merits and finding the Department's conduct unlawful.

*First*, DeVry has Article III standing to challenge each Department action at issue. Here, "the merits" of DeVry's claims are "assum[ed]." *Sierra Club v. United States EPA*, 774 F.3d 383, 389 (7th Cir. 2014).[3] As alleged, the Department's 2017 BDR Rule, the 2021 Policy Memoranda, the BDR Discharges, and the Recoupment Action have increased the regulatory burden on DeVry, deprived DeVry of procedural rights and harmed its concrete interests as a school subjected to the BDR Rules, caused reputational damage by official Department determinations of purported misconduct, and subjected DeVry to an unconstitutional enforcement proceeding. An order declaring these actions unlawful, vacating the rules and memoranda, and requiring observance of mandatory procedures would redress these injuries, all of which are adequately alleged.

---

[2] Order at 2, *In the Matter of DeVry Univ.*, No. 22-54-BD (O.H.A. Dec. 5, 2023), Dkt. No. 267.
[3] In this brief, all emphasis within quotations is added, and all internal quotations and citations are omitted.

*Second*, DeVry's claims comply with finality requirements. *Axon* confirms that DeVry need not await a final decision in the Recoupment Action before asserting structural constitutional claims, and DeVry's APA claims challenge final agency actions, *i.e.*, the Department's unlawful: (1) promulgation of the 2017 BDR Rule; (2) the 2021 Policy Memoranda establishing a presumption of full relief for federal student loan borrowers, and (3) BDR discharges.

*Third*, DeVry's claims are ripe for judicial review. The structural constitutional claims and APA claims all raise pure questions of law. None of these claims requires further factfinding, and these legal questions cannot be decided in the Recoupment Action, under the agency's regulations.

*Fourth*, DeVry is not required to "exhaust" proceedings in the Recoupment Action. The Department fails to identify a single statute or regulation that requires exhaustion. The law is clear that administrative exhaustion is inappropriate for DeVry's structural constitutional claims in federal court, and even if exhaustion applied (it does not), it would be excused because the agency cannot resolve the legal issues raised in this case through the Recoupment Action.

*Finally*, DeVry adequately states structural constitutional and APA claims. As to the Article I claim (Count IV) and related APA claim (Count I), the Department's BDR Recoupment Scheme so greatly exceeds the limited authority Congress specified in § 1087e(h) that it *is* both unauthorized and an unconstitutional usurpation of legislative authority by an executive agency. As to DeVry's Article II claim (Count V), Congress has interposed two layers of removal protection between the Department's ALJs (inferior officers of the United States) and the President in violation of Article II. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010). As to one aspect of DeVry's APA claim that the BDR discharges exceed the Department's statutory authority (Count I), DeVry challenges the Department's *collective* BDR discharges based on a "Common Statement of Facts" ("Common Statement") as violating § 1087e(h), which

authorizes only individual BDR defenses—not a backdoor loan forgiveness program through blanket BDR cancellations for swaths of borrowers. The Department's Motion misreads the First Amended Complaint ("FAC") and stretches § 1087e(h) beyond recognition.

Accordingly, the Department's Motion should be denied.

## BACKGROUND

DeVry is an accredited Illinois-based university that has educated thousands of students for nearly a century. FAC ¶ 6. DeVry offers academic programs and degrees in technology, business, and healthcare and has become a leader in online education. *Id.* Generations of DeVry students have earned degrees, paid for their DeVry education, and enjoyed successful careers. *Id.*

In June 2020, years after DeVry settled—without admitting wrongdoing—investigations by the FTC and the states of New York and Massachusetts into an ad campaign discontinued in 2015, the Department notified DeVry that it would be sending DeVry BDR claims arising from the same campaign for response.[4] *Id.* ¶¶ 31–33, 36. DeVry has received over 47,000 applications from the Department concerning BDR claims and has endeavored to respond to each. *Id.* ¶ 37.

## I. THE DEPARTMENT'S SWEEPING REVISION OF LIMITED STATUTORY AUTHORITY.

Thirty years ago, Congress authorized the federal government to lend money to eligible students as "Direct Loans." 20 U.S.C. § 1087a; FAC ¶ 50. Congress gave a clear and limited direction to the Secretary to specify by regulation "which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of a Direct Loan. 20 U.S.C. § 1087e(h); FAC ¶¶ 52, 76. In 1995, the Department issued its first BDR regulations under which borrowers could assert a defense to repayment of their Direct Loans due to alleged state law violations by their school. *Id.* ¶¶ 78, 88. These BDR Rules remained for over 20 years. *Id.* ¶ 79.

---

[4] DeVry has paid over $122 million to former students to resolve claims relating to the ads. FAC ¶ 35.

**The 2017 BDR Rule.** Two decades later, the Department revamped its discharge authority when it promulgated the 2017 BDR Rule. 34 C.F.R. § 685.222 (2017 version). Under this Rule and the related regulations, the Department authorized students to bring affirmative BDR claims to seek loan relief as well as authorized itself to discharge loans administratively without individualized assessment and to administratively recoup from a school long after a student had stopped attending the school. *Id.* ¶¶ 79–80, 95–104; *see also* 34 C.F.R. § 685.222(a)(2), (e)(7) (2017 version). At the same time, the Department greatly expanded the term "notice" to allow the Secretary to resurrect long-expired BDR claims. *Id.* ¶¶ 103–04 (citing 34 C.F.R. § 685.206(c)(4)).

**2021 Policy Memoranda Establish a Presumption.** In March 2021, the Department announced a new policy for discharges under the BDR Rules, effective immediately.[5] FAC ¶ 141 & n.8. Whereas the Department previously assessed harm on an individualized basis, as required by 34 C.F.R. § 685.222(i)(2)(i), the Department would now apply a presumption of "[f]ull relief under the regulations" that "will include[] 100 percent discharge of borrowers' related federal student loans." FAC ¶ 141 n.8. In August 2021, the Department announced its "legal justification" for the presumption, which together with the March 2021 Press Release, are the 2021 Policy Memoranda.[6] *Id.* In issuing the 2021 Policy Memoranda, the Department failed to follow its then-effective regulation requiring a "period of public notice and comment at least 30 calendar days" prior to the issuance "significant guidance." *Id.* (citing 34 C.F.R. § 9.14(h)(1) (2020 version)).

**The BDR Discharges.** On February 16, 2022, the Department publicly announced that "approximately 1,800 former DeVry students . . . will receive approximately $71.7 million in full

---

[5] *See* U.S. Dep't of Educ., *Department of Education Announces Action to Streamline Borrower Defense Relief Process* (Mar. 18, 2021), https://www.ed.gov/news/press-releases/department-education-announces-action-streamline-borrower-defense-relief-process.

[6] *See* Office of the Under Secretary of the U.S. Dep't of Educ., *Rescission of Borrower Defense Partial Relief Methodology* (Aug. 24, 2021), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2021-08-24/rescission-borrower-defense-partial-relief-methodology-ea-id-general-21-51.

borrower defense discharges after the [Department] determined that the institution made widespread substantial misrepresentations about its job placement rates." *Id.* ¶ 38 & n.5. These discharges were based on a "Common Statement" about DeVry "that will be applied in the individual adjudication of borrower defense applications from DeVry borrowers."[7]

     ***The Recoupment Notice and Recoupment Action.*** Six months later, the Department issued a Recoupment Notice to DeVry seeking to recoup $23.6 million in discharged loans for 649 students, largely due to purported violations of the 2017 BDR Rules. *Id.* Ex. B at 1–6. The Department's "collection" of this "debt" would commence unless DeVry requested a hearing in the Recoupment Action. *Id.* at 5–6. Faced with that "debt" and potential penalties, DeVry was forced to request a hearing on October 11, 2022. FAC ¶ 46. On the same day, DeVry filed this case. *Id.*

## II.    DeVry's Challenges to the Department's Overreaches.

     DeVry challenges the Department's unlawful expansion of its authority and attempt to force DeVry to pay the Department millions for loans the Department unilaterally and improperly discharged. The FAC asserts four APA claims. Count I alleges the Department exceeded § 1087e(h) by promulgating the 2017 BDR Rule, which, among other things, authorized "group" discharges and expanded the definition of the term "notice." FAC ¶¶ 124–32. Count II alleges the Department failed to follow APA notice and comment procedures in promulgating the 2017 BDR Rule and failed to follow its regulations in issuing the 2021 Policy Memoranda. *Id.* ¶¶ 133–42. Count III alleges the Department's actions are arbitrary and capricious. *Id.* ¶¶ 143–47. Count IV

---

[7] U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-for-former-devry-university-students; U.S. Dep't of Educ., *DeVry University (DeVry)*, https://studentaid.gov/announcements-events/borrower-defense-update/findings#devry-university (including hyperlinks to the "common statement").

alleges the 2017 BDR Rule violates due process by providing no time limit on the initiation of recoupment, and because the group adjudication rules are facially defective. *Id.* ¶¶ 148–57. The FAC also asserts structural constitutional claims, consistent with *Axon*. Count V alleges the Department's ALJs are unconstitutionally insulated from removal by the President in violation of Article II by two layers of removal protection. *Id.* ¶¶ 158–62. Count VI alleges the Department has violated Article I by fashioning a scheme to adjudicate BDR claims and recoupment claims without congressional authorization, usurping the legislative power. *Id.* ¶¶ 163–67.

The Department moves to dismiss. ECF No. 59. It asserts that DeVry lacks standing, and that DeVry's Article I challenge and APA claims should be dismissed as unripe, not final, and for failure to exhaust administrative remedies. The Department opposes the merits of DeVry's Articles I and II claims and APA claim concerning the Department's collective BDR Discharges.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) . . . requires only that a complaint plead a short and plain statement of the claim showing that the pleader is entitled to relief." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). A complaint satisfies Rule 12(b)(6) when it pleads "a claim that is plausible on its face." *Id.* A court applies the Rule 12(b)(6) standard to evaluate a facial challenge to a complaint under Rule 12(b)(1). *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

## ARGUMENT

**I.    DeVry Has Article III Standing to Challenge Each Department Action.**

In an attempt to shield its actions from judicial review, the Department argues that DeVry lacks Article III standing to challenge the 2017 BDR Rule, the procedural violations in the 2017 BDR Rule and 2021 Policy Memoranda, the BDR Discharges, and the Recoupment Action. Mot. 14–17. The Department is incorrect. Article III standing requires (1) an injury in fact, *i.e.*, the invasion of a legally protected interest that is "actual or imminent, not conjectural or hypothetical,"

(2) traceable to the defendant (3) that is likely to be redressed by a favorable judicial ruling. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). In this analysis, the court ***must*** assume DeVry would succeed on its claims. *Sierra Club*, 774 F.3d at 389. Here, DeVry satisfies all the standing requirements for each challenge it raises to the Department's actions at issue in this case.

***Facial Challenges to the 2017 BDR Rule*** **(Counts I, III, IV, VI)**. Contrary to the Department's assertion that DeVry "fails to identify any harm" from the 2017 BDR Rule, Mot. 16, DeVry has standing to assert facial challenges to the 2017 BDR Rule. A plaintiff has standing when it is subject to a challenged regulation. *Lujan*, 504 U.S. at 561–62. DeVry is subject to the 2017 BDR Rule because the Department has conditioned participation by all schools in the Direct Loan program on the Department's unauthorized BDR Rules. FAC ¶¶ 7, 36, 51; Mot. 22. DeVry has spent time and resources responding to many of the 47,000 BDR Applications. FAC ¶ 37. If the Department lacks the authority it asserts, there would be ***no*** BDR claims. Moreover, over 7,000 BDR claims against DeVry are made pursuant to the 2017 BDR Rule's unlawful expansion of the term "notice" to allow the Secretary to resurrect time-barred BDR claims. *Id.* ¶¶ 92a, 103–04. DeVry's "increased regulatory burden" from the 2017 BDR Rule easily "satisfies the injury in fact requirement." *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 266 (5th Cir. 2015).

Vacatur of the 2017 BDR Rule under the APA would also clearly redress DeVry's injuries. 5 U.S.C. § 706; *Ass'n of Am. R.Rs. v. Dep't of Transp.*, 38 F.3d 582, 585–86 (D.C. Cir. 1994) (plaintiff had standing because vacatur of the challenged rule meant "the alleged injury would be avoided"). Because setting aside improper Department actions and declaring that the Department cannot rely on them would affect the Recoupment Action, DeVry's request for alternative relief is also appropriate, contrary to the Department's flawed arguments here.[8] FAC ¶ H; Mot. 17.

---

[8] The Department stretches the holdings in *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992), and *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978), to argue that DeVry

***Procedural Failures in the 2017 BDR Rule and 2021 Policy Memoranda* (Counts II and IV)**. DeVry has standing to challenge the Department's failures to follow the APA's notice-and-comment requirements (Count IV) and its procedures when issuing the 2021 Policy Memoranda (Count II). Article III is less demanding when a "person . . . has been accorded a procedural right to protect his concrete interests." *Lujan*, 504 U.S. at 572 n.7. Such a person "can assert that right *without* meeting all the normal standards for redressability and immediacy." *Id.* In issuing the 2017 BDR Rule, the Department violated DeVry's procedural rights by adopting a new "notice" definition that resurrected expired BDR claims *without* following the APA's procedures. FAC ¶¶ 103, 131; *see Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019) ("A violation of the APA's notice-and-comment requirements is . . . a deprivation of a procedural right."). The Department violated DeVry's procedural rights by adopting the 2021 Policy Memoranda *without* observing the Department's notice and comment procedures. FAC ¶ 141 (citing 34 C.F.R. § 9.14(h)(1) (2020 version)); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[W]hen agencies fail" to follow their own regulations, "the APA . . . gives aggrieved parties a cause of action."). The Department misapplies *Steel Co. v. Citizens for a Better Environment*, because there, the claimed injury was "being deprived of information," not a violation of mandatory notice and comment procedures. 523 U.S. 83, 105 (1998).

The Department's procedural violations also affected "some concrete interest" of DeVry. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). DeVry was adversely affected by the 2017 BDR Rule's resurrection of time-barred claims given the prior federal and state investigations concerning the same conduct at issue in the BDR Rules. FAC ¶¶ 31–34. And DeVry was

---

cannot ask the Court to determine the rules or "engraft" procedures onto the Recoupment Action. Mot. 17–18. That misconstrues the alternative relief. DeVry asks the Court to remedy APA violations, and to declare that the Department cannot rely on rules and memoranda that are unlawful and illegally promulgated.

unquestionably affected by the Department's 2021 Policy Memoranda's presumption of total relief considering the over 47,000 BDR Applications the Department has sent to DeVry since 2020. *Id.* ¶ 37. Vacatur of the 2017 BDR Rule's "notice" definition and the 2021 Policy Memoranda to require the Department to entertain and respond to DeVry's objections will "clearly redress[]" the procedural injury that DeVry suffered. *See Sierra Club v. EPA*, 699 F.3d 530, 533 (D.C. Cir. 2012).

**BDR Discharges (Counts I–IV)**. DeVry has standing to challenge the Department's BDR discharges because they are government actions that cause reputational harm to DeVry. FAC ¶ 76 (alleging "reputational damage"); *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161 (2d Cir. 2003) ("[A]n injury to reputation will satisfy the injury element of standing."). The BDR discharges—publicized on the Department's website and in a press release—harm DeVry's reputation; they reflect non-adversarial "findings" by Department officials that DeVry misled each borrower. FAC ¶¶ 6, 38 & n.5; *Foretich v. United States*, 351 F.3d 1198, 1213 (D.C. Cir. 2003) ("[W]here reputational injury derives directly from an unexpired and unretracted government action, that injury satisfies the requirements of Article III standing . . ."). "A declaratory judgment that the government's actions were unlawful will . . . provide meaningful relief." *Foretich*, 351 F.3d at 1213.

The Department's reliance on *Sweet v. Cardona*, to contend that "the grant of a borrower-defense application has no binding effect on the school" misses the mark. 641 F.Supp.3d 814, 828 (N.D. Cal. 2022), *appeal filed*, No. 23-15049 (9th Cir.); Mot. 16, 24. There, the court opined there was "no actionable reputational harm" because "there is no binding or official determination of misconduct against the schools . . . since the settlement does not utilize the borrower-defense procedure." *Sweet*, 641 F.Supp.3d at 829. That determination—which ignored clear reputational harm to the schools—is on appeal before the Ninth Circuit. In any event, the BDR Discharges here

*do* utilize the BDR Rules and reflect an "official determination of misconduct." Even if DeVry succeeded in the Recoupment Action, the BDR discharges remain "*final* as to the merits of the claim." 34 C.F.R. § 685.222(e)(5). It is little wonder that the Department wields its BDR Discharges as unassailable proof of misconduct. *E.g.*, Mot. 1 ("The [Department] determined that [DeVry] misled prospective students"), 4–5 (referring to Department's "findings").

*Recoupment Action* **(Counts V–VI).** The Department's assertion that DeVry "has identified no cognizable harm" from the Recoupment Notice is simply incorrect under *Axon*. Mot. 14–15. DeVry has a legally protected interest, *i.e.*, "the[] right[] not to undergo the complained-of agency proceedings." *Axon*, 598 U.S. at 192. DeVry suffers a "here-and-now injury" because DeVry will "lose" that right if it must wait for a final order in the Recoupment Action. *Id.*; FAC ¶¶ 73–82, 118–21. The Department's disagreement with Counts V and VI on the merits cannot undermine the injury DeVry alleges. *See Sierra Club*, 774 F.3d at 389. The harm to DeVry is also fairly traceable to the Department, which initiated the improper Recoupment Action with the Recoupment Notice. FAC ¶ 41, Ex. B. And a favorable judicial ruling for DeVry would remedy the harm. If DeVry succeeds on its claims, then the Department cannot enforce its unconstitutional BDR Recoupment Scheme against DeVry or proceed with an illegitimate decisionmaker.

## II.     DEVRY'S CLAIMS SATISFY APPLICABLE FINALITY REQUIREMENTS.

The Department's assertion that all claims except DeVry's Article II claim should be dismissed due to a lack of final agency action is incorrect. Mot. 10–12, 14, 17-18. DeVry's Article I claim does not require a final agency action, and its APA claims challenge final agency actions.

### A.     DeVry's Article I Claim Does Not Require a Final Agency Decision.

Contrary to the Department's assertion, Mot. 10–11, DeVry's Article I claim does not require a final decision in the Recoupment Action before DeVry may pursue judicial review. *Axon*

instructs that even when a review scheme would ordinarily require final agency action, structural constitutional claims challenging the agency's assertion of authority do not require that finality.[9] *Axon*, 598 U.S. at 195–96. Here, Congress created no review scheme for recoupment proceedings; the only statutory provision concerning BDR says **nothing** about recoupment. 20 U.S.C. § 1087e(h). The Department does not even argue that DeVry's Article II claim (Count V) would require a final decision in the Recoupment Action, Mot. 7–12, and there is no basis to treat Count VI differently. Like the *Axon* claims, Count VI *is* a separation-of-powers challenge to an executive agency's usurpation of legislative authority. FAC ¶¶ 163–67. The mere fact that this Court must examine the scope of delegated authority is of no moment. Mot. 10. An agency "has only those authorities conferred upon it by Congress; if there is no statute conferring authority, a federal agency has none." *N. Carolina v. EPA*, 531 F.3d 896, 922 (D.C. Cir. 2008). And like an Article I challenge to the delegation of authority to an executive agency without an intelligible principle, Count VI properly requires this Court to "look to the statute." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 415 (1935). The Department cannot evade judicial review by asserting that DeVry's Article I claim is a run-of-the-mill excess-of-authority APA claim that lacks a final agency action. Mot. 10; 5 U.S.C. § 704. The 2017 BDR Rule *is* a final agency action, as the Department concedes. Mot. 16. That Rule is part of the Department's unconstitutional usurpation of legislative power, and thus further demonstrates that DeVry's Article I claim is subject to judicial review now.[10]

---

[9] The Department's cited finality cases, several of which are non-binding, are inapposite because they pre-date *Axon*. Mot. 11–12; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *Top Choice Distribs., Inc. v. U.S. Postal Serv.*, 138 F.3d 463, 467 (2d Cir. 1998); *Augusta Bakery Corp. v. NLRB*, 846 F.2d 445, 446-47 (7th Cir. 1988); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. Unit B 1981); *LaMarca v. United States*, 34 F.Supp.3d 796, 806 (N.D. Ohio 2014).

[10] In light of this final agency action, the Department's cited cases concerning the lack of a purported "special rule" of finality are irrelevant. *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732–33 (D.C. Cir. 2003); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 747 (D.C. Cir. 1987); *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986).

### B.    DeVry's APA Claims Challenge Final Agency Actions.

The Department cannot obtain dismissal of DeVry's APA claims due to a purported lack of finality. Mot. 10–12. Finality means that (1) "the action must mark the consummation of the agency's decision-making process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178. Finality must be evaluated flexibly and pragmatically, and, at the pleading stage, in the light most favorable to DeVry. *See Dhakal v. Sessions*, 895 F.3d 532, 538–41 (7th Cir. 2018); *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 903 (N.D. Ill. 2020). The 2017 BDR Rule, 2021 Policy Memoranda, and BDR discharges are *all* final agency actions. DeVry is "entitled to" APA review of them because it is "aggrieved by" these actions. 5 U.S.C. §§ 702, 704; *see supra* Part I.

*The BDR Rules.* All the Department's regulations comprising the BDR Recoupment Scheme are clearly final because "[a]n agency's promulgation of regulations constitutes a final agency action." *Env't Health Tr. v. FCC*, 9 F.4th 893, 913 (D.C. Cir. 2021); *Genendo Pharm. N.V. v. Thompson*, 308 F.Supp.2d 881, 884 (N.D. Ill. 2003) (similar); *e.g.*, FAC ¶¶ 79–81, 95, 108, 117.[11] The Department itself concedes that the 2017 BDR Rule is final. Mot. 16.

*The 2021 Policy Memoranda*. The Department's assertion that its 2021 Policy Memoranda are not final agency action is nonsensical. Mot. 17. The 2021 Policy Memoranda declared a uniform and firm presumption of total relief for student borrowers—effective immediately for BDR Applications. FAC ¶¶ 141 & n.8; *see Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014) (directive that "provide[d] firm guidance to enforcement officials about how to handle permitting decisions" was final); *Texas v. United States*, 555 F.Supp.3d 351,

---

[11] The Department's assertion that the "most recent" BDR Rule, 87 Fed. Reg. 65,904 (Nov. 1, 2022), is not "at issue" is misguided. Mot. 3 n.2. The FAC referred to the proposed version of that Rule, making clear that DeVry was concerned with the lack of statutory authority for that Rule, too. FAC ¶ 117 (citing 87 Fed. Reg. 41,878 (July 13, 2022)). The 2023 BDR Rule became final after DeVry filed the original complaint.

389 (S.D. Tex. 2021) (memorandum "effectively immediately" was final).

The Department's assertion the 2021 Policy Memoranda are "not the Department's final word on any [BDR] application or on any school's liability," Mot. 17, evades the relevant finality inquiry. The Memoranda's "simple, declarative" language that the Department would "begin applying" the presumption "*today*" shows final agency action. *See W. Ill. Home Health Care, Inc. v. Herman*, 150 F.3d 659, 663 (7th Cir. 1998) (final action where agency used "simple, declarative statement"). The Department's assertion that the Memoranda were a mere general policy statement is also wrong. Mot. 17.[12] The Department decreed its new presumption of full relief as *the* "starting point" for discharges by Department officials. *See Biden v. Texas*, 142 S. Ct. 2528, 2544–45 (2022) (memoranda that "bound" staff were final); *Texas*, 389 F.Supp. at 391 (memorandum was final because it imposed new requirements on agency officials).

**The BDR Discharges.** The Department does not dispute that its BDR discharges are final, nor could it. Mot. 15. The BDR regulations treat the discharges as "*final* as to the merits of the claim and any relief." 34 C.F.R. § 685.222(e)(5); *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Ass'n*, 972 F.3d 83, 100 (D.C. Cir. 2020) (agency action consummated decision-making since "the Administration has said so by regulation"). The discharges also determined obligations by relieving borrowers of their obligations to pay $23.6 million in loans. *See Hoosier Env't Council v. Nat. Prairie Ind. Farmland Holdings, LLC*, 564 F.Supp.3d 683, 703 (N.D. Ind. 2021).

## III. DEVRY'S CLAIMS ARE RIPE FOR JUDICIAL REVIEW.

The Department's assertion that all claims except DeVry's Article II claim should be dismissed as unripe due to the pendency of the Recoupment Action is baseless. Mot. 7–9.

---

[12] The Department's cited cases are irrelevant to finality because they concern exceptions to the APA's notice-and-comment requirement. *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 37 (D.C. Cir. 1974); *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009).

"[R]ipeness is not a formalistic inquiry but rather a pragmatic balancing of relevant interests." *Baker Hughes Inc. v. Kirk*, 921 F.Supp.801, 805 (D.D.C. 1995). It is closely related to Article III standing, *see supra* Part I, and asks, "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). To assess ripeness, a court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Contrary to the Department's arguments, Mot. 8, DeVry's claims raise purely legal issues, and DeVry has suffered injury. The Recoupment Action cannot unripen these claims.

### A. DeVry's Article I Claim (Count VI) Is Ripe.

DeVry's Article I claim presents pure questions of law, as DeVry's and the Department's arguments confirm. *See infra* Part V.A; Mot 18–23. The five allegations that the Department cherry-picks from the FAC as purportedly requiring "factual development" do not concern DeVry's Article I claim, or any claim raised in this brief. Mot. 9.[13] Contrary to the Department's assertion, Mot. 10, the "potential hardship" to DeVry is not the cost and inconvenience of the Recoupment Action (although those are significant).[14] DeVry's hardship is the "here-and-now injury" from subjection to the unconstitutional Recoupment Action, which "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191; FAC ¶¶ 72, 85. Thus, DeVry's Article I claim is ripe. *See Cochran v. SEC*, 20 F.4th 194, 212–13 (5th Cir. 2021) (Article II claim ripe because (1) it was a "pure issue of law[;]" and (2) if the "claim [was] meritorious[,] withholding judicial consideration would injure the plaintiff by forcing her to litigate before an ALJ who was

---

[13] These allegations pertain to the Department's failure to follow its BDR regulations in making the loan discharges, FAC ¶¶ 136–39 (Count II), and the Department's violation of constitutional due process by failing to provide sufficient notice to DeVry regarding the BDR claims, *id*. ¶¶ 154–55 (Count IV).

[14] *Axon* disposes of the Department's assertion that the purported hardship to DeVry is mere "uncertainty" about the Recoupment Action's outcome, and renders inapposite *FTC v. Standard Oil Co. of Cal*., 449 U.S. 232, 239–44 (1980), and *Borden, Inc. v. FTC*, 495 F.2d 785, 789 (7th Cir. 1974).

unconstitutionally insulated"); *Burgess v. Fed. Deposit Ins. Corp.*, 2023 WL 4354219, at *5 (N.D. Tex. July 5, 2023) (constitutional claims against FDIC were ripe).

The Department's view that Count VI is "an ordinary APA claim" that is unripe until a final decision in the Recoupment Action is incorrect. Mot. 10. Even if the APA applied, Count VI *separately* challenges the BDR Rules themselves, which the Department concedes *are* final. FAC ¶ 16; Mot. 16; *supra* Part II. As to the BDR Rules, the issues raised are still purely legal. *See Contender Farms*, 779 F.3d at 267 ("Contender Farms and McGartland raise a purely legal challenge to the Regulation. If we adopt their view, the Regulation exceeds the USDA's authority as granted by Congress and violates . . . constitutional principles."); *Nat'l Env't Dev.*, 752 F.3d at 1008 (the "challenge . . . presents a purely legal question of whether EPA's final action adopting a non-uniform enforcement regime violates . . . the CAA or EPA regulations.").[15]

The Department's assertion that Count VI is unripe because it purportedly "can be raised in any appeal to the Secretary" is irrelevant. Mot. 10, 12. The BDR regulations are binding on the Department and the Secretary. *See Friedler v. Gen. Servs. Admin.*, 271 F.Supp.3d 40, 61 (D.D.C. 2017) ("An agency is not free to ignore or violate its regulations while they remain in effect."). Nor can the Department defeat ripeness by asserting that Count VI challenges the Department's jurisdiction over DeVry. Mot. 12. DeVry challenges whether the BDR Recoupment Scheme violates Article I and § 1087e(h). These strictly legal issues do not depend on the Recoupment Action. *See Atl. Richfield Co. v. United States Dep't of Energy*, 769 F.2d 771, 784 (1984) (claims were ripe "given the grave questions as to the legality of the Department's procedures, the strong public interest in early resolution of those questions, and the impossibility of finally settling them

---

[15] The Department's reliance on *Rogers v. Bennett*, 873 F.2d 1387 (11th Cir. 1989), to defeat ripeness is misplaced. Mot. 11. That case applied an administrative exhaustion requirement to a challenge concerning the termination of federal funding for an education program. *Id*. at 1392. There is no exhaustion requirement for recoupment proceedings, nor is the Recoupment Action a termination proceeding. *See infra* Part IV.

administratively"); *Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1487 (D.C. Cir. 1983) ("[T]he scope of the Commission's statutory authority is strictly a legal issue. No factual development or application of agency expertise will aid the court's decision.").

### B. DeVry's APA Claims (Counts I–IV) Are Ripe.

The Department's assertion that DeVry's APA claims are not ripe due to a lack of final agency action is meritless. Mot 10–12. An issue is ripe for APA review "if it involves a final agency action and presents a purely legal issue." *Nerium Int'l, LLC v. FTC*, 2020 WL 5217152, at *6 (N.D. Ill. Aug. 31, 2020). DeVry's APA challenges to the 2017 BDR Rule, the 2021 Policy Memoranda, and the BDR discharges are ripe because each is final and raises purely legal issues.

*Finality.* As shown *supra* Part II, and unlike the Department's cases,[16] DeVry challenges final agency actions. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967) (challenges to final regulations were ripe); *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016) ("[U]nder the APA, a challenge to agency conduct is ripe . . . after the final agency action.").

*Purely Legal Issues.* DeVry's facial challenges to the 2017 BDR Rule raise purely legal questions—whether the BDR Rules exceed the HEA and violate the Constitution—that are ripe. *E.g.*, FAC ¶¶ 124–27, 153; *Abbott*, 387 U.S. at 149 (challenge to whether the Commissioner "properly construed" the statute was "purely legal" and ripe); *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) ("purely legal claims in the context of a facial challenge to a final rule" were "presumptively reviewable"); *Energy Transfer Partners*, 567 F.3d at 142 ("[C]hallenged regulations were final agency action and therefore reviewable."). These claims remain ripe irrespective of the Recoupment Action. *See Atl.*

---

[16] *See In re Aiken Cty.*, 645 F.3d 428, 435 (D.C. Cir. 2011) (claim not ripe due to "ongoing . . . administrative procedures"); *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 142 (5th Cir. 2009) (orders alleging statutory violations and setting a hearing were not ripe due to no final agency action); *Nerium Int'l*, 2020 WL 5217152, at *4 (claims not ripe because plaintiffs "do[] not identify a final agency action").

*Richfield*, 769 F.2d at 784; *Athlone Indus.*, 707 F.2d at 1487.

DeVry's claims challenging the Department's failures to follow the APA's notice-and-comment requirements in promulgating the 2017 BDR Rule and to follow its significant guidance regulation in promulgating the 2021 Policy Memoranda raise purely legal questions that were ripe at the time of the Department's failures. FAC ¶¶ 131, 141; *Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014) (APA claims concerning lack of notice-and-comment "involve purely legal questions"); *State v. Ctrs. For Medicare & Medicaid Servs.*, 2010 WL 1268090, at *5 (M.D. Ala. Mar. 30, 2010) ("[A] claim for failure to comply with the notice-and-comment requirement becomes ripe at the time the alleged failure occurs.").

*Hardship.* The Department's suggestion that DeVry faces no cognizable hardship from withholding judicial review ignores the harms to DeVry. Mot. 8–9. DeVry's APA claims *cannot* be decided in the Recoupment Action, rendering the Department's cases inapposite.[17] *See infra* Part IV (exhaustion). Further, DeVry suffers harm, including an increased regulatory burden, reputational harm from official findings of misconduct, and hardship from unconstitutional and unauthorized enforcement proceedings. *See supra* Part I. The final agency actions and purely legal questions, along with these harms, more than suffice to render DeVry's APA claims ripe.

## IV.   DEVRY'S CLAIMS ARE NOT SUBJECT TO ADMINISTRATIVE EXHAUSTION.

The Department moves to dismiss all claims due to a purported failure to exhaust

---

[17] *See Am. Sav. Bank, FSB v. UBS Fin. Servs.*, 347 F.3d 436, 435 (2d Cir. 2003) (claims not ripe because administrative remedies were not exhausted where plaintiff's request to the agency remained pending); *Davis v. U.S. Dep't of Hous. & Urb. Dev.*, 94 F.3d 647 (7th Cir. 1996) (unpublished) (case not ripe because there is no "initial determination on the merits" in the administrative proceeding); *Nerium Int'l*, 2020 WL 5217152, at *5 (finding plaintiffs "undoubtedly have an adequate remedy in the [FTC] enforcement action" because "Plaintiffs can raise the same arguments they assert here as defenses in that action"); *Hardy v. Hamburg*, 69 F.Supp.3d 1, 11 (D.D.C. 2014) (finding claims not ripe because plaintiffs were "currently seeking administrative relief under [the statutory scheme]" and the "administrative investigation into their allegations remains pending").

"administrative remedies" in the Recoupment Action. Mot. 12–14. DeVry is not required to "exhaust" a proceeding that Congress never authorized; requiring exhaustion "not required by" statute would "exceed[] the proper limits on the judicial role." *Jones v. Bock*, 549 U.S. 199, 203 (2007); *see also Axon*, 598 U.S. at 209 n.2 (Gorsuch, J., concurring). DeVry is otherwise excused from exhaustion because the legal issues in this case cannot be resolved in the Recoupment Action.

**A.      No Statute or Regulation Requires DeVry to Exhaust the Recoupment Action.**

The Department's assertion that DeVry must exhaust the Recoupment Action—before DeVry may assert APA claims—is wrong. Mot. 12–14. The APA "has limited the availability of the doctrine of exhaustion of administrative remedies to that which [a] statute or rule clearly mandates." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993); *Star Way Lines v. Walsh*, 596 F.Supp.3d 1142, 1151 (N.D. Ill. 2022). The Department identifies *no* statute that requires exhaustion for *any* of DeVry's claims. Mot. 12–13. Nor can it. Congress did not create BDR recoupment proceedings, let alone require exhaustion of them. 20 U.S.C. § 1087e(h). Nor does the recoupment regulation require exhaustion. *See* 34 C.F.R. § 668.87. This is fatal to the Department's argument. *Williams v. Devos*, 2018 WL 5281741, at *8 (D. Mass. Oct. 24, 2018) ("[N]o statute or regulation require[s] the plaintiffs to exhaust administrative remedies before bringing an action for judicial review").

The Department's arguments are meritless. As to the APA claims, the Department cites cases that do not address exhaustion,[18] do not involve the APA,[19] or pre-date the Supreme Court's decision in *Darby*.[20] *Id.* at *10 (Secretary's cases were "inapposite because none involved an APA

---

[18] *See Chauffeur's Training Sch., Inc. v. Riley*, 967 F.Supp.719 (N.D.N.Y. 1997) (no reference to exhaustion); *Pro Schs., Inc. v. Riley*, 824 F.Supp. 1314, 1320 (E.D. Wis. 1993) (same).
[19] *See N. Air Cargo v. United States Postal Serv.*, 674 F.3d 852, 860 (D.C. Cir. 2012) (no APA review because "the Postal Service is exempt from APA review"); *Gonzalez v. O'Connell*, 355 F.3d 1010 (7th Cir. 2004) (immigration case not under APA); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978) (Seventh Amendment claim with no reference to APA).
[20] *See In re Establishment Inspection of Kohler Co.*, 935 F.2d 810 (7th Cir. 1991) (pre-*Darby* case that did not identify a statute or regulation requiring exhaustion); *Paul's Beauty Coll. v. United States*, 885

challenge"); Mot. 12–14. The Department's assertion that exhaustion will "avoid" a decision on DeVry's structural constitutional claims is wrong. Mot. 12. *No* decision in the Recoupment Action will "obviate the need to address [the] constitutional challenges." *Axon*, 598 U.S. at 195.

The Department's reliance on the inapposite decision in *Career Education, Inc. v. Department of Education*, 6 F.3d 817 (D.C. Cir. 1993), also fails. Mot. 13. In requiring exhaustion of a proceeding concerning the Department's decision to *terminate* an institution's program participation agreement, the D.C. Circuit recognized that "although the statute does not explicitly require exhaustion of these administrative remedies, it does provide that the secretary can make a termination decision only 'after reasonable notice and opportunity for a hearing on the record.'" *Career Educ.*, 6 F.3d at 818 (quoting 20 U.S.C. § 1094(c)(1)(F)). The Recoupment Action is *not* a termination proceeding, and § 1087e(h) does not authorize recoupment. *See supra* Part V.A.

## B.    DeVry's Claims Are Excused from Exhaustion.

The Department fails to acknowledge established exceptions to exhaustion. Mot. 12–14. These exceptions confirm that, even if exhaustion applied (it does not), a court may excuse exhaustion if "the agency lacks the ability or competence to resolve the issue or grant the relief requested." *Gonzalez*, 355 F.3d at 1016. The law is clear that structural constitutional claims need not be exhausted in agency proceedings.[21] *See Axon*, 598 U.S. at 195 ("[A]gency adjudications are generally ill suited to address structural constitutional challenges."); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 153 (3d Cir. 2020) ("[E]xhaustion is generally inappropriate" for "structural

---

F.Supp.1468 (D. Kan. 1995) (no identification of a statute or regulation requiring exhaustion).
[21] The Department misreads *dicta* in *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023), as somehow excusing only Appointment Clause claims from exhaustion notwithstanding *Axon*. Mot. 14 n.6. That is incorrect. The Seventh Circuit held only that an ALJ was better suited to "unpack and untangle objections and concerns" about an expert from an agency evidentiary hearing so as to allow "proper development of the evidentiary record in real time." *Leisgang*, 72 F.4th at 220. *Leisgang* made no mention of structural constitutional challenges or *Axon*, and thus cannot justify an exhaustion requirement here.

constitutional claims."). Moreover, the ALJ cannot decide DeVry's claims. He is "bound by all applicable statutes and regulations" and "may not . . . waive . . . or rule them invalid." 34 C.F.R. § 668.90(d).[22] The ALJ has recognized that he "lacks the authority to address" the "genuine question of statutory authority to go forward" with the Recoupment Action,[23] and cannot address "whether the Secretary's rulemaking was valid."[24] Thus, even if DeVry had to exhaust (it does not), DeVry's claims are excused from exhaustion here.

## V.     DEVRY STATES CONSTITUTIONAL AND APA CLAIMS AGAINST THE DEPARTMENT.

The Department's arguments against DeVry's Article I and II claims, and the APA claim challenging the Department's collective BDR Discharges, Mot. 18–30, lack merit because *each* of these claims is properly stated and well supported by a careful analysis of the relevant law.

### A.     The Department's BDR Recoupment Scheme Vastly Exceeds Any Authority Under § 1087e(h) and Thereby Usurps Legislative Power (Counts I, VI).

In our constitutional system, "[a]gencies have *only* those powers given to them by Congress." *W. Va. v. EPA*, 142 S. Ct. 2587, 2609 (2022). "The power of executing the laws . . . does *not* include a power to revise clear statutory terms." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014). Contrary to the Department's assertion that its BDR Recoupment Scheme is "statutorily authorized," Mot. 18, Congress did not authorize the Department to create and adjudicate BDR claims, or to create recoupment proceedings in which the Department adjudicates a school's "liability" for BDR discharges. The Department has so vastly exceeded § 1087e(h) that it has not only violated the APA, 5 U.S.C. § 706(2)(C), but also "improperly intrud[ed] into the realm of lawmaking that is the exclusive province of Congress." *Fed. Election Comm'n v.*

---

[22] The Department has conceded the ALJ's limited authority. ECF No. 23, Ex. A at 16 ("DeVry's challenges based on the APA or alleged facial constitutional flaws with the Department's regulations are clearly beyond this Tribunal's authority. . . . because [they] seek to invalidate the regulations themselves").
[23] *See supra* n.2.
[24] Order at 3, *In the Matter of DeVry Univ.*, No. 22-54-BD (O.H.A. April 6, 2023), Dkt. No. 87.

*Swallow*, 304 F.Supp.3d 1113, 1118 (D. Utah 2018). The Department's Motion evades the Article I violation and fails to identify any statutory authority for its illegal conduct. Mot. 18–23.

Here, the "analysis begins and ends with the text." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). The *only* statutory provision that speaks to "borrower defenses" instructs that "the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan." 20 U.S.C. § 1087e(h). This clear and limited text cannot support the weight of the BDR Recoupment Scheme and forecloses any deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (when Congress has spoken clearly, "that is the end of the matter"). Indeed, "[t]he Department does not argue that the words in [§ 1087e(h)] are themselves ambiguous or unclear in any way." *Michigan v. DeVos*, 481 F.Supp.3d 984, 992 (N.D. Cal. 2020).

The Department's promulgation of regulations that create affirmative BDR claims (alleging misconduct by schools) that borrowers may lodge with the Department contravenes the plain language of § 1087e(h). The statutory provision speaks only to defining "defense[s]"—not creating claims. Whereas a "claim" is "a cause of action" that may be brought affirmatively, *Claim*, Black's Law Dictionary (6th ed. 1990), a "defense" is simply "a legally recognized basis for avoiding liability," *Defense*, Black's Law Dictionary (6th ed. 1990). Although the word "defense" is "associated with adjudication," *Vara v. DeVos*, 2020 WL 3489679, at *2 (D. Mass. June 25, 2020), § 1087e(h) does not contemplate Department adjudication. The provision expressly refers to defenses in an "*action* arising from or relating to a loan made under [the Direct Loan Program]." 20 U.S.C. § 1087e(h). An "action" "means a lawsuit brought *in a court*." *Action*, Black's Law Dictionary (6th ed. 1990). The Department is wrong to argue that other statutes allow it to create and adjudicate BDR claims administratively. Mot. 19. Those provisions—largely *outside* the HEA

and any Department authority—show only that the forum for a BDR defense (outside of a lawsuit) is in those discrete contexts, not in agency proceedings invented by the Department.[25]

The Department's promulgation of regulations creating BDR recoupment claims that the Department may prosecute in agency adjudications also contravenes § 1087e(h). The Department concedes "§ 1087e(h) does not specifically discuss recoupment[.]" Mot. 20. That Congress has authorized the Department to "discharge the borrower's liability on the loan" *and* "subsequently pursue any claim available to such borrower against the institution" in a related statutory provision is fatal to the authority the Department has self-conferred here. 20 U.S.C. § 1087(c); *see Biden v. Nebraska*, 143 S. Ct. 2355, 2363 (2023) (identifying § 1087(c) as a "limited circumstance[]" in which "[the HEA] authorizes the Secretary to cancel or reduce loans"). Because Congress expressly stated in § 1087(c) that the Secretary may discharge and recoup student loans, Congress clearly did not provide that authority under 1087e(h)—which lacks similar language. *See United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015) ("Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.").

Unable to rely on § 1087e(h), the Department turns to the "context" of its general rulemaking authority under Title IV of the HEA over student loans and schools participating in the Direct Loan program as the authority for its BDR Recoupment Scheme. Mot. 19 (citing *King v. Burwell*, 576 U.S. 473, 492 (2015); 20 U.S.C. § 1221e-3, 1082, 3441, 3471, 3474); *id.* at 20 (citing § 20 U.S.C. §§ 1087d(a)(3), 1094(c)(1), 1099c(c)). But "[t]he Department misreads *King* as granting agencies the freedom to disregard Congress's words based on the gestalt of a statute. Nothing in *King* supports such a radical revision of administrative law." *Michigan*, 481 F.Supp.3d

---

[25] *See* 20 U.S.C. § 1080a(c)(4) (Department must give notice to a borrower before making a credit report); 31 U.S.C. § 3711(e) (credit reports); 5 U.S.C. § 5514 (federal salary offset); 20 U.S.C. § 1095a, 31 U.S.C. § 3720D (wage garnishment); 31 U.S.C. §§ 3716, 3720B (federal payment offset).

at 993–94. The law is clear: "an agency *may not* circumvent specific statutory limits on its actions by relying on separate, general rulemaking authority." *Air All. Hous. v. EPA*, 906 F.3d 1049, 1061 (D.C. Cir. 2018); *Am. Petroleum Inst. v. EPA*, 706 F.3d 474, 479 (D.C. Cir. 2013) (agency "cannot rely on its *general* authority to make rules necessary to carry out its functions when a *specific* statutory directive defines the relevant functions of [the agency] in a particular area").

The Department's assertion that its FFEL loan authority supports its claimed BDR recoupment authority is untenable. Mot. 20. The Department points to Congress's instruction that "*unless otherwise specified in this part*, loans made to borrowers under this part shall have the same terms, conditions, and benefits, . . . as" FFEL loans. 20 U.S.C. § 1087e(a)(1). Not only does the Department fail to explain how a BDR recoupment claim lodged by the Department against a school is a term, condition, or benefit of a loan made to a borrower,[26] but also § 1087e(h) falls within the carve-out for provisions specific to Direct Loans. Thus, *Chauffeur's Training School, Inc. v. Spellings*, 478 F.3d 117 (2d Cir. 2007), and the Department's FFEL cases are inapposite.[27]

While the Court need not rely on the major questions doctrine to resolve DeVry's claims, the Department is wrong that the doctrine does not apply. Mot. 22–23. This *is* an "extraordinary case[]" that triggers the doctrine because the Department asserts "highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Va.*, 142 S. Ct. at 2608, 2809. Indeed, the free-roving authority to discharge any Direct Loan based on non-adversarial adjudication of BDR claims has vast economic and political consequences. The BDR

---

[26] The Department cannot rely on a "common law right" of subrogation or reimbursement (recognized only by Department), Mot. 21 n.8, to justify its BDR recoupment scheme. "As a federal agency, [the Department] is a creature of statute, having *no constitutional or common law existence or authority*, but only those authorities conferred upon it by Congress." *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002).

[27] Moreover, unlike *Chauffeur's*, the BDR recoupment scheme does not "assess a liability for loan program violations." 478 F.3d at 128 n.13, 129. *Pro Schools, Inc. v. Riley* merely referenced in passing an ability to "demand repayment of improperly utilized [FFEL] funds." 824 F.Supp.1314, 1316 (E.D. Wis. 1993).

Recoupment Scheme applies to *all* schools in the Direct Loan program.[28] Mot. 22. The Department has issued guidance to schools—including a training video—to "explain[] the borrower defense school notification and adjudication process under 34 CFR § 685.222 (the 2016 Borrower Defense Regulation)."[29] Most of the $1.6 trillion in federal student loan debt is Direct Loans, and *any* of the millions of federal student loan borrowers can submit a BDR application to cancel their loan debt.[30] *See Biden*, 143 S. Ct. at 2368–69 (major questions doctrine applied where the loan debt cancellation program "affect[ed] 43 million borrowers"). The doctrine confirms that "nothing in" § 1087e(h) "suggests that Congress meant" the Department "to function as both regulator and adjudicator" here. *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 273–74 (1996).

Contrary to the Department's view, Mot. 21–22, the 1995 BDR Rule is unlike the sweeping 2017 BDR Rule, the latter of which claims the authority to:

- Adjudicate *state law claims*. *See* 34 C.F.R. § 685.206(c) (defining a BDR claim for loans disbursed prior to July 1, 2017, to mean conduct that "would give rise to a cause of action against the school under applicable state law"); *id.* § 668.87(a)(1)(i)(A) (authorizing adjudication of the "validity" of a BDR claim).

- Adjudicate misrepresentation claims. *See id.* § 685.206(e) (basing BDR claims for loans disbursed after July 1, 2020 on a "misrepresentation"); *id.* § 685.222(d) (basing BDR claims for loans disbursed after July 1, 2017, and before July 1, 2020 on a "substantial misrepresentation"); *id.* § 668.87(a)(1)(i)(A).

- Override state law to "transfer" to the Secretary the borrower's "right of recovery" in a BDR claim unilaterally approved by the Department. *Id.* § 685.206(e)(15)

---

[28] Nearly 6,200 institutions of higher education in the United States participate in Title IV. *See* U.S. Dep't of Educ., 2023–24 Federal School Code List of Participating Schools (Apr. 27, 2023), https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-04-27/2023-24-federal-school-code-list-participating-schools-may-2023. The Department's factual assertion that the BDR Rules affect only a "small minority of schools," Mot. 23, is unsupported and cannot warrant dismissal on the pleadings.

[29] *See* U.S. Dep't of Educ., (GENERAL-23-96) *Borrower Defense School Notification Process Under the 2016 Regulation (34 C.F.R. 685.222)* (Updated Dec. 7, 2023), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2023-11-08/borrower-defense-school-notification-process-under-2016-regulation-34-cfr-685222-updated-dec-7-2023.

[30] *See* U.S. Dep't of Educ., *Federal Student Loan Portfolio*, https://studentaid.gov/data-center/student/portfolio (last visited Dec. 13, 2023). *See* U.S. Dep't of Educ., *Apply for Borrower Defense Loan Discharge*, https://studentaid.gov/borrower-defense/ (last accessed Dec. 13, 2023).

(transferring rights "notwithstanding any provision of state law"); *id.* § 685.222(k)(1)–(2) (same).

Section 1087e(h) "is a wafer-thin reed on which to rest [the] sweeping" power the Department asserts here. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021). DeVry has stated plausible Article I and APA claims (Count I, IV).

**B.    The Department's ALJ Structure Violates Article II (Count V).**

**1.    Dual Layers of Removal Protection Insulate the ALJs from Removal.**

The Department's attempt to dismiss DeVry's Article II claim is unpersuasive. Mot 27–30. "[T]he President's removal power is the rule, not the exception." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2206 (2020). The President *must* have the power "to remove those who assist him in carrying out his duties." *Free Enter.*, 561 U.S. at 513–14. DeVry has alleged—and the Department does not contest—that the Department's ALJs are "inferior officers of the United States." FAC ¶¶ 62–65; Mot. 25–30. As in *Free Enterprise*, the dual layers of removal protection Congress placed between these ALJs and the President are unconstitutional because "[m]ultilevel protection from removal is contrary to Article II[]." 561 U.S. at 484.

At the first layer here, the Department's ALJs cannot be removed except "for good cause" determined by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a). Similarly, the Board members in *Free Enterprise* could not be removed "except for good cause," determined by the SEC. 561 U.S. at 495. The "less strict" good cause standard for the ALJs here is irrelevant. Mot. 29. The "sharply circumscribed definition" of good cause to remove a Board member at the first layer was not the defect in *Free Enterprise*. 561 U.S. at 505. Rather, "[a] *second level* of tenure protection change[d] the nature of the President's review." *Id.* at 496.

At the second layer, the President cannot remove MSPB members except "for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Likewise, in *Free Enterprise*, the

President could not remove SEC Commissioners except for "inefficiency, neglect of duty, or malfeasance in office." 561 U.S. at 496. The Department's assertion that the MSPB's role places no "additional burden" on the President is incorrect. Mot. 29 & n.15. As in *Free Enterprise*, the scheme "*withdraws from the President* any decision on whether that good cause exists." 561 U.S. at 495. Instead, the "decision [to remove the Department's ALJs] is vested instead in *other tenured officers*—the [MSPB]—none of whom is subject to the President's direct control" because they, too, are subject to removal protections. *Id.* This second level of protection "strip[s]" the President of the power to remove subordinate executive officers. *Id.* at 496.

Contrary to the Department's review, Mot. 29–30, the Fifth Circuit's decision in *Jarkesy* is directly on point. *Jarkesy v. SEC*, 34 F.4th 446, 464–65 (5th Cir. 2022), *cert. granted SEC v. Jarkesy*, 143 S. Ct. 2688 (2023). *Jarkesy* applied *Free Enterprise* to a scheme involving the same layers of protection at issue here and held that SEC ALJs are subject to "at least two layers" of removal protection in violation of Article II. *Id.*

The Ninth and Sixth Circuit decisions the Department cites are unavailing. Mot. 28–29; *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021). In *Decker*, "Congress expressly refused to require that" adjudicators in the Department of Labor "be ALJs appointed under 5 U.S.C. § 3105." 8 F.4th at 1134. And in *Calcutt*, Congress required the agency to conduct hearings consistent with the APA, which gives an agency to select an ALJ or another officer. 37 F.4th at 319. Here, however, Congress has mandated that the Department use ALJs subject to dual layers of removal protection.[31] Even if the President had any choice about whether to use

---

[31] *See* 20 U.S.C. § 1234(a) ("[t]he Secretary shall establish in the Department of Education an Office of [ALJs] which shall conduct" certain proceedings); *id.* § 1234(b) (Department's ALJs "shall be appointed by the Secretary in accordance with [5 U.S.C. § 3105]").

Department ALJs subject to dual layers of removal protection,[32] the President "cannot . . . choose to bind his successors by diminishing their powers, nor can he escape responsibility for his choices by pretending that they are not his own." *Free Enter.*, 561 U.S. at 497.

The Secretary's ability to review ALJ decisions does not cure the Article II violation here, as the Department contends. Mot. 30. The Supreme Court has never suggested the availability of presidential review justifies encroachments on the removal power, or vice versa.  To the contrary, Supreme Court precedent underscores that Article II does not tolerate congressional encroachments on one power simply because Congress has not encroached on the other. *See United States v. Arthrex, Inc*., 141 S. Ct. 1970, 1977, 1980–82 (2021) (invalidating scheme in which "no principal officer . . . within the Executive Branch" supervised an "executive adjudicatory body" even though "the Secretary can fire" for "cause"). The Department and *Decker* simply elide the encroachment on the President's removal power by misfocusing on review.[33] 8 F.4th at 1134.

Similarly, the Department's reliance on stale precedent to assert that the scope of the President's removal power "differs" for "quasi-judicial" ALJs is meritless. Mot. 28, 30. "The activities of executive officers may take . . . judicial forms, but they are exercises of . . . executive Power, for which *the President* is ultimately responsible." *Arthrex*, 141 S. Ct. at 1982. Even if a good cause standard would support the "functioning" of an executive ALJ with "quasi-judicial functions," *Morrison v. Olson*, 487 U.S. 654, 691 n.30 (1988), this would justify only a *single layer* of removal protection. *Contrast id*. at 695–96 (upholding single layer in which the Attorney

---

[32] The Department's suggestion that Department has a choice about whether to use ALJs, Mot. 30, rests on its interpretation of the impact of a statutory amendment that merely removed the requirement for "on the record" hearings related to ***audits or program review*** determinations. *See* 20 U.S.C. § 1094(b), (c); 57 Fed. Reg. 47,752, 1992 WL 292860 (Oct. 19, 1992). Recoupment proceedings are neither.

[33] Moreover, in *Decker*, the Secretary could fire at will members of an agency appellate body that reviewed ALJ decisions. 8 F.4th at 1134–35. No such body exists here. While the President can fire the Secretary at will and the Secretary can review ALJ decisions that a party appeals, the ability to review a particular ALJ decision does not alter the dual layers of unconstitutional removal protection at issue here.

General—whom the President could remove at will—had power to remove the inferior executive officer "for good cause"), *with Free Enter.*, 561 U.S. at 490 ("*Morrison* did not . . . address the consequences of *more than one level* of good-cause tenure.").[34] The dual-layer removal scheme here is "incompatible with the Constitution's separation of powers." *Free Enter.*, 561 U.S. at 498.

## 2. *Collins* Does Not Preclude DeVry's Article II Claim.

The Department wrongly asserts, Mot. 25–27, that the Court should dismiss DeVry's Article II claim under the "harm" requirement applied in *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). There, the Supreme Court found an Article II violation *before* addressing relief, confirming that availability of certain relief is not an element of the claim. *Id.* The plaintiffs had to show "harm" only because they sought to *void* past actions by executive officials subject to the unconstitutional removal restriction. *Id.* Here, "*Collins* does not impact" DeVry's Article II claim "because [DeVry] does not seek to void the acts of any [Department] official. Rather, [it] seeks an administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16.[35] Moreover, "[i]f it were true that [DeVry] could not obtain any post-enforcement relief [under *Collins*], then [its] only hope for meaningful judicial review would be through the present lawsuit." *Id.* Indeed, applying *Collins* would subject DeVry "to an illegitimate proceeding, led by an illegitimate decisionmaker" that "cannot be undone" by later judicial review. *Axon*, 143 S. Ct. at 191. *Axon* did not open the door to this claim only for *Collins* to lock it again.

---

[34] The Department's cases are inapposite. Mot. 27–28. *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935), "did not address the removal of inferior officers." *Free Enter.*, 561 U.S. at 493. Nor did *Wiener v. United States*, 357 U.S. 349, 355–56 (1958). *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir. 1980), did not concern Article II. *United States v. Perkins*, 116 U.S. 483, 485 (1886), addressed a *single* layer of protection.
[35] The Department's cases involve requests to *void* agency action. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (declining to void agency rule); *Decker*, 8 F.4th at 1137 (declining to void ALJ decision); *Calcutt*, 37 F.4th at 316–18 (refusing to void agency order).

### C.    DeVry States a Claim Against the Collective BDR Discharges (Count I).

The Department seeks dismissal of DeVry's § 706(2)(C) APA claim against the Department's "collective 'group' determination' of the BDR" discharges by misreading the law and the FAC. Mot. 23–25. The BDR Discharges are unlawful under § 1087e(h). FAC ¶¶ 18c, 92c, 115, 126–130. Section 1087e(h) does not authorize collective discharges; its text refers only to defenses that "*a* borrower" may assert. 20 U.S.C. § 1087e(h); *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) ("[I]ndefinite articles (like 'a' or 'an') precede countable nouns."). The Department asserts that the singular includes the plural under the Dictionary Act, Mot. 24 n.11, but "[t]he Dictionary Act does not transform every use of the singular 'a' into the plural." *Niz-Chavez*, 141 S. Ct. at 1482. Nor does the Department's "general authority . . . to administer the student loan program," Mot. 24, override § 1087e(h)'s specific text. *See supra* Part V.A. As alleged, the Department exceeded § 1087e(h) because it *collectively* discharged loans for multiple borrowers, relying on the same "Common Statement." FAC ¶¶ 37–38, 92, 139, Ex. B at 2–6. The Department's objection, Mot. 23–34, that it used 34 C.F.R. § 685.222(e)(7)'s provisions for individual discharges, is simply irrelevant to the claim as alleged.

Moreover, the Department's objection supports DeVry's APA claim that the Department violated its regulations. The Department may rely on "common facts and claims" in a group adjudication *only if* it first succeeds on group claims. 34 C.F.R. § 685.222(e)(6), Mot. 23. Contrary to that regulation, the Department relied on its "Common Statement" to approve BDR discharges for thousands of students and then sought recoupment against DeVry. FAC ¶¶ 38, 133–39, Ex. B. This conduct, too, states an APA claim. *Id.* ¶¶ 144, 147; *see Nat'l Env't Dev.*, 752 F.3d at 1009 ("[A]n agency action may be set aside . . . if the agency fails to comply with its own regulations.").

### CONCLUSION

For the above reasons, DeVry requests that the Court deny the Department's Motion.

Dated: December 13, 2023

Respectfully submitted,

/s/ Matthew Kutcher
MATTHEW KUTCHER
BOBBY EARLES
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
rearles@cooley.com

DAVID E. MILLS (*pro hac vice*)
JAY VAUGHAN (*pro hac vice*)
ROBBY L.R. SALDAÑA (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
dmills@cooley.com
jvaughan@cooley.com
rsaldana@cooley.com

*Attorneys for Plaintiff*
*DeVry University, Inc.*