**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DEVRY UNIVERSITY, INC., | |
| Plaintiff, | Case No. 1:22-cv-05549 |
| v. | Judge LaShonda A. Hunt |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

I.     Statutory and Regulatory Background ........................................................................... 2

II.    Factual Background ...................................................................................................... 4

III.   Procedural History ....................................................................................................... 6

LEGAL STANDARDS ............................................................................................................... 7

ARGUMENT .............................................................................................................................. 7

I.     Counts I-IV and Counts VI-VII Should be Dismissed as Premature ........................... 7

      A.    Claims Concerning the Recovery Proceeding are not Ripe for Review. ....... 7

      B.    The Recovery Proceeding is not Final Agency Action. .................................. 11

      C.    DeVry has Failed to Exhaust Available Administrative Remedies. .............. 12

      D.    DeVry Cannot Challenge Other Agency Actions ......................................... 15

II.    The Court Should Reject DeVry's Request for Alternative Relief. ........................... 18

III.   The Borrower Defense Rules are Statutorily Authorized. ......................................... 19

      A.    Adjudication of Borrower Defense Claims and Recoupment (Count VI) ................ 19

      B.    Group Claims (Count I) ................................................................................ 22

IV.   DeVry's Seventh Amendment Claim Fails ............................................................... 24

V.    DeVry Cannot Proceed on Its ALJ Claim ................................................................ 28

      A.    DeVry Fails to Allege Prejudicial Harm. ..................................................... 28

      B.    The Department ALJs' Removal Protections are Constitutional. ................. 31

CONCLUSION ......................................................................................................................... 35

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967) ..........................................................................................................8

*Abbs v. Sullivan*,
  963 F.2d 918 (7th Cir. 1992) ........................................................................ 11, 12, 16, 19

*Alivio Med. Ctr. v. Abruzzo*,
  Case No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024)..........................33, 34

*Aluminum Co. of Am. v. United States*,
  790 F.2d 938 (D.C. Cir. 1986) ......................................................................................12

*Am. Petroleum Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) ........................................................................................8

*Am. Sav. Bank, FSB v. UBS Fin. Servs. Inc.*,
  347 F.3d 436 (2d Cir. 2003) ...........................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................7

*Augusta Bakery Corp. v. NLRB*,
  846 F.2d 445 (7th Cir. 1988).........................................................................................12

*Austin v. Shalala*,
  994 F.2d 1170 (5th Cir. 1993)........................................................................................28

*Axon Enterprise, Inc. v. FTC*,
  598 U.S. 175 (2023) ........................................................................................14, 29, 30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................7

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................................ 11, 12, 16, 18

*Blankenship v. FINRA*,
  Case No. CV 24-3003, 2024 WL 4043442 (E.D. Pa. Sept. 4, 2024)................................15

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013)..........................................................................................23

*Boim v. Am. Muslims for Palestine*,
  9 F.4th 545 (7th Cir. 2021) ............................................................................7

*Borden, Inc. v. FTC*,
  495 F.2d 785 (7th Cir. 1974) ........................................................................10

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022); *rev'd*, 143 S. Ct. 1317 (2023) ...............29, 34, 36

*Career Coll. & Sch. of Texas v. U.S. Dep't of Educ. (CCST)*,
  98 F.4th 220 (5th Cir. 2024) ....................................................................3, 22

*Career Educ., Inc. v. Dep't of Educ.*,
  6 F.3d 817 (D.C. Cir. 1993) .........................................................................14

*Chauffeur's Training Schs., Inc. v. Riley*,
  967 F. Supp. 719 (N.D.N.Y. 1997) ..............................................................14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .......................................................................................15

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023) .........................................................................29

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022); *rev'd*, 601 U.S. 416 (2024) ............................29

*Collins v. Yellen*,
  594 U.S. 220 (2021) ..............................................................28, 29, 30, 34, 37

*Colwell v. HHS*,
  558 F.3d 1112 (9th Cir. 2009) .....................................................................18

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986) .....................................................................................25

*Cover v. OSF Healthcare Sys.*,
  Case No. 3:18-cv-50114, 2023 WL 7220555 (N.D. Ill. Nov. 2, 2023) ...............10

*Ctr. for Biological Diversity v. Haaland*,
  849 F. App'x 2 (D.C. Cir. 2021) ..................................................................17

*Davis v. U.S. Dep't of Hous. & Urb. Dev.*,
  94 F.3d 647 (7th Cir. 1996) ......................................................................9, 10

*Decker Coal Co. v. Pehringer*,
  8 F.4th 1123 (9th Cir. 2021) .............................................................29, 33, 35

*Dhakal v. Sessions,*
  895 F.3d 532 (7th Cir. 2018) ...................................................................................11

*Duerr v. Bradley Univ.,*
  590 F. Supp. 3d 1160 (C.D. Ill. 2022) ....................................................................25

*Energy Transfer Partners, L.P. v. FERC,*
  567 F.3d 134 (5th Cir. 2009) ....................................................................................9

*Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior,*
  728 F.3d 1229 (10th Cir. 2013) ...............................................................................10

*Fourth Branch Assocs. (Mechanicville) v. FERC,*
  253 F.3d 741 (D.C. Cir. 2001) ................................................................................12

*Free Enterprise Fund v. Public Co. Accounting Oversight Board (PCAOB),*
  561 U.S. 477 (2010) ...............................................................................32, 33, 35

*Frey v. Commodity Exch. Auth.,*
  547 F.2d 46 (7th Cir. 1976) ....................................................................................14

*FTC v. Standard Oil Co. of Cal.,*
  449 U.S. 232 (1980) ........................................................................................12, 16

*Geinosky v. City of Chi.,*
  675 F.3d 743 (7th Cir. 2012) .............................................................................7, 25

*Geldermann, Inc. v. Commodity Futures Trading Comm'n,*
  836 F.2d 310 (7th Cir. 1987) ..................................................................................25

*Glisson v. U.S. Forest Serv.,*
  55 F.3d 1325 (7th Cir. 1995) ..................................................................................13

*Gonzalez v. O'Connell,*
  355 F.3d 1010 (7th Cir. 2004) ................................................................................13

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) ...........................................................................................26, 28

*Hardy v. Hamburg,*
  69 F. Supp. 3d 1 (D.D.C. 2014) ...............................................................................9

*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ................................................................................................32

*Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n,*
  634 F.2d 871 (5th Cir. Unit B 1981) .......................................................................10

iv

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) ............................................................................ 8, 9

*In re Edgewater Med. Ctr.*,
    Case No. 02 B 07378, 2004 WL 2921957 (N.D. Ill. Dec. 15, 2004) ...................... 11

*In re Establishment Inspection of Kohler Co.*,
    935 F.2d 810 (7th Cir. 1991) .................................................................................. 13

*James v. City of Evanston*,
    Case No. 20-cv-00551, 2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ..................... 8

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022); *aff'd*, 144 S. Ct. 2117 (2024) ......................... 29, 34

*K & R Contractors, LLC v. Keene*,
    86 F.4th 135 (4th Cir. 2023) .................................................................................. 31

*King v. Burwell*,
    576 U.S. 473 (2015) ............................................................................................... 19

*LaMarca v. United States*,
    34 F. Supp. 3d 796 (N.D. Ohio 2014) ................................................................... 12

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
    982 F.3d 1060 (7th Cir. 2020) ............................................................................... 15

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
    103 F.4th 748 (10th Cir. 2024) ............................................................ 29, 30, 31, 34

*Leisgang v. Kijakazi*,
    72 F.4th 216 (7th Cir. 2023) .................................................................................. 14

*Loper Bright Enter. v. Raimondo*,
    144 S. Ct. 2244 (2024) ........................................................................................... 22

*Matushkina v. Nielsen*,
    877 F.3d 289 (7th Cir. 2017) ................................................................................. 11

*McFarland-Lawson v. Ammon*,
    847 F. App'x 350 (7th Cir. 2021) .......................................................................... 13

*Mo. Pet Breeders Ass'n v. Cnty. of Cook*,
    119 F. Supp. 3d 865 (N.D. Ill. 2015) ...................................................................... 8

*Monk v. Shulkin*,
    855 F.3d 1312 (Fed. Cir. 2017) ............................................................................. 24

v

*Morrison v. Olson,*
  487 U.S. 654 (1988) .................................................................................. 31, 32, 33, 34

*Myers v. United States,*
  272 U.S. 52 (1926) ....................................................................................................... 31

*N. Air Cargo v. U.S. Postal Serv.,*
  674 F.3d 852 (D.C. Cir. 2012) ................................................................................... 14

*Nash v. Califano,*
  613 F.2d 10 (2d Cir. 1980) ......................................................................................... 31

*Nat'l Ass'n of Home Builders v. Norton,*
  415 F.3d 8 (D.C. Cir. 2005) ........................................................................................ 18

*Nat'l Mining Ass'n v. McCarthy,*
  758 F.3d 243 (D.C. Cir. 2014) ................................................................................... 18

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
  538 U.S. 803 (2003) ................................................................................................ 8, 10

*Nerium Int'l, LLC v. FTC,*
  Case No. 19-cv-7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) .............................*passim*

*Nexstar Media, Inc. Grp. v. Nat'l Lab. Rels. Bd.,*
  Case No. 4:24-cv-01415, 2024 WL 4127090 (N.D. Ohio Aug. 26, 2024) ....................... 15

*Pac. Gas & Elec. Co. v. FPC,*
  506 F.2d 33 (D.C. Cir. 1974) ...................................................................................... 18

*Paul's Beauty Coll. v. United States,*
  885 F. Supp. 1468 (D. Kan. 1995) ............................................................................ 14

*Pro Schs., Inc. v. Riley,*
  824 F. Supp. 1314 (E.D. Wis. 1993) .................................................................... 14, 21

*R.R. Donnelley & Sons Co. v. FTC,*
  931 F.2d 430 (7th Cir. 1991) ...................................................................................... 12

*Ramspeck v. Fed. Trial Exam'rs Conf.,*
  345 U.S. 128 (1953) ..................................................................................................... 31

*Rogers v. Bennett,*
  873 F.2d 1387 (11th Cir. 1989) ................................................................................. 10

*Rosenthal & Co. v. Bagley,*
  581 F.2d 1258 (7th Cir. 1978) .............................................................................. 13, 14

vi

*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) .................................................................. 25, 26, 27, 28, 33

*Seila Law, LLC v. CFPB*,
    591 U.S. 197 (2020) .................................................................................29, 30, 31

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...............................................................................................17

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .............................................................................................17

*Sweet v. Cardona*,
    641 F. Supp. 3d 814 (N.D. Cal. 2022); *appeal filed*, Case No. 23-15049
    (9th Cir. July 18, 2023) ..................................................................................17, 21

*The Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) .............................................................................12

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) .............................................................................................28

*Ticor Title Ins. Co. v. FTC*,
    814 F.2d 731 (D.C. Cir. 1987) .............................................................................12

*Top Choice Distribs., Inc. v. U.S. Postal Serv.*,
    138 F.3d 463 (2d Cir. 1998) ................................................................................12

*Total Gas & Power N. Am., Inc. v. FERC*,
    Case No. CV 4:16-1250, 2016 WL 3855865 (S.D. Tex. July 15, 2016);
    *aff'd*, 859 F.3d 325 (5th Cir. 2017) .....................................................................11

*Trump v. New York*,
    141 S. Ct. 530 (2020) .............................................................................................8

*Tull v. United States*,
    481 U.S. 412 (1987) .............................................................................................26

*United States v. Arthrex*,
    594 U.S. 1 (2021) ...........................................................................................32, 35

*United States v. Perkins*,
    116 U.S. 483 (1886) .......................................................................................31, 32

*Vara v. DeVos*,
    Case No. CV 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020) ......20

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ...........................................................................................................19

*Wiener v. United States*,
   357 U.S. 349 (1958) ...........................................................................................................32


**Statutes**

1 U.S.C. § 1 ..............................................................................................................................24

5 U.S.C. § 702 .........................................................................................................................14

5 U.S.C. § 704 .........................................................................................................................11

5 U.S.C. § 706 ...........................................................................................................................1

5 U.S.C. § 1202 .................................................................................................................31, 34

5 U.S.C. § 5514 .......................................................................................................................20

5 U.S.C. § 7521 .............................................................................................................31, 33, 34

20 U.S.C. § 1070 .......................................................................................................................2

20 U.S.C. § 1080a ...................................................................................................................20

20 U.S.C. § 1082 .....................................................................................................................20

20 U.S.C. § 1087 ...........................................................................................................2, 20, 22

20 U.S.C. § 1087d ...................................................................................................................21

20 U.S.C. § 1087e ...................................................................................................3, 20, 21, 23, 24

20 U.S.C. § 1094 .............................................................................................................3, 21, 26

20 U.S.C. § 1095a ...................................................................................................................20

20 U.S.C. § 1099c .....................................................................................................................3

20 U.S.C. § 1099c-1 ................................................................................................................21

20 U.S.C. § 1221e-3 ..........................................................................................................20, 24

20 U.S.C. § 3441 .....................................................................................................................20

20 U.S.C. § 3471 ................................................................................................................20

20 U.S.C. § 3474 ...........................................................................................................20, 24

20 U.S.C. § 3711 ................................................................................................................20

31 U.S.C. § 3720D .............................................................................................................20

31 U.S.C. § 3716 ................................................................................................................20

31 U.S.C. § 3720B .............................................................................................................20

Student Loan Reform Act of 1993,
    Pub. L. No. 103-66, 107 Stat. 312 (1993)....................................................................2

Pub. L. No. 79-404, 60 Stat. 237 (1946) ...........................................................................31

Pub. L. No. 116-260, 134 Stat. 1182 (Dec. 27, 2020) .......................................................24

**Rules**

Fed. R. Evid. 201(b).............................................................................................................25

**Regulations**

34 C.F.R. Part 668.........................................................................................................4, 21

34 C.F.R. Part 685..............................................................................................................25

34 C.F.R. § 668.81................................................................................................................4

34 C.F.R. § 668.86..............................................................................................................14

34 C.F.R. § 668.87.................................................................................................4, 10, 26

34 C.F.R. § 668.88..............................................................................................................10

34 C.F.R. § 668.89......................................................................................3, 4, 8, 17

34 C.F.R. § 668.90.........................................................................................................4, 14

34 C.F.R. § 668.91..........................................................................................................*passim*

34 C.F.R. § 685.206.................................................................................................3, 23, 25

34 C.F.R. § 685.207................................................................................................................2

34 C.F.R. § 685.222 ..............................................................................................3, 22, 23, 25

34 C.F.R. § 685.400-.499 (2023) ..............................................................................................3

57 Fed. Reg. 47,752 (Oct. 19, 1992) ..................................................................................... 4, 35

59 Fed. Reg. 61,664 (Dec. 1, 1994) ..................................................................................... 3, 23

81 Fed. Reg. 75,926 (Nov. 1, 2016) ..............................................................................3, 21, 24

82 Fed. Reg. 6,253 (Jan. 19, 2017) ..................................................................................... 4, 23

84 Fed. Reg. 49,788 (Sept. 23, 2019) ......................................................................................3

87 Fed. Reg. 52,944 (Aug. 30, 2022) ......................................................................................22

87 Fed. Reg. 65,904 (Nov. 1, 2022) ......................................................................................3

## **Other Authorities**

Black's Law Dictionary (4th ed. 1951) ......................................................................................33

H.R. Rep. No. 102-447 (1992) ......................................................................................27

H.R. Rep. No. 103-111 (1993) ......................................................................................27

Rescission of Borrower Defense Partial Relief Methodology (Aug. 24, 2021),
     https://perma.cc/F2HJ-73QN ......................................................................................18

U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022),
     https://perma.cc/W4A9-SZV6 ("BD Claims Approval) ......................................................................................4

## INTRODUCTION

The Department of Education ("Department") determined that Plaintiff DeVry University, Inc. ("DeVry") misled prospective students by inflating the job placement rate of its graduates. Acting under its statutory and regulatory authority, the Department consequently discharged federal student loans owed by students who had relied on DeVry's misleading claims. The Department notified DeVry of its intent to recover the losses caused by some of the discharges. DeVry then requested a hearing, the first step in an administrative process provided by Department regulations and by the agreement DeVry entered into to participate in the federal loan programs. Ultimately, in that proceeding, a hearing official will issue an initial decision on whether recovery is warranted, based on the arguments and evidence submitted by the parties. Either party can appeal that initial decision to the Secretary of Education ("Secretary"). At the end of this process, the Secretary's final decision may determine that recovery is not warranted. Alternatively, the Secretary may determine that the standard for recoupment is met, in which case DeVry may seek relief in district court.

Unsatisfied with the administrative process—including the hearing the school itself elected—DeVry filed the instant lawsuit. The theories underlying DeVry's Second Amended Complaint ("SAC"), however, are without merit. For instance, in asserting claims under the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"), as well as an APA claim dressed in constitutional garb, DeVry has failed to abide by a core principle of administrative law: the Judiciary, as the governmental branch of last resort, should generally allow agencies' processes to conclude before wading into a dispute. This principle is expressed through the doctrines of ripeness, finality, and exhaustion, which separately and collectively compel the conclusion that the Court should decline to consider DeVry's APA and Seventh Amendment claims at this juncture.

Moreover, contrary to DeVry's arguments, Congress provided the Secretary with authority to create and administer borrower defense regulations, including proceedings to recover costs that would

otherwise be borne by taxpayers. Nor is there any Seventh Amendment issue with the administrative proceeding, as the administrative proceeding here is permitted under the public rights doctrine. Further, there is no separation of powers problem with the Department's ALJs' removal protections and, even if there were, DeVry has not plausibly alleged prejudicial harm, and therefore is not entitled to any relief. Accordingly, the Court should dismiss DeVry's SAC.

## BACKGROUND

### I.     Statutory and Regulatory Background

Title IV of the Higher Education Act of 1965 ("HEA") charges the Department with the administration of federal student loan programs to "mak[e] available the benefits of postsecondary education to eligible students." 20 U.S.C. § 1070(a). Initially, the largest such program involved Federal Family Education Loans ("FFEL")—loans issued by non-federal lenders and reinsured by the government. *See id.* §§ 1071–1087-4. Although borrowers generally were obligated to repay any federal loans, under the FFEL program, the Secretary could discharge a borrower's liability based on the school's actions, such as if the school closed before the borrower completed their program or if the school falsely certified the student's eligibility to borrow, and the Secretary could then "pursue any claim available to such borrower against the institution[.]" *Id.* § 1087(c).

In 1993, Congress created the Federal Direct Student Loan Program. Student Loan Reform Act of 1993, Pub. L. No. 103-66, § 4021, 107 Stat. 312, 341 (1993). Direct Loans are issued by the government. The funds are disbursed to the school to cover the student's postsecondary education costs. 20 U.S.C. §§ 1087a(a), 1087b(a), (c). The student then eventually repays the government. 34 C.F.R. § 685.207(a).

Schools that wish to receive federal student loan funding must meet certain eligibility criteria and must enter into a program participation agreement with the Secretary, including agreeing to "accept[] responsibility and financial liability stemming from its failure to perform its functions

2

pursuant to the agreement." 20 U.S.C. § 1087d(a)(3); *see also id.* §§ 1087c, 1087d, 1094. Congress directed that Direct Loans "shall have the same terms, conditions, and benefits" as FFEL loans, "unless otherwise specified in this part." 20 U.S.C. § 1087e(a). Section 1087e(h), known as the "borrower defense" provision, specifies that, "[n]otwithstanding any other provision of State or Federal law, the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part[.]" Congress has conferred upon the Secretary the authority to promulgate regulations that "may be necessary" for ensuring compliance with the Title IV program requirements. *Id.* § 1094(c)(1); *see id.* § 1099c(c).

In accordance with these authorities, the Department has promulgated four iterations of regulations—in 1994, 2016, 2019,[1] and 2022[2]—concerning the standards that a borrower must meet in asserting a defense to loan repayment, known as borrower defense regulations or rules. Each version, starting from the first regulations in 1994, has retained the same core structure: when a participating school engages in certain acts or omissions (defined by the Department), the Department may discharge the borrower's loans and recover the resulting costs from the school. 34 C.F.R. §§ 685.206, .222 (2022); *see also* 34 C.F.R. §§ 685.400-.499 (2023). Under each of the regulations, the Secretary may initiate proceedings to recover from the school the loan amount that was discharged because of the borrower's successful defense to repayment. *Id.* §§ 685.206(e)(16), 685.222(e)(7). The Department bears the burden of persuasion in such proceedings. *Id.* § 668.89(b)(3)(iii). Findings made in the borrower defense proceeding between the borrower and the government are not binding in the

---

[1] 59 Fed. Reg. 61,664 (Dec. 1, 1994); 81 Fed. Reg. 75,926 (Nov. 1, 2016); 84 Fed. Reg. 49,788 (Sept. 23, 2019).

[2] The most recent version, published November 1, 2022, 87 Fed. Reg. 65,904 (Nov. 1, 2022), and not at issue here, is currently enjoined. *Career Coll. & Sch. of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024) (*CCST*). A copy of the regulations from the July 1, 2022 C.F.R. print edition, which reflects the regulations as they were prior to the 2022 Rule, is attached. All C.F.R. citations are to the July 1, 2022, print edition unless otherwise indicated.

recovery proceeding between the school and the government. *See id.*; 82 Fed. Reg. 6,253, 6,255 (Jan. 19, 2017).

The recovery proceedings are governed by 34 C.F.R. Part 668, Subpart G. 34 C.F.R. § 668.81(a)(5)(ii); *see generally* 82 Fed. Reg. 6,253 (Jan. 19, 2017). Under Subpart G, "[a] designated department official begins a borrower defense and recovery proceeding against an institution by sending the institution a notice by certified mail." 34 C.F.R. § 668.87(a)(1). The institution may submit a written response or request a hearing, and if it does either, no liability will be imposed until the written material has been considered or the hearing has concluded. *Id.* § 668.87(a)(1)(iii), (b)(1)-(2).

A hearing official presides over hearings related to recovery proceedings. *See id.* § 668.89-.90. Hearing officials do not need to be ALJs. 57 Fed. Reg. 47,752, 47,753 (Oct. 19, 1992). After considering the evidence, the hearing official issues an "initial decision" that "states whether the imposition of the . . . recovery sought by the designated department official is warranted, in whole or in part." 34 C.F.R. § 668.91(a). Either the school or the designated Department official may appeal to the Secretary within 30 days. *Id.* § 668.91(c)(2). While the appeal is pending, the initial decision of the hearing official does not take effect. *See id.* § 668.91(c)(2)(vi). The Secretary then renders a final decision on any appeal, *id.* § 668.91(c)(2)(vii)-(viii), which can be challenged in district court.

## II.      Factual Background

DeVry is a for-profit university based in Chicago. SAC ¶ 23, ECF No. 75. Between 2008 and 2015, DeVry advertised that "90 percent of [its] graduates who actively seek employment obtained jobs in their field of study within six months of graduation." U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://perma.cc/W4A9-SZV6 ("BD Claims Approval"), cited in SAC ¶ 40 n.5. DeVry used this supposed job placement rate "as the way to convince prospective students to enroll." *Id.*

The Department conducted a review of these advertisements and their effect on DeVry's

students. *See id.* ¶ 38; BD Claims Approval; Letter from Susan D. Crim to Thomas L. Monahan III (Aug. 15, 2022) ("Initiation Letter"), SAC Ex. B, ECF No. 75-2. As part of its investigation, the Department notified DeVry that DeVry's conduct was at issue in thousands of borrower defense applications, and the Department began providing information to DeVry regarding individual borrower applications. Initiation Letter at 1-2. Beginning in September of 2020, DeVry submitted responses to some but not all such notification letters concerning individual borrower applications. *Id.* at 2.

Based on its "review of voluminous amounts of evidence, the Department found that from 2008 to 2015 DeVry repeatedly misled prospective students across the country with" its claims. BD Claims Approval. According to the Department, DeVry's "actual job placement rate was around 58 percent." *Id.* Further, "[t]he Department also found that senior DeVry officials knew of the problems with the 90 percent statistic for years, in part due to concerns about its accuracy raised by alumni." *Id.*; *see also* Initiation Letter at 2-5. In light of these "widespread substantial misrepresentations about [DeVry's] job placement rates," the Department approved approximately $71.1 million in borrower defense discharges for approximately 1,800 former students of DeVry. BD Claims Approval. In February 2022, the Department issued a press release summarizing its findings and announcing that it "will seek to recoup the cost of the discharges from DeVry." *Id.*

On August 15, 2022, the Department informed DeVry that it "intends to initiate a recovery proceeding against DeVry" to recoup a portion of this loss—specifically, $23,638,104. Initiation Letter at 1. As the Department explained, "[t]he collection of $23,638,104 will be imposed on September 6, 2022, unless DeVry submits a request for a hearing or written material indicating why the collection action should not be undertaken by that date[.]" *Id.* at 6. The Department also confirmed that "[i]f a timely request for review is filed, the Department will defer offset until completion of the review[.]" *Id.* at 7. On October 11, 2022, DeVry requested an administrative hearing. SAC ¶¶ 47-48. The

proceeding is not yet complete—the parties are currently litigating DeVry's renewed request for a stay. See Order of Remand, *In re DeVry Univ.*, Dkt. No. 22-54-BD (May 1, 2024), attached hereto as Ex. A.

### III. Procedural History

The same day that DeVry requested an administrative hearing, it filed this lawsuit against the Department and the Secretary in his official capacity. Compl. ¶¶ 14-15, 37, ECF No. 1. In its Complaint, DeVry brought four claims under the APA. Count I alleges that the Department used certain group claim procedures in adjudicating the borrower defense applications and initiating the recoupment action against DeVry and that those procedures, promulgated in the 2016 rule, exceed the Department's statutory authority under the HEA. *Id.* ¶¶ 79-83. Count I also alleges that, in the 2016 rule, the Department re-defined when a school has "notice" of a borrower claim, for purposes of setting a statute of limitations for the Department to initiate recovery actions, without following notice and comment procedures. *Id.* ¶¶ 60-61, 84.[3] Count II alleges, in essence, that the Department has not established that each borrower was harmed by DeVry and the extent of each borrower's financial harm, in violation of the regulations. *Id.* ¶¶ 49-50, 62, 72, 88-94. Count III alleges that the Department acted arbitrarily and capriciously based on the same conduct alleged in Counts I and II. *Id.* ¶ 99. Count IV alleges that the Department did not give DeVry sufficient documents and information about the borrower defense claims against it or enough time to respond, among other procedural due process violations. *Id.* ¶¶ 101-10. Counts I-IV are each tied to the Department's recovery proceeding. *E.g.*, *id.* ¶¶ 126, 130, 132, 146-47, 151, 157.

DeVry later amended its Complaint to add two constitutional claims alleging that the Department's ALJs' removal protections violated the separation of powers (Count V) and that the Department's recoupment action and regulations exceeded its statutory authority, in violation of

---

[3] Although Count I focuses heavily on the 2016 rule, DeVry also alleges that only 1.3% of the loans at issue in the recoupment action are controlled by it. Compl. ¶ 51; SAC ¶ 113.

6

Article I of the Constitution (Count VI). First Amended Compl. ¶¶ 158-167, ECF No. 42. DeVry filed its SAC on August 7, 2024, adding a claim that the Department's borrower defense rules and the recovery proceeding violate the Seventh Amendment (Count VII). SAC ¶¶ 189-94. DeVry requests both declaratory and injunctive relief, including an order permanently enjoining the Department from seeking recovery from DeVry. *Id.*, Relief Requested ¶¶ (A)-(H).

## LEGAL STANDARDS

"Because federal courts possess limited jurisdiction, and jurisdiction is power to declare the law, the first step in any federal lawsuit is ensuring the district court possesses authority to adjudicate the dispute—in short, that it has jurisdiction over the subject matter." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) (cleaned up and citation omitted). Where a plaintiff fails to demonstrate a court's subject-matter jurisdiction, dismissal is warranted under Rule 12(b)(1). *Nerium Int'l, LLC v. FTC*, No. 19-cv-7189, 2020 WL 5217152, at *2 (N.D. Ill. Aug. 31, 2020).

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. For Rule 12(b)(6) purposes, a court may consider not only the complaint itself, but also "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## ARGUMENT

### I. Counts I-IV and Counts VI-VII Should be Dismissed as Premature.

#### A. Claims Concerning the Recovery Proceeding are not Ripe for Review.

Rooted in Article III limitations and prudential considerations, "[r]ipeness is a justiciability

doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). "Refusing to involve the courts in ongoing administrative matters both protects judicial resources and comports with the judiciary's role as the governmental branch of last resort." *In re Aiken Cnty.*, 645 F.3d 428, 433-34 (D.C. Cir. 2011).

Ripeness requires that the alleged injury be "certainly impending[.]" *Mo. Pet Breeders Ass'n v. Cnty. of Cook*, 119 F. Supp. 3d 865, 870 (N.D. Ill. 2015) (citation omitted). By contrast, a claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (citation omitted). "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808 (citation omitted). A claim that is unripe should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *James v. City of Evanston*, No. 20-cv-00551, 2021 WL 4459508, at *4 n.2 (N.D. Ill. Sept. 29, 2021).

DeVry's APA claims concerning the recoupment proceeding (Counts I-IV) fail to satisfy both the fitness and hardship prongs of the ripeness inquiry. "An issue is fit for judicial resolution if it involves a 'final agency action' and presents a 'purely legal' issue." *Nerium Int'l*, 2020 WL 5217152, at *6 (quoting *Abbott Lab'ys*, 387 U.S. at 149). Here the Department has only initiated—not completed—recovery proceedings against DeVry, and in those proceedings the Department bears the burden of proof, including with respect to the underlying decision to approve student loan discharges. Initiation Letter at 1; SAC ¶¶ 13, 40, 143, 150, 166; 34 C.F.R. § 668.89(b)(3)(iii). Those proceedings may lead to

a decision that DeVry is not liable for losses arising from approved borrower defense applications because, for example, the Secretary may find that the standard for recoupment is not met, or the Department failed to adhere to its regulations. *See* 34 C.F.R. § 668.91(a)(2), (c)(2)(vii), (c)(2)(x). DeVry can therefore only speculate about what a final decision may be. *Cf. In re Aiken Cnty.*, 645 F.3d at 434 ("[W]hen an agency decision may never have its effects felt in a concrete way by the challenging parties, the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well." (citation omitted)). This lack of finality demonstrates that Counts I-IV are not ripe, as judicial review at this juncture would constitute an undue interference in ongoing administrative activity. *See, e.g.*, *In re Aiken Cnty.*, 645 F.3d at 435; *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141-42 (5th Cir. 2009); *Am. Sav. Bank, FSB v. UBS Fin. Servs. Inc.*, 347 F.3d 436, 440 (2d Cir. 2003); *Hardy v. Hamburg*, 69 F. Supp. 3d 1, 11-12 (D.D.C. 2014).[4]

Further, DeVry does not advance a "purely legal" challenge to the Department's initiation of recovery proceedings. For instance, it claims that the Department failed to properly apply the operative borrower defense regulations to 7,617 separate loans. SAC ¶¶ 156-58. It also asserts that, as to each of these loans, "the Department has failed to establish that the full relief granted to the individual borrowers is not improper or excessive." *Id.* ¶ 159. Moreover, according to DeVry, "[t]he Department has failed to follow the procedures governing the adjudication of individual BDR [borrower defense to repayment] Applications, including by failing to [] consider" the borrower's evidence. *Id.* ¶ 160(a). DeVry similarly alleges that the Department failed to provide adequate notice of the borrower defense applications that the Department has approved, as well as "sufficient time" to respond. *Id.* ¶¶ 174-75. Consideration of these claims is necessarily fact-dependent; indeed, in DeVry's view, factual development—including expert testimony and an evidentiary hearing—is needed at the administrative stage. *See* ECF No. 20-2 at 4-6. These factors weigh heavily against a finding of fitness. *See Davis v.*

---

[4] Finality is also discussed in Part I.B, *infra*.

*U.S. Dep't of Hous. & Urb. Dev.*, 94 F.3d 647 (7th Cir. 1996) (noting that "[a]n agency, not a court, is generally the appropriate site for an initial determination of the merits of an action committed by statute to the agency's discretion").

Additionally, DeVry's only potential "hardship" is uncertainty as to the outcome of the administrative process, which is insufficient to demonstrate ripeness: "[T]he cost and inconvenience of defending [oneself] . . . is not alone sufficient to justify judicial intervention in the administrative process." *Borden, Inc. v. FTC*, 495 F.2d 785, 789 (7th Cir. 1974). And during the pendency of the proceedings, DeVry is not required to pay any money to the Department, nor take any kind of corrective action, nor alter its day-to-day operations in any way. 34 C.F.R. §§ 668.87(b), 668.91(c)(2)(vi); Initiation Letter at 7; *see Nat'l Park Hosp. Ass'n*, 538 U.S. at 810; *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 (10th Cir. 2013) (no hardship because "[p]ertinent administrative review . . . has stayed all [] enforcement").

Count VI—which claims that the Department's borrower defense rules and recoupment scheme exceed its statutory authority, SAC ¶¶ 184-87—can be raised in any appeal to the Secretary and therefore is similarly unripe, and DeVry cannot avoid this result by dressing up what would otherwise be an ordinary APA claim as a constitutional one. *Rogers v. Bennett*, 873 F.2d 1387, 1392 (11th Cir. 1989) (case not ripe because plaintiff failed to exhaust administrative remedies, even though "suit challeng[ed] an agency's jurisdiction to act"); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. Unit B 1981) ("Questions of an agency's authority and jurisdiction have long been held by the courts to be particularly appropriate for initial agency determination."). Additionally, DeVry would suffer no hardship if the Court withheld review of its Seventh Amendment claim (Count VII) at this juncture, particularly as the administrative process may be resolved on dispositive motions, 34 C.F.R. § 668.88(e)(1). *Cover v. OSF Healthcare Sys.*, No. 3:18-cv-50114, 2023 WL 7220555, at *2 (N.D. Ill. Nov. 2, 2023) ("Courts have long held that summary judgment does not

violate the Seventh Amendment."); *Total Gas & Power N. Am., Inc. v. FERC*, No. CV 4:16-1250, 2016 WL 3855865, at *10 (S.D. Tex. July 15, 2016) ("The Seventh Amendment claim may be mooted if FERC terminates the civil penalty proceeding at any time prior to the issuance of the final order assessing civil penalties."), *aff'd*, 859 F.3d 325, 337 (5th Cir. 2017) ("Total is free to bring these claims if and when FERC issues a final adverse order."); *cf. In re Edgewater Med. Ctr.*, No. 02 B 07378, 2004 WL 2921957, at *3 (N.D. Ill. Dec. 15, 2004) (explaining, in the bankruptcy context, that "[t]he appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready" (citation omitted)). DeVry's challenges to the recovery proceeding in Counts I-IV and Count VI are thus not ripe and should be dismissed pursuant to Rule 12(b)(1).

## B. The Recovery Proceeding is not Final Agency Action.

Counts I-IV and VI-VII should also be dismissed because the Department has taken no final agency action. The APA expressly limits judicial review to "final agency action." 5 U.S.C. § 704. To be final, an action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). "A final agency action ordinarily 'means a final order imposing some sort of sanction' and 'emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding.'" *Nerium Int'l*, 2020 WL 5217152, at *4 (quoting *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992)). In determining whether to dismiss a claim brought under the APA for lack of final agency action, a court should apply the 12(b)(6) standard. *See Dhakal v. Sessions*, 895 F.3d 532, 538-41 (7th Cir. 2018); *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017).

As detailed above, there is no dispute that the Department has only *initiated* recovery proceedings against DeVry. Furthermore, the hearing DeVry requested will culminate in only an

"initial decision," which is appealable to the Secretary, who is charged with rendering a "final decision" for the Department. *See generally* 34 C.F.R. § 668.91. Plainly, then, the initiation of recovery proceedings does not "mark the 'consummation' of the agency's decisionmaking process[.]" *Bennett*, 520 U.S. at 177-78; *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-44 (1980) (rejecting argument that issuance of complaint was final agency action); *Augusta Bakery Corp. v. NLRB*, 846 F.2d 445, 446-47 (7th Cir. 1988); *Top Choice Distribs., Inc. v. U.S. Postal Serv.*, 138 F.3d 463, 467 (2d Cir. 1998); *LaMarca v. United States*, 34 F. Supp. 3d 796, 806 (N.D. Ohio 2014). Likewise, the initiation of a recovery proceeding, by itself, does not determine any rights or obligations of DeVry; rather, it merely sets in motion a process whereby those rights or obligations will be adjudicated. *See Standard Oil*, 449 U.S. at 241-42; *see also Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001); *Abbs*, 963 F.2d at 925-26; *Nerium Int'l*, 2020 WL 5217152, at *3-4. That DeVry must bear the expense of presenting its case in the hearing is immaterial. *See R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431 (7th Cir. 1991).

Allegations that the recovery proceeding exceeds the Department's statutory authority, SAC ¶¶ 146-52, 184-87 (Counts I, VI), do not transform the proceeding into reviewable action. There is no "special rule [of finality that] applies when a litigant challenges the agency's authority to regulate rather than the merits of an agency's act of regulation." *The Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732-33 (D.C. Cir. 2003); *see Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986) (Scalia, J.) (holding claim that agency action is beyond statutory authority does not "make any difference" for finality analysis); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 747 (D.C. Cir. 1987) (Williams, J., concurring) ("[A]n agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attack raises a pure question of law"). Thus, Counts I-IV and VI should be dismissed for lack of finality.

## C. DeVry has Failed to Exhaust Available Administrative Remedies.

"Exhaustion of administrative remedies is a doctrine—originally and still to a large extent

judge-made though now codified in cases governed by the [APA]—under which a court asked to invalidate an administrative order will stay its hand until the plaintiff has exhausted whatever internal remedies the agency provides." *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326 (7th Cir. 1995) (citation omitted). Like the doctrines of ripeness and finality, "[t]he [exhaustion] doctrine cuts down on the work of the courts, preserves the integrity and autonomy of the administrative process, and ensures that when the administrative proceeding does come before the court, the court will have before it the mature, considered, and final articulation of the basis of the agency's action." *Id.* at 1326-27; *see In re Establishment Inspection of Kohler Co.*, 935 F.2d 810, 812 (7th Cir. 1991). Moreover, "[t]he rationale for applying the doctrine may be even stronger in the context of a case . . . that raises a constitutional question, because the exhaustion requirement enables courts to avoid deciding cases on constitutional grounds unnecessarily[,]" as the administrative proceeding may provide all the relief sought by a plaintiff. *In re Establishment Inspection of Kohler Co.*, 935 F.2d at 812-13 (explaining that "during administrative proceedings the constitutional issue, or the entire case, for that matter, may be resolved favorably for the aggrieved party, obviating the need for the courts to address the constitutional claim"); *see also, e.g., Gonzalez v. O'Connell*, 355 F.3d 1010, 1018 (7th Cir. 2004); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978). Whether a plaintiff has failed to exhaust administrative remedies is analyzed under Rule 12(b)(6). *McFarland-Lawson v. Ammon*, 847 F. App'x 350, 355 (7th Cir. 2021).

DeVry has failed to exhaust the administrative remedies that it elected. The hearing official might conclude that the Department has not met its burden to show that recovery is warranted. 34 C.F.R. § 668.91(a)(2)(i). Moreover, any initial decision by the hearing official is appealable to the Secretary, whose final decision can afford DeVry more substantive relief than what is available through its APA claims, i.e., "identif[ication of] a legal error and then remand to the agency," *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012); *see* 34 C.F.R. § 668.91(c); 5 U.S.C. § 702.

Notably, courts have recognized the adequacy of the types of proceedings DeVry elected. *See*

*Chauffeur's Training Schs., Inc. v. Riley*, 967 F. Supp. 719, 729-30 (N.D.N.Y. 1997) (hearing conducted

pursuant to 34 C.F.R. Part 668 comported with due process rights of school); *Pro Schs., Inc. v. Riley*,

824 F. Supp. 1314, 1320 (E.D. Wis. 1993) (similar). Courts have also held that these types of

proceedings are prerequisites to exhaustion. As the D.C. Circuit observed with respect to a notice of

termination issued by the Department, such a notice "merely begins the termination proceedings, . . .

and becomes final only after the requested hearing and an opportunity to appeal to the Secretary[.]"

*Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817, 820 (D.C. Cir. 1993) (citing 34 C.F.R. § 668.86(b)(1),

§ 668.90(c)(1)). The plaintiff's complaint should therefore be dismissed, the court explained, because

"in such a circumstance a plaintiff must exhaust administrative remedies—in order to give the

Department's top level of appeal an opportunity to place an official imprimatur on the Department's

interpretation of its regulations before it is reviewed by a federal court." *Id.*; *see also Paul's Beauty Coll.*

*v. United States*, 885 F. Supp. 1468, 1473 (D. Kan. 1995) (review unavailable where plaintiff failed to

appeal calculation of loan default rates). There is no basis to depart from this well-worn ground here,

including with respect to the due process, Article I, and Seventh Amendment claims asserted in Counts

IV, VI, and VII, respectively.  *See Rosenthal & Co.*, 581 F.2d at 1259 (affirming dismissal of Seventh

Amendment claim and explaining that "because the plaintiff could present its claim of

unconstitutionality to the court of appeals in a direct review of the administrative proceeding . . . ,

declaratory or injunctive relief interrupting the administrative proceedings was unavailable"); *Frey v.*

*Commodity Exch. Auth.*, 547 F.2d 46, 48-49 (7th Cir. 1976) (concluding that court not could assess

adequacy of administrative procedures until the administrative action had become final).[5]

---

[5] *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), should not be read to indicate that a plaintiff may always avoid the exhaustion doctrine by simply asserting any type of constitutional violation. *Cf. Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023) (noting, in decision post-*Axon*, that "several other circuits generally require claimants to exhaust their arguments at the administrative level, with a limited exception for constitutional claims arising out of the Appointments Clause"). Indeed, since the Supreme Court decided *Axon*, at least two district courts have concluded that they lack jurisdiction over Seventh Amendment claims because those claims

### D. DeVry Cannot Challenge Other Agency Actions.

Perhaps sensing these constraints, DeVry purports to challenge separate "final agency actions that undergird the recoupment action[.]" SAC ¶ 5; *see id.* ¶ 6. These include the 2016 borrower defense rule, "discharges of the underlying loans, [] the recoupment demand," and an announcement concerning a rebuttable presumption of relief. *Id.* ¶¶ 28, 161. But a plaintiff cannot circumvent the ripeness, finality, and exhaustion doctrines simply by challenging findings or actions that are predicate to or "part of" an ongoing agency proceeding. *Id.* ¶ 6. That is especially true here, where DeVry's SAC—whether viewed in terms of its timing, content, or requested relief—makes clear that its challenge centers on the ongoing administrative proceeding. *See, e.g.*, SAC, Relief Requested (seeking an injunction against the recovery proceeding, with no request to set aside the 2016 rule, announcement, or loan discharges). But even if the Court were to entertain DeVry's arguments, they fail for the reasons set out below.

*The "Recoupment Demand."* "To establish standing, a plaintiff has the burden to establish that he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (citation omitted). DeVry has identified no cognizable harm traceable to the Department's August 15, 2022 letter itself, which informed DeVry that the Department "intends to initiate a recovery proceeding[.]" Initiation Letter at 1. Nor can it, as the letter merely apprised DeVry of the Department official's finding and allowed DeVry to seek review. *Id.* Because DeVry responded by requesting a hearing, no penalty has been imposed. *Id.* at 7. While that hearing may result in a finding of liability, DeVry can only speculate about any such outcome. *See, e.g.*,

---

could be meaningfully reviewed at the end of the proceeding, were not wholly collateral to the merits, and were within the agency's expertise. *Nexstar Media, Inc. Grp. v. Nat'l Lab. Rels. Bd.*, No. 4:24-cv-01415, 2024 WL 4127090, at *4 (N.D. Ohio Aug. 26, 2024); *Blankenship v. FINRA*, No. CV 24-3003, 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024).

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("'[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (citation omitted)).

DeVry has also failed to demonstrate that the letter constitutes final agency action. *See Bennett*, 520 U.S. at 177-78. At most, the Initiation Letter reflects a decision to start a recovery proceeding, but "[a] final agency action ordinarily 'means a final order imposing some sort of sanction' and 'emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding.'" *Nerium Int'l*, 2020 WL 5217152, at *4 (quoting *Abbs*, 963 F.2d at 926). Indeed, if DeVry were correct, the initiation of any administrative proceeding would constitute final agency action, simply because the agency had decided to pursue an action against a regulated entity. Both binding and persuasive authority foreclose such an argument. *See, e.g.*, *Standard Oil*, 449 U.S. at 239-44; *Abbs*, 963 F.2d at 926.

DeVry also has not established that the Initiation Letter satisfies the second *Bennett* prong, as it is not one "by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. at 177-78 (citation omitted). The fact that the letter refers to the discharge decisions does not render the letter a final agency action. Nor does the fact that a Department official determined that a recovery proceeding was appropriate. That reasoning would eviscerate the finality doctrine, as judicial review would be warranted at the outset of any administrative proceeding.

*Loan Discharges*. Assuming the Department's decisions to discharge certain loans of former DeVry students constituted final agency actions, DeVry lacks standing to challenge those decisions. As another district court has explained:

> [S]chools cannot be held liable for any remedial measures absent proceedings initiated specifically against them. . . . When a borrower-defense application criticizes a school, the Department gives the school notice and the opportunity to file a responsive statement, although the school is not required to do so. *Regardless of whether the school files such a statement (or not), the grant of a borrower-defense application has no binding effect on the school.* If the Department approves a borrower-defense application, then that can be the predicate for the department *initiating* a proceeding against the school for recoupment. But even in such an instance, the

16

school still retains all due process rights, is not bound by the success of the student's
application, and is free to litigate *ab initio* the merits of its performance.

*Sweet v. Cardona*, 641 F. Supp. 3d 814, 828 (N.D. Cal. 2022), *appeal filed*, No. 23-15049 (9th Cir. July 18,
2023). DeVry at most asserts a procedural injury in connection with these discharges, SAC ¶ 9, but it
cannot identify a concrete and particularized harm beyond this alleged procedural right, which is
insufficient for standing on its own. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)
(explaining that the "deprivation of a procedural right without some concrete interest that is affected
by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing").
Additionally, in any recovery proceeding—including the one DeVry elected—the Department must
establish that the standard for borrower defense has been met. 34 C.F.R. § 668.89(b)(3)(iii). DeVry
has therefore failed to establish that it has suffered any cognizable harm resulting from the underlying
loan discharges. To the extent the SAC attempts to plead harm to DeVry, it is from the recoupment
action, not the underlying loan discharges. *See* SAC ¶¶ 137-43.

    *2016 Borrower Defense Rule.* The Department agrees that the 2016 rule is final agency action. But
DeVry has not demonstrated its standing to challenge that rule. DeVry fails to identify any harm that
stems from the 2016 rule; rather, its theories of harm are entirely based on the initiation of the
recoupment proceeding. *See id.* And while DeVry has alleged that the Department improperly
promulgated the rule without notice and comment, *id.* ¶ 151, that only states a procedural injury, which
is insufficient without more to establish standing, *see, e.g.*, *Ctr. for Biological Diversity v. Haaland*, 849 F.
App'x 2, 3 (D.C. Cir. 2021). Nor can DeVry show that "the requested relief will redress" any infirmities
in the 2016 rule. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

    *2021 Announcement.* DeVry also complains that an electronic announcement issued by the
Department improperly established a presumption of full relief for student borrowers. SAC ¶¶ 4, 161.
Again, to the extent DeVry's supposed injury is based on its inability to object to the announcement
through notice and comment, *id.*, this alleged procedural injury is inadequate to establish standing.

DeVry bears the burden to show a concrete and particularized injury that it has suffered as a result of the announcement, not that the announcement might affect hypothetical recovery proceedings. *See Larkin*, 982 F.3d at 1064. It has not carried that burden.

Even if DeVry had standing to challenge the announcement—and it does not—it has failed to establish that the announcement constitutes final agency action. *See Bennett*, 520 U.S. at 177-78. The challenged presumption itself has no legal effect on borrowers or institutions such as DeVry, and is at most a general statement of policy meant to "announce[] the course which the agency intends to follow in future adjudications," *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974). *See* Rescission of Borrower Defense Partial Relief Methodology (Aug. 24, 2021), https://perma.cc/F2HJ-73QN; *Colwell v. HHS*, 558 F.3d 1112, 1124 (9th Cir. 2009) (a general statement of policy "does not have 'a present-day binding effect,' that is, it does not 'impose any rights and obligations'" (citations omitted)); *see also Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005). The announcement is not the Department's final word on any borrower defense application or on any school's liability.

## II. The Court Should Reject DeVry's Request for Alternative Relief.

DeVry fares no better in making its "alternative" request for relief. DeVry first asks the Court to "declare . . . the appropriate legal basis (if any) for the Recoupment Action[.]" SAC, Relief Requested ¶ I. But that request simply repackages DeVry's request that the Court declare the Department has exceeded its authority in initiating the recovery proceeding; for the reasons described above, the Court should not reach the merits of that claim now.

Nor can DeVry demonstrate that the Court should "declare . . . what procedures would govern the rights of the parties in adjudicating the merits of the underlying BDR Applications and the Recoupment Action to ensure DeVry is provided due process of law." *Id.*; *see id.* ¶ 5. The Seventh Circuit rejected a similar request in *Abbs*, where the plaintiff asked the court "to determine the ground

rules by which the administrative investigation and any further administrative proceedings are to be conducted." 963 F.2d at 926. As the Seventh Circuit held, the appropriate time to bring suit to challenge the procedures utilized by an agency is "if and when a sanction of any sort is meted out[.]" *Id.* at 926-27 ("[I]f the challenge succeeds he will be home free. If the challenge fails, he will be no worse off than he would have been had he never brought the present suit, assuming (for symmetry) that this suit terminated adversely to him on the merits."). Moreover, "the formulation of procedures [is] basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *see id.* at 525 (courts should not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress."). DeVry offers no reason to deviate from that principle in this case, particularly given the adequacy of the Department's procedures, as noted above.

## III.    The Borrower Defense Rules are Statutorily Authorized.

The Court need not reach the merits of DeVry's Counts I and VI, both claiming that various aspects of the borrower defense rules exceed the Department's statutory authority, if it dismisses them for the reasons described above. But if the Court does reach the merits, the Court should dismiss those claims under Rule 12(b)(6).

### A.    Adjudication of Borrower Defense Claims and Recoupment (Count VI)

Contrary to DeVry's assertions, the best reading of the relevant statutes is that the Secretary of Education has authority to adjudicate borrower defense claims and recoup the amounts discharged from schools, to avoid taxpayers bearing those costs. *See* SAC ¶¶ 75-87, 184-87 (Count VI). DeVry focuses too narrowly on § 1087e(h), without properly considering the context of other statutory provisions governing the federal student loan programs. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (recognizing "fundamental canon of statutory construction that the words of a statute must be read

in their context and with a view to their place in the overall statutory scheme") (cleaned up). In addition to directing the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan," 20 U.S.C. § 1087e(h), Congress gave the Department broad authority to promulgate regulations to administer the student loan program and carry out its duties under Title IV of the HEA. *See, e.g.*, *id.* §§ 1082, 1221e-3, 3441, 3471, 3474. Adjudication of borrower defenses and recoupment falls within that general authority to administer the student loan program.

Where "Congress has delegated to an agency the task of administering federal programs, that agency undertakes a non-discretionary duty to adjudicate claims or applications that are essential to the administration of those programs." *Vara v. DeVos*, No. CV 19-12175-LTS, 2020 WL 3489679, at *3 (D. Mass. June 25, 2020). In the student loan program, this is evident from the many statutory provisions allowing the Department to use administrative methods to collect repayments from borrowers and requiring the Department to conduct pre-deprivation hearings when using these methods. These procedures necessarily require the Department to adjudicate, if raised, whether borrowers have any defenses. 20 U.S.C. § 1080a(c)(4), 31 U.S.C. § 3711(e) (credit bureau reporting); 5 U.S.C. § 5514 (Federal salary offset); 20 U.S.C. § 1095a, 31 U.S.C. § 3720D (wage garnishment); 31 U.S.C. §§ 3716, 3720B (Federal payment offset). There is no indication that Congress meant to limit borrower defenses to those few cases that might arise in court, as opposed to making borrower defenses available to any borrower affected by a school's misconduct.

The HEA also authorizes administrative recoupment. Recall that Congress created the Direct Loan program against the backdrop of the pre-existing FFEL Program. In the FFEL Program, if a school committed certain types of misconduct, the HEA directed the Department to "discharge the borrower's liability on the loan . . . by repaying the amount owed on the loan" and to "subsequently pursue any claim available to such borrower against the institution . . . or settle the loan obligation

20

pursuant to the financial responsibility authority under subpart 3 of part H." 20 U.S.C. § 1087(c). That is, a benefit to the borrower of taking out a FFEL loan was that, if the school committed certain acts, the borrower would no longer have to repay the loan and the government would look to the school instead to pay back that amount. In creating the Direct Loan program, Congress provided that, "[u]nless otherwise specified in this part," Direct Loans would have "the same terms, conditions, and benefits" as FFEL loans. *Id.* § 1087e(a). In § 1087e(h), Congress directed the Department to "specify in regulations which acts or omissions" by a school that "a borrower may assert as a defense to repayment," allowing the Department to identify different types of discharge-triggering school misconduct than those in the FFEL program. However, Congress did not disturb the Department's authority to discharge borrower's loans or to recover those amounts from schools. Thus, those features of the FFEL program were carried over into the Direct Loan program. *See Sweet*, 641 F. Supp. 3d at 823, 827 (approving use of the Department's settle and compromise authority in 20 U.S.C. § 1082(b)(6), which appears in the FFEL part of the HEA, for Direct Loans because § 1087e(a)(1) requires Direct Loans to have the same terms, conditions, and benefits as FFEL loans).

Further, the HEA requires schools participating in Title IV to "accept[] responsibility and financial liability stemming from its failure to perform its functions" set forth in its participation agreement, 20 U.S.C. § 1087d(a)(3), and permits the Department to conduct reviews of those institutions and preside over proceedings that administratively assess an institution's liability, subject to administrative appeals and judicial review under the Administrative Procedure Act, *id.* §§ 1087d(a)(3), 1094(b)-(c), 1099c-1(a)(1); *Pro Schs.*, 824 F. Supp. at 1316 (recognizing Department's ability to "demand repayment of improperly utilized funds" under the FFEL Program) (citing 20 U.S.C. § 1094(b)-(c) and 34 C.F.R. Part 668, Subparts G and H). Thus, "from the inception of the Direct Loan Program, [the Department has] considered its administrative authority under the HEA

for the Direct Loan Program to authorize the Department to hold schools liable for losses incurred through borrower defenses." 81 Fed. Reg. at 75,931.

While the Fifth Circuit took a different view of the statute in evaluating the 2022 borrower defense regulations in *CCST*, that out-of-circuit decision is not binding on this Court. Nor is it persuasive. *CCST* is contrary to the plain language of the statute, as discussed above. In particular, the court did not consider Congress's intent that the Direct Loan program be modeled on the FFEL program. *See* 20 U.S.C. § 1087(a); *CCST*, 98 F.4th at 246-28. Nor did it give sufficient weight to the Department's longstanding interpretation of the HEA. *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024) (respect for an agency interpretation is "especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time").

Thus, DeVry's Count VI fails and should be dismissed.

**B.    Group Claims (Count I)**

In Count I, DeVry alleges that the Department has adjudicated the borrower defense claims at issue in DeVry's case on a group basis and that the Department lacks authority to do so. SAC ¶¶ 146-150.[6] In 2016, the Department promulgated regulations allowing borrower defense claims to be adjudicated on either an individual basis or a group basis. In individual claims, the borrower defense claim is adjudicated first, followed by a recoupment proceeding, if the Department initiates one. *See* 34 C.F.R. § 685.222(e)(1)-(5), (7). In the recoupment proceeding, the Department must prove the merits of the underlying claim in order to recoup, although the individual discharges already granted

---

[6] DeVry cites a January 12, 2021 memorandum from the Department's former Principal Deputy General to the former Secretary, which expressed in a footnote a belief that the "class action" provision of the 2016 Rule was "problematic." SAC ¶ 149. The Rubinstein memorandum was primarily concerned with the Department's authority to establish a mass student loan forgiveness program outside of the borrower defense context. In any event, it was later rescinded by current General Counsel. 87 Fed. Reg. 52,944, 52,945 (Aug. 30, 2022).

are not affected if the Department is unsuccessful in proving the claim in the recoupment proceeding. *See* 82 Fed. Reg. at 6,255. If multiple borrower defense applications present common facts and claims, the Department can consolidate them into group claims. 34 C.F.R. §§ 685.222(e)(6), (f)(1). In group claims against open schools, the borrower defense and the recoupment claims are adjudicated in a single proceeding. *Id.* § 685.222(h)(1).[7] These procedures apply to loans disbursed on or after July 1, 2017 and before July 1, 2020. *See id.* § 685.206(d).

As discussed, DeVry lacks standing to challenge any loans already discharged based on borrower defenses because the decision to discharge those loans has no binding effect on the recoupment action. *See supra* at 16-17. But DeVry's challenge to the group claims procedure should also be dismissed under Rule 12(b)(6) because DeVry has not plausibly alleged that the Department actually used the group procedures here. On a motion to dismiss, reasonable inferences are drawn in the plaintiff's favor; however, "when an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Here, despite DeVry's allegations that the Department adjudicated borrower defense applications as a group, *see* SAC ¶ 150, the Department's Initiation Letter shows the Department began a proceeding "to recoup $23,638,104 in [already] approved discharges," Initiation Letter at 2, a process that only applies to individual claims. The Letter also cites a regulation that only applies to individual claims, 34 C.F.R. § 685.222(e)(7). Initiation Letter at 1. Further, as DeVry itself alleges, 98.6% of the claims at issue were subject to the 1994 Rule, which did not include group claim procedures. SAC ¶ 106; *see* 59 Fed. Reg. at 61,696.

But even if group claim procedures were used in this case, these procedural regulations were authorized by statute. In 20 U.S.C. § 1087e(h), Congress directs the Department to "specify in

---

[7] In group claims where the borrower defense is based on a substantial misrepresentation that has been widely disseminated, there is a rebuttable presumption that each member of the group reasonably relied on the misrepresentation. 34 C.F.R. § 685.222(f)(3).

regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan."[8] This provision not only leaves the details of the substantive elements of those defenses to the Department, but when read in concert with the statutory provisions delegating general authority to the Department to administer the student loan programs, it also allows the Department to determine how such defenses should be adjudicated. Congress gave the Secretary broad authority to issue regulations necessary to administer the Department's programs. *E.g.*, 20 U.S.C. §§ 1221e-3, 3474. Courts have upheld agency adjudication of claims on a class basis based on similarly broad statutory delegations. *See Monk v. Shulkin*, 855 F.3d 1312, 1319-20 (Fed. Cir. 2017) (discussing class claims in EEOC and veterans' benefits contexts). Moreover, Congress has recognized that borrower defenses may be "provided to . . . groups of students." Pub. L. No. 116-260, div. FF, tit. VII, sec. 703, § 401(d)(5)(B)(ii)(II)(bb)(CC), 134 Stat. 1182, 3198 (Dec. 27, 2020).[9] Much like class actions in the judicial system, a group-based process for adjudicating borrower-defense claims is reasonable given the common and recurring issues involved: often, an institution's act or omission (such as misrepresenting its graduates' employment rates in mass communications to prospective students) will have affected many borrowers. It would be inefficient—and a waste of public resources—for the Department to conduct individualized adjudications of virtually identical claims involving the same facts and circumstances. *See* 81 Fed. Reg. at 75,965. For these reasons, the Court should dismiss Count I as to the group procedures claim.

### IV. DeVry's Seventh Amendment Claim Fails.

---

[8] As the Department explained in promulgating the 2016 rule, although § 1087e(h) refers to "a" borrower, a default rule of statutory interpretation is that a term includes both the singular and the plural, absent a contrary indication in the statute, which there is not. 1 U.S.C. § 1; 81 Fed. Reg. at 75,965.

[9] Specifically, Congress amended the HEA to provide that, if a student receives a Pell Grant and a loan to attend a school for a period of time, that time period would not count against the 12-semester cap on Pell Grants if the loan is discharged "under section 1087e(h) . . . due to the student's successful assertion of a defense to repayment of the loan, including defenses provided to any applicable groups of students." *Id.*

DeVry also erroneously claims that administrative adjudication of the recoupment proceeding violates the Seventh Amendment, citing *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024). SAC ¶¶ 88-104, 189-94 (Count VII). This claim should be dismissed for three reasons. First, Seventh Amendment rights are waivable. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986) (listing the civil jury trial right among the waivable constitutional rights). And here, DeVry has waived its Seventh Amendment rights by voluntarily participating in the student loan program and agreeing to "comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) [sic] and 34 C.F.R. Part 685." DeVry Program Participation Agreement at 11 (signed by DeVry Sept. 21, 2023), attached hereto as Ex. B ("DeVry PPA"). The Direct Loan regulations include, of course, the borrower defense regulations providing for administrative adjudication of borrower defenses and recoupment, 34 C.F.R. §§ 685.206(e)(8)-(16), 685.222(e), 688.87, as DeVry was aware, since it also agreed to "[a]ccept responsibility and financial liability stemming from losses incurred by the Secretary for repayment of amounts discharged by the Secretary pursuant to 34 C.F.R. §§ 685.206, 685.214,685.215, 685.216, and 685.222." DeVry PPA at 13.[10] *See Geldermann, Inc. v. Commodity Futures Trading Comm'n*, 836 F.2d 310, 318 (7th Cir. 1987) (finding a company waived its rights to an Article III adjudication of a dispute with a customer when it voluntarily joined the Chicago Board of Trade and signed an agreement "to observe and be bound by the Charter, Rules and Regulations of the Association, and all amendments subsequently made thereto," and the association subsequently amended its rules to require arbitration, as required by the CFTC).

---

[10] As DeVry argued earlier in this case, Program Participation Agreements "are subject to judicial notice because they are records of the United States Department of Education whose contents are 'not subject to reasonable dispute' as they 'can be accurately and readily determined' from reliable sources." Pl.'s Sur-reply in Opp. to Mot. to Dismiss at 6 n.7 (ECF No. 28) (citing Fed. R. Evid. 201(b); *Geinosky*, 675 F.3d at 745 n.1; *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1171 (C.D. Ill. 2022) (taking notice of a Program Participation Agreement)).

Second, recoupment actions under the borrower defense regulations do not implicate the Seventh Amendment. The Seventh Amendment provides that, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. *Jarkesy* examined two factors—the nature of the action and the remedy sought—and determined that a federal administrative securities fraud action brought by the SEC was analogous to common law fraud actions historically brought in the courts of law, such that the Seventh Amendment was implicated. 144 S. Ct. at 2128-31. Under that two-factor test, the Seventh Amendment is not implicated in this case. The remedy sought is the more important factor. *Id.* at 2129; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). Here, the remedy sought from DeVry is more analogous to equitable relief, not a legal remedy. *Jarkesy* held that "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" 144 S. Ct. at 2129 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). DeVry tries to label the remedy sought as a civil penalty, SAC ¶ 97, but it is not.[11] Recoupment is not meant to punish DeVry but rather to recover the "losses caused to the Department as a result of borrower defense relief." 34 C.F.R. § 668.87(c); *see Jarkesy*, 144 S. Ct. at 2129 (finding civil penalties under the securities laws to be a legal remedy because the availability of civil penalties was "tie[d] . . . to the perceived need to punish the defendant rather than to restore the victim"). The remedy sought can also be analogized to a court of equity's "order [for] a defendant to return unjustly obtained funds." *Jarkesy*, 144 S. Ct. at 2129. Recoupment actions return federal funds unjustly obtained by the school to taxpayers and return taxpayers to the position they would have been in, absent the school's misconduct.

---

[11] Civil penalties are available under 20 U.S.C. § 1094(c)(3)(B), but the Department has not asked DeVry to pay any civil penalty.

Third, even assuming the Seventh Amendment was implicated, the proceeding at issue here falls within the public rights exception, and thus may be adjudicated by an agency in the first instance (with judicial review available afterward). *Jarkesy* held that a defendant in a securities fraud action for civil penalties brought by the SEC was entitled to a jury trial under the Seventh Amendment because the nature of the action and the remedy sought made the action analogous to common law fraud actions. *Id.* at 2128-31. In doing so, the Supreme Court reiterated that, in cases involving public rights, "no involvement by an Article III court in the initial adjudication is necessary"; such cases may be assigned "for decision to an agency without a jury, consistent with the Seventh Amendment." *Id.* at 2131-32. *Jarkesy* reaffirmed that adjudications concerning taxation, public lands, public benefits, and other matters that "historically could have been determined exclusively by [the executive and legislative] branches" fall within the public rights exception. *Id.* at 2132-33 (citation omitted; alteration in original).

As indicated by the taxation, public lands, and public benefits categories, the government has latitude to act to protect the disposition and use of its property and funds, without the need for a jury or an Article III court proceeding in the first instance. The Direct Loan student loan program is a public benefit program in which government funds—provided by taxpayers—are disbursed to schools voluntarily participating in the program, so that those schools can provide postsecondary education to participating students. 20 U.S.C. §§ 1087b(a), (c) (providing that the Secretary will provide student loan funds directly to the participating schools); *see* H.R. Rep. No. 103-111, at 106-07 (1993) (Direct Loan program intended to encourage the pursuit of postsecondary education through streamlined loans and less-burdensome repayment). In enacting it, Congress recognized the risk of students and the student loan program being exploited by "unscrupulous schools" and schools offering "overpriced and inferior educational programs," leading to "unacceptable" rates of students defaulting on their loans and "waste and abuse" of taxpayer dollars. *See* H.R. Rep. No. 102-447, at 10 (1992). The HEA

27

and the borrower defense regulations ensure that, when a participating school's conduct makes a loan uncollectible, the program allocates the resulting costs to the school instead on taxpayers. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 570 (1985) ("Congress has the power, under Article I, to authorize an agency administering a complex regulatory scheme to allocate costs and benefits among voluntary participants in the program without providing an Article III adjudication."); *see also Granfinanciera*, 492 U.S. at 55 n.10 ("Those cases in which Congress may decline to provide jury trials are ones involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity.").

While *Jarkesy* held that the public rights exception did not apply to an SEC securities fraud enforcement action to recover civil money penalties, *id.* at 2136, *Jarkesy* did not purport to upend administrative adjudication outside that narrow context. This case is distinguishable because, as discussed, no civil penalty is being sought. Further, unlike in *Jarkesy*, the money at issue here is taxpayer money. Stretching *Jarkesy* to prohibit administrative adjudication in cases like this one could potentially affect numerous public benefits programs where improperly obtained government funds are recovered administratively. *See, e.g.*, *Austin v. Shalala*, 994 F.2d 1170, 1177-78 (5th Cir. 1993) (upholding agency adjudication of Social Security overpayment case where the claimant provided false information about her marital status). The Court should dismiss DeVry's Seventh Amendment claim.

## V. DeVry Cannot Proceed on Its ALJ Claim.

### A. DeVry Fails to Allege Prejudicial Harm.

DeVry's Count V should be dismissed because, even if the ALJs' removal protections are unconstitutional, "the unlawfulness of the removal provision does not strip" the ALJ of his power to carry out the responsibilities of his office. *Collins v. Yellen*, 594 U.S. 220, 258 n.23 (2021). To obtain relief, DeVry must plausibly allege that the challenged removal provision "cause[d] harm" by prejudicing the President's control of the administrative proceeding, *see id.* at 259-60, and DeVry has

28

not done so. To establish harm, the challenger must show that there is a substantiated desire to remove the insulated actor, a perceived inability to do so, and a nexus between the desire to remove and the challenged actions taken by the insulated actor. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd on other grounds*, 601 U.S. 416 (2024). "[I]n other words, the challenger must demonstrate that the unconstitutional removal provision actually affected the agency's decision or conduct against him." *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 756 (10th Cir. 2024); *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137-38 (9th Cir. 2021) (denying relief in light of failure to establish a link between an ALJ's decision and the ALJ's removal protections); *Calcutt v. FDIC*, 37 F.4th 293, 318-20 (6th Cir. 2022) ("*Collins* decisively precludes relief" where litigant made only a generalized allegation of harm), *rev'd on other grounds*, 143 S. Ct. 1317 (2023).[12]

A showing of harm is required regardless of whether the challenger tries to characterize the relief it seeks as voiding past agency actions or preventing ongoing or future actions. *Leachco*, 103 F.4th at 757 (applying *Collins* in case challenging ongoing ALJ proceeding); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 178, 180-81, 185 (2d Cir. 2023) (challenge to civil investigative demand issued in ongoing investigation); *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 631-32 (challenge to rulemaking operating prospectively); *Calcutt*, 37 F.4th at 316 (challenge to agency order operating prospectively).

Here, DeVry has not alleged that the President or the Secretary has sought to remove the presiding ALJ or that the agency would do anything differently if the ALJ were removed. *See Collins*, 141 S. Ct. at 1789. It asserts a "here-and-now injury" under *Axon* or *Seila Law, LLC v. CFPB*, 591 U.S. 197 (2020), *see* SAC ¶ 141, but mere incantation of such injury is insufficient to establish harm

---

[12] Although the Fifth Circuit held in *Jarkesy v. SEC* that SEC ALJs' removal protections were unconstitutional, it avoided the *Collins* issue by declining to decide whether "vacating would be the appropriate remedy based on this error alone." 34 F.4th 446, 463 n.17 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). Instead, the Fifth Circuit granted relief on other constitutional grounds.

under *Collins*. This Court should follow the Tenth Circuit's recent, persuasive decision in *Leachco* and reject this overly expansive reading of *Axon*. As *Leachco* explained, "Supreme Court precedent supports a narrow application of *Axon*'s 'here-and-now injury' language." 103 F.4th at 759. *Axon* concerned whether the district court had federal question jurisdiction; it was not about what a plaintiff must show to obtain relief. *Id.* Furthermore, *Axon*'s "here and now injury" language came from *Seila Law*'s discussion of standing, which similarly did not address entitlement to relief. *Id.* (citing *Seila Law*, 591 U.S. at 212). That key distinction was noted in *Collins* itself:

> What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an [allegedly void] action that was taken by such an officer. . . . But that holding on standing does not mean that actions taken by such an officer are void *ab initio* and must be undone.

*Collins*, 594 U.S. at 258 n.24. The Tenth Circuit in *Leachco* decided to "follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language from *Axon*" and to "not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a party's entitlement to relief based on an unconstitutional removal provision.'" 103 F.4th at 759 (quoting *Collins*, 594 U.S. at 258 n.24). Thus, under *Collins*, Leachco was required to show "that the challenged removal provisions actually impacted, or will impact, the actions taken by the CPSC against it," even though it was seeking prospective relief. *Id.* at 757. The court determined that Leachco was not entitled to relief because it "failed to make any showing that, but for the allegedly unconstitutional removal provisions, . . . ALJ Young would have been removed, the CPSC proceedings against it would not be occurring, or the proceedings would be different in any way." *Id.* This Court should do the same.

Because DeVry has not adequately alleged entitlement to any relief, the Court should dismiss DeVry's ALJ removal claim.

**B.      The Department ALJs' Removal Protections are Constitutional.**

If the Court agrees with Defendants on the *Collins* issue, the Court need not reach the question of whether the ALJs' removal protections are constitutional, *see K & R Contractors, LLC v. Keene*, 86 F.4th 135, 148-49 (4th Cir. 2023) (declining to reach the merits where challenger failed to establish *Collins* harm), but if it does reach the question, the Court should hold that the protections are constitutional. Congress created ALJs when it enacted the APA in 1946. *See* Pub. L. No. 79-404 § 11, 60 Stat. 237, 244 (1946). ALJs were "[s]ubject to the civil-service" and "shall be removable by the agency in which they are employed only for good cause established and determined by the Civil Service Commission." *Id.* That provision is now codified in 5 U.S.C. § 7521(a), which provides that ALJs may be removed by their appointing agency "only for good cause established and determined by the Merit Systems Protection Board [(MSPB)]." MSPB members, in turn, are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This longstanding scheme gives ALJs a "qualified right of decisional independence," *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir. 1980), and was designed to rebut allegations that ALJs might be "mere tools of the agency[.]" *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 131 (1953).

Article II grants the President the power to appoint "lesser officers," and "[t]hat power . . . includes the ability to remove" those officers. *Seila Law*, 140 S. Ct. at 2197. However, just as the "power to remove" is considered "an incident of the power to appoint," "the power of Congress to regulate removals" is "incidental to the exercise of its constitutional power to vest appointments." *Myers v. United States*, 272 U.S. 52, 161 (1926); *see United States v. Perkins*, 116 U.S. 483, 485 (1886). The key inquiry in removal cases like this one is whether Congress has "interfere[d] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 689 (1988) (citation omitted).

Congress has not, in this case, so interfered. The Supreme Court has repeatedly recognized

31

that Congress may regulate removals of inferior officers. In *Perkins*, the Court upheld a restriction on the Secretary of the Navy's power to remove a naval officer. 116 U.S. at 484-85. In *Morrison*, the Court upheld a restriction on the Attorney General's power to remove an independent counsel. 487 U.S. at 685-96. The Court has also recognized that the scope of the President's constitutional power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers. For example, in *Morrison*, the Court observed that tenure protection may be "necessary to the proper functioning" of "an official performing 'quasi-judicial' functions." 487 U.S. at 691 n.30; *see also Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (holding that Congress could limit the President's power to remove members of the War Claims Commission, an "adjudicatory body," because of "the intrinsic judicial character of the task with which the Commission was charged"); *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935) (finding it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" charged with "quasi-judicial" duties). Perhaps most tellingly, in *United States v. Arthrex, Inc.*, the Supreme Court *restored* the removal protections of Executive Branch adjudicators who perform functions similar to those of ALJs. To ensure that the adjudicators were adequately supervised within the Executive Branch, the court of appeals had invalidated their removal restrictions, but the Supreme Court instead made the adjudicators' decisions reviewable by a principal officer, thereby preserving the adjudicators' removal protections, 594 U.S. 1, 25-26 (2021) (plurality op.), *see also id.* at 44 (Breyer, J., concurring in the judgment in part and dissenting in part) (agreeing with plurality's choice of remedy).

  Congress's authority to regulate removals is not limitless. In *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, the Supreme Court held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal protections of a particular set of officers—members of the PCAOB. 561 U.S. 477, 505 (2010). But, contrary to DeVry's assertion, SAC ¶ 69, the Supreme Court

32

"did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." *Decker Coal*, 8 F.4th at 1132. Nor has it ruled on the constitutionality of ALJ or other civil service protections. *Free Enter.*, 561 U.S. at 506-07 & n.10.[13] Further, this case is distinguishable from *Free Enterprise Fund*. As the Court observed there, ALJs "perform adjudicative rather than enforcement or policymaking functions." 561 U.S. at 507 n.10; *see also Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024) (distinguishing ALJs, who perform "purely adjudicatory functions," from the PCAOB). Also, ALJs' removal protections are not as stringent as the PCAOB's "novel" and "rigorous" removal limitations. *Free Enter.*, 561 U.S. at 496, 503. Congress made PCAOB members removable by the SEC Commissioners only for "willful violations of the [Sarbanes-Oxley] Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance," 561 U.S. at 503, while the SEC Commissioners were presumed to be removable only for inefficiency, neglect of duty, or malfeasance in office, *id.* at 487. In contrast, the "good cause" standard in 5 U.S.C. § 7521 is less strict. It allows ALJs to be removed for misconduct, poor performance, or insubordination. *See* Black's Law Dictionary 822 (4th ed. 1951) (defining "good cause" to include "any ground which is put forward by authorities in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the duties with which such authorities are charged"); *Morrison*, 487 U.S. at 724 n.4 (Scalia, J., dissenting) ("*for cause* . . . would include, of course, the failure to accept supervision"). Also, unlike the SEC Commissioners, who were understood to have for-cause removal protections of their own, the Secretary of Education is removable at will by the President.

The MSPB's involvement does not, "by itself, put any additional burden on the President's exercise of executive authority"; rather, it simply "ensure[s] that an [ALJ] is removed only in

---

[13] The Supreme Court granted certiorari in *Jarkesy* on the question of whether SEC ALJs' removal protections violated Article II, but ultimately decided the case on Seventh Amendment grounds without reaching the ALJ question. *Jarkesy*, 144 S. Ct. at 2127-28.

accordance with" the good-cause standard prescribed by Congress. *See Morrison*, 487 U.S. at 693 n.33.[14] That is because an ALJ is removable "by the agency in which the [ALJ] is employed," 5 U.S.C. § 7521(a), not by the MSPB. The MSPB's role is to hold a hearing and determine whether the requisite "good cause" exists if the agency removes an ALJ and the ALJ challenges that decision. *See id.*

DeVry cites the Fifth Circuit's decision in *Jarkesy*, but as another court in this district recently found, *Jarkesy* is unpersuasive. *See* SAC ¶ 73; *Alivio*, 2024 WL 4188068, at *11. This Court should instead follow the reasoning of the Sixth, Ninth, and Tenth Circuits and uphold the ALJs' removal protections. *See Leachco*, 103 F.4th at 763-64; *Calcutt*, 37 F.4th at 319; *Decker Coal*, 8 F.4th at 1133. In *Decker Coal*, the Ninth Circuit held that the President had sufficient control over ALJs to satisfy the separation of powers because, although the ALJs were removable only for good cause, the ALJs' decisions were reviewable by an administrative appellate board whose members served at the pleasure of the Secretary of Labor, who in turn was removable at will by the President. 8 F.4th at 1133-35. The Ninth Circuit also reasoned that "Congress has not tied the President's hands and hindered his control over his subordinates here" because no statute required the Department of Labor to use ALJs in black lung benefits cases in the first place. Rather, the Executive Branch chose on its own to use ALJs. *Id.* at 1133-34. *Leachco* and *Calcutt* relied on similar reasoning in finding no separation of powers problem with the CPSC and FDIC ALJs' removal protections. *Leachco*, 103 F.4th at 763-64; *Calcutt*, 37 F.4th at 319.

Here, the President likewise has ample tools available to hold his subordinates accountable. When the ALJ in this case makes his initial decision, it will be subject to review by the Secretary of

---

[14] Just as the Attorney General's decision to fire an "inferior officer" for good cause was allowable in *Morrison* even though it was subject to judicial review, so too is the Secretary's decision to fire an ALJ for good cause allowable even though it may be reviewed by the MSPB. *Morrison*, 487 U.S. at 663-64, 686-93. If anything, the President has *more* control over removal where, as here, the reviewers of a subordinate's firing decision are *also* removable by the President, than in cases where the reviewers are Article III judges who cannot be removed by the President at all. *Compare id.* at 663-64 *with* 5 U.S.C. § 1202(d).

Education, 34 C.F.R. § 668.91(c)(2), who is removable at will by the President—a more direct review process than in *Decker Coal*.[15] And no statute requires the use of ALJs in the Department's proceedings in the first place. *See* 57 Fed. Reg. at 47,753 (removing regulatory requirement that hearings be conducted by ALJs after Congress amended the HEA to no longer require hearings on the record). These factors, along with the quasi-judicial nature of the ALJs' role and the relatively limited protection offered by the good cause standard, compared to the PCAOB members' standard in the *Free Enterprise Fund*, indicate the ALJs' removal protections are compatible with the separation of powers.

## CONCLUSION

For these reasons, the Court should dismiss DeVry's SAC.


Dated: September 25, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Cynthia Liao*
STUART J. ROBINSON
Senior Counsel
CYNTHIA LIAO
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 531-1325
Email: cynthia.f.liao@usdoj.gov

*Counsel for Defendants*

---

[15] Giving weight to the reviewability of the ALJs' decisions is consistent with the Supreme Court's decision in *Arthrex* to ensure adequate supervision of inferior officer adjudicators by allowing a principal officer to review their decisions, rather than by stripping the adjudicators of their removal protections. 594 U.S. at 26 ("review by the Director better reflects the structure of supervision within the [Patent and Trademark Office] and the nature of [administrative patent judges'] duties").