**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

DEVRY UNIVERSITY, INC.

              Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
EDUCATION and

DR. MIGUEL CARDONA, *in his official
capacity as Secretary of the United States
Department of Education*,

              Defendants.

Case No. 1:22-cv-05549

Honorable LaShonda A. Hunt

## PLAINTIFF'S OPPOSITION TO DEPARTMENT'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 5

I.     THE DEPARTMENT'S SWEEPING REVISION OF LIMITED STATUTORY AUTHORITY. ...................................................................................................... 5

II.    DEVRY'S CHALLENGES TO THE DEPARTMENT'S OVERREACHES. ................. 8

LEGAL STANDARD .................................................................................................. 9

ARGUMENT ............................................................................................................. 9

I.     DEVRY HAS ARTICLE III STANDING TO CHALLENGE EACH DEPARTMENT ACTION. ........................................................................................ 9

II.    DEVRY'S CLAIMS SATISFY APPLICABLE FINALITY REQUIREMENTS. ......... 13

     A.    DeVry's Structural Constitutional Claims Are Properly Raised (Counts 5-7). ............................................................................................................ 14

     B.    DeVry's APA Claims Challenge Final Agency Actions. .................................... 15

III.   DEVRY'S CLAIMS ARE RIPE FOR JUDICIAL REVIEW ON THE MERITS. ......... 17

     A.    DeVry's Article I, Article II, and Seventh Amendment Claims Are Ripe (Counts 5, 6, 7). .................................................................................... 17

     B.    DeVry's APA Claims Are Ripe (Counts 1-4). ................................................... 19

IV.   DEVRY'S CLAIMS ARE NOT SUBJECT TO ADMINISTRATIVE EXHAUSTION. ........................................................................................................ 20

V.    DEVRY STATES CONSTITUTIONAL AND APA CLAIMS AGAINST THE DEPARTMENT. ....................................................................................................... 23

     A.    The Department's BDR Recoupment Scheme Exceeds § 1087e(h), Is Contrary to Law, and Unconstitutionally Usurps Legislative Power (Counts 1, 3, 6). ..................................................................................... 23

     B.    The Recoupment Action Violates the Seventh Amendment (Count 7). .............. 27

          1.    The Department's Administrative Adjudication of Common Law Claims Violates the Seventh Amendment. ............................................... 27

          2.    The Department Cannot Evade the Seventh Amendment. ...................... 28

     C.    The Department's ALJ Structure Violates Article II. (Count 5). ........................ 30

          1.    Dual Layers of Removal Protection Insulate ALJs from Removal. ........ 30

          2.    DeVry's Article II Claim Satisfies *Collins*. ............................................. 33

     D.    DeVry States an APA Claim Against the Department's Collective BDR Discharges (Counts 1, 3). .................................................................... 34

**TABLE OF CONTENTS**
(continued)

**Page**

CONCLUSION.................................................................................................................... 35

-

ii-

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ............................................................................................19

*Abbs v. Sullivan*,
    963 F.2d 918 (7th Cir. 1992) ...........................................................................10

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) .........................................................................19

*Alivio Med. Ctr. v. Abruzzo*,
    No. 24-CV-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024) ....................32

*Aluminum Co. of Am. v. United States*,
    790 F.2d 938 (D.C. Cir. 1986) .........................................................................14

*Am. Petroleum Inst. v. EPA*,
    706 F.3d 474 (D.C. Cir. 2013) .................................................................. 25-26

*Am. Sav. Bank, FSB v. UBS Fin. Servs.*,
    347 F.3d 436 (2d Cir. 2003)..............................................................................20

*Ass'n of Am. R.Rs. v. Dep't of Transp.*,
    38 F.3d 582 (D.C. Cir. 1994) ...........................................................................10

*Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*,
    707 F.2d 1485 (D.C. Cir. 1983) .......................................................................18

*Atl. Richfield Co. v. U.S. Dep't of Energy*,
    769 F.2d 771 (1984)...........................................................................................18

*Augusta Bakery Corp. v. NLRB*,
    846 F.2d 445 (7th Cir. 1988) ...........................................................................14

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023).................................................................................. *passim*

*Baker Hughes Inc. v. Kirk*,
    921 F.Supp.801 (D.D.C. 1995) ........................................................................17

*Bennett v. Spear*,
    520 U.S. 154 (1997)....................................................................................14, 15

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
    972 F.3d 83 (D.C. Cir. 2020) ...........................................................................16

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Biden v. Neb.*,
    143 S. Ct. 2355 (2023)...................................................................................25

*Biden v. Tex.*,
    142 S. Ct. 2528 (2022)...................................................................................16

*Bilek v. Fed. Ins. Co.*,
    8 F.4th 581 (7th Cir. 2021) ..............................................................................9

*Blankenship v. FINRA*,
    No. CV 24-3003, 2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) ..............................14

*Borden, Inc. v. FTC*,
    495 F.2d 785 (7th Cir. 1974) ...........................................................................18

*Burgess v. FDIC*,
    No. 7:22-CV-00100-O, 2023 WL 4354219 (N.D. Tex. July 5, 2023)....................18

*Calcutt v. FDIC*,
    37 F.4th 293 (6th Cir. 2022) ......................................................................32, 34

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
    98 F.4th 220 (5th Cir. 2024) .................................................................. *passim*

*Career Educ., Inc. v. Dep't of Educ.*,
    6 F.3d 817 (D.C. Cir. 1993)......................................................................21, 22

*Chauffeur's Training Sch., Inc. v. Riley*,
    967 F.Supp.719 (N.D.N.Y. 1997)......................................................................21

*Citizens for Appropriate Rural Rds. v. Foxx*,
    815 F.3d 1068 (7th Cir. 2016) ..........................................................................19

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ............................................................................34

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ......................................................................18, 34

*Collins v. Dep't of the Treasury*,
    83 F.4th 970 (5th Cir. 2023) ....................................................................... 33-34

*Collins v. Yellen*,
    594 U.S. 220 (2021)............................................................................... 33, 34

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Colwell v. Dep't of Health & Hum. Servs.*,
    558 F.3d 1112 (9th Cir. 2009) .......................................................................16

*Commodity Futures Trading Comm'n v. Schor*,
    478 U.S. 833 (1986).......................................................................................30

*Contender Farms, L.L.P. v. USDA*,
    779 F.3d 258 (5th Cir. 2015) ....................................................................10, 17

*Cover v. OSF Healthcare Sys.*,
    No. 3:18-CV-50114, 2023 WL 7220555 (N.D. Ill. Nov. 2, 2023) ..........................18

*CSX Transp., Inc. v. Surface Transp. Bd.*,
    584 F.3d 1076 (D.C. Cir. 2009) .......................................................................21

*Darby v. Cisneros*,
    509 U.S. 137 (1993).......................................................................................21

*Davis v. U.S. Dep't of Hous. & Urb. Dev.*,
    94 F.3d 647, 1996 WL 467650 (7th Cir. 1996) .....................................................20

*Decker Coal Co. v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021) .....................................................................32, 33

*In the Matter of DeVry Univ.*,
    No. 22-54-BD (O.H.A. Dec. 5, 2023).....................................................................3

*Dhakal v. Sessions*,
    895 F.3d 532 (7th Cir. 2018) .........................................................................15

*In re Edgewater Med. Ctr.*,
    No. 02 B 07378, 2004 WL 2921957 (N.D. Ill. Dec. 15, 2004) .............................18

*Energy Transfer, LP v. NLRB*,
    No. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ..........................34

*Energy Transfer Partners, L.P. v. FERC*,
    567 F.3d 134 (5th Cir. 2009) .........................................................................19

*Env't Health Tr. v. FCC*,
    9 F.4th 893 (D.C. Cir. 2021).........................................................................15

*In re Establishment Inspection of Kohler Co.*,
    935 F.2d 810 (7th Cir. 1991) .........................................................................21

## TABLE OF AUTHORITIES
### continued

**Page(s)**

*FEC v. Swallow,*
    304 F.Supp.3d 1113 (D. Utah 2018)..........................................................................23

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons,*
    954 F.3d 118 (2d Cir. 2020)..................................................................................11

*Foretich v. United States,*
    351 F.3d 1198 (D.C. Cir. 2003)............................................................................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)..........................................................................5, 31, 32, 33

*FTC v. Standard Oil Co. of Cal.,*
    449 U.S. 232 (1980)............................................................................................18

*Geldermann, Inc. v. Commodity Futures Trading Comm'n,*
    836 F.2d 310, 321 (7th Cir. 1987) ......................................................................30

*Genendo Pharm. N.V. v. Thompson,*
    308 F.Supp.2d 881 (N.D. Ill. 2003) ....................................................................15

*Gibson v. City of Chicago,*
    910 F.2d 1510 (7th Cir. 1990) ...............................................................................4

*Glisson v. U.S. Forest Serv.,*
    55 F.3d 1325 (7th Cir. 1995) ...............................................................................22

*Gonzalez v. O'Connell,*
    355 F.3d 1010 (7th Cir. 2004) .......................................................................21, 22

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989)..............................................................................................29

*Gully v. Nat'l Credit Union Admin. Bd.,*
    341 F.3d 155 (2d Cir. 2003)................................................................................12

*Hardy v. Hamburg,*
    69 F.Supp.3d 1 (D.D.C. 2014).............................................................................20

*Hoosier Env't Council v. Nat. Prairie Ind. Farmland Holdings, LLC,*
    564 F.Supp.3d 683 (N.D. Ind. 2021) ..................................................................16

*Humphrey's Ex'r v. United States,*
    295 U.S. 602 (1935)............................................................................................33

## TABLE OF AUTHORITIES
### continued

**Page(s)**

*Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n,*
    634 F.2d 871 (5th Cir. Unit B 1981) ........................................................14

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ...................................................................31

*King v. Burwell,*
    576 U.S. 473 (2015).................................................................................25

*L. Xia v. Tillerson,*
    865 F.3d 643 (D.C. Cir. 2017) ...............................................................22

*Lacy v. Cook Cnty.,*
    897 F.3d 847 (7th Cir. 2018) ..................................................................30

*LaMarca v. United States,*
    34 F.Supp.3d 796 (N.D. Ohio 2014).......................................................14

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
    103 F.4th 748 (10th Cir. 2024) .........................................................32, 34

*Leisgang v. Kijakazi,*
    72 F.4th 216 (7th Cir. 2023) ..................................................................22

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024).........................................................................2, 23

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).............................................................................10, 11

*Mendoza v. Perez,*
    754 F.3d 1002 (D.C. Cir. 2014)..............................................................20

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993).................................................................................28

*Mich. v. DeVos,*
    481 F.Supp.3d 984 (N.D. Cal. 2020) ......................................................25

*Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.,*
    250 F.3d 1077 (7th Cir. 2001) ................................................................30

*Morrison v. Olson,*
    487 U.S. 654 (1988).................................................................................33

**TABLE OF AUTHORITIES**
continued

Page(s)

*N. Air Cargo v. U.S. Postal Serv.*,
  674 F.3d 852 (D.C. Cir. 2012) ........................................................................................21

*Nash v. Califano*,
  613 F.2d 10 (2d Cir. 1980) ............................................................................................33

*Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*,
  752 F.3d 999 (D.C. Cir. 2014) ..........................................................................16, 17, 35

*Nat'l Equip. Rental, Ltd. v. Hendrix*,
  565 F.2d 255 (2d Cir. 1977) ..........................................................................................30

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ......................................................................................................17

*Nava v. Dep't of Homeland Sec.*,
  435 F.Supp.3d 880 (N.D. Ill. 2020) ..............................................................................15

*Nerium Int'l, LLC v. FTC*,
  No. 19 C 7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) .................................19, 20

*Nexstar Media, Inc. Grp. v. NLRB*,
  No. 4:24-CV-01415, 2024 WL 4127090 (N.D. Ohio Aug. 26, 2024) ............................14

*Niz-Chavez v. Garland*,
  141 S. Ct. 1474 (2021) ..................................................................................................35

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ......................................................................................................23

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*,
  656 F.3d 580 (7th Cir. 2011) .........................................................................................19

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n*,
  506 F.2d 33 (D.C. Cir. 1974) .........................................................................................16

*Palis v. Mayorkas*,
  No. 19-CV-06729, 2022 WL 767227 (N.D. Ill. Mar. 14, 2022) .......................................4

*Panama Refin. Co. v. Ryan*,
  293 U.S. 388 (1935) ......................................................................................................15

*Paul's Beauty Coll. v. United States*,
  885 F.Supp.1468 (D. Kan. 1995) ..................................................................................21

## TABLE OF AUTHORITIES
continued

**Page(s)**

*Pro Schs., Inc. v. Riley*,
    824 F.Supp. 1314 (E.D. Wis. 1993) ................................................................................21, 26

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ............................................................................................14

*Rogers v. Bennett*,
    873 F.2d 1387 (11th Cir. 1989) ..........................................................................................18

*Rosenthal & Co. v. Bagley*,
    581 F.2d 1258 (7th Cir. 1978) ............................................................................................21

*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) .............................................................................................. *passim*

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ........................................................................................................30

*Sierra Club v. EPA*,
    699 F.3d 530 (D.C. Cir. 2012) ............................................................................................12

*Sierra Club v. U.S. EPA*,
    774 F.3d 383 (7th Cir. 2014) ......................................................................................3, 10, 13

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ................................................................................................9

*Star Way Lines v. Walsh*,
    596 F.Supp.3d 1142 (N.D. Ill. 2022) ..................................................................................21

*State v. Ctrs. for Medicare & Medicaid Servs.*,
    No. 2:08-CV-881-MEF-TFM, 2010 WL 1268090 (M.D. Ala. Mar. 30, 2010) ....................20

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ..............................................................................................................11

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................................11

*Sweet v. Cardona*,
    641 F.Supp.3d 814 (N.D. Cal. 2022) ..................................................................................12

*Tex. v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) ..............................................................................................11

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Tex. v. United States*,
    555 F.Supp.3d 351 (S.D. Tex. 2021) ........................................................16

*Ticor Title Ins. Co. v. FTC*,
    814 F.2d 731 (D.C. Cir. 1987) ...............................................................14

*Top Choice Distribs., Inc. v. U.S. Postal Serv.*,
    138 F.3d 463 (2d Cir. 1998) .................................................................14

*Total Gas & Power N. Am., Inc. v. FERC*,
    No. CV 4:16-1250, 2016 WL 3855865 (S.D. Tex. July 15, 2016) ...........................18

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021) ................................................................32, 33

*United States v. Dvorkin*,
    799 F.3d 867 (7th Cir. 2015) .................................................................25

*United States v. Perkins*,
    116 U.S. 483 (1886) .......................................................................33

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) .......................................................................23

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) .......................................................................10

*W. Ill. Home Health Care, Inc. v. Herman*,
    150 F.3d 659 (7th Cir. 1998) .................................................................16

*W. Va. v. EPA*,
    142 S. Ct. 2587 (2022) .....................................................................23

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................17

*Wiener v. United States*,
    357 U.S. 349 (1958) .......................................................................33

*Williams v. Devos*,
    No. CV 16-11949-LTS, 2018 WL 5281741 (D. Mass. Oct. 24, 2018) ......................21

**TABLE OF AUTHORITIES**
continued

Page(s)

**Constitutions**

U.S. Const. Amendment
V.................................................................................................................1
VII..........................................................................................................*passim*

U.S. Const. Article
I.............................................................................................................*passim*
II............................................................................................................*passim*

**Statutes**

5 U.S.C.
§ 704.............................................................................................................14
§ 706.........................................................................................................4, 10
§ 1202(d).......................................................................................................31
§ 3105...........................................................................................................32
§ 5514...........................................................................................................24
§ 7521(a).......................................................................................................31

20 U.S.C.
§ 668.71(c)....................................................................................................28
§ 685.222(d)(1).............................................................................................28
§ 1078-11(a)(2)(B)........................................................................................24
§ 1080a(c)(4).................................................................................................24
§ 1082...........................................................................................................25
§ 1087...........................................................................................5, 25, 26, 34
§ 1094(c)(1)(F).............................................................................................22
§ 1099c(c)......................................................................................................25
§ 1095a.........................................................................................................24
§ 1221e-3.......................................................................................................25
§ 1234...........................................................................................................32
§ 3441...........................................................................................................25
§ 3471...........................................................................................................25
§ 3474...........................................................................................................25

31 U.S.C.
§ 3711(e).......................................................................................................24
§ 3716...........................................................................................................24
§ 3720B.........................................................................................................24
§ 3720D.........................................................................................................24

## TABLE OF AUTHORITIES
### continued

**Page(s)**

**Other Authorities**

34 C.F.R.
  § 9.14(h)(1) ...................................................................................................7, 11
  § 206(e)(2)–(4)....................................................................................................6
  § 668.87................................................................................................... *passim*
  § 668.90(d)....................................................................................................20, 23
  § 685.206.................................................................................................6, 28
  § 685.222................................................................................................. *passim*

87 Fed. Reg.
  41,878 (July 13, 2022) ......................................................................................15
  65,904 (Nov. 1, 2022) ......................................................................................15

## INTRODUCTION

In 1994, Congress enacted a narrow directive to the Department of Education (the "Department") to define the defenses college students may assert to avoid repaying their federal student loans, instructing the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part[.]" 20 U.S.C. § 1087e(h). In 2016, more than two decades later, the Department launched a sweeping student loan cancellation program—one of several vast executive branch programs to reduce student debt—based solely on this narrow congressional directive to specify borrower defenses to repayment ("BDR") that students may assert. Although § 1087e(h) had remained dormant for more than 20 years, the Department suddenly reinterpreted the simple instruction to define repayment defenses as a broad mandate to create an elaborate student loan discharge scheme with administrative adjudications against schools for recoupment of discharged loans ("BDR Recoupment Scheme"). The Department proceeded to enact new rules and regulations to implement this new-found authority, and it applied them to approve full student loan discharges and force schools to defend against liability for those discharges in administrative adjudications. Armed with this extraordinary authority, the Department has unilaterally discharged hundreds of thousands of loans totaling billions of dollars.

In enacting the BDR Recoupment Scheme and seeking to enforce it against DeVry, the Department has blatantly violated separation of powers protections embedded in Articles I and II of the U.S. Constitution, the right to due process of law assured under the Fifth Amendment, and the right to a jury trial guaranteed under the Seventh Amendment. The Department also acted contrary to law in violation of the Administrative Procedure Act ("APA") by enacting regulations (without necessary notice and comment) that purport to resuscitate expired loan discharge claims, by issuing a 2021 Policy Memoranda that presumes the justification of full discharges and by

proceeding with "group" discharges based on a purported "Common Statement of Facts" ("Common Statement") that undermines DeVry's ability to defend against the recoupment claims.

DeVry does not seek to challenge the Department's unilateral discharge of student debt, but DeVry is caught in the middle of the Department's unauthorized BDR Recoupment Scheme and faces massive harm because of the unauthorized, unrestrained, and fundamentally unfair recoupment adjudication process. Indeed, the Department itself—on its website—urged tens of thousands of borrowers to file BDR claims against DeVry, which the Department then discharged across-the-board. Avoiding the restraints and protections afforded by an orderly process before an Article III court, the Department has adopted an administrative process and relies on the Common Statement, which pre-determines that students relied on allegedly misleading advertisements that DeVry ceased years ago. Consequently, the Department provided full discharges under the new BDR Rules to approximately 1,800 former DeVry borrowers and initiated recoupment proceedings against DeVry ("Recoupment Action") seeking to hold the school liable for millions of dollars for the discharged loans in the first tranche of 649 borrowers (the "BDR Discharges").

DeVry seeks judicial review of its claims against the Department, asking the Court to determine whether the Department exceeded its statutory authority and whether the BDR Rules and Recoupment Action violate structural constitutional constraints and the APA. As the Supreme Court has instructed, this Court cannot defer to the Department's views and instead "must exercise [the Court's] independent judgment in deciding whether an agency has acted within its statutory authority[.]" *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). It is the role of this Court to "police the outer statutory boundaries" of the Department's authority. *Id.* at 2268.

As explained in the Second Amended Complaint ("SAC"), and as DeVry will demonstrate on the merits, Congress never authorized the BDR Recoupment Scheme. As the Fifth Circuit

reasoned when it enjoined the Department's attempt to enforce the latest iteration of the BDR Rule, Section 1087e(h) "does ***not*** authorize the Department to draft regulations spelling out affirmative 'claims' that borrowers can assert against schools to avoid their obligations." *Career Colleges & Schs. of Tex. v. U.S. Dep't of Educ.* (*CCST*), 98 F.4th 220, 240 (5th Cir. 2024). The Fifth Circuit correctly ruled that "the Higher Education Act does ***not*** allow the Department to adjudicate borrower defense claims or recoupment claims by the Department against schools." *Id.* at 246-47. The fact that the Fifth Circuit addressed a later version of the same BDR Rules is of no moment in assessing the powerful logic of that Court's reasoning, which is fully applicable here.[1]

In its Motion, the Department seeks to avoid judicial review, interjecting a panoply of procedural defenses. None of these defenses has merit. *First*, DeVry has Article III standing, because, assuming (as we must) that DeVry's claims have merit, *see Sierra Club v. U.S. EPA*, 774 F.3d 383, 389 (7th Cir. 2014),[2] the BDR Rules and the Department's 2021 Policy Memoranda deprive DeVry of procedural rights and harm its concrete interests by increasing the regulatory burden on DeVry, allowing claims that previously expired, and imposing a presumption of full discharge relief, thereby threatening massive financial liability. The BDR Discharges also cause reputational damage to DeVry as official determinations of purported misconduct, and the Department has subjected DeVry to an unconstitutional enforcement proceeding. An order declaring these actions unlawful and vacating them would redress these concrete injuries.

*Second*, DeVry's claims satisfy finality requirements. As the Supreme Court held in *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), DeVry is not required to endure the Recoupment Action

---

[1] In fact, even the administrative law judge ("ALJ") presiding over the Recoupment Action—although powerless under agency regulations to invalidate the BDR Rules—found "compelling" the argument that "the Department lacks statutory authority to recoup funds from a school under the borrower defenses statute." Order at 2, *In the Matter of DeVry Univ.*, No. 22-54-BD (O.H.A. Dec. 5, 2023), Dkt. No. 267.

[2] In this brief, all emphasis within quotations is added, and all internal quotations and citations are omitted.

and await a final decision before this Court may review DeVry's structural constitutional claims against the Department. In addition, DeVry's APA claims challenge final agency actions: (1) final rules (*i.e.*, the 2017 and 2020 BDR Rules and the 2017 BDR Recoupment Rule), (2) the 2021 Policy Memoranda unlawfully establishing a presumption of full student loan discharges, and (3) the BDR Discharges, which are final actions.

*Third*, DeVry's claims are ripe, because DeVry's structural constitutional claims and APA claims (which concern final agency actions) raise **pure questions of law** that do not require factfinding, and which cannot be decided in the Recoupment Action. Nor is exhaustion a bar. Congress did not require exhaustion for recoupment proceedings. The Department does not and cannot identify any statute or regulation that requires such exhaustion. Even if exhaustion were applicable (it is not), it would be inappropriate here because DeVry's structural constitutional claims and APA claims are all legal issues that cannot be resolved in the Recoupment Action.

*And finally*, DeVry adequately states the claims that the Department seeks to dismiss.[3] As alleged in Count 6 (Article I) and Counts 1 and 3 (the related APA claims), the BDR Rules and the Policy Memoranda establish an elaborate student loan discharge and recoupment adjudication scheme based on very specific and limited authority Congress granted in § 1087e(h) only to specify defenses to repayment. This adequately states claims that the Department has exceeded its statutory authority, acted contrary to law, and unconstitutionally usurped legislative authority. As alleged in Count 5 (Article II), it is undisputed that Congress interposed two layers of removal protection between the Department's ALJs (inferior officers of the United States) and the

---

[3] In evaluating the Department's arguments, the Court's task is simply to determine whether DeVry's complaint is sufficient to state a claim. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court may resolve the merits at summary judgment upon review of the administrative record. 5 U.S.C. § 706 (providing that the court reviews the record to resolve APA claim); *Palis v. Mayorkas*, 2022 WL 767227, at *2 (N.D. Ill. Mar. 14, 2022) (addressing merits of APA claims at summary judgment).

President, which violates the requirements of Article II. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010). As alleged in Count 7 (Seventh Amendment), the Department has deprived DeVry of the right to a jury trial by mandating administrative adjudication of misrepresentation-type claims carrying substantial monetary penalties. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2131 (2024). And as alleged in Count 1 (APA), the BDR discharges exceed the Department's statutory authority because the Department's collective BDR discharges based on the Common Statement violate § 1087e(h)'s specification for **individual** BDR defenses— not a mass loan cancellation program. Thus, the Department's Motion should be denied.

## BACKGROUND

DeVry is an accredited Illinois-based university that has educated thousands of students for nearly a century. ¶8.[4] DeVry offers academic programs and degrees in technology, business, and healthcare and has become a leader in online education. *Id.* Generations of DeVry students have earned degrees, paid for their DeVry education, and enjoyed successful careers. *Id.*

In June 2020, years after DeVry settled—without admitting wrongdoing—investigations by the FTC and the States of New York and Massachusetts into an ad campaign discontinued in 2015, the Department notified DeVry that it would be sending DeVry BDR claims arising from the same campaign for response.[5] ¶¶33–36, 38. DeVry has received over 47,000 applications from the Department concerning BDR claims and has endeavored to respond to each. ¶39.

## I. THE DEPARTMENT'S SWEEPING REVISION OF LIMITED STATUTORY AUTHORITY.

Thirty years ago, Congress authorized the federal government to lend money to eligible students as "Direct Loans." 20 U.S.C. § 1087a; ¶51. Congress gave a clear and limited direction to the Secretary to specify by regulation "which acts or omissions of an institution of higher

---

[4] All "¶" refer to the allegations of the SAC.
[5] DeVry has paid over $122 million to former students to resolve claims relating to the ads. ¶37.

education a borrower may assert as a defense to repayment" of a Direct Loan. 20 U.S.C. § 1087e(h); ¶¶54, 78. In 1995, the Department issued its first BDR regulations under which borrowers could assert a defense to repayment of their Direct Loans due to alleged state law violations by their school. ¶¶80, 90. These narrow BDR Rules remained for over 20 years. ¶81.

*The 2017 BDR Rule and 2017 BDR Recoupment Rule.* The Department revamped its BDR authority with the 2017 BDR Rule. 34 C.F.R. § 685.222 (2017 version); ¶81. Under this Rule and related regulations, the Department authorized students to bring affirmative BDR claims to seek a loan discharge based on purported "substantial misrepresentation" by their schools. ¶115; 34 C.F.R. § 685.222(d) (2017 version). The Department authorized itself to discharge loans administratively and to seek recoupment against a school by purportedly transferring a student's right to relief to the Secretary. ¶¶82, 114–23; *see also* 34 C.F.R. § 685.222(a)(2), (e)(7) (2017 version). The Department also expanded the term "notice" to allow the Secretary to resurrect long-expired BDR claims. ¶¶122–23 (citing 34 C.F.R. § 685.206(c)(4)). At the same time, the Department promulgated a regulation that created "borrower defense and recovery proceedings." 34 C.F.R. § 668.87 (the "2017 BDR Recoupment Rule"); ¶¶81, 82(d).

*The 2020 BDR Rule.* Three years later, the Department promulgated the 2020 BDR Rule. 34 C.F.R. § 685.206(e); ¶127. The Department continued to claim the authority to discharge loans administratively without individualized analysis and to administratively recoup from a school long after a student had stopped attending the school. Under this Rule and related regulations, the Department permitted a student with a loan disbursed on or after July 1, 2020, to seek a discharge based on certain "misrepresentations" by schools. ¶¶127-29; 34 C.F.R. § 206(e)(2)–(4).

*The 2021 Policy Memoranda.* In March 2021, the Department rolled out a new policy effective immediately: "[f]ull relief under the regulations" that "will include[] 100 percent

discharge of borrowers' related federal student loans."[6] ¶161 n.8. This policy departed from the individualized harm analysis required by 34 C.F.R. § 685.222(i)(2)(i). In August 2021, the Department stated its "legal justification" for the policy, which together with the March 2021 Press Release, are the 2021 Policy Memoranda.[7] ¶161. In issuing the Memoranda, the Department failed to follow its then-effective regulation requiring a "period of public notice and comment at least 30 calendar days" for "significant guidance." *Id.* (citing 34 C.F.R. § 9.14(h)(1) (2020 version)).

*The BDR Discharges.* On February 16, 2022, the Department publicly announced that "approximately 1,800 former [DeVry students] ... will receive approximately $71.7 million in full borrower defense discharges after the [Department] determined that the institution made widespread substantial misrepresentations about its job placement rates." ¶40 & n.5. These discharges were based on a "Common Statement" about DeVry "that will be applied in the individual adjudication of borrower defense applications from DeVry borrowers."[8]

*The Recoupment Action.* Six months later, the Department issued a recoupment notice ("Recoupment Notice"), in which the Department said it had "identified approximately 1,800 borrowers who will be eligible for approximately $71.7 million in discharges." *Id.*; Ex. B at 6.[9] While continuing to process discharges for the nearly 1,115 other borrowers referenced in the

---

[6] *See* Press Release, U.S. Dep't of Educ., *Department of Education Announces Action to Streamline Borrower Defense Relief Process* (Mar. 18, 2021), *archived* by WayBackMachine (Mar. 18, 2021), https://web.archive.org/web/20210318171356/https://www.ed.gov/news/press-releases/department-education-announces-action-streamline-borrower-defense-relief-process.

[7] *See* Office of the Under Secretary of the U.S. Dep't of Educ., *Rescission of Borrower Defense Partial Relief Methodology* (Aug. 24, 2021), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2021-08-24/rescission-borrower-defense-partial-relief-methodology-ea-id-general-21-51.

[8] Press Release, U.S. Dep't of Educ., *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students* (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students; Office of the Under Secretary of the U.S. Dep't of Educ., *Borrow Defense Findings: DeVry University (DeVry)*, https://studentaid.gov/announcements-events/borrower-defense-update/findings#devry-university (last visited Oct. 28, 2024) (including hyperlinks to the "common statement").

[9] All "Ex." refer to the exhibits to the SAC, unless otherwise stated.

Department's February 2022 announcement, the Department sought to recoup from DeVry $23.6 million. That amount reflected "100% relief" in discharged loans for 649 students, "consistent with the presumption of full relief." Ex. B at 5-6. The Department's "collection" of this "debt" would commence immediately unless DeVry requested a hearing in the Recoupment Action. *Id.* Faced with this "debt" and potential penalties, DeVry was forced to request a hearing on October 11, 2022. ¶¶5, 48. On the same day, DeVry filed this case. ¶48.

## II.    DEVRY'S CHALLENGES TO THE DEPARTMENT'S OVERREACHES.

DeVry challenges the Department's unlawful actions. The SAC asserts four APA claims: ***Count 1*** alleges the Department has exceeded any authority under § 1087e(h). ¶¶144-52. The Department has done so by promulgating (a) the 2017 and 2020 BDR Rules, which purported to authorize BDR claims and adjudication of recoupment claims, (b) the 2017 BDR Recoupment Rule purporting to create BDR recoupment proceedings, and (c) the 2017 BDR Rule's "group" discharges and expanded definition of the term "notice." ***Count 2*** alleges the Department (a) failed to follow APA notice and comment procedures in promulgating the 2017 BDR Rule and (b) failed to follow its regulations in issuing the 2021 Policy Memoranda. ¶¶153-62. ***Count 3*** alleges the Department's Recoupment Action is arbitrary, capricious, and contrary to law due to the foregoing issues. ¶¶163-67. ***Count 4*** alleges the Department's 2017 BDR Rule is agency action that is contrary to constitutional right because it violates due process by providing no time limit on the initiation of recoupment and because the group adjudication rules are facially defective. ¶¶168-77.

The SAC also asserts structural constitutional claims against the Department's BDR Recoupment Scheme: ***Count 5*** alleges the Department's ALJs are unconstitutionally insulated from removal by the President in violation of Article II by two layers of removal protection. ¶¶178-82. ***Count 6*** alleges the Department has violated Article I by fashioning a scheme to adjudicate

BDR claims and recoupment claims without congressional authorization, usurping the legislative power. ¶¶183-87. *Count 7* alleges that § 1087e(h) and the Department's BDR Recoupment Rules violate the Seventh Amendment by depriving DeVry of its right to jury trial on the Department's recoupment claims, which are essentially common law claims premised on purported misrepresentations for which the Department to seeks to impose a penalty in the form of full borrower relief regardless of any showing of actual harm. ¶¶188-94.

The Department moves to dismiss. It asserts that DeVry lacks Article III standing to challenge concededly *final* agency actions. The Department argues that all but DeVry's Article II claim should be dismissed as unripe, as lacking final agency action and for failure to exhaust administrative remedies. The Department also seeks to dismiss for failure to state a claim DeVry's Articles I and II claims (Counts 5, 6), its Seventh Amendment claim (Count 7), and its APA claim concerning the Department's collective (Count 1).

## LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) ... requires only that a complaint plead a short and plain statement of the claim showing that the pleader is entitled to relief." *Bilek v. Fed. Ins. Co*., 8 F.4th 581, 586 (7th Cir. 2021). A complaint satisfies Rule 12(b)(6) when it pleads "a claim that is plausible on its face." *Id.* A court applies the Rule 12(b)(6) standard to evaluate a facial challenge to a complaint under Rule 12(b)(1). *Silha v. ACT, Inc*., 807 F.3d 169, 174 (7th Cir. 2015).

## ARGUMENT

## I. DeVry Has Article III Standing to Challenge Each Department Action.

The Department argues that DeVry lacks Article III standing to challenge the 2017 BDR Rule, the procedural violations in the 2017 BDR Rule and 2021 Policy Memoranda, the BDR Discharges, and the Recoupment Action. Mot. 15-18. The Department is incorrect. Article III standing requires (1) an injury in fact, *i.e.*, the invasion of a legally protected interest that is "actual

or imminent, not conjectural or hypothetical," (2) traceable to the defendant (3) that is likely to be redressed by a favorable judicial ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In this analysis, the Court must assume DeVry would succeed on its claims. *Sierra Club*, 774 F.3d at 389. Here, DeVry satisfies all the standing requirements for each challenge it raises.

**Facial Challenges to BDR Rules (Counts 1, 3, 4, 6).** The Department argues that DeVry "fails to identify any harm" from the regulations, Mot. 17, but this is incorrect. DeVry has standing to challenge the 2017 BDR Rule, 2020 BDR Rule, and the 2017 BDR Recoupment Rule, because DeVry is subject to the challenged regulations. *See Lujan*, 504 U.S. at 561–62. DeVry is subject to all these Rules through the Department's participation agreement. ¶¶9, 38, 53; Mot. 21-22. The Rules allowed an onslaught of 47,000 BDR discharge applications, with over 7,000 BDR claims made against DeVry under the 2017 BDR Rule's unlawful expansion of the term "notice" to allow the Secretary to resurrect time-barred BDR claims. ¶¶39, 111a, 122-23. Thus, DeVry's "increased regulatory burden" from the 2017 BDR Rule easily "satisfies the injury in fact requirement" For Counts 1, 3, 4, and 6. *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 266 (5th Cir. 2015).

Vacatur of the BDR Rules under the APA would redress DeVry's injuries stemming from these unlawful agency actions. 5 U.S.C. § 706; *Ass'n of Am. R.Rs. v. Dep't of Transp.*, 38 F.3d 582, 585–86 (D.C. Cir. 1994) (plaintiff had standing because vacatur of rule meant "the alleged injury would be avoided"). DeVry's request for alternative relief is also appropriate; setting aside unlawful BDR Rules and declaring that the Department cannot rely on them in the Recoupment Action would avoid substantial injuries that DeVry suffers from them.[10] Mot. 18-19.

---

[10] The Department stretches the holdings in *Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992), and *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978), to argue that DeVry cannot ask the Court to determine the rules or "engraft" procedures onto the Recoupment Action. Mot. 18-19. That misconstrues the alternative relief. DeVry asks the Court to remedy APA violations, and to declare that the Department cannot rely on rules and policy memoranda that are unlawful and illegally promulgated.

***Procedural Failures in the 2017 BDR Rule and 2021 Policy Memoranda* (Counts 1, 2)**.

DeVry has standing to challenge the Department's failure to follow the APA's notice-and-comment requirements (Count 1) and the agency's procedures when issuing the 2021 Policy Memoranda (Count 2). Article III is less demanding when a "person . . . has been accorded a procedural right to protect his concrete interests." *Lujan*, 504 U.S. at 572 n.7. Such a person "can assert that right ***without*** meeting all the normal standards for redressability and immediacy." *Id.* In issuing the 2017 BDR Rule, the Department violated DeVry's procedural rights by adopting a new "notice" definition that resurrected expired BDR claims without following the APA's procedures. ¶¶122, 151; *see Tex. v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019) ("A violation of the APA's notice-and-comment requirements is ... a deprivation of a procedural right."). The Department also violated DeVry's procedural rights by adopting the 2021 Policy Memoranda without observing the notice and comment procedures. ¶161 (citing 34 C.F.R. § 9.14(h)(1) (2020 version)); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[W]hen agencies fail" to follow their own regulations, "the APA . . . gives aggrieved parties a cause of action[.]"). The Department misapplies *Steel Co. v. Citizens for a Better Environment*, where the claimed injury was "being deprived of information," not a violation of mandatory notice and comment procedures. 523 U.S. 83, 105 (1998).

The Department's procedural violations also affected "some concrete interest" of DeVry. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). DeVry was adversely affected by the 2017 BDR Rule's resurrection of time-barred claims. ¶¶33-36. DeVry was certainly adversely affected by the 2021 Policy Memoranda's presumption of full relief, which increased the burden and exposure to DeVry for the over 47,000 BDR Applications the Department has sent DeVry. ¶39. Vacatur of the 2017 BDR Rule's "notice" definition and the 2021 Policy Memoranda to

require the Department to respond to DeVry's objections will "clearly redress[]" the deprivation of DeVry's procedural injuries. *See Sierra Club v. EPA*, 699 F.3d 530, 533 (D.C. Cir. 2012).

**BDR Discharges** (Counts 1-4, 6). There can be no question that DeVry has standing to challenge the BDR Discharges because they are government actions that have inflicted "reputational damage" on DeVry. ¶143. "[A]n injury to reputation will satisfy the injury element of standing." *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161 (2d Cir. 2003). That is true "where reputational injury *derives directly* from an unexpired and unretracted government action[.]" *Foretich v. United States*, 351 F.3d 1198, 1213 (D.C. Cir. 2003). The Department is DeVry's regulating agency and has accused DeVry of misleading students, deemed DeVry guilty of such misconduct for *each* borrower for whom the Department has discharged federal loans, and then published these incendiary claims on the Department's official website and in a press release. ¶¶12, 40 & n.5. The announcement of a Recoupment Action confirms the Department has deemed DeVry a bad actor, as loan discharge is a prerequisite to any administrative action seeking recovery. Under these circumstances, "[a] declaratory judgment that the government's actions were unlawful will ... provide meaningful relief." *Foretich*, 351 F.3d at 1214.

The Department's ironic reliance on its own argument in *Sweet v. Cardona*, to contend that "the grant of a borrower-defense application has no binding effect on the school" is inapposite. 641 F.Supp.3d 814, 828 (N.D. Cal. 2022); Mot. 16-17. There, the court opined there was "no actionable reputational harm" as "there is no binding or official determination of misconduct against the schools ... since the settlement does not utilize the borrower-defense procedure." *Sweet*, 641 F.Supp.3d at 829. The Department went to great lengths to convince the court in *Sweet* that the settlement was unrelated to any BDR Rules so the court would approve the settlement, repeatedly emphasizing that point in filings and in an agency affidavit. The Department was

attempting to justify widespread loan forgiveness for students who attend more than 150 schools, even without Department review of the BDR applications or any adjudication of the defenses themselves. In any event, the determination of no "actionable" reputational harm (which is on appeal) is inapposite here because the BDR Discharges here *did* utilize the BDR Rules, and they will remain "*final*" determinations of "misconduct" justifying the BDR claims. 34 C.F.R. § 685.222(e)(5). As further proof, the Department continues to wield its BDR Discharges as unassailable proof of misconduct. *E.g.*, Mot. 1 ("The [Department] determined that [DeVry] misled prospective students."), 4-5 (referring to the Department's "findings").

*Recoupment Action* **(Counts 5-7).** The Department's assertion that DeVry "has identified no cognizable harm" from the Recoupment Notice is unavailing under *Axon*. Mot. 15. DeVry has a legally protected interest, *i.e.*, "the[] right[] not to undergo the complained-of agency proceedings." *Axon*, 598 U.S. at 192. DeVry suffers a "here-and-now injury" because DeVry will "lose" the right not to participate in the Recoupment Action if in fact it must endure it before enforcing that right. *Id.*; ¶¶ 75-81, 137-40. The Department's disagreement with Counts 5 and 6 on the merits are irrelevant here, and cannot erase DeVry's injury. *See Sierra Club*, 774 F.3d at 389. The harm to DeVry is also "fairly traceable" to the Department's initiation of the improper Recoupment Action with the Recoupment Notice. ¶43, Ex. B. And a favorable judicial ruling for DeVry would remedy the harm, because the Department could not enforce its unconstitutional BDR Recoupment Scheme against DeVry or proceed with an illegitimate decisionmaker.

## II.    DEVRY'S CLAIMS SATISFY APPLICABLE FINALITY REQUIREMENTS.

The Department's assertion that all claims except DeVry's Article II claim (Count 5) lack a final agency action is incorrect. Mot. 11-12, 15-18. DeVry's Article I claim does not require a final action (although it challenges final rules), and the APA claims challenge final actions.

### A.     DeVry's Structural Constitutional Claims Are Properly Raised (Counts 5-7).

DeVry's structural constitutional claims are properly raised in this Court. Contrary to the Department's arguments, Mot. 9-11, DeVry's Article I claim (Count 6) satisfies finality because it challenges the Department's **final** BDR Rules. Mot. 10-11 (acknowledging Count 6 challenges "the Department's borrower defense rules and recoupment scheme").[11] Even indulging the Department's incorrect assertion that the Article I claim is an APA claim in "constitutional garb," Mot. 1, the argument is inapt. The Department concedes that its 2017 BDR Rule **is** final. Mot. 17, and cannot dispute the finality of its other rules. That is all the APA requires. 5 U.S.C. § 704.

The Department's arguments regarding the Recoupment Action fail in any event. *Axon* instructs that structural constitutional claims challenging an agency's authority ***do not*** require the completion of an ongoing agency enforcement proceeding, even if a review scheme otherwise would require finality.[12] *Axon*, 598 U.S. at 195-96. In the face of *Axon*, the Department does not argue that DeVry's Article II claim (Count 5) and Seventh Amendment claim (Count 7) require finality.[13] Mot. 7-12. There is no basis to treat DeVry's Article I claim—a structural separation-

---

[11] In light of this final agency action, the Department's cited cases concerning the lack of a purported "special rule" of finality are irrelevant. Mot. 10-11; *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732-33 (D.C. Cir. 2003); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 747 (D.C. Cir. 1987); *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986).

[12] The Department's cited finality cases, several of which are non-binding, are inapposite because they pre-date *Axon*. Mot. 11-12; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *Top Choice Distribs., Inc. v. U.S. Postal Serv.*, 138 F.3d 463, 467 (2d Cir. 1998); *Augusta Bakery Corp. v. NLRB*, 846 F.2d 445, 446-47 (7th Cir. 1988); *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. Unit B 1981); *LaMarca v. United States*, 34 F.Supp.3d 796, 806 (N.D. Ohio 2014).

[13] In the administrative exhaustion argument of its Motion, the Department appears to suggest that this Court lacks jurisdiction over DeVry's Seventh Amendment claim notwithstanding *Axon* based on two out-of-circuit district court decisions. Mot. 14-15 n.5. The Department conspicuously ignores that neither decision concerned the Department's BDR program, and, unlike here, Congress had created special statutory review schemes to review agency orders in those cases. *See Nexstar Media, Inc. Grp. v. NLRB*, 2024 WL 4127090, at *4 (N.D. Ohio Aug. 26, 2024); *Blankenship v. FINRA*, 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024). Furthermore, unlike in *Blankenship*, DeVry's Seventh Amendment claim is not merely about the Recoupment Action, but rather the Department's BDR Rules that deprive schools, like DeVry, of their Seventh Amendment right to a jury trial. *See* 2024 WL 4043442, at *2.

of-powers challenge, ¶¶178-82—differently. The Department's argument relies heavily on the fact that the Court must examine a statute to determine the scope of delegated authority, but that distinction is of no moment. As with an Article I challenge that Congress improperly delegated broad legislative authority to an agency without an intelligible principle, Count 5 properly requires this Court to "look to the statute." *Panama Refin. Co. v. Ryan*, 293 U.S. 388, 415 (1935). Thus, judicial review of the statutory provision does not undermine DeVry's constitutional claim that the Department has exercised legislative authority reserved to Congress alone.

### B.    DeVry's APA Claims Challenge Final Agency Actions.

The Department is also incorrect that DeVry's APA claims lack finality. Mot. 8-9, 11-12. Finality means that the action must (1) "mark the consummation of the agency's decision-making process," and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett*, 520 U.S. at 177-78. Finality must be evaluated flexibly and pragmatically and in the light most favorable to DeVry. *See Dhakal v. Sessions*, 895 F.3d 532, 539-41 (7th Cir. 2018); *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 903 (N.D. Ill. 2020).

*The BDR Rules.* As an initial matter**,** all the regulations comprising the BDR Recoupment Scheme are final because "[a]n agency's promulgation of regulations constitutes a final agency action[.]" *Env't Health Tr. v. FCC*, 9 F.4th 893, 913 (D.C. Cir. 2021); *Genendo Pharm. N.V. v. Thompson*, 308 F.Supp.2d 881, 884 (N.D. Ill. 2003) (similar); *e.g.*, ¶¶81-83, 114, 127, 136.[14] And the Department itself concedes that the 2017 BDR Rule is final. Mot. 17.

*The 2021 Policy Memoranda.* The 2021 Policy Memoranda constitutes a final agency action because it declared a uniform presumption of total relief for student borrowers that

---

[14] The Department's assertion that the "most recent" BDR Rule, 87 Fed. Reg. 65,904 (Nov. 1, 2022), is not "at issue" is misguided. Mot. 3 n.2. The SAC referred to the proposed version of that Rule, making clear that DeVry is challenging the lack of statutory authority for that Rule, too. ¶ 136 (citing 87 Fed. Reg. 41,878 (July 13, 2022)). The 2023 BDR Rule became effective on July 1, 2023. 87 Fed. Reg. at 65,904.

Department officials must apply to BDR applications effective immediately. ¶161 & n.8. That directive constitutes final agency action. *See Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014) (directive that "provide[d] firm guidance to enforcement officials about how to handle permitting decisions" was final); *W. Ill. Home Health Care, Inc. v. Herman*, 150 F.3d 659, 663 (7th Cir. 1998) (final action where agency used "simple, declarative sentence"); *Tex. v. United States*, 555 F.Supp.3d 351, 389 (S.D. Tex. 2021) (memorandum "effective immediately" was final). The Department's assertion that the Memoranda merely stated general policy is wrong. Mot. 18.[15] It states a presumption of full relief as ***the*** "starting point" for discharges. ¶161 n.8. The Department cannot avoid finality by asserting that its 2021 Policy Memoranda had "no legal effect on borrowers or institutions," and was "not the Department's final word on any [BDR] application or on any school's liability." Mot. 18. These arguments ignore the Memoranda's finality ***as to the Department officials*** required to follow it. *See Biden v. Tex.*, 142 S. Ct. 2528, 2544-45 (2022) (memoranda that "bound" staff were final); *Tex.*, 555 F.Supp. at 391 (memorandum imposed new requirements on officials).

***The BDR Discharges.*** The Department does not dispute that its BDR discharges are final, nor could it. Mot. 16-17. The BDR Rules treat the discharges as "*final* as to the merits of the claim and any relief[.]" 34 C.F.R. § 685.222(e)(5); *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) (agency action consummated decision-making since "[t]he Administration has said so by regulation"). The discharges also "determined obligations" by relieving borrowers of their obligations to pay $23.6 million in loans. *See Hoosier Env't Council v. Nat. Prairie Ind. Farmland Holdings, LLC*, 564 F.Supp.3d 683, 703 (N.D. Ind. 2021).

---

[15] The Department's cited cases are inapposite. Mot. 18; *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 40 (D.C. Cir. 1974) (agency order was general policy statement where it was so "entitled and consistently referred to" as such); *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009) (finding policy guidance ambiguous when it included mandatory and non-mandatory language).

### III.    DEVRY'S CLAIMS ARE RIPE FOR JUDICIAL REVIEW ON THE MERITS.

The Department asserts that all claims except DeVry's Article II claim should be dismissed as unripe due to the pendency of the Recoupment Action. Mot. 7-11. This, too, is baseless. "[R]ipeness is not a formalistic inquiry but rather a pragmatic balancing of relevant interests." *Baker Hughes Inc. v. Kirk*, 921 F.Supp.801, 805 (D.D.C. 1995). It is closely related to Article III standing, *see supra* Part I, and asks, "whether the harm asserted has matured sufficiently to warrant judicial intervention[.]" *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). To assess ripeness, a court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Contrary to the Department's arguments, Mot. 9-10, DeVry's claims raise purely legal issues, and DeVry has suffered injury. The Recoupment Action cannot unripen these claims.

#### A.    DeVry's Article I, Article II, and Seventh Amendment Claims Are Ripe (Counts 5, 6, 7).

DeVry's Article I and Seventh Amendment claims (Counts 6 and 7) raise pure questions of law, as the arguments of both DeVry and the Department confirm. *See infra* Part V.A, B; Mot. 19-22, 24-28. The Department cherry-picks several allegations to argue that the claims require "factual development," Mot. 10, but none of them concern the Article I or Seventh Amendment claims.[16] DeVry challenges whether the BDR Recoupment Scheme violates Article I. That legal issue does not depend on the Action and thus DeVry's claims are ripe. *See Contender Farms*, 779 F.3d at 267 (plaintiffs "raise[d] a purely legal challenge to the Regulation" because "[i]f we adopt their view, the Regulation exceeds the USDA's authority as granted by Congress and violates ... constitutional principles"); *Nat'l Env't Dev.*, 752 F.3d at 1008 (the "challenge ... presents a purely

---

[16] These allegations pertain to the Department's failure to follow its BDR regulations in making the loan discharges, ¶¶158-60 (Count 2), and the Department's violation of constitutional due process by failing to provide sufficient notice to DeVry regarding the BDR claims, ¶¶174-75 (Count 4).

legal question of whether EPA's final action adopting a non-uniform enforcement regime violates ... the CAA or EPA regulations."); *Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1489 (D.C. Cir. 1983) ("[T]he scope of the Commission's statutory authority is strictly a legal issue."); *Atl. Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771, 784 (1984) (claims ripe "given the grave questions as to the legality of the Department's procedures..").[17]

The Department next asserts that the potential hardship to DeVry is merely the cost and inconvenience of the Recoupment Action.[18] Mot. 10. Although those costs are significant, DeVry's hardship is the "here-and-now injury" from subjection to the unconstitutional Recoupment Action, which "is impossible to remedy once the proceeding is over[.]" *Axon*, 598 U.S. at 191; ¶¶138-41. That injury renders Counts 6 and 7 ripe. *Cochran v. SEC*, 20 F.4th 194, 212-13 (5th Cir. 2021) (Article II claim ripe as a "pure issue of law"; "withholding judicial consideration would injure the plaintiff by forcing her to litigate before an ALJ who was unconstitutionally insulated"); *Burgess v. FDIC*, 2023 WL 4354219, at *5 (N.D. Tex. July 5, 2023) (constitutional claims against FDIC were ripe). The Department's contention that DeVry faces no hardship from the deprivation of a jury trial, Mot. 10-11, ignores that "here-and-now" injury altogether by citing pre-*Axon* cases.[19] And the Department's view that Count 6 is "an ordinary

---

[17] The Department's reliance on *Rogers v. Bennett*, 873 F.2d 1387, 1392 (11th Cir. 1989), to defeat ripeness is misplaced. Mot. 10. That case applied an administrative exhaustion requirement to a challenge concerning the termination of federal funding for an education program. *Id*. There is no exhaustion requirement for recoupment proceedings, nor is the Action a termination proceeding. *See infra* Part IV.

[18] *Axon* disposes of the Department's assertion that the purported hardship to DeVry is mere "uncertainty" about the Recoupment Action's outcome, and renders inapposite *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239–43 (1980), and *Borden, Inc. v. FTC*, 495 F.2d 785, 789 (7th Cir. 1974).

[19] *Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *10 (S.D. Tex. July 15, 2016) (pre-Axon decision concluding that Seventh Amendment claim was not ripe because it could be mooted if the agency terminated its civil penalty proceeding), *aff'd*, 859 F.3d 325, 336-37 (5th Cir. 2017); *In re Edgewater Med. Ctr.*, 2004 WL 2921957, at *3 (N.D. Ill. Dec. 15, 2004) (pre-*Axon* bankruptcy case that did not concern civil penalty imposed by an agency). The Department's further argument that the Action "may be resolved on dispositive motions," is premised on an inapposite decision finding only that summary judgment in federal court "does not violate the Seventh Amendment." *Cover v. OSF Healthcare Sys.*, 2023 WL 7220555, at *2 (N.D. Ill. Nov. 2, 2023)

APA claim" that is unripe until a final decision in the Recoupment Action is incorrect. Mot. 10. Count 6 challenges the BDR Rules themselves, which are final. ¶16; Mot. 17; *supra* Part II. The Department's assertion that Count 6 is unripe because it purportedly "can be raised in any appeal to the Secretary," Mot. 10, is unavailing; that is not the test for ripeness or finality, which DeVry's claims meet.

### B. DeVry's APA Claims Are Ripe (Counts 1-4).

DeVry's APA claims are ripe. *See* Mot 8-9. DeVry's APA challenges to the 2017 and 2020 BDR Rules, the 2017 BDR Recoupment Rule, the 2021 Policy Memoranda, and the BDR discharges are ripe because they "involve[] a final agency action and present[] a purely legal issue." *Nerium Int'l, LLC v. FTC*, 2020 WL 5217152, at *6 (N.D. Ill. Aug. 31, 2020).

***Finality.*** "[U]nder the APA, a challenge to agency conduct is ripe ... after the final agency action." *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). Unlike the Department's cases,[20] each challenged agency action is final. *See supra* Part II.

***Purely Legal Issues.*** DeVry's challenges to the 2017 and 2020 BDR Rules as well as the 2017 BDR Recoupment Rule raise ***purely legal*** questions, *i.e.*, whether these regulations exceed the HEA and violate the Constitution. ¶¶144-52, 153; *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (challenge to whether the Commissioner "properly construed" statute was "purely legal" and ripe); *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) ("purely legal claims in the context of a facial challenge to a final rule" were "presumptively reviewable"); *Energy Transfer Partners*, 567 F.3d at 142 ("[C]hallenged regulations were final agency action and therefore reviewable[.]"). These claims are ripe for review

---

[20] *See In re Aiken Cnty.*, 645 F.3d 428, 435 (D.C. Cir. 2011) (claim not ripe due to "ongoing ... administrative procedures"); *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141-42 (5th Cir. 2009) (orders alleging statutory violations and setting a hearing were not ripe due to no final agency action); *Nerium Int'l*, 2020 WL 5217152, at *4 (claims not ripe because plaintiffs "do[] not identify a final agency action").

irrespective of the Action because they raise purely legal issues. *See supra* Part III.A. DeVry's claims challenging the Department's failures to follow the APA's notice-and-comment requirements in promulgating the 2017 BDR Rule and its significant guidance regulation in promulgating the 2021 Policy Memoranda also raise purely legal questions. ¶¶151, 161; *Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014) (notice-and-comment claims "involve purely legal questions"); *State v. Ctrs. for Medicare & Medicaid Servs.*, 2010 WL 1268090, at *5 (M.D. Ala. Mar. 30, 2010) (notice-and-comment claim was ripe at time "the alleged failure occurs").

    ***Hardship.*** DeVry also would face hardship from withholding judicial review of its APA claims. DeVry is currently suffering harm as a result of the unauthorized BDR Rules, Policy Memoranda, and the 1,100 BDR Discharges not asserted in the Recoupment Action, including an increased regulatory burden, reputational harm from official findings of misconduct, and the threat of further unconstitutional and unauthorized enforcement proceedings. *See supra* Part I. The Department asks this Court to withhold judicial review of all these final actions, arguing that the only hardship DeVry suffers is "uncertainty as to the outcome" of the Action. Mot. 10. This argument is incorrect. DeVry does not raise in the Action any APA claims that challenge the final actions the Department continues to enforce against DeVry outside of the Action, nor can the Action provide DeVry any relief on its claims given that the ALJ cannot waive the BDR Rules or hold them invalid. 34 C.F.R. § 668.90(d)(1)-(2). Thus, the Department's cases are inapposite.[21]

## IV.    DEVRY'S CLAIMS ARE NOT SUBJECT TO ADMINISTRATIVE EXHAUSTION.

---

[21] *Am. Sav. Bank, FSB v. UBS Fin. Servs.*, 347 F.3d 436, 439-40 (2d Cir. 2003) (claims unripe where plaintiff's request to agency was pending); *Davis v. U.S. Dep't of Hous. & Urb. Dev.*, 94 F.3d 647, 1996 WL 467650, at *2 (7th Cir. 1996) (unpublished) (case not ripe because there is no "initial determination o[n] the merits" in the administrative proceeding); *Nerium Int'l*, 2020 WL 5217152, at *5 (finding plaintiffs "undoubtedly have an adequate remedy in the [FTC] enforcement action" because "[p]laintiffs can raise the same arguments they assert here as defenses in that action"); *Hardy v. Hamburg*, 69 F.Supp.3d 1, 11 (D.D.C. 2014) (claims not ripe because plaintiffs were "currently seeking administrative relief under [the statutory scheme]" and the "administrative investigation into their allegations remains pending").

The Department moves to dismiss all claims except Count 5 (Article II removal claim) for a purported failure to exhaust the Recoupment Action. Mot. 12-14. This argument fails.

***No Statutory or Regulatory Exhaustion Requirement.*** The Department's exhaustion arguments run afoul of the APA, which "has ***limited*** the availability of the doctrine of exhaustion of administrative remedies to that which [a] statute or rule ***clearly mandates***." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993); *Star Way Lines v. Walsh*, 596 F.Supp.3d 1142, 1151 (N.D. Ill. 2022). The Department cites no exhaustion requirement for any of DeVry's claims, nor can it. Mot. 12-13. Congress did not create BDR recoupment proceedings, 20 U.S.C. § 1087e(h), and the BDR Recoupment Rule does not purport to require exhaustion. 34 C.F.R. § 668.87. This is fatal. *See CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1978 (D.C. Cir. 2009) ("[A]bsent a statutory or regulatory requirement, courts have ***no*** authority to require parties to exhaust administrative procedures before seeking judicial review."); *Williams v. Devos*, 2018 WL 5281741, at *9-12 (D. Mass. Oct. 24, 2018) (rejecting Department's exhaustion argument).

The Department's cases are inapposite because they do not address exhaustion,[22] do not involve the APA,[23] or pre-date *Darby*.[24] Mot. 13-14. The Department's assertion that exhaustion will "avoid" a decision on the structural constitutional claims, Mot. 13, is incorrect because ***no*** decision in an agency proceeding will "obviate the need to address [the] constitutional challenges." *Axon*, 598 U.S. at 195. Nor does *Career Educ., Inc. v. Dep't of Educ.*, 6 F.3d 817 (D.C. Cir. 1993), apply. Mot. 14. That decision required exhaustion of termination proceedings where the HEA

---

[22] *See Chauffeur's Training Sch., Inc. v. Riley*, 967 F.Supp.719 (N.D.N.Y. 1997) (no reference to exhaustion); *Pro Schs., Inc. v. Riley*, 824 F.Supp. 1314, 1320 (E.D. Wis. 1993) (same).

[23] *See N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 860 (D.C. Cir. 2012) (no APA review as "the Postal Service is exempt"); *Gonzalez v. O'Connell*, 355 F.3d 1010 (7th Cir. 2004) (non-APA immigration case); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978) (non-APA Seventh Amendment claim).

[24] *See In re Establishment Inspection of Kohler Co.*, 935 F.2d 810 (7th Cir. 1991) (pre-*Darby* case that did not identify a statute or regulation requiring exhaustion); *Paul's Beauty Coll. v. United States*, 885 F.Supp.1468 (D. Kan. 1995) (no identification of a statute or regulation requiring exhaustion).

provided that "the secretary can make a termination decision only 'after reasonable notice and opportunity for a hearing on the record.'" *Career Educ.*, 6 F.3d at 818 (quoting 20 U.S.C. § 1094(c)(1)(F)). The Recoupment Action is not a termination proceeding, and the HEA does not establish hearings for the BDR claims the Department invented. *See infra* Part V.A.

**The Recoupment Action's Limited Scope Precludes Dismissal.** The Department's exhaustion arguments are also defective because the exhaustion doctrine, if it applies at all, applies to claims requesting that a court "invalidate an administrative order" before an ongoing administrative proceeding has concluded. *See Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326 (7th Cir. 1995). The Recoupment Action is limited to particular BDR discharges; it does not concern the approximately 1,100 other BDR Discharges, or 47,000 BDR applications. Exhaustion cannot preclude review of claims challenging the Department's continued application of the BDR Rules to DeVry where DeVry has "nothing to exhaust" in an administrative proceeding. *See L. Xia v. Tillerson*, 865 F.3d 643, 657 (D.C. Cir. 2017) (APA claims plausibly alleged where "government took the position that no administrative remedies were open to [plaintiffs]").

**Exceptions to Exhaustion Otherwise Apply.** Even if exhaustion were applicable to any of DeVry's claims (it is not), the Motion fails to address any of the exhaustion exceptions. Mot. 12-14. A court may excuse exhaustion if "the agency lacks the ability or competence to resolve the issue or grant the relief requested." *Gonzalez*, 355 F.3d at 1016. Here, the Department lacks the ability or competence to resolve DeVry's structural constitutional claims (Counts 5-7).[25] *See Axon*, 598 U.S. at 195 ("[A]gency adjudications are generally ill suited to address structural constitutional

---

[25] The Department again misreads *dicta* in *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023), as somehow excusing only Appointment Clause claims from exhaustion notwithstanding *Axon*. Mot. 14-15 n.5. That is incorrect. The Seventh Circuit held only that an ALJ was better suited to "unpack and untangle objections and concerns" about an expert from an agency evidentiary hearing to allow "proper development of the evidentiary record in real time." *Leisgang*, 72 F.4th at 220. *Leisgang* made no mention of structural constitutional challenges or *Axon*, and thus cannot justify an exhaustion requirement here.

challenges."). Neither the Secretary, nor the ALJ presiding over the Action can grant relief on DeVry's claims; they are "bound by all applicable statutes and regulations" and "may not ... [w]aive ... or [r]ule them invalid." 34 C.F.R. § 668.90(d). Thus, DeVry's claims may proceed.

## V. DEVRY STATES CONSTITUTIONAL AND APA CLAIMS AGAINST THE DEPARTMENT.

Contrary to the Department's arguments, Mot. 18-30, DeVry's Article I and II claims (Counts 5, 6), Seventh Amendment claim (Count 7), APA claim challenging agency action contrary to law (Count 3), and APA claim challenging collective BDR Discharges (Count 1) are adequately alleged. The Department does not expressly challenge Counts 3 and 4 on the merits.

### A. The Department's BDR Recoupment Scheme Exceeds § 1087e(h), Is Contrary to Law, and Unconstitutionally Usurps Legislative Power (Counts 1, 3, 6).

DeVry's challenge to the BDR Rules, the 2021 Policy Memoranda, and the 2017 BDR Recoupment Rules stem from the same core principles: "[a]gencies have *only* those powers given to them by Congress," *W. Va. v. EPA*, 142 S. Ct. 2587, 2609 (2022), and "[t]he power of executing the laws .... does *not* include a power to revise clear statutory terms." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014). Congress did not authorize affirmative BDR claims or recoupment proceedings for BDR discharges. The Department has vastly exceeded § 1087e(h) not only in violation of the APA, but also by "improperly intruding into the realm of law-making that is the exclusive province of Congress." *FEC v. Swallow*, 304 F.Supp.3d 1113, 1118 (D. Utah 2018). Contrary to the Department's assertion, Mot. 19-22, DeVry states Article I and APA claims. A court must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright*, 144 S. Ct. at 2263. The "analysis begins and ends with the text." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 553 (2014). The only statutory provision that speaks to "[b]orrower defenses" instructs that "the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert

as a defense to repayment of a loan." 20 U.S.C. § 1087e(h). This clear and limited text does not support the Department's sprawling new program allowing students to assert discharge claims and allowing the Department to administratively adjudicate recoupment claims against schools.

**No Authority for Affirmative BDR Claims.** DeVry plausibly alleges that § 1087e(h) "does **not** authorize the Department to draft regulations spelling out affirmative 'claims' that borrowers can assert against schools to avoid their obligations." *CCST*, 98 F.4th at 240. The statutory provision speaks only to defining "defense[s]"—not creating claims. The term "defense" (undefined in the HEA) has an established common law meaning, pursuant to which "[a] 'defense' is a reactive measure, not a proactive basis for a borrower's suit." *Id.* at 240-41.[26] Congress's use of the word "defense" in § 1087e(h) while allowing the Department to affirmatively "cancel" or "discharge" student loans in other circumstances further confirms that § 1087e(h)'s use of the term "defense" cannot be read to allow these other forms of relief.[27] *See id.* at 241. The Department nonetheless argues that statutes **other than** § 1087e(h) allow it to create and adjudicate BDR claims administratively. Mot. 19-20. Those provisions—largely **outside** the HEA—cannot overcome § 1087e(h)'s plain language.[28] The Department defends its BDR Rules with the bare assertion that they reflect a "longstanding interpretation of the HEA." Mot. 22. But the Fifth Circuit has already rejected this very argument because "[b]efore promulgating the [2017 BDR] Rule, the Department had recognized borrower claims covering fewer than 100 persons between 1998 and 2009." *CCST*,

---

[26] The Fifth Circuit relied on the definition in Black's Law Dictionary in which a "defense" is "a legally recognized basis for avoiding liability." *Defense*, Black's Law Dictionary (6th ed. 1990).

[27] 20 U.S.C. § 1078-11(a)(2)(B) (the Department may "cancel a qualified loan amount" for individuals employed full time "in an area of national need"); *id.* § 1087e(m)(1) (Department "shall cancel the balance of interest and principal due" for borrowers employed in a public service job); *id.* § 1087j(b) (directing the Department to "cancel[] the obligation to repay a qualified loan amount" for teachers).

[28] The cited provisions show only that a BDR defense is proper in certain contexts, not proceedings the Department invented. *See* 20 U.S.C. § 1080a(c)(4) (Department must give notice to a borrower before credit reporting); 31 U.S.C. § 3711(e) (credit reports); 5 U.S.C. § 5514 (federal salary offset); 20 U.S.C. § 1095a, 31 U.S.C. § 3720D (wage garnishment); 31 U.S.C. §§ 3716, 3720B (federal payment offset).

98 F.4th at 241. The Department has no response to this conclusion.

***No Authority for BDR Recoupment Claims.*** DeVry plausibly alleges that § 1087e(h) also "does not allow the Department to adjudicate borrower defense claims or recoupment claims by the Department against schools." *CCST*, 98 F.4th at 246-47. In the Department's own words in its prior motion: "§ 1087e(h) does not specifically discuss recoupment." ECF No. 59-1 at 20. Nor can § 1087e(h) be construed to permit BDR recoupment given that Congress has authorized the Department to "discharge the borrower's liability on the loan" *and* "subsequently pursue any claim available to such borrower against the institution" in a different, inapplicable statutory provision. 20 U.S.C. § 1087(c); *see Biden v. Neb.*, 143 S. Ct. 2355, 2363 (2023) (identifying § 1087(c) as a "limited circumstance[]" in which "[the HEA] authorizes the Secretary to cancel or reduce loans"). Because Congress expressly stated in § 1087(c) that the Secretary may discharge and recoup student loans, Congress clearly did not provide that authority under § 1087e(h). *See United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015) ("Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.").

Unable to rely on the language of § 1087e(h), the Department turns to the "context" of its general rulemaking authority under the HEA over student loans and schools participating in the Direct Loan program as the authority for its BDR Recoupment Scheme. Mot. 19-20 (citing *King v. Burwell*, 576 U.S. 473, 492 (2015); 20 U.S.C. § 1082, 1221e-3, 3441, 3471, 3474); *id*. at 2-3 (citing § 20 U.S.C. §§ 1087d(a)(3), 1094(c)(1), 1099c(c)). But "[t]he Department misreads *King* as granting agencies the freedom to disregard Congress's words based on the gestalt of a statute. Nothing in *King* supports such a radical revision of administrative law." *Mich. v. DeVos*, 481 F.Supp.3d 984, 993-94 (N.D. Cal. 2020). Nor can the Department "rely on its *general* authority to make rules necessary to carry out its functions when a *specific* statutory directive defines the

relevant functions of [the agency] in a particular area." *Am. Petroleum Inst. v. EPA*, 706 F.3d 474, 479 (D.C. Cir. 2013). Thus, the Fifth Circuit rejected this very argument in *CCST*, explaining that § 1087e(h)'s "plain statutory language belies" the agency's interpretation. 98 F.4th at 248.

The Department's FFEL loan authority does not support the claimed BDR recoupment authority. Mot. 20-21. The Department points to Congress's instruction that "*unless otherwise specified in this part*, loans made to borrowers under this part shall have the same terms, conditions, and benefits, ... as" FFEL loans. 20 U.S.C. § 1087e(a)(1). But § 1087e(h) falls within the carve-out for provisions specific to Direct Loans and, even if it did not, a BDR recoupment claim lodged by the Department against a school is self-evidently not a term, condition, or benefit of a loan made to a borrower. The Department's argument that *CCST* "did not consider" FFEL, Mot. 22, is incorrect because *CCST* distinguished the discharge authority Congress provided under FFEL from the lack of such authority in §1087e(h).[29] 98 F.4th at 230 n.5. The loans subject to the Action are not FFEL loans and Congress did not extend discharge authority to the Direct Loans that are part of the Department's unauthorized pursuit of recoupment.

The Department's reliance on 20 U.S.C. § 1087d(a)(3) is also unavailing. Mot. 21. That provision provides only that schools participating in Title IV must "accept[] responsibility and financial liability stemming from its failure to perform its functions" in a participation agreement. 20 U.S.C. § 1087d(a)(3). It does not refer to BDR claims. And, as explained in *CCST*, "schools' … general compliance under agreements with the Department" is "simply not the same as the adjudications authorized by the Rule for individual or group claims alleging violations of the newly created borrower defenses." 98 F.4th at 247. Because the Department's regulations violate § 1087e(h) and vastly exceed any delegated authority, the Department's Motion fails.

---

[29] The Department's FFEL case is inapposite. *Pro Schools, Inc. v. Riley* merely referenced an ability to "demand repayment of improperly utilized [FFEL] funds." 824 F.Supp.1314, 1316 (E.D. Wis. 1993).

### B. The Recoupment Action Violates the Seventh Amendment (Count 7).

Even assuming Congress delegated authority to the Department to administratively adjudicate BDR recoupment claims (it did not), the administrative adjudication scheme would still fail in this case. The Seventh Amendment requires that "[s]uits at common law, ... the right of trial by jury shall be preserved." U.S. Const. amend. VII. "The Constitution prohibits Congress from 'withdrawing from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law.'" *Jarkesy*, 144 S. Ct. at 2131. Congress cannot "strip [parties] of the protections of the Seventh Amendment" even when it creates "novel statutory regimes" if "the claims are akin to common law claims." *Id.* at 2139. The SAC raises a substantial claim that the BDR Recoupment Rule and the Action violate the Seventh Amendment because the Department seeks to administratively adjudicate common law claims for which DeVry is entitled to a jury trial. Indeed, in the Action, the Department seeks to impose a $23.6 million civil penalty reflecting ***full*** discharge relief based on purported misrepresentations. The Department cannot mask its Seventh Amendment violation by distorting the Action, invoking the so-called "public rights exception," or incorrectly asserting that DeVry purportedly "waived" its right to a jury. Mot. 25-28.

### 1. The Department's Administrative Adjudication of Common Law Claims Violates the Seventh Amendment.

The Department stated in its prior motion to dismiss that it "has a common law right to recover borrower defense losses from schools." ECF No. 59-1 at 21 n.8. The Department should not be permitted to argue the contrary now. Mot. 26. Nonetheless, DeVry plausibly alleges that the remedy sought and the nature of BDR claims are "legal in nature." *Jarkesy*, 144 S. Ct. at 2128, and "adjudication by an Article III court is *mandatory*," *id.* at 2131-32.

***The Recoupment Penalty.*** "[T]he remedy is all but dispositive" in determining whether claims are common law claims. *Jarkesy*, 144 S. Ct. at 2129. The Department seeks money damages

from DeVry, which "are the prototypical common law remedy." *Id*.; *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (same). Although money damages may be legal or equitable in nature, the damages that the Department seeks in the Recoupment Action are a penalty "designed to punish or deter the [purported] wrongdoer." *Jarkesy*, 144 S. Ct. at 2129. Indeed, as alleged, the Department applies a presumption of full relief to every BDR discharge without regard to any actual injury to a borrower. ¶¶111(d), 189-92. This presumption belies the Department's assertion that recoupment is equitable relief to recover purported "losses" or "unjustly obtained funds." Mot. 26. Because the purported "losses" are ***divorced*** from any injury to a borrower, it is self-evident that the Department seeks to impose a penalty based "on the [purported] culpability of DeVry. *See Jarkesy*, 144 S. Ct. at 2130. "The final proof that th[e] remedy is punitive is that the [agency] is not obligated to return any money to victims." *Id*. Indeed, the recoupment penalty goes to the Department—not any borrower. As in *Jarkesy*, the penalty effectively decides that this suit implicates the Seventh Amendment right, and DeVry is entitled to a jury.

**BDR Claims.** The Department conspicuously does not address whether the nature of BDR claims is legal in nature. Mot. 25-28. As with the federal securities law claims at issue in *Jarkesy*, the Department's BDR claims are legal in nature, as alleged. The claims "target the same basic conduct as common law fraud, employ the same terms of art, and operate[s] pursuant to similar legal principles." 144 S. Ct. at 2136; *see also* ¶¶43, 100; *e.g.*, 34 C.F.R. § 685.206(c)(1) (2017 BDR Rule); *id.* § 685.222(d)(1) (concerning a purported "substantial misrepresentation" by the school); *id.* § 668.71(c) (defining the terms "misrepresentation" and "substantial misrepresentation"). Thus, the Seventh Amendment squarely applies, as DeVry alleges.

### 2. The Department Cannot Evade the Seventh Amendment.

The Department's "public rights" and waiver arguments also fail. Mot. 25, 27.

*The "Public Rights" Exception Does Not Apply*. The Department's "public rights" exception argument fails at the outset because, "[i]f a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Jarkesy*, 144 S. Ct. at 2132. The BDR claims are common law claims, and thus "[t]he exception does not apply." *Id*. at 2127. The Department selectively quotes the government's position in *Jarkesy* to argue that "cases involving public rights …. may be assigned 'for decision to an agency without a jury, consistent with the Seventh Amendment.'" Mot. 27. But *Jarkesy* does not help the Department because the Court held the exception did not apply. Nor did the Court "reaffirm[]" the exception. Mot. 27. Indeed, the Court underscored that the exception has "no textual basis." *Jarkesy*, 144 S. Ct. at 2134. The Court further cabined the exception to specific categories of cases, none of which concerned BDR claims or even student loans more generally.[30] Thus, even if Congress had intended to assign BDR claims to administrative adjudication, as the Department suggests (although there is no indication that it did), the Seventh Amendment would prohibit that assignment. *See Jarkesy*, 144 S. Ct. at 2135-36; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (requiring jury trial for statutory fraud claims).

*No Waiver.* The Department argues that DeVry waived the right to a jury trial of any BDR claims by signing a program participation agreement ("PPA") in September 2023 in which it agreed to comply with provisions of the HEA and the Department's regulations. Mot. 25 (citing Ex. B (ECF No. 76-3) at 11, 13). The Department cites nothing in the PPA that refers to the Seventh Amendment, a right to a jury trial, or even a non-Article III forum for adjudication of claims. Instead, the Department reasons that the P PA constitutes a waiver because the BDR Rules are

---

[30] These categories of cases include the collection of revenue; aspects of customs law; immigration law; relations with Indian tribes; the administration of public lands; and the granting of public benefits. *See Jarkesy*, 144 S. Ct. at 2128-31.

Department regulations, which allow for the assertion of BDR claims and recoupment. *Id.*

The Department's argument should be rejected. The law is clear that "there is a presumption ***against*** waiver of the constitutional right to jury trial." *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1083 (7th Cir. 2001). A court "[cannot] infer not infer waiver absent clear, unequivocal evidence that the party intended to waive its right." *Lacy v. Cook Cnty.*, 897 F.3d 847, 860 (7th Cir. 2018). The Department's reliance on the execution of a PPA does not come close to such "clear, unequivocal evidence that a party intended to waive its right."[31] *Id.* The Department's reliance on *Geldermann, Inc. v. Commodity Futures Trading Comm'n*, is misplaced, because there the defendant had agreed to an explicit arbitration provision in a membership agreement, demonstrating a clear and unequivocal intent to waive the right to a jury trial. 836 F.2d 310, 321 (7th Cir. 1987). The PPA does not refer to arbitration, let alone a waiver of the right to a jury trial. Ex. B. Nor is this case like *Commodity Futures Trading Comm'n v. Schor*, where the party waived his right to an Article III forum by first asserting a right to a jury trial only after the ALJ had ruled against him. 478 U.S. 833, 848-49 (1986). *Schor* is inapposite as DeVry filed this case ***before*** the Action began and has consistently demanded an Article III forum.

## C. The Department's ALJ Structure Violates Article II. (Count 5).

### 1. Dual Layers of Removal Protection Insulate ALJs from Removal.

The Department's attempt to dismiss DeVry's Article II claim is unpersuasive. Mot 28-35. "[T]he President's removal power is the rule, not the exception." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2206 (2020). The President *must* have the power "to remove those who assist him in

---

[31] The Department's Seventh Amendment waiver argument raises other issues because it ignores the "gross inequality in bargaining power" between DeVry and the Department. *See Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (rejecting argument that party had voluntarily waived Seventh Amendment right). If the Department were right, then no school would ever have any right to a jury trial for any common law claims simply because there is a PPA between the Department and the school.

carrying out his duties." *Free Enter.*, 561 U.S. at 513-14. There is no dispute that the Department's ALJs are "inferior officers." ¶¶64-67; Mot. 31-35. The dual layers of removal protection Congress placed between these ALJs and the President are unconstitutional because "[m]ultilevel protection from removal is contrary to Article II[]." *Free Enter.*, 561 U.S. at 484.

At the first layer here, the Department's ALJs cannot be removed except "for good cause" determined by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a). Similarly, the Board members in *Free Enterprise* could not be removed "except for good cause," determined by the SEC. 561 U.S. at 495. The "less strict" good cause standard for the ALJs here is irrelevant. Mot. 33. The "sharply circumscribed definition" of good cause to remove a Board member at the first layer was not the defect in *Free Enterprise*. 561 U.S. at 505. Rather, "[a] *second level* of tenure protection change[d] the nature of the President's review." *Id.* at 496.

At the second layer, the President cannot remove MSPB members except "for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Likewise, in *Free Enterprise*, the President could not remove SEC Commissioners except for "inefficiency, neglect of duty, or malfeasance in office." 561 U.S. at 496. The Department's assertion that the MSPB's role places no "additional burden" on the President is incorrect. Mot. 33 & n.13. As in *Free Enterprise*, the scheme "*withdraws from the President* any decision on whether that good cause exists." 561 U.S. at 495. Instead, the "decision [to remove the Department's ALJs] is vested instead in *other tenured officers*—the [MSPB]—none of whom is subject to the President's direct control" because they, too, are subject to removal protections. *Id.* This second level of protection "strip[s]" the President of the power to remove subordinate executive officers. *Id.* at 496.

Contrary to the Department's argument, Mot. 34, the Fifth Circuit's decision in *Jarkesy* is on point. *Jarkesy v. SEC*, 34 F.4th 446, 464–65 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024).

*Jarkesy* applied *Free Enterprise* to a scheme involving the same layers of protection at issue here and held that SEC ALJs are subject to "at least two layers" of removal protection in violation of Article II. *Id*. By contrast, the Department's cases are unavailing. Mot. 34. In *Decker Coal Co. v. Pehringer*, "Congress expressly refused to require that" adjudicators in the Department of Labor "be ALJs appointed under 5 U.S.C. § 3105." 8 F.4th 1123, 1134 (9th Cir. 2021). In *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, the Tenth Circuit simply rejected *Jarkesy* and found *Decker* "persuasive," concluding that the plaintiffs could not receive injunctive relief on an Article II claim because the Consumer Product Safety Commission ALJ purportedly had "a purely adjudicatory function." 103 F.4th 748, 764 (10th Cir. 2024). In *Calcutt v. FDIC*, Congress required the agency to conduct hearings under the APA, which gives an agency discretion to select an ALJ or another officer. 37 F.4th 293, 319 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023). But here Congress required the Department to use ALJs subject to dual layers of removal protection.[32]

The Secretary's ability to review ALJ decisions does not cure the Article II violation here, as the Department contends. Mot. 32. The Supreme Court has never suggested that the availability of presidential review justifies encroachments on the removal power, or vice versa. Instead, Supreme Court precedent underscores that Article II does not tolerate congressional encroachments on one power simply because Congress has not encroached on the other. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1977, 1980-82 (2021) (invalidating scheme in which "no

---

[32] *See* 20 U.S.C. § 1234(a) ("[t]he Secretary shall establish in the Department of Education an Office of [ALJs] which shall conduct" certain proceedings); *id.* § 1234(b) (Department's ALJs "shall be appointed by the Secretary in accordance with [5 U.S.C. § 3105]"). Even if the President had any choice about whether to use Department ALJs subject to dual layers of removal protection, the President "cannot ... choose to bind his successors by diminishing their powers, nor can he escape responsibility for his choices by pretending that they are not his own." *Free Enter.*, 561 U.S. at 497. The Department's reliance on *Alivio Med. Ctr. v. Abruzzo*, No. 24-CV-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024), is also unavailing. Mot. 33-34. There, the court recognized a circuit split, and determined that it found decisions other than *Jarkesy* "more persuasive" to support denial of a motion for a preliminary injunction. *Id.* at *11. The only question before this Court, however, is whether DeVry plausibly states an Article II claim.

principal officer ... within the Executive Branch" supervised an "executive adjudicatory body" even though "the Secretary can fire for "cause"). The Department and *Decker* simply elide the encroachment on the President's removal power by changing the focus.[33] 8 F.4th at 1134.

The Department's reliance on stale precedent to assert that the scope of the President's removal power "differs" for "quasi-judicial" ALJs is meritless. Mot. 31-32. "The activities of executive officers may take ... judicial forms, but they are exercises of ... executive Power, for which *the President* is ultimately responsible." *Arthrex*, 141 S. Ct. at 1982. In any event, the Department's argument justifies only a *single layer* of protection, not two. *Contrast Morrison v. Olson*, 487 U.S. 654, 695-96 (1988) (upholding single layer in which the Attorney General (subject to at will removal by President) had power to remove inferior executive officer "for good cause"), *with Free Enter.*, 561 U.S. at 490 ("*Morrison* did not ... address the consequences of *more than one level* of good-cause tenure.").[34] Thus, the dual layers at issue here violate Article II.

### 2.     DeVry's Article II Claim Satisfies *Collins*.

The Department wrongly asserts, Mot. 28-30, that the Court should dismiss DeVry's Article II claim under the "harm" requirement applied in *Collins v. Yellen*, 594 U.S. 220, 259-60 (2021). In *Collins*, the Supreme Court found an Article II violation *before* addressing relief, confirming that availability of certain relief is not an element of the claim. *Id*. The plaintiffs, however, sought to invalidate an amendment to a stock purchasing agreement made by the agency director subject to the constitutional violation and thus had to show "harm" to *void* past actions by

---

[33] Moreover, in *Decker*, the Secretary could fire at will members of an agency appellate body that reviewed ALJ decisions. 8 F.4th at 1134–35. No such body exists here. While the President can fire the Secretary at will and the Secretary can review ALJ decisions that a party appeals, the ability to review a particular ALJ decision does not alter the dual layers of unconstitutional removal protection at issue here.

[34] The Department's cases are inapposite. Mot. 31-32. *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935), "did not address the removal of inferior officers." *Free Enter.*, 561 U.S. at 493. Nor did *Wiener v. United States*, 357 U.S. 349, 355–56 (1958). *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir. 1980), did not concern Article II. *United States v. Perkins*, 116 U.S. 483, 485 (1886), addressed a *single* layer of protection.

executive officials subject to the unconstitutional removal restriction. *Id.* The core inquiry under *Collins* is simply "whether the unconstitutional provision caused [or would cause] them harm." *Collins v. Dep't of the Treasury*, 83 F.4th 970, 977, 982 (5th Cir. 2023). DeVry is harmed here.

DeVry seeks "an administrative adjudication untainted by separation-of-powers violations." C*ochran*, 20 F.4th at 210 n.16.[35] As the Fifth Circuit explained in C*ochran* (a decision the Supreme Court reviewed on appeal in *Axon*) when it declined to dismiss an Article II claim challenging unconstitutional removal layers applicable to SEC ALJs, "*Collins* does not impact" a claim where "[the plaintiff] does not seek to void the acts of any [agency] official." *Id*. Rather, "[f]or removal-restriction claims that seek relief before an insulated actor acts, it is not that *Collins*'s causal-harm requirement is altogether inapplicable, but rather that it is readily satisfied." *Energy Transfer, LP v. NLRB*, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024). As in both *Cochran* and *Energy Transfer*, DeVry's "alleged injury is having to participate in a constitutionally defective administrative process. And it's the removal provisions that create the constitutional defect." *Id.*; *see also Axon*, 143 S. Ct. at 191 (explaining that "an illegitimate proceeding, led by an illegitimate decisionmaker … cannot be undone" by later judicial review). [36]

### D. DeVry States an APA Claim Against the Department's Collective BDR Discharges (Counts 1, 3).

DeVry's APA claim challenging the Department's "collective 'group' determination'" of the BDR is also well-stated. DeVry alleges that the Department exceeded § 1087e(h)'s scope because it collectively discharged loans for approximately 1,800 borrowers, relying on the

---

[35] The Department's cases involve requests to *void* agency action. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (declining to void agency rule); *Decker*, 8 F.4th at 1137 (declining to void ALJ decision); *Calcutt*, 37 F.4th at 316–18 (refusing to void agency order).
[36] The Department's reliance on *Leachco* to undermine *Axon*, Mot. 30, is unavailing because the Tenth Circuit merely opined that the "here-and-now" injury language could not show irreparable harm necessary for a preliminary injunction. 103 F.4th at 759. That standard has no application to a Rule 12(b)(6) motion.

"Common Statement." ¶¶12, 40-41, 150, Ex. B at 2-6. Contrary to the Department's assertion, Mot. 22-24, § 1087e(h) does not authorize collective discharges because its text refers only to defenses "*a* borrower" may assert. 20 U.S.C. § 1087e(h); *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) ("[I]ndefinite articles (like 'a' or 'an') precede countable nouns."). The Department's suggestion that the singular includes the plural under the Dictionary Act is inapt. Mot. 24 n.8. "The Dictionary Act does not transform every use of the singular 'a' into the plural." *Niz-Chavez*, 141 S. Ct. at 1482. Nor does the Department's "general authority . . . to administer the student loan program," Mot. 24, override § 1087e(h)'s specific text. *See supra* Part V.A.

The Department's suggestion that it did not in fact use the collective discharges because it initiated a recoupment proceeding applicable only to individual discharges, Mot. 23, cannot warrant dismissal. As DeVry alleges, the Department relied on its "Common Statement" to approve collective discharges. ¶¶12, 40-41, Ex. B. In doing so, the Department violated its regulation prohibiting the Department from relying on common facts in an adjudication against an open school unless the Department complies with 34 C.F.R. §§ 685.222(f), (h). The Department's failure to do so was contrary to law. *See Nat'l Env't Dev.*, 752 F.3d at 1009 ("[A]n agency action may be set aside ... if the agency fails to comply with its own regulations.").

## CONCLUSION

For the above reasons, DeVry requests that the Court deny the Department's Motion.

Dated: October 30, 2024

Respectfully submitted,

/s/ Matthew Kutcher
MATTHEW KUTCHER
BOBBY EARLES
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
rearles@cooley.com

DAVID E. MILLS (*pro hac vice*)
JAY VAUGHAN (*pro hac vice*)
ROBBY L.R. SALDAÑA (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
dmills@cooley.com
jvaughan@cooley.com
rsaldana@cooley.com

*Attorneys for Plaintiff*
*DeVry University, Inc.*